1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11

KRISTINA CHETWOOD, and SANDRA
CASTELLON-GONZALEZ, individually,
and on behalf of others similarly situated,

NO. _____

12
13

Plaintiffs,

COMPLAINT – CLASS/COLLECTIVE
ACTION

JURY TRIAL DEMANDED

14

v.

15
16

T- MOBILE USA, INC.

17

Defendant.

18      Plaintiffs Kristina Chetwood and Sandra Castellon-Gonzalez, individually and on

19  behalf of all others similarly situated, by and through their attorneys, hereby brings this

20  Class/Collective Action Complaint against Defendant T-Mobile USA, Inc., and states as

21  follows:

22                                    **<u>INTRODUCTION</u>**

23

24      1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b)

25  and Fed. R. Civ. P. 23 by Plaintiffs Kristina Chetwood and Plaintiff Sandra Castellon-

26  Gonzalez (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
Phone (206) 622-8000 • Fax (206) 682-2305

situated persons employed by Defendant T-Mobile USA, Inc. (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; and the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313, *et seq.*

2.      Defendant T-Mobile USA, Inc. refers to itself as a "mobile-solutions provider" who offers the "best-in-class business customer satisfaction and innovative products – all supported by America's fastest, most-advanced network."  *See* https://www.t-mobile.com/business (last visited on 2/22/19).  Among other things, they offer "very small, small/medium, and large enterprise wireless service."  *Id.* Additionally, T-Mobile provides every day consumers with wireless voice, messaging, and data services.  According to annual reports, Defendant operates the third largest wireless network in the United States, with over 65.5 million customers and annual revenues of over $32 billion.

3.      Defendant is headquartered in Bellevue, Washington.

4.      In order to service their customers, Defendant employs hourly customer service representatives at brick-and-mortar call centers throughout the country, internally referred to by Defendant as: Customer Service Associate Experts; Customer Service Experts; or Senior Customer Service Experts (hereinafter referred to collectively as "CSRs").

5.      As evidenced by the position descriptions on Defendant's website, the CSRs all perform essentially the same tasks, regardless of which call center they are employed in, and the difference in title primarily reflects the tenure of the CSR.  All CSRs are paid on an hourly basis, plus commissions, incentives, or other non-discretionary bonuses related to the CSR's job performance.

6.      Defendant employed each of the Plaintiffs as CSRs during the past three (3)

COMPLAINT – CLASS/COLLECTIVE
ACTION - 2

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

years at their brick-and-mortar call center in Wichita, Kansas.   Additionally, Plaintiff Chetwood also works at Defendant's brick-and-mortar call center in Mission, Texas where all practices and procedures material to this lawsuit are the same.

7.      Defendant requires their CSRs to work a set, full-time schedule. However, Defendant did not begin compensating CSRs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSRs not being paid for all time worked and for all of their overtime compensation in violation of the FLSA and the KWPA.

8.      Defendant's CSRs use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the call centers. These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

9.      Defendant's CSRs working onsite at the call centers perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications.

10.     In addition to the off-the-clock work discussed herein, Defendant also failed to include commissions and other incentives received in the calculation of CSRs' overtime rates, in violation of the FLSA, KWPA, and other state labor laws.

11.     Defendant's CSRs' jobs described herein are non-exempt positions.

12.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the

COMPLAINT – CLASS/COLLECTIVE
ACTION - 3

beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.

13.     In order to perform their jobs, Plaintiffs were required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from seven (7) to thirteen (13) minutes per day, but extending even longer on days when Plaintiff and other CSRs experienced technical issues related to Defendant's computers, software or programs.

14.     Plaintiffs were not actually "clocked in" for their shift until *after* the computer start-up/log-in process was complete and they logged into the applicable programs, software, servers, and applications, meaning that Plaintiffs and other CSRs worked at least seven (7) to thirteen (13) minutes each per shift that they were never compensated for. This off-the-clock time that Defendant's CSRs spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of their job responsibilities as CSRs.

15.     Defendant provides their CSRs with one unpaid 30-minute lunch break per shift.  Defendant's Employee Handbook requires CSRs to clock-in and out of the time keeping system for all lunch breaks.

16.     Defendant, however, requires its CSRs to perform off-the-clock, unpaid work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendant's computer programs, software programs, servers, and applications. On an average shift, Plaintiffs and other CSRs perform three (3) to four (4) minutes of off-the-clock, mid-shift, unpaid, work during their lunch breaks.

COMPLAINT – CLASS/COLLECTIVE
ACTION - 4

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

17.     Between the pre-shift start-up/log-in process and the log-in/off during lunch period time, Defendant failed to pay Plaintiffs an amount equal to at least ten (10) to seventeen (17) minutes of compensable time *per shift*. Additionally, Defendant failed to compensate Plaintiffs for other off-the-clock time spent performing work duties during their lunch breaks, such as answering questions of supervisors and assisting other team members.

18.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:  "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

19.     Defendant knew or could have easily determined how long it took for the CSRs working at the call centers to complete the pre-shift start-up/log-in process, and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work they performed, but did not.

20.     Plaintiffs bring this action on behalf of themselves and all other similarly situated hourly CSRs who worked for Defendant at any call center in the United States, to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

///

///

COMPLAINT – CLASS/COLLECTIVE
ACTION - 5

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

## JURISDICTION AND VENUE

21.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

22.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

23.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

24.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

25.     This Court has personal jurisdiction over Defendant because Defendant's headquarters are in this district and Defendant resides in this district.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the decisions and policy-making that give rise to the Plaintiffs' claims occurred in this district.

## PARTIES

27.     Plaintiff Christina Chetwood is a resident of Mission, Texas and was employed by Defendant first as an hourly CSR at the Defendant's call center in Wichita, Kansas, then was subsequently transferred to the call center in Mission, Texas.  She has been

COMPLAINT – CLASS/COLLECTIVE
ACTION - 6

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

employed as a CSR by Defendant from approximately November 2014 to the present. Plaintiff Chetwood signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit A***.

28.     Plaintiff Sandra Castellon-Gonzalez is a resident of Wichita, Kansas and is currently employed by Defendant as an hourly CSR at Defendant's call center in Wichita, Kansas.  Plaintiff Castellon-Gonzalez signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit B***.

29.     Opt-In Plaintiff Auriel Calvert is a resident of Haysville, Kansas and is currently employed by Defendant as an hourly CSR at Defendant's call center in Wichita, Kansas.  Opt-in Plaintiff Calvert signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit C***.

30.     Defendant T-Mobile USA, Inc. is a foreign for-profit corporation, headquartered in Bellevue Washington and formed in the State of Delaware.  Defendant's principal mailing address is 12920 SE 38th St., C/O Julie Nelson, Sr. Paralegal, Bellevue, Washington, 98006-1350.  Defendant's registered agent's (Corporation Service Company) address is 300 Deschutes Way SW, Ste. 304, Tumwater, Washington, 98501-0000.

31.     Defendant is a wireless network operator whose majority shareholder is the German telecommunications company Deutsche Telekom.

## GENERAL ALLEGATIONS

32.     On August 15, 2018, Defendant announced that it ended "the hated phone menu & the call center runaround" when it launched the "T-Mobile Team of Experts." "With a Team of Experts, when you call or message T-Mobile, you get a tight-knit team dedicated to you and others in your city.  There are no robots or automated phone menus.

COMPLAINT – CLASS/COLLECTIVE
ACTION - 7

You now have your own entourage at T-Mobile dedicated to you and your happiness." *See*, https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_ 6WK7TGOCFFJ14858 (last visited on 3/26/19).

33.     Although the "entourage at T-Mobile" referenced in the preceding paragraph are the employees referred to herein as CSRs, Defendant's call center operations long predate this announcement.  As stated above, Plaintiff began her employment with Defendant as a CSR in 2014.

34.     Defendant's Customer Care division consists of dozens of call centers throughout the United States where CSRs are employed to assist Defendant's customers.  In fact, in order for one of Defendant's customers to reach a CSR, they must only "call 611 from your T-Mobile phone or message from the T-Mobile App or iMessage using Apple Business Chat." *See*, https://www.t-mobile.com/news/introducing-tex?icid=WMM_ TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited on 3/26/19).

35.     The locations of Defendant's call centers in which CSRs are employed include: Albuquerque, New Mexico; Augusta, Georgia; Colorado Springs, Colorado; Meridian, Idaho; Nashville, Tennessee; Oakland, Maine; Richmond, Virginia; Springfield, Missouri; Wichita, Kansas; Mission, Texas; Birmingham, Alabama; Charleston, South Carolina; Tampa, Florida; and Chattanooga, Tennessee.

36.     The job duties of CSRs are the same from call center to call center, as evidenced by the identical job postings on Defendant's website for each location. Additionally, the required qualifications for the CSR jobs are identical at each call center location. ***Exhibit D***, Job Postings with Position Description.

37.     Defendant compensated CSRs on a bi-weekly basis and paid them a base

COMPLAINT – CLASS/COLLECTIVE ACTION - 8

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

hourly rate, plus commissions and other incentives.  Plaintiff Chetwood's most recent hourly rate was $15.23 per hour.

38.     Defendant earns revenue and profits from the services of Plaintiffs and other CSR employees.  In fact, Defendant's website boasts that "[w]ith a Team of Experts, Net Promoter Score (NPS) – or likelihood to recommend – increased an unprecedented 56%, putting T-Mobile on par with other brands famous for their customer care." *See* https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE 6WK7TGOCFFJ14858 (last visited 3/26/19).  "In Q2 of 2018 – even before Team of Experts went live nationwide today – customer service costs for postpaid were the lowest in company history due to fewer calls per account and callbacks – making Team of Experts a win, not just for customers and employees, but for shareholders, too." *Id*.

39.     Defendant's Employee Handbook claims it is "committed to providing a competitive compensation program that will attract, retain, develop, and reward employees. Total compensation includes base salary and may include short-term incentives, such as bonus and sales commission, and long-term incentives such as restricted stock units.  Certain positions may be eligible for other types of pay to recognize different work conditions and requirements such as shift work.  Premium and call-out pay is available to hourly employees who are scheduled to be available on-call outside the normal work schedule."

40.     Defendant's Employee Handbook also states "[m]anagers are responsible for reviewing and approving employee time entry data on a regular basis (for both non-exempt and/or exempt direct reports) to identify any errors and to ensure they know the time worked by direct reports." "Managers must complete their review of time entries for all direct reports before the time entry deadline. Failure of managers to complete their review may result in

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

performance improvement action up to and including termination."

41.     Regarding overtime pay, the Employee Handbook provides that "[n]on-exempt employees receive one-and-one-half times their regular hourly rate for all hours worked over 40 hours per workweek unless otherwise required by law."

42.     Despite Defendant's promise to pay non-exempt employees, like CSRs, at one-and-one-half times their regular hourly rate, Defendant failed to calculate the CSRs' regular hourly rate correctly because they did not include commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of their regular hourly rate.

43.     Regarding overtime pay calculations, Defendant's Employee Handbook makes no reference to including commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of overtime premiums.   Instead, the Employee Handbook simply states: "[o]vertime pay for non-exempt employees is calculated based upon the total hours worked per week, not based on the number of hours worked in any one day, unless otherwise required by law."

44.     According to the Employee Handbook, Defendant "expects all employees, both exempt and non-exempt, to work extra hours when required by business needs." However, "non-exempt employees must use good judgment in deciding whether to work overtime without prior management approval.  A manager will review any unauthorized overtime work by a non-exempt employee to determine whether it was necessary." "[T]he employee may be counseled or subject to PIP, as TMUS deems appropriate, for working overtime without prior authorization." "If business operations will not be compromised, management may reduce the scheduled hours of an employee to avoid the working of overtime, if permitted by applicable law."

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**Pre-Shift Off-the-Clock Work**

45.     Defendant records the hours worked by CSRs using a computerized timekeeping system called Kronos.

46.     At the start of the shift, the CSRs must enter the building using their security badge swipe.  Next, they proceed to identify a work station for the shift.  The CSRs do not work at the same computer every shift.

47.     After locating a work station, the CSRs engage in seven (7) to thirteen (13) minutes of pre-shift off-the-clock work booting up their computers and logging into Defendant's time keeping system.  This process can often take even longer, particularly, if the CSR experiences technical difficulties with the computer systems.

48.     First, CSRs must turn on their computer and wait for Windows to load, then enter a username and password.  Once logged into Windows, the program Skype automatically launches.  CSRs must wait for Skype to load, then enter in another username and password.  After Skype has loaded, CSRs have the first opportunity to load and log into the timekeeping system.

49.     As stated above, CSRs spend seven (7) to thirteen (13) minutes loading and logging into essential computer programs *before* they are able to log into the timekeeping system and begin getting compensated.  This process took even longer if the CSR experienced technical difficulties, which often required the CSR to perform one or more restarts on the computer.

**Mid-Shift (Lunch) Off-the-Clock Work**

50.     Defendant provided CSRs with a one hour unpaid lunch during the standard eight (8) to ten (10) hour shifts.

COMPLAINT – CLASS/COLLECTIVE
ACTION - 11

51.     At the start of their lunch period, CSRs must first log-out of Avaya to stop incoming calls.  Next, they clock out of Kronos (the timekeeping system), then lock their computers and begin their lunch.

52.     After twenty (20) minutes, CSRs are automatically logged out of the program Samson, which is linked to the program Quickview.  These two programs are used in conjunction with one another to access the customer information CSRs needed to perform their job duties.

53.     When CSRs return from lunch to their workstations, they must first log back into Windows with their username and password, then reboot Quickview and Samson, so that the two programs can link together.  This process results in an additional three (3) to four (4) minutes of off-the-clock work.

54.     After Quickview and Samson are properly reloaded and synced, the CSRs clock back into Kronos and log back into Avaya to begin receiving calls, but not until after undertaking three (3) to four (4) minutes of off-the-clock work at the end of every lunch.

**The Time Spent Loading and Logging into Computer Programs is Compensable**

55.     Throughout their employment with Defendant, Plaintiffs regularly worked off-the-clock as part of their jobs as CSRs.

56.     Between the pre-shift start-up/log-in process and the lunch period log-in process, Defendant failed to pay Plaintiffs and other CSRs an amount equal to at least ten (10) to seventeen (17) minutes of compensable time per shift. Additionally, Defendant failed to compensate Plaintiffs and other CSRs for off-the-clock time spent performing other work duties during their lunch breaks, including answering questions from supervisors and assisting other team members.

COMPLAINT – CLASS/COLLECTIVE
ACTION - 12

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

57.     At all relevant times, Defendant was able to track the amount of time that Plaintiffs and the putative Class spent in connection with the pre-shift and lunch break work activities; however, Defendant failed to document, track, or pay Plaintiffs and other CSRs for the work they performed in connection with each shift.

58.     Defendant knew or could have easily determined how long it took for the Plaintiffs and the other CSRs to complete the pre-shift start-up/log-in process and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work that they performed, but did not.

59.     At all relevant times, Defendant was Plaintiffs' "employer" and Defendant directed and directly benefited from the work performed by Plaintiffs and other CSRs during the pre-shift start-up/log-in process and in connection with the mid-shift off-the-clock work during their meal breaks.

60.     At all relevant times, Defendant controlled Plaintiffs' and other CSRs' schedules, duties, protocols, applications, assignments, and employment conditions.

61.     At all relevant times, Plaintiffs and all other CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

62.     At all relevant times, Defendant used their attendance and adherence policies against the CSRs in order to pressure them into performing off-the-clock work.

63.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and other CSRs of wages owed for off-the-clock work that Plaintiffs and other CSRs performed. Because Plaintiffs and other CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiffs and other CSRs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

COMPLAINT – CLASS/COLLECTIVE
ACTION - 13

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

64.     Defendant knew or should have known that Plaintiffs and other CSRs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA and the KWPA.

**Failure to Include Incentive Pay in Regular Rate Calculations**

65.     Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

66.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

67.     Defendant's compensation scheme, which included an hourly rate, plus commissions and other incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

68.     An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

> This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the

COMPLAINT – CLASS/COLLECTIVE
ACTION - 14

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

method, frequency, or regularity of computing, allocating and paying the commission. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

69.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendant to establish that any payment should be excluded. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

70.     Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

71.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to

COMPLAINT – CLASS/COLLECTIVE
ACTION - 15

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

determine compliance with the statute.

72.    Because Defendant's compensation scheme failed to incorporate the regular rate of pay, Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

**Exemplary Pay Periods**

73.    Defendant pays CSRs on a bi-weekly basis. An example of a particular pay period where Defendant failed to pay Plaintiff Kristina Chetwood overtime for all hours worked in excess of 40 hours in a single week (as mandated by the FLSA and KWPA), was during the pay period of November 6, 2016 to November 19, 2016:

> ➤ Plaintiff Chetwood was paid for 73 hours of regular time and 9.16 hours of overtime, meaning in one of the two weeks Defendant documented her working well over 40 hours. *See Exhibit E*.

> ➤ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for the particular workweek she worked over 40 hours.

> ➤ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

74.    As an example of one particular pay period where Defendant failed to pay Opt-in Plaintiff Auriel Calvert overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and KWPA), during the pay period of July 15, 2018 to July 28, 2018:

> ➤ Plaintiff Redmond was paid for 80 hours of regular time over the two-week pay period and 11.55 hours of overtime. *See Exhibit F*.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

➢ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for both workweeks in this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

75.     As an example of one particular pay period where Defendant failed to pay Plaintiff Sandra Castellon-Gonzalez overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and KWPA), during the pay period of September 10, 2017 to September 23, 2017:

➢ Plaintiff Castellon-Gonzalez was paid for 80.01 hours of regular time and 17.07 hours of overtime.  *See Exhibit G.*

➢ With pre- and mid -shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for each workweek during this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked

## COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members").  Plaintiffs reserve the right to amend this definition as necessary.

COMPLAINT – CLASS/COLLECTIVE
ACTION - 17

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

77.     Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

78.      Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

79.     Additionally, the claim that Defendant failed to include commissions, incentives, and other remuneration paid in the overtime rate calculations of the putative collective members is a common policy.

80.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift and lunch break activities is compensable under the FLSA.  Also, whether Defendant failed to properly calculate the overtime rate for the putative collective members.

81.     Plaintiffs estimate that the putative collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 KANSAS CLASS ACTION ALLEGATIONS**

82.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

COMPLAINT – CLASS/COLLECTIVE
ACTION - 18

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

*All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Kansas at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Kansas Class"). Plaintiffs reserve the right to amend this definition as necessary.

83. The members of the Rule 23 Kansas Class are so numerous that joinder of all Rule 23 Kansas Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Kansas Class members. Rule 23 Kansas Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

84. There is a well-defined community of interest among Rule 23 Kansas members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Kansas Class. These common legal and factual questions, include, but are not limited to, the following:

    a.    Whether the pre-shift time that Rule 23 Kansas Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

    b.    Whether the time that Rule 23 Kansas Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time; and

    c.    Whether Defendant's failure to pay the Rule 23 Kansas Class members for this pre- and mid -shift time resulted in a violation of the overtime requirements established by the KWPA, K.S.A. § 44-313, *et seq.*

85. Plaintiffs' claims are typical of those of the Rule 23 Kansas Class in that they and all other Rule 23 Kansas Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs'

COMPLAINT – CLASS/COLLECTIVE
ACTION - 19

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Kansas Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Kansas Class members.

86.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Kansas Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Kansas Class.

87.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Kansas Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

88.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

89.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

90.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Kansas Class and declaratory relief is appropriate in this case with respect to the Rule 23 Kansas Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in United States, at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition as necessary.

92.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.   Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

93.     There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

> a.     Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

b.     Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time; and

c.     Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre- and mid-shift time at their agreed upon rate constitutes a breach of contract.

94.     Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

95.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

96.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

97.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

98.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

99.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
**(Alleging Violations of the Fair Labor Standards Act,
29 U.S.C. § 201, *et seq.*)**

100.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

101.     At all times relevant to this action, Defendant was Plaintiffs' employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

102.     Defendant engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

103.     At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

104.     Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

105.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

106.     At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former Class members to perform at least seven (7) to thirteen (13) minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

107.     At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former Class members for at least three (3) to four (4) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

108.     The off-the-clock work performed by Plaintiffs and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

109.     In workweeks where Plaintiffs and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

110.     Defendant failed to properly calculate the regular hourly rate for Plaintiffs and other Class members by not including non-discretionary bonuses and commissions in the calculation of their overtime rates.

111.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or

COMPLAINT – CLASS/COLLECTIVE
ACTION - 24

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

could have easily determined how long it took for their CSRs to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiffs and the Class for the work they performed, but did not.

112.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II

### (Alleging Violations of the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.*)

113.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

114.    All members of the Rule 23 Kansas Class are entitled to "all wages due … on regular pay days designated in advance by the employer." K.S.A. § 44-314.

115.    Defendant failed to pay Plaintiffs and the Rule 23 Kansas Class all wages due because Defendant failed to account for the off-the-clock work discussed herein and also failed to pay them at the proper overtime rate.

116.    For any member of the Rule 23 Kansas Class that has been discharged, quit, or resigned from employment with Defendant, those employees are entitled to receive all earned wages not later than the next regular payday upon which he or she would have been paid if still employed.  K.S.A. § 44-315.

117.    Defendant failed to pay the Rule 23 Kansas Class members no longer employed with Defendant all earned wages not later than the next regular payday because they failed to include the off-the-clock work discussed herein in their pay and failed to properly calculate their overtime rate.

COMPLAINT – CLASS/COLLECTIVE
ACTION - 25

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## COUNT III
### (Rule 23 Nationwide Class Action)
### Nationwide Breach of Contract

118.   Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

119.   At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

120.   Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things each pay stub issued to Plaintiffs and the Rule 23 Nationwide Class members.

121.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, has an hourly rate of between $14.00 and $19.00 per hour.

122.   Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

123.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

124.    Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

125.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs Kristina Chetwood and Sandra Castellon-Gonzalez request the following relief:

a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this case as a class action (for the Rule 23 Kansas Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' Kansas state law claims (Count II);

c.    An Order certifying this case as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claims (Count III);

d.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.    An Order designating Plaintiffs as the representatives of the FLSA collective, the Rule 23 Kansas Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

COMPLAINT – CLASS/COLLECTIVE
ACTION - 27

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

g.   An Order declaring Defendant violated the KWPA by failing to properly pay the Rule 23 Kansas Class all wages earned and overtime premiums, as cited herein;

h.   An Order declaring Defendant is in breach of a contract with Plaintiffs and the Rule 23 Nationwide Class to pay them at a predetermined agreed upon rate for all hours worked;

i.   An Order declaring Defendant's violation of the FLSA was willful;

j.   A Judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective, the Rule 23 Kansas Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.   An award of reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l.   An award of pre- and post-judgment interest to Plaintiffs on these damages; and

m.   An Order awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiffs demand a jury trial.

DATED this 28th day of March, 2019.

SCHROETER GOLDMARK & BENDER

*s/ Adam J. Berger*

_____

Adam J. Berger, WSBA #20714
810 Third Avenue, Suite 500
Seattle, Washington 98104
Phone: (206) 622-8000
berger@sgb-law.com

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
Phone (206) 622-8000 ● Fax (206) 682-2305

1

SOMMERS SCHWARTZ, P.C.

2

*s/ Kevin J. Stoops*

3

*s/ Charles R. Ash, IV*

4

Kevin J. Stoops, Esq.
(Pro  Hac Vice application to be filed)

5

Charles R. Ash IV, Esq.
(Pro Hac Vice application to be filed)

6

One Towne Square, Suite 1700

7

Southfield, Michigan 48076
Phone: (248) 355-0300

8

kstoops@sommerspc.com
crash@sommerspc.com

9

10

*Attorneys for Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT – CLASS/COLLECTIVE
ACTION - 29

SCHROETER GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305