THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRISTINA CHETWOOD, and SANDRA
CASTELLON-GONZALEZ, individually,
and on behalf of others similarly situated,

                                        Plaintiffs,

        v.

T-MOBILE USA, INC.,

                                        Defendant.

No.: 2:19-cv-00458-RSL

T-MOBILE USA, INC.'S
OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL
CERTIFICATION

ORAL ARGUMENT REQUESTED

Noting Date:  June 28, 2019

**Table of Contents**

Page

I.  INTRODUCTION ..............................................................................................................1

II. FACTS .............................................................................................................................2

A. Call centers have their own management, operational teams, and employees who are
   expected to comply with the law and T-Mobile's wage policies............................................3

B. T-Mobile maintains nationwide wage policies that fully comply with the FLSA.................3

C. T-Mobile has legally compliant timekeeping systems and processes ...................................5

D. T-Mobile provides Experts with paid time at the start of each shift before they take
   calls during which they can open programs and review emails and updates.........................5

E. T-Mobile has processes designed to fully pay overtime on commissions and bonuses ........6

F. Call centers train their employees to comply with all wage laws and policies.....................6

G. Plaintiffs' experiences and testimony are limited, unique, and non-specific ......................7

H. Other Experts confirm they were paid for all time they worked .........................................10

III. ARGUMENT ...................................................................................................................10

A. Plaintiffs' failure to address *Campbell* warrants denial of the Motion ...............................10

B. Plaintiffs' request for preliminary certification should be denied .......................................10

1. Certification should be denied because the only evidence of companywide
   policies and practices shows that those policies comply with the FLSA ......................11

2. The off-the-clock claim should not be certified because Plaintiffs and other
   Experts do not share core facts that go to the heart of the FLSA disputes ...................12

3. The overtime claim should not be certified because undisputed evidence shows
   that Experts receive overtime for bonuses and commissions .........................................15

4. Certification should be denied because of the ambiguity of the collective ..................16

5. Certification should be denied because of the breadth of the collective.......................17

6. Certification should be denied because of the lack of evidence ...................................18

C. Plaintiffs' proposed notice process should be rejected........................................................19

D. Plaintiffs' proposed notice form should be rejected ...........................................................22

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 1
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

E.  Plaintiffs' proposed opt-in form should be rejected .................................................23

F.  Plaintiffs' proposed reminder form should be rejected.........................................24

IV. CONCLUSION.................................................................................................................24

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 2
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## I.   INTRODUCTION

Plaintiffs seek conditional certification of a nationwide FLSA collective of 17 call centers in 15 States and approval of their notice process and forms. The Motion should be denied.

FLSA collective actions are unique. 29 U.S.C. § 216(b) allows similarly situated employees to join together in FLSA actions and prohibits including employees without written consent, but it does not address how to manage alleged collective proceedings. Filling this void, the Supreme Court held that courts "have discretion, in appropriate cases" to "facilitat[e] notice" to similarly situated employees to inform them that they may opt into an FLSA collective action, but emphasized that "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action" and that notice, if any, must be neutral, accurate, and informative. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989) (may not have "any encouragement to join the suit").

The Ninth Circuit recently adopted a two-step approach for managing FLSA collective actions. *Campbell v. City of L.A.*, 903 F.3d 1090, 1109 (9th Cir. 2018), explains:

> First, at or around the pleading stage, plaintiffs will typically move for preliminary certification…. A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation…. A denial of preliminary certification precludes dissemination of any such notice…. Assuming the collective action has **survived its earlier scrutiny,** the second stage will come at or after the close of relevant discovery…. The district court will then take **a more exacting look** at the plaintiffs' allegations and the record. (emphasis added; citations omitted)

For conditional certification, plaintiffs have the burden to prove that members of the proposed collective are "similarly situated." *Alaniz v. City of L.A.*, 2014 WL 12694157, *3 (C.D.Cal. 2014). The Ninth Circuit holds that "similarly situated" means:

> [P]arty plaintiffs must be alike with regard to some *material* aspect of their litigation…. That goal is only achieved - and, therefore, **a collective can only be maintained - to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims**. (emphasis added)

*Campbell*, 903 F.3d at 1114 (similarities must advance claims, collectively, to a resolution).

To meet their burden in this case, Plaintiffs need to present "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 1
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  a single decision, policy, or plan."[1] Plaintiffs fail to meet that burden. Plaintiffs make general

2  assertions about their individual experiences in two call centers, but such anecdotal evidence does

3  not satisfy Plaintiffs' burden to provide evidence of an improper "company-wide plan or policy"

4  sufficient to justify certification of a nationwide class of 17 call centers.[2] They try to bridge that gap

5  with job postings summarizing job duties, but those do not show that putative collective members

6  are alike in ways that matter here because this case focuses on (1) the sequence and timing of

7  specific actions at the start of shifts and after lunch and (2) overtime calculations—not work duties.

8  Plaintiffs also make conclusory allegations about other employees and locations, but these do not

9  satisfy their burden.[3] As detailed herein, Plaintiffs and other employees at other call centers are not

10  alike in ways that matter because others (1) clock in differently (using mobile apps and manual time

11  entry), (2) start the day differently (computers are on, they take a minute or less to clock in, and they

12  have free time before taking calls), and (3) return from lunch differently (they take seconds to clock

13  in and do not open programs before doing so). Accordingly, Plaintiffs' Motion should be denied.

14        In addition, the notice process, notice form, and opt-in form that Plaintiffs propose are not

15  neutral, accurate, and fully informative; run counter to the Supreme Court's directives in *Hoffman-*

16  *LaRoche*, 493 U.S. at 174; and, thus, should be rejected even if some notice is allowed.

17                              **II.   FACTS**

18        T-Mobile has extensive policies and processes in place that are designed to ensure full

19  compliance with the FLSA. Ultimately, those policies are implemented at each call center and by

20  local employees. Even assuming the truth of the personal "facts" in Plaintiffs' declarations, no

21  evidence establishes that their experiences are reflective of other call centers or employees.

---

22

23  [1] *Bolding v. Banner Bank*, 2017 WL 6406136, *1 (W.D.Wash. 2017) (need "a reasonable evidentiary basis").
[2] *Adair v. Wisconsin Bell*, 2008 WL 4224360, *7 (E.D.Wis. 2008)("Alleged FLSA violations stemming from…decisions

24  of individual supervisors, rather than a company-wide policy or plan are not appropriate for collective treatment.");
*Oldershaw v. DaVita HealthCare Partners*, 2019 WL 427650 *8 (D.Colo. 2019) ("As in *Campbell*, the larger and more

25  diffuse the collective, the more important it is for the plaintiffs to demonstrate the existence of a uniform, corporately-
imposed policy that clearly encourages off-the-clock work;" "anecdotal evidence…at <u>some</u> locations" is not sufficient).
[3] *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 427 (N.D.Cal. 2010) (denying notice); *see also Campbell*, 903 F.3d at

26  1120 ("there is no evidence to suggest that the declarants' vaguely reported experiences are in fact representative").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 2
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**A.      Call centers have their own management, operational teams, and employees who are expected to comply with the law and T-Mobile's wage policies**

T-Mobile operates 17 call centers in 15 states. Madden[4] ¶4, Ex.15 ¶6. Each call center has a director who oversees operations and who has local management, HR, and training functions. *Id.* Ex. 15 ¶6. Call centers focus on different customer regions and service functions, and employ thousands of employees in dozens of job positions who provide support for a broad spectrum of customers. *Id.* Employees who handle incoming calls are called "Account Experts" because they are part of a dedicated group serving particular customers, which allows those Experts to better address customers' needs.[5] *Id.* Other Expert titles and call center employees make outgoing calls, respond to messaging platforms or emails, help run operations, perform a mix of duties, or guide others. *Id.*

Call center employees, including managers, are expected to comply with T-Mobile policies. *Id.* ¶7, Ex.15 ¶8. As the policy prohibiting off-the-clock work states: "No employee may request or allow non-exempt employees to work off-the-clock or without accurately recording all actual hours and minutes worked, or to falsify or submit inaccurate time records." *Id.* Ex.15 Ex.A at 19.

**B.      T-Mobile maintains nationwide wage policies that fully comply with the FLSA**

T-Mobile's employee handbook has detailed policies that emphasize the importance of accurate timekeeping and the company's commitment to FLSA compliance:

> **Time Keeping**
> All non-exempt employees must ensure that their actual hours and minutes of work (not merely their scheduled shift times) are promptly and accurately recorded…. Submitting time online, via mobile device, or on a time sheet is certification that all hours and minutes worked for the Company have been accurately recorded…. To ensure all worked time is reported, an employee may be required to manually edit their time card…. Falsification of time worked, including under-reporting or over-reporting the amount of time worked…, violates Company policy and may result in performance improvement action up to and including termination.
>
> **Prohibition of "Off-the-Clock" Work**
> TMUS strictly prohibits non-exempt employees from working "off-the-clock," meaning

---

[4] Declarations cited in the Opposition are attached as exhibits to the Decl. of Patrick Madden and cited as "Madden Ex._ [¶_ or Ex._]." The Madden declaration also lists key topics (cited as "Madden ¶_") with references to where each topic can be found in the attached declarations. These are provided for the convenience of the Court under Fed.R.Evid. 611(a) & 1006. *See U.S. v. McElroy*, 587 F.3d 73, 80-82 (1st Cir. 2009); *U.S. v. Anekwu*, 695 F.3d 967, 981-82 (9th Cir. 2012).
[5] T-Mobile largely stopped using "customer service representative" or CSR job titles a few years ago. Madden Ex.15 ¶7.

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 3
CASE NO. 2:19-CV-00458-RSL

without pay. No employee may request or allow non-exempt employees to work off-the-clock or without accurately recording all actual hours and minutes worked, or to falsify or submit inaccurate time records. Employees must promptly report to an Employee Success Partner any suspected violation of the policy prohibiting off-the-clock work. The Company will not take any adverse action against any employee because of his/her good faith report of suspected violations of the prohibition of off-the-clock work. Violation of this policy may result in performance improvement action up to and including termination.

**Overtime**
Non-exempt employees who work overtime must receive overtime pay, which is calculated in accordance with applicable laws. Non-exempt employees receive one-and-one-half times their regular hourly rate of pay for all hours worked over 40 hours per workweek unless otherwise required by law…. The Company compensates non-exempt employees for all overtime hours and minutes worked pursuant to applicable laws. Non-exempt employees must record all hours and minutes worked, including all overtime.

*Id.* Ex.15 Ex.A at 18-20. T-Mobile's employee handbook also includes a "Wage and Hour Complaint Procedure" and a "Commitment to Integrity" that prohibits violations of law, dishonesty, and falsification of time records. *Id.* Ex.15 Ex.A at 22-23, 30. Employees certify that they receive these policies, and agree to "report any conduct that I believe is improper under T-Mobile's Wage-and-Hour/Timekeeping…and other policies to my management team, another appropriate supervisor or manager and/or a Human Resources representative." *Id.* Ex.15 Ex.B at 1.

In addition to the handbook policies, T-Mobile presents every hourly employee with a document titled "Wage & Hour Essential Information for Hourly Employees," which states:

1. You must enter your actual time worked (not time scheduled) to the nearest minute…. [This] includes….clocking into the electronic timeclock….

2. If you do not have access to [T-Mobile's timekeeping system] every day, **you must record your time daily using your work group's established procedures**. An example would be to track your start and end times on a pad of paper until you can gain access to the system to enter your time.

3. For hourly employees, time worked must be recorded **by entering, or clocking-in at, actual start and stop times to the minute**, as shown in this example….

4. Employees must take at least a 30-minute meal period…uninterrupted by any work.
….
6. You must record all time worked to the minute….
….
8. You must record all overtime, even if you do not receive advance authorization. Failure to record time worked is grounds for discipline. You must never work "off the clock." Company policy requires that you be paid for all time worked.

9. Falsification of time records, including under-reporting of hours, may lead to termination….

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 4
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1
2

> I have read this document and understand that I am required to accurately record the time I work and the breaks I take. I agree to accurately record time worked, including all overtime [whether approved or not], and to take as least a 30-minute meal period each workday. I acknowledge that my failure to adhere to these rules could result in my termination.

3

*Id.* Ex.15 Ex. C (emphasis added). Employees sign acknowledgements of this document as well. *Id.*

4

### C.   T-Mobile has legally compliant timekeeping systems and processes

5
6

In 2014, T-Mobile implemented a state-of-the-art Kronos timekeeping system. *Id.* Ex.50 ¶3. The Kronos system, which is used by employers around the country, allows T-Mobile employees to

7
8

enter their time in three different ways: they can (1) open Kronos on a computer and hit a time punch; (2) open Kronos on a computer and manually enter a start or end time; or (3) clock into

9
10

Kronos on their phone using a mobile app. *Id.* ¶11, Ex.50 ¶3. Employees must review their time entries, manually correct inaccurate time punches, and certify their accuracy. *Id.* ¶6, 25, Ex.50 ¶3.

11
12

### D.   T-Mobile provides Experts with paid time at the start of each shift before they take calls during which they can open programs and review emails and updates

13

Unlike call centers that expect employees to take calls as soon as they clock in, T-Mobile

14

provides Experts who take incoming calls with time (called "STREAD time") at the start of their

15

shifts during which Experts can review emails, open programs, and get ready for calls. *Id.* ¶20, Ex.15

16

¶12. The amount of STREAD time varies from 7 to 10 minutes, depending on the call center. *Id.*

17

¶20.[6] In addition, call centers allow Experts to clock in from 5 to 20 minutes before their scheduled

18

start times. *Id.* ¶9.[7] Experts thus clock in from 12 to 30 minutes before they start receiving incoming

19

calls, which eliminates any pressure to open programs before they clock in. *Id.* ¶9, 20.[8]

20
21

---

22

[6] Madden Ex.45 ¶11 (Albuquerque: 10 minutes), Ex.52 ¶17 (Bellingham: 7-9 minutes), Ex.55 ¶17 (Charleston: 10 minutes), Ex.46 ¶7 (Chattanooga: 10 minutes), Ex.22 ¶9 (Colorado Springs: 10 minutes), Ex.4 ¶7 (Oakland: 10 minutes), Ex.53 ¶8 (Richmond: 10 minutes), Ex.5 ¶14 (Salem: 10 minutes), Ex.16 ¶6 (Springfield: 10 minutes).

23

[7] Madden Ex.45 ¶9 (Albuquerque: 5 minutes), Ex.39 ¶6 (Augusta: 5 minutes), Ex.46 ¶6 (Chattanooga: 5 minutes), Ex.22 ¶6 (Colorado Springs: 5 minutes), Ex.2 ¶6 (Meridian: 5 minutes), Ex.27 ¶8 (Oakland: "15-20 minutes"), Ex.53 ¶7 (Richmond: 5 minutes), Ex.5 ¶10 (Salem: 10 minutes), Ex.8 ¶6-7 (Springfield: 5 minutes), Ex.14 ¶6 (Tampa: 5 minutes).

24
25

[8] Madden Ex.18 ¶10 ("I am generally punched in for 10-20 minutes before customer calls begin."), Ex.9 ¶16 (have "10 minutes of STREAD time," thus "employees need not be in any rush to get ready to receive customer inquiries immediately after clocking in"), Ex.11 ¶9 ("Once I clock in, I oftentimes retrieve my breakfast, get tea, or do something

26

else" before starting STREAD time), Ex.51 ¶6 ("I like to get a cup of tea and do some vocal warm-up exercises").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 5
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**E.      T-Mobile has processes designed to fully pay overtime on commissions and bonuses**

T-Mobile's payroll department uses four processes that are designed to pay overtime compensation as required by the FLSA and state wage laws. *Id.* Ex.50 ¶6-14.

Initially, payroll has its payroll provider (ADP) calculate standard overtime for amounts earned in a specific workweek (*i.e.*, hourly wages, shift differentials, and on-call pay). *Id.* Ex.50 ¶7. These amounts are divided by total hours to establish the regular rate, and the regular rate is multiplied by 1.5 and the number of overtime hours. *Id.* The resulting amount for each biweekly pay period is reflected on pay statements as "Overtime." *Id.*

Second, payroll uses a true-up database to calculate overtime for commissions and bonuses that are included in the regular rate but that cover an earlier period (often from the prior month). *Id.* Ex.50 ¶8. These amounts are listed separately and any related overtime is reflected on earnings statements as "Ot ReCalc." *Id.* For example, the earnings statement for opt-in plaintiff Auriel Calvert reflects Accessory and Addaline commissions and an Expert bonus totaling $195.31. *Id.* Ex.50 ¶13. Those amounts related to a prior period when Calvert worked a total of 168.67 hours including 3.23 hours of overtime. *Id.* $195.31 divided by 168.67 hours provided a $1.1579 regular rate adjustment, which was multiplied by 0.5 and 3.23 hours to obtain the Ot Recalc amount of $1.87. *Id.* The statements for Plaintiffs Chetwood and Castellon-Gonzalez reflect commissions and bonuses but no related Ot Recalc because they did not work overtime in the related periods. *Id.* Ex.50 ¶11-12.

Finally, payroll has both a manual true-up process for certain expedited and additional payments and a retro calculation process if an employee is granted retroactive adjustments to pay. *Id.* Ex.50 ¶9. Such payments are not reflected on the pay statements submitted by Plaintiffs, but nevertheless demonstrate the payroll department's commitment to full FLSA compliance.

**F.      Call centers train their employees to comply with all wage laws and policies**

Employees are hired and trained at specific call centers. *Id.* Ex.15 ¶9. Training takes about 6 to 10 weeks and includes a short period when new Experts work with experienced Experts. *Id.*

Typically within the first two days of employment, the new hires receive training on key

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 6
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

policies and expectations, including the requirement that Experts record all time that they work, and complete training modules that discuss the obligation to report all time and explain how to use the Kronos timekeeping system. *Id.* ¶8, 10, Ex.15 ¶10. One on-line training program emphasizes:

> Working at T-Mobile is a blast! But we know getting paid is a blast too. So we want you to get that green ammunition for every minute you work - including time in T-Mobile meetings and must-do training.
> ….
> And remember, simply recording the time you were scheduled to work is a violation of policy. Be sure to record the actual time you worked to the minute.
> ….
> Record every minute you work, include the extra time that you work - even if it was unscheduled or not pre-approved. Your manager can't ask you to exclude the overtime you work from your time worked - ever.
> ….
> We play to win - the right way. That means it is never OK for you to work and not get paid for it. Never work "off the clock," without recording your time worked. No one can tell you it's cool to work off the clock. If someone does, take it to the Integrity Line or tell your HR Business Partner.

*Id.* Ex.15 Ex.D at 2, 5, 14, 15. During the training period (and after), the employees receive further instruction and reminders on the importance of accurately recording all time worked, including the importance of punching into Kronos before they do anything else and how to manually enter or correct time if they have system issues or inaccurate entries for any reason. *Id.* Ex.15 ¶10. Trainees practice clocking into the Kronos system and using other programs before they start taking calls. *Id.*

**G.      Plaintiffs' experiences and testimony are limited, unique, and non-specific**

Plaintiffs Chetwood and Castellon-Gonzalez (and both opt-in plaintiffs) worked as Experts in T-Mobile's Wichita, Kansas, call center, and Chetwood briefly work in Mission, Texas. Plaintiffs' declarants have no experience or knowledge beyond those two locations. Dkt 23-4; 23-5; 23-6.

Moreover, Plaintiffs attest to anecdotal practices that are highly relevant to their individual claims (Dkt 23-4; 23-5; 23-6), but that are not shared by other Experts or call centers. For example:

- Plaintiffs state they are "required to turn on" their computers at the start of every shift. Dkt 23-4 ¶7; 23-5 ¶7; 23-6 ¶7. However, other Experts leave their computers on so that system updates can be processed overnight and their start-up process is quick. Madden ¶14-15.[9] This difference is

---

[9] Madden Ex.2 ¶5 ("told to leave our computers on" for "system updates"), Ex.7 ¶6 ("specifically told not to turn our computers off"), Ex.12 ¶8 (allows "to quickly punch in"), Ex.14 ¶7 (restarts computer "as we were trained").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 7
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

consequential because the start up process takes longer if a computer is turned off. *Id.* ¶13.[10]

- Plaintiffs suggest they are not paid for start-up delays. Dkt 23-4 ¶7-8; 23-5 ¶7-8; 23-6 ¶7-8. However, if delays occur, other Experts are expected to and do manually enter or adjust their time entries so that the entries are accurate and the Experts are fully paid. Madden ¶17-18, Ex.33 ¶6 ("If my computer takes any longer to boot up, I simply jot down the time and manually enter my correct punch-in time"); Ex.60 ¶6 ("If my computer takes a long time booting up for some reason, I simply adjust my start time manually to the time that I attempted to log in").

- Plaintiffs state they open and punch into the Kronos program on their computer. Dkt 23-4 ¶7; 23-5 ¶7; 23-6 ¶7. Some Experts do so; however, others enter start times manually or clock in on a mobile app on their phone. Madden ¶11, Ex.4 ¶4 (70% of team uses mobile app), Ex.32 ¶14 ("I manually enter all my time instead of pressing the time stamp button…I understand that all of my time has to be reported accurately so I make sure I do that.").[11] These methods do not involve any computer start-up time: manual entries are exact and clocking in with the mobile app takes seconds. Madden ¶16, Ex. 17 ¶6 ("maybe 5-10 seconds"), Ex. 51 ¶5 ("a matter of seconds").

- Plaintiffs state they must "begin taking calls at our scheduled shift time." Dkt 23-4 ¶15; 23-5 ¶14; 23-6 ¶15. However, T-Mobile provides 7 to 10 minutes of paid STREAD time at the start of shifts and other Experts use that time to review emails and updates, load programs, and get ready for calls. Madden ¶19-20, Ex.15 ¶12, Ex.30 ¶6 (use "ten minutes of STREAD time…to pull up my systems, get some coffee, talk to my coworkers, and eat a quick breakfast").

- Plaintiffs claim 6 to 30 minutes of unpaid computer log-in and delay time at the start of every day. Dkt 23-4 ¶7; 23-5 ¶7; 23-6 ¶7. However, other Experts take a minute or less to punch in on Kronos even if they log in using the desktop application. Madden ¶12, Ex.29 ¶4 (Meridian: "20

---

[10] Madden Ex.10 ¶6 (if computer is off, it takes "longer to log in;" enters "time manually to make sure it [is] correct").
[11] Madden Ex.17 ¶6 (mobile), Ex.22 ¶5 (30-40% of community uses mobile app), Ex.28 ¶7 (mobile app), Ex.35 ¶3-4 (mobile app), Ex.36 ¶4, 7 (mobile app), Ex.39 ¶6, 8 (manual entry), Ex.41 ¶4, 6 (mobile app), Ex.42 ¶6-8 (manual entry), Ex.48 ¶6, 9 (mobile app), Ex. 51 ¶5 (mobile app), Ex.54 ¶10 (manual entry), Ex.61 ¶8-9, 12-15 (mobile app).

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 8
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   seconds or so"), Ex.30 ¶5 (Tampa: "a matter of seconds").[12] Other Experts also manually adjust

2   their entries if a time punch is delayed or inaccurate. *Id.* ¶17.[13]

3   • Plaintiffs state they must log into QuickView and connect it to Samson before punching in at

4   the end of lunch. Dkt 23-4 ¶10; 23-5 ¶10; 23-6 ¶10. However, other Experts punch in on Kronos

5   before logging into those or any other programs. Madden ¶19, 23, Ex.16 ¶7.

6   • Plaintiffs state they work 2 to 10 minutes of unpaid time at the end of lunch. Dkt 23-4 ¶10;

7   23-5 ¶10; 23-6 ¶10. However, other Experts take far less than a minute to clock into Kronos when

8   returning from their meal periods. Madden ¶24, Ex.49 ¶11 (Meridian: "about five seconds").[14]

9   • Plaintiffs do not mention any review of time records. Dkt 23-4; 23-5; 23-6. However, other

10  Experts carefully review their time reports, make corrections when necessary, and ensure that every

11  time entry is accurate. Madden ¶25, Ex.8 ¶12 ("I verify my time every day.").[15]

12  Finally, Plaintiffs' declarations use generalities instead of specifics. Dkt 23-4; 23-5; 23-6.

13  Although they claim consistent delays in punching in, they do not explain why they were delayed,

14  provide the specifics for a single day when this allegedly occurred, or explain why they did not

15  simply manually enter the correct time. And, despite their general statement that they were not paid

16  overtime for bonuses and commissions, they do not identify a single bonus or commission payment

17  for which overtime was denied. In fact, they received - and their earnings statements reflect - proper

18  overtime payments for bonuses and commissions. Madden Ex.50 ¶10-14. Regardless, T-Mobile has

19  processes to properly pay overtime on bonuses and commissions to other Experts. *Id.* Ex.50 ¶8.[16]

---

20  [12] Madden Ex.45 ¶12 (Albuquerque: "roughly 30 seconds"), Ex.43 ¶6 (Augusta: "30 seconds"), Ex.52 ¶11 (Bellingham: "a minute or less"), Ex.46 ¶10 (Chattanooga: "about 30 seconds"), Ex.22 ¶7 (Colorado Springs: "no more than a

21  minute"), Ex.6 ¶12 (Mission: "less than a minute"), Ex.37 ¶5 (Oakland: "about 30 seconds"), Ex.53 ¶7 (Richmond: "less than a minute"), Ex.5 ¶12 (Salem: "less than a minute"), Ex.8 ¶6 (Springfield: "up to 30 seconds").

22  [13] Madden Ex.42 ¶11(when Kronos was down, just entered time later), Ex.30 ¶5 (if computer is off "(which is pretty

23  rare), I always go back into Kronos to manually enter the accurate time when I punched in").
    [14] Madden Ex.21 ¶14 (Albuquerque: "less than 15 seconds"), Ex.43 ¶8 (Augusta: "20 seconds"), Ex.52 ¶12 (Bellingham:

24  5-20 seconds), Ex.55 ¶13 (Charleston: "15-20 seconds"), Ex.46 ¶11 (Chattanooga: "15-20 seconds"), Ex.5 ¶12 (Salem: "less than 20 seconds"), Ex.10 ¶9 (Springfield: "about 10 seconds"), Ex.51 ¶7 (Tampa: "about 20 seconds").

25  [15] Madden Ex.7 ¶4, 11 ("make sure I am paid from the moment I sit down"), Ex.13 ¶10 ("review…for accuracy"), Ex.14 ¶8 ("vigilant about checking"), Ex.16 ¶9 ("review…entries daily"), Ex.19 ¶6 (tell Experts to check "every day").

26  [16] Madden Ex.13 ¶11-12 ("paycheck shows Overtime and any Overtime Recalc adjustments and notes to the penny how much I have made in overtime that pay period").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 9
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**H.      Other Experts confirm they were paid for all time they worked**

T-Mobile not only has policies that emphasize Experts will be paid for all time worked, but other Experts in a range of call centers testify that they are aware of T-Mobile's policies, are trained on those policies, follow the policies, and are paid for all time worked. Madden ¶8, 26.[17] In addition, T-Mobile has processes in place and works hard to properly pay Experts for all time worked, including overtime for bonuses and commissions. Madden ¶28, Ex.50 ¶6-14. Put simply, Plaintiffs do not share issues with and are not similarly situated to other Experts and call centers.

### III.   ARGUMENT

Based on the foregoing, the Court should deny every aspect of Plaintiffs' Motion.

**A.      Plaintiffs' failure to address *Campbell* warrants denial of the Motion**

As a threshold matter, the Court should deny the Motion because Plaintiffs failed to cite or justify their position under the controlling Ninth Circuit law set forth in *Campbell*. The Motion cites dozens of inapposite district court decisions decided before *Campbell* and relies on a legal standard rejected in *Campbell*. 903 F.3d at 1114. When a party brings a motion that fails to address the controlling legal standard (as Plaintiffs have done here), the motion should be denied on that basis alone. Any other result would allow parties to make newly-minted arguments in their reply on basic issues upon which they bear the burden of proof and would deny the opposing party a meaningful opportunity to respond. *E.g.*, *Docusign, Inc. v. Sertifi, Inc.*, 468 F.Supp.2d 1305, 1307 (W.D.Wash. 2006) ("well established that new arguments…presented for the first time in Reply are waived").[18]

**B.      Plaintiffs' request for preliminary certification should be denied**

In *Campbell*, the Ninth Circuit held that employees are "similarly situated" and may only proceed in a collective action "to the extent they share a similar issue of law or fact material to the

---

[17] Madden Ex.13 ¶3 ("During training, we also heard the consistent message that you need to make sure you clock in to get paid. It was made clear that T-Mobile wanted you to get paid for your work.")

[18] *E.g.*, *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 n.6 (9th Cir. 2004) (not considering argument first raised in reply); *Pedroza v. Lomas Auto Mall, Inc.*, 2013 WL 4446770, *20-21 (D.N.M. 2013) ("The inequity of a court considering arguments and issues that were raised for the first time in a reply brief should be apparent, because the respondent will not have had an opportunity to respond to the new arguments.").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 10
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

disposition of their FLSA claims." 903 F.3d at 1117. *Campbell* drew a parallel to the Supreme

Court's statement in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), that "what matters…is not

the raising of common 'questions' - even in droves - but, rather the capacity of a classwide

proceeding to generate common answers apt to drive the resolution of the litigation." 903 F.3d at

1115. Even though conditional certification is not as "exacting" as decertification, the Court must

still engage in "earl[y] scrutiny" (*id.* at 1109) to determine whether the "putative class members were

together the victims of a single decision, policy, or plan." *Bolding*, 2017 WL 6406136, *1. Because

Plaintiffs offer no evidence of a class-wide illegal "decision, policy, or plan" that is "material to the

resolution of their case," *Campbell*, 903 F.3d at 1114, conditional certification should be denied.

### 1. Certification should be denied because the only evidence of companywide policies and practices shows that those policies comply with the FLSA

To justify conditional certification, a plaintiff must provide substantial allegations and

evidence that, together with the putative collective, they were exposed to a common policy or

practice that resulted in an FLSA violation. *Campbell*, 903 F.3d at 1109; *e.g.*, *Douglas v. Xerox Bus.

Servs.*, 2014 WL 3396112, *4 (W.D.Wash. 2014) (denying conditional certification of call center

start-of-shift off-the-clock work claims); *Adair*, 2008 WL 4224360, *10 (same).

Here, Experts are provided with and trained on legally compliant policies and practices, and

Experts certify that they follow those policies and practices (Madden ¶8, 25-26), including:

- **Pay all time worked.** Experts are paid for all time worked, including overtime.
- **Accurate time reporting.** Experts are required to accurately report every minute of work by clocking in or manually entering their start times on Kronos, or by clocking in on the Mobile app. They also must review their time to ensure accuracy.
- **No off-the-clock work.** Experts are prohibited from working off the clock and no one (including managers and supervisors) is authorized to request such work.
- **STREAD time.** Experts are provided paid time at the start of their shifts to review emails and updates, open programs, and engage in other activities to prepare to start taking calls.
- **Overtime pay.** Experts are paid overtime on all amounts required by the FLSA at the rate of 1.5 times the regular rate for all hours worked over 40 in a workweek.

*Id.* Ex.15 ¶12. Plaintiffs do not deny that these policies and practices exist, and do not provide any

evidence of a contrary companywide policy or practice. This alone warrants the denial of conditional

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 11
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

certification. *E.g.*, *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 687-88 (D.Md. 2010) (denying notice because plaintiff offered no evidence of "a uniform national policy of denying appropriate compensation" and the "only concrete evidence before the Court relevant to a national policy with respect to overtime pay is Westat's official policy…that it will compensate its employees for all…hours worked"). Put simply, limited anecdotal evidence cannot justify certification of a nationwide (or even call-center-level) collective. *Oldershaw*, 2019 WL 427650, *8 ("anecdotal evidence…at <u>some</u> locations" insufficient); *Adair*, 2008 WL 4224360, *7.[19]

### 2. The off-the-clock claim should not be certified because Plaintiffs and other Experts do not share core facts that go to the heart of the FLSA disputes

There is no dispute that (a) the FLSA requires employers to pay employees for all hours worked in compliance with its minimum wage and overtime requirements, and (b) the U.S. Department of Labor Fact Sheet #64 repeats this for call centers and states that time downloading "work instructions, computer applications, and work-related emails" counts as work. There is also no dispute that T-Mobile has detailed policies mirroring these requirements. Nevertheless, Plaintiffs ask for certification of two off-the-clock issues: a start-of-shift issue and a return-from-lunch issue. Both issues are fact-specific, and depend on whether each Expert has to turn on a computer, the speed of each computer, the sequence of actions taken by each Expert, and how each Expert records time. Although (at this stage of the litigation) the Court accepts as true Plaintiffs' statements about their own experiences, the neutrality required by *Hoffman-LaRoche* dictates the same non-evaluative treatment for other Experts who testify to experiences that are very different from Plaintiffs'. As this varying testimony shows, there are no shared issues of fact that will facilitate a collective disposition of an FLSA claim. Instead, factual differences make any collective disposition impossible. *E.g.*,

---

[19] *Douglas*, 2014 WL 3396112, *4 (denying notice: no evidence of a common policy or practice "that permeated all call centers"); *Castle v. Wells Fargo Fin.*, 2008 WL 495705, *2 (N.D.Cal. 2008) (denying notice: "Plaintiffs have not identified a common policy or practice on a nationwide or statewide basis, and indeed the official written policy at Wells Fargo is to pay overtime."); *Hinojos v. Home Depot*, 2006 WL 3712944, *2 (D.Nev. 2006) (denying notice: the "Court has not been presented with evidence of any improper common practice, policy, or culture at Home Depot that would justify conditional certification on a nationwide basis"); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D.Or. 2002) (denying notice: "Plaintiffs have failed to offer sufficient evidence to establish that the putative class members were commonly affected by a uniform plan or scheme to deny workers overtime compensation and minimum wages.").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 12
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  *Guanzon v. Vixxo Corp.*, 2019 WL 1586873, *7 (D. Ariz. 2019) (putative class members are not

2  similarly situated under *Campbell* if "divergent testimony" goes to "the heart of the merits issue").

3      ***Start-of-Shift Claim*:** The start-of-shift issue involves disparate facts that make any uniform

4  decision under the FLSA impossible. If (as alleged) Plaintiffs truly took 30 minutes to turn on and

5  log into computers and log and clock into Kronos, they should be paid for that time (if they have not

6  already been paid for it). However, that conclusion has no impact on other Experts because of their

7  starkly different circumstances. For example:

8      •   Some Experts manually enter their start and stop times in Kronos, and other Experts use the

9  Kronos mobile app on their cell phone. *Supra* at 8; Madden ¶13. The log in sequence and computer

10  start up/log in time has no impact on time entries by these Experts. They are different than Plaintiffs.

11      •   Experts who punch into Kronos generally testify that their computers are always turned on,

12  they immediately punch in, and logging into the computer and clocking into Kronos takes a minute

13  or less and is no different than punching a time clock. *Supra* at 7-8; Madden ¶12-15. Such minimal

14  amounts of time are "trifles" that do not give rise to FLSA claims:

15            When the matter in issue concerns only a few seconds or minutes of work beyond the
          scheduled working hours, such trifles may be disregarded. Split-second absurdities are not
16            justified by the actualities of working conditions or the Fair Labor Standards Act.

17   *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1947).[20] In fact, the Ninth Circuit recently

18  rejected a "Logging-In Claim" based on "logging into an auxiliary computer program before

19  clocking into Avaya/Kronos" and found "the district court properly classified the one minute of

20  uncompensated time as *de minimis* and appropriately granted summary judgment." *Corbin v. Time*

21  *Warner Entm't*, 821 F.3d 1069, 1081 (9th Cir. 2016). The difference between Plaintiffs' claims of 6

22  to 30 minutes and the minute or less needed by other Experts to punch into Kronos on the computer

23  thus goes to liability, not damages, making Plaintiffs non-similar to other Experts under the FLSA.

24      •   Other Experts who use the Kronos button to punch in understand that they are expected to

25  report all time that they work, and they manually correct their time entries if they have any delays or

26  ───────────────
[20] 29 CFR §785.47 ("insubstantial or insignificant periods of time…may be disregarded…such trifles are de minimis").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 13
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   inaccuracies. *Supra* at 8-9; Madden ¶17. Again, the computer start up/log in time has no impact on

2   the accuracy of time entries for Experts who manually correct their time entries.

3       Courts that have considered these types of disparities in relation to call center cases involving

4   start-of-shift off-the-clock time frequently deny certification. *E.g.*, *Douglas*, 2014 WL 3396112 *4.[21]

5       ***Return-from-Lunch Claim*:** The return-from-lunch issue also involves disparate facts that

6   will prevent any uniform disposition under the FLSA. Plaintiffs state they returned from lunch 10

7   minutes early and spent up to 10 minutes logging into Quickview and linking it to Samson before

8   they clocked in. Dkt 23-4 ¶10-11, 23-5 ¶10-11, 23-6 ¶10-11. However, an FLSA determination in

9   relation to that experience will have no meaning for other Experts who (a) enter their time manually,

10  (b) use the Mobile app, (c) take a full meal period and then quickly unlock their computers and clock

11  in before opening any other programs (in accordance with the express instructions of their

12  managers), or (d) adjust their time entries if there is any inaccuracy. *Supra* at 8-9; Madden ¶22-25.

13  Again, conditional certification is not appropriate because Plaintiffs' evidence is anecdotal and not

14  representative of others, and there is no evidence of an illegal companywide policy or practice. *E.g.*,

15  *Boelk v. AT&T Teleholdings, Inc.*, 2013 WL 261265, *12, *15 (W.D.Wis. 2013) (denying notice:

16  allegations that "the combination of the meal break restrictions and defendants' efficiency and

17  performance system caused them to work during their unpaid meal breaks without reporting their

18  time" did not show putative class members were victims of a common policy or plan).

19      Plaintiffs' off-the-clock allegations are not only anecdotal (at best), but they also do not

20  provide any reason why all Experts would feel compelled to work for free. Plaintiffs' declarations

21  refer to T-Mobile's adherence and attendance policies, but they do not explain how those policies

22  cause off-the-clock work. Although strict adherence and attendance policies may motivate off-the-

---

[21] *See also Adair*, 2008 WL 4224360 at *6-7 (denying notice in call center case alleging start-of-shift work, including time opening programs, because plaintiffs' declarations did not support a common policy); *Russo v. Bellsouth Telecomm., Inc.*, 2009 US Dist. LEXIS 20552, *27-28 (N.D.Ga. 2009) (denying notice in a call center case for start-of-shift work because plaintiffs' declarations gave no indication defendant actually required them to log in early); *Hart v. JPMorgan Chase Bank*, 2012 WL 6196035, *5 (M.D. Fla. 2012) (denying notice in call center case for start-of-shift work because individual inquiries were needed, including "whether plaintiffs actually worked 'off the clock'").

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 14
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

clock work in some call center cases, there is no evidence of that here because T-Mobile allows

Experts to clock in early and provides STREAD time to avoid such issues. *Supra* at 5, 8; Madden

¶19-20. As one Expert from Tampa explained:

> I was looking for an employer that would pay me fairly for all the time that I worked. My experience with T-Mobile has met those expectations. I have never worked for an employer as focused on compensating its employees accurately as T-Mobile.

Madden Ex.14 ¶2. Plaintiffs and other Experts like this are not similarly situated because they do not

share core facts that go to the heart of Plaintiffs' FLSA claims.

### 3. The overtime claim should not be certified because undisputed evidence shows that Experts receive overtime for bonuses and commissions

The Motion (at 8) asserts that T-Mobile excludes "commissions and other non-discretionary

bonuses" from "the calculation of their overtime rates." In support, the Motion cites (a) Plaintiffs'

declarations, which contain the same legal conclusion without any explanation or evidentiary basis

(Dkt 23-4 ¶17, 23-5 ¶16, 23-6 ¶17), and (b) earnings statements attached to the Complaint. As this

Court recognized in *Bolding*, 2017 WL 6406136, *1, such generic assertions of overtime calculation

violations are not sufficient to satisfy Plaintiffs' burden of proof on a notice motion, and conditional

certification should be denied.

Initially, Plaintiffs' assertions do not amount to a violation of the FLSA because the FLSA

does not require that commissions and bonuses be included in initial calculations of overtime rates.

29 CFR § 120 (commissions), 209 (bonuses). Instead, when incentives are calculated on a monthly

basis (not each week) and are paid in the following month, the FLSA provides that overtime

adjustments may be calculated and paid on a delayed basis after the incentive payments are

determined. 29 CFR § 120, 209. As the U.S. Department of Labor explains:

> Where the calculation of a bonus is deferred over a period of time longer than 1 workweek, the employer may disregard the bonus in computing the regular hourly rate until the amount of the bonus can be ascertained. At the time the amount of the bonus is ascertained, it must be apportioned back over…the period during which it may be said to have been earned, so that the employee will receive an additional amount…during the period. This additional amount will be based on one-half the hourly rate of pay allocable to the bonus…multiplied by the number of hours worked….

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 15
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE +1 206 623 7022

…….
Where bonuses are paid, any extra overtime pay due upon the increase in the regular rate resulting from the bonus payment is due only at the time the bonus itself is paid, not earlier.

Field Operations Handbook § 32c03(b), 32j10 (at https://www.dol.gov/whd/FOH/FOH_Ch32.pdf). This is exactly what T-Mobile does. *Supra* at 5-6; Madden Ex.50 ¶8 ("commissions and bonuses that are measured in one month are typically calculated and paid in the following month along with any required overtime true-up based on that compensation"). Plaintiffs' earnings statements in fact show that T-Mobile did make compliant overtime true-up payments. Madden Ex.50 ¶10-14.

Moreover, Plaintiffs provide no evidence that others have been or are subject to an illegal policy or practice. Instead, T-Mobile employees confirm that they carefully review their pay statements and have been properly paid. *Supra* at 9-10; Madden ¶26-29.[22]

Thus, based on Plaintiffs' failure to provide evidence, T-Mobile's submission of evidence, and Plaintiffs' failure to show that Plaintiffs and other Experts have been subject to a nationwide illegal policy or practice, the Court should deny this request. *See Bolding*, 2017 WL 6406136, *1.

**4.     Certification should be denied because of the ambiguity of the collective**

*Campbell*, 903 F.3d at 1114, requires the Court to assess the similarity of Plaintiffs and putative collective members on issues that will impact the disposition of their FLSA claims. Such an assessment is not possible here because the collective's identity is not ascertainable.

Initially, Plaintiffs make no effort to establish criteria for identifying putative collective members. Plaintiffs testify they worked as "Customer Service Expert[s]" and they submit job postings for "Customer Service Associate Expert" positions,[23] but they seek to certify a collective of "customer service representatives." Plaintiffs do not define that term or identify which job titles might fall within the term. Moreover, focusing on the word "Expert" does not help because Plaintiffs assert that their claims are driven by the need "to begin taking calls at our scheduled shift time" and

---

[22] Madden Ex.11 ¶4 ("They have a culture of making sure people are on the clock and getting paid.").

[23] Dkt 23-4 ¶2; 23-5 ¶2; 23-6 ¶2; 23-3 (job postings listing general duties and experience needed that also include quotes from former employees, including "Best Company I've Ever Worked For," "Wonderful Company," "positive place to work," "Awesome environment," "the company has really good values," "They take pride in their employees," and "best call center I have worked for," thus showing that Plaintiffs' call center generalizations do not apply to T-Mobile).

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 16
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    "to continue taking calls" after lunch (Dkt 23-4 ¶10, 15; 23-5 ¶10, 15; 23-6 ¶10, 15), but many

2    Expert and non-Expert positions are not focused on incoming calls. Madden Ex.15 ¶6

3    (distinguishing between Account Experts like Plaintiffs who handle incoming calls and other Expert

4    titles that do not). Plaintiffs offer no basis for covering individuals who are not focused on incoming

5    calls, and non-Account Experts attest that they clock in quickly and are fully paid. *E.g.*, Madden

6    Ex.33 ¶6, 10-11 (Messaging Expert: 20-30 seconds to clock in; fully paid), Ex.38 ¶5, 8 (Customer

7    Resolution Expert: 30 second to clock in; paid for all time).

8         In addition, Plaintiffs propose a collective that starts on March 28, 2016 (which is beyond the

9    maximum three-year limitations period in 29 U.S.C. §255), and that runs "through the date of final

10    judgment" (which would seemingly require notice to unidentified individuals not yet hired).

11         Because Plaintiffs have the burden to justify conditional certification, their failure to define a

12    collective of similarly situated employees under *Campbell* provides an independent basis for denying

13    the Motion. *See Blake v. Hewlett-Packard Co.*, 2013 WL 3753965, *12 (S.D.Tex. 2013) (denying

14    notice: no similarity across class); *Burk v. Contemporary Home Servs.*, 2007 WL 2220279, *4 (W.D.

15    Wash. 2007) (denying notice: plaintiffs were "not similarly situated to…other types of workers").

16       **5.**      **Certification should be denied because of the breadth of the collective**

17         The collective is not only vague, it is also overbroad. Plaintiffs apparently intend to cover

18    different (unspecified) positions and different call centers, each with different management

19    structures. Such broad allegations require evidence of a companywide policy or practice. *E.g.*,

20    *Oldershaw*, 2019 WL 427650, *8; *Hinojos*, 2006 WL 3712944, *2.

21         Plaintiffs fail to provide such evidence here. Plaintiffs state that they had start-of-shift and

22    end-of-lunch log in time that was uncompensated, but they do not provide any explanation for why

23    they ignored T-Mobile policies requiring that they report all time that they work. And, they provide

24    no evidence of a unifying reason why other Experts in other call centers with different management

25    would not keep their computers turned on and clock in quickly, enter their time manually, use the

26    mobile app, or manually correct any inaccurate time entries. Other Experts at other call centers

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 17
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

testify that this is exactly what they did. *Supra* at 7-10; Madden ¶11-17. Because Plaintiffs do not

have evidence of such a unifying policy or practice, conditional certification should be denied. *E.g.*,

*Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 441 (S.D. Ind. 2012) (denying notice in call center case:

"the conclusion that some supervisors or trainers may have instructed CSRs that they were required

to log in to their computers and pull up their systems before logging in to their phones" did not show

a policy or practice even at a call center level).[24]

### 6.   Certification should be denied because of the lack of evidence

The Court should deny the Motion because Plaintiffs have the burden of justifying notice to a

nationwide collective, but have no evidence to support their request.

Initially, Plaintiffs' declarations state that they "are true based upon my own personal

knowledge, information and belief." Dkt 23-4 ¶23; 23-5 ¶22; 23-6 ¶23. The declarations thus do not

qualify under 28 U.S.C. § 1746 because they are based on "information and belief" and are nothing

more than unsworn assertions. *Rains v. Lebarre*, 2018 WL 4290461, *3-4 (W.D.Mich. 2018).[25]

Moreover, the declarations are filled with generalizations, arguments, hearsay, and assertions

about practices beyond the declarants' call centers for which they have no factual basis. Dkt 23-4 ¶4,

6, 10, 12, 15-17, 19-21; 23-5 ¶4, 6, 10, 12, 14-16, 18-20; 23-6 ¶4, 6, 10, 12, 15-17, 19-21. Such

materials should be ignored. *E.g.*, *Young v. Cate,* 2013 WL 684450, *5 (E.D. Cal. 2013) (lack of

personal knowledge warranted denial of conditional certification); *Adair*, 2008 WL 4224360, *6

("conclusory allegations…are simply not sufficient" to justify certification).[26]

---

[24] *See also Syrja*, 756 F.Supp.2d at 688 (denying notice: claims would require individual examination of work "across multiple geographic locations throughout the country, over different time periods, in offices run by different managers"); *Brechler v. Qwest Commc'n Int., Inc.*, 2009 WL 692329 *3 (D.Ariz. 2009) (denying notice: plaintiffs did not produce evidence of a unified policy, but instead alleged "a subtler system of pressure and coercion" and "Plaintiffs were not affected equally or in the same manner by this system"); *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 511 (M.D.La. 2005) (denying notice: plaintiffs were not "similarly situated" because "[i]t is clear that this case involves a multitude of different managers at different geographical locations across the country [and] that individual inquiries must predominate in this case because of the different locations, managers, and factual situations involved at each location").
[25] *See also Brown v. Smith*, 2019 WL 1598682, *6 (W.D.Mich. 2019) ("diluted" "information and belief" language did not satisfy section 1746(2) requirements); *Hoffman v. Pennymac Holdings, LLC*, 2018 WL 6448779, *3 (W.D.Wash. 2018) (declaration based on information and belief had no "evidentiary value").
[26] *See also Brown v. Citicorp Credit Servs.*, 2013 WL 4648546, *4 (D. Idaho 2013) (declining to consider statements regarding the existence of policy where declarants did not explain the basis for personal knowledge); *Russo*, 2009 US

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 18
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    Finally, even if Plaintiffs' declarations are considered, the personal experiences of three

2   Experts at two call centers are not sufficient to establish a companywide policy or practice for

3   thousands of Experts in other call centers, and do not justify a nationwide collective. *E.g.*, *Trinh v.*

4   *JP Morgan Chase & Co.*, 2008 WL 1860161, *4 (S.D.Cal. 2008) (denying notice in part because

5   "[p]laintiffs' affidavits…provide no real evidence, beyond their own speculative beliefs, suggesting

6   that all JPMorgan loan officers across the country, regardless of location or experience,…are

7   required to work in the same manner").[27] Because Plaintiffs have no evidence to satisfy their burden

8   of proof, the Motion should be denied. *Velasquez*, 266 F.R.D. at 427; *Burk*, 2007 WL 2220279, *4.

9   **C.    Plaintiffs' proposed notice process should be rejected**

10    The purpose of the FLSA certification and notice process is to provide similarly situated

11   employees with an opportunity to join a lawsuit if they desire and to allow the Court to effectively

12   manage the in-flow of any opt-in plaintiffs.[28] *Campbell*, 903 F.3d at 1114-15. The purpose is not to

13   encourage participation in a lawsuit (that may or may not have merit). *E.g.*, *In re JPMorgan Chase*,

14   916 F.3d 494, 501 (5th Cir. 2019) ("*Hoffman-LaRoche* confines district courts' notice-sending

15   authority to notifying potential plaintiffs; it directs judges 'to avoid even the appearance of judicial

16   endorsement of the *merits* of the action'; and it nowhere suggests that employees have a right to

17   receive notice of potential FLSA claims.").

18    Plaintiffs' proposed notice process violates these limits and should be rejected.[29]

19

20   Dist. LEXIS 20552, *27-28, 35 (denying notice because general conclusions in plaintiffs' declarations were not
evidence); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a
finding that the witness has personal knowledge of the matter.").

21   [27] *Rappaport v. Embarq Mgmt. Co.*, 2007 WL 4482581, *4 (M.D.Fla. 2007) (denying notice in call center case where six
affidavits from two call centers were submitted to support certification of all locations nationwide because, "[a]t most,
these affidavits support the position that certain employees at the [two Florida] offices were required by their supervisors

22   to work overtime…[but] offer no basis to assume that Defendants deny overtime compensation on a company-wide

23   scale"); *Beecher v. Steak N Shake Op., Inc.*, 904 F.Supp.2d 1289, 1299-1300 (N.D.Ga. 2012) (plaintiffs and opt-ins
representing 11 of 400 restaurants and 23 of 65,000 employees were insufficient to certify nationwide class).

24   [28] The U.S. Supreme Court has rejected "the flawed premise that the FLSA 'pursues' its remedial purpose 'at all costs.'"

25   *Encino Motorcars, LLC v. Navarro*, 584 U.S. _, 138 S.Ct. 1134, 1142 (2018) (rejecting "principle that exemptions to the
FLSA should be construed narrowly").

26   [29] Plaintiffs made no effort to confer with T-Mobile regarding their proposed notice process or forms. To the extent that
the Court allows any notice (which it should not), the Court should require the parties to meet and confer regarding any

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 19
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1      Initially, Plaintiffs have the burden of proof and fail to provide any justification for much of

2  their proposed process (or the content of their forms). This alone warrants rejection.

3      Second, Plaintiffs ask the Court to order the production of information regarding the putative

4  collective, but ignore issues of consequence. These include:

5  • Plaintiffs ask for information for all "customer service representatives" even though that is

6  not their job title and Plaintiffs make no effort to define who (or what job titles) are included in that

7  undefined term. T-Mobile would not know how to comply even if Plaintiffs' request were granted.

8  • Discovery has not yet started in this case, there is no protective order in place, and Plaintiffs

9  are seeking private contact information for non-parties. This information should be protected and

10  should only be available to the person sending notice and only for the purpose of notice. *Cf. Morden*

11  *v. T-Mobile USA, Inc.*, No. C05-2112RSM at 2 (W.D.Wash. Nov. 13, 2006) (Madden Ex. 62).

12  • Plaintiffs request information that has no relevance to notice, such as dates of employment

13  and telephone number. This amounts to one-sided discovery, invades the privacy of non-parties, and

14  should not be allowed. *E.g.*, *Gibbs v. MLK Express, LLC*, 2019 WL 1980123, *18 (M.D.Fla. 2019)

15  (denying phone number); *Russell v. Swick Mining Servs. USA Inc.*, 2017 WL 1365081, *5 (D.Ariz.

16  2017) (same).[30] If Experts opt in, Plaintiffs can obtain this information later. It is otherwise private

17  and not relevant. *Alford v. Freedom Oilfield Servs.*, 2016 WL 8673858, *7 (W.D. Tex. 2016).

18      Third, Plaintiffs do not discuss who would send an approved notice, how the notice process

19  would be handled, or who would receive opt-in forms. To protect the privacy of other Experts,

20  contact information should only be provided, if at all, to a third-party administrator who can handle

21  any notice process.[31] *E.g.*, *Senne v. Kan. City Royals Baseball Corp.*, 2015 WL 6152476, *18 (N.D.

22  Cal. 2015)("To protect the privacy of collective members, however, contact information shall be

23  _____

24  notice process and forms. *E.g.*, *Smith v. Akai Security Inc.*, 2019 WL 1932117, *5 (D.Ariz. 2019) (allowing notice to a narrowed class, rejecting plaintiffs' proposed notice and process, and requiring the parties to meet and confer).
[30] *See also Frebes v. Mask Rest.*, 2014 WL 1848461, *7 (N.D. Ill. 2014) (denying phone numbers); *Brand v. Comcast*

25  *Corp.*, 2012 WL 4482124, *9 (N.D. Ill. 2012) (same); *Alford*, 2016 WL 8673858, *8 (same unless no address provided).
[31] Plaintiffs seemingly recognize that a third-party administrator is appropriate in that their proposed notice has repeated

26  references to such an administrator. Dkt 23-1 at 2-4.

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 20
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    produced only to a claims administrator retained by Plaintiffs and not to Plaintiffs or to Plaintiffs'

2    counsel.").[32] Similarly, opt-in forms should be sent to an administrator or the Court so opt-ins are

3    not "discouraged from seeking outside counsel" if they wish. *Ansoralli v. CVS Pharmacy, Inc.*, 2017

4    WL 570767, *4 (E.D.N.Y. 2017).

5          Fourth, Plaintiffs ask to send three notices and two reminders to every collective member (as

6    well as a different set of information with the opt-in form). Contrary to the dictates of *Hoffman-*

7    *LaRoche*, different forms with different (sometimes conflicting) language are likely to confuse, and

8    seem designed to harass Experts into opting in rather than providing neutral and accurate infor-

9    mation that allows them to make a knowing decision. Sending and receipt of a neutral, informative,

10   and accurate notice is all that *Hoffman-LaRoche* authorizes. Most courts hold that notice by regular

11   mail or regular mail supplemented by personal email is sufficient. *Alford*, 2016 WL 8673858, *7

12   (allowing email if mailed notice undeliverable). In fact, Plaintiffs' own cases (*see* Motion at 15)

13   confirm that "providing notice by first class mail and email will sufficiently assure that potential

14   collective action members receive actual notice." Plaintiffs, however, ask for a text notice at the time

15   of the mailing (no form is provided for this), and email and text reminders during the notice period.

16   These requests should be denied because they go beyond notice, are intrusive, involve advocacy,

17   will create confusion, and violate the requirement of judicial neutrality. *E.g.*, *Bigger v. Facebook,*

18   *Inc.*, 2019 WL 1317665, *12 (N.D. Ill. 2019) ("A reminder is unnecessary given the adequacy of

19   both U.S. mail and email notice and may be misinterpreted as judicial encouragement to join the

20   lawsuit."); *Gibbs*, 2019 WL 1980123, *17-18 (rejecting texts as "incomplete" and "overly intrusive"

21   and reminders as "redundant" and potentially improper "encouragement"); *Ansoralli*, 2017 WL

22   570767, *4 (denying request to send text message in addition to mail and email).[33]

---

23   [32] *See also Barnwell v. Corr. Corp. of Am.*, 2008 U.S. Dist. LEXIS 104230, *27 (D.Kan. Dec. 9, 2008); *Russell v. Wells*
     *Fargo & Co.*, 2008 U.S. Dist. LEXIS 78771, *14-15 (N.D.Cal. 2008).

24   [33] *See also Mullis v. Wings Over Spartanburg*, 2017 WL 749362 (D.S.C. 2017) (denying notice by text message); *Ries v.*
     *Planesphere, Inc.*, 2016 WL 6277466, *3 (N.D. Ill. 2016) (same); *Alford*, 2016 WL 8673858, *7 (reminders

25   "unnecessary and inappropriate"); *Bland v. PNC Bank, N.A.*, 2015 WL 7587365, *3 (W.D. Pa. 2015) (same); *In re Bank*
     *of Am. Wage & Hour Empl. Litig.*, 286 F.R.D. 572, 601 (D. Kan. 2012) (same); *Witteman v. Wisconsin Bell, Inc.*, 2010

26   WL 446033, *3 (W.D. Wisc. 2010) ("[T]he reminder is unnecessary and potentially could be interpreted as

---

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 21
CASE NO. 2:19-CV-00458-RSL

1   Finally, Plaintiffs' proposal does not include any details regarding the intake and filing of

2   opt-in forms with the Court, or submission of reports after the opt-in period. These are the types of

3   details that allow the Court to effectively manage the process in an efficient manner.

4   **D.   Plaintiffs' proposed notice form should be rejected**

5   When recognizing that courts may, at times, authorize notice to similarly situated employees

6   (which is not appropriate here), the Supreme Court emphasized that "trial courts must take care to

7   avoid even the appearance of judicial endorsement of the merits of the action" and that notices must

8   be neutral, informative, and accurate.[34] *Hoffman-LaRoche*, 493 U.S. at 174; *Smith v. Family Video*

9   *Movie Club, Inc.*, 2012 WL 1252708, at * 1 (N.D. Ill. 2012) ("In a FLSA case, a court should ensure

10   that the notice to potential class members expresses information in a neutral manner, and is

11   'accurate...and informative'"). Plaintiffs' proposed notice form (Dkt 23-1 at 2-4) violates these limits

12   and should be rejected.

13   Initially, Plaintiffs have the burden of proof and fail to provide any justification for their

14   proposed notice form or other forms. This warrants rejection of each of those forms.

15   Second, some courts do not allow use of a caption or the case name and court. *E.g.*, *Wajcman*

16   *v. Hartman & Tyner, Inc.*, 2008 WL 203579, *2 (S.D. Fla. 2008) (notice without caption was more

17   neutral). If the case name and court are referenced, however, an immediate statement that the court

18   has not addressed the merits of the case is necessary to preserve neutrality. *Barrera v. U.S. Airways*

19   *Grp., Inc.*, 2013 WL 4654567, *8 (D.Ariz. 2013) ("this statement should be moved to the top of the

20   notice, below the caption, to make the Court's position obvious"); *Mowdy v. Beneto Bulk Transp.*,

21   2008 WL 901546, *10 (N.D. Cal. 2008) (statement must be on first page in bold font).

---

22   encouragement by the court to join the lawsuit."); *Roberts v. SB S. Welding, LLC*, 2015 WL 8773610, *3 (N.D. Tex.
     2015) (same); *Smallwood v. Ill. Bell Tel. Co.*, 710 F.Supp.2d 746, 753-54 (N.D. Ill. 2010) (same); *Schroeder v. Humana,*
23   *Inc.*, 2012 WL 5931886, *9 (W.D.Wis. 2012) (same); *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 220
     (E.D.Mich. 2010) (same); *Byard v. Verizon W.V., Inc.*, 287 F.R.D. 365, 373 (N.D.W.V. 2012) ("[N]umerous district
24   courts around the country have found that reminder notices have a tendency to both stir up litigation [] and
     inappropriately encourage putative plaintiffs to join the suit.").
25   [34] The issue is not whether certain information may discourage participation from potential opt-ins. Instead, any notice
     must provide neutral information so that plaintiffs can decide whether to opt-in. *E.g.*, *Witteman*, 2010 WL 446033, *3.
26   No one should be trying to draw employees into a lawsuit by excluding information that some may find pertinent.

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 22
CASE NO. 2:19-CV-00458-RSL

Third, Plaintiffs' notice states that employees who join the Lawsuit will not have to pay their attorneys if there is no recovery. This statement, however, is misleading without a disclosure that they may be responsible for certain costs of litigation if there is no recovery. *E.g.*, *Barrera*, 2013 WL 4654567, \*9 (must advise potential opt-ins "that they may be liable for costs").[35] The notice also spends half a page on "YOUR LEGAL REPRESENTATION IF YOU JOIN;" however, *Campbell*, 903 F.3d at 1105-07, holds that an FLSA proceeding is not a representative action, and opt-ins can make their own decisions on representation and are not bound by Plaintiffs' arrangements. The notice should also list both parties' counsel to avoid any apparent endorsement of Plaintiffs' counsel. *E.g.*, *Ansoralli*, 2017 WL 570767, \*4.

Fourth, Plaintiffs' notice does not define the putative collective in a way that would be understandable to employees. It targets "customer service representatives," which is undefined and not a current job title. In addition, the notice pointlessly includes representatives who are barred by the statute of limitations and covers representatives through the date of judgment, which will create confusion and defeats the purpose of a notice period with a cutoff date long before judgment.

Fifth, Plaintiffs' notice does not provide a full statement of T-Mobile's position and defense. A fair statement of the defense is necessary to maintain the neutrality of the notice. *E.g.*, *Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 WL 723599, \*8 (N.D. Cal. 2009).

Finally, Plaintiffs' notice is filled with language designed to create an improper impression of Court involvement and that employees are entitled to some amount. Such statements are misleading and improper. *Cf. Stelmachers v. Maxim Healthcare Serv.*, 2013 WL 12251411, \*3 (N.D. Ga. 2013).

**E.    Plaintiffs' proposed opt-in form should be rejected**

Plaintiffs' proposed opt-in form (Dkt 23-1 at 6-7) also violates the Supreme Court's demand

---

[35] *See also Gomez v. ERMC Prop. Mgmt. Co.*, 2014 WL 3053210, \*2 (N.D.Ohio 2014) (appropriate "to give prospective plaintiffs a clear understanding of the potential risks"); *Dunkel v. Warrior Energy Servs.*, 304 F.R.D. 193, 207 (W.D.Pa. 2014) (need "disclosure of the possible risks of joining the lawsuit"); *Creten-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058734, \*4 (D.Kan. 2009) (costs are not theoretical and potential plaintiffs should be made aware that they may be liable for costs); *Perrin v. Papa John's Intern., Inc.*, 2011 WL 4815246, \*4 (E.D. Mo. 2011) (same); *Stanfield v. First NLC Fin. Servs.*, 2006 WL 3531729, \*1-2 (N.D. Cal. 2006) (same).

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 23
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   that any notice be neutral, informative, and accurate. *Hoffman-LaRoche*, 493 U.S. at 174; *Smith*,

2   2012 WL 1252708, *1. Initially, the form uses "Customer Service Representative" and does not

3   identify specific positions, thus inviting confusion and future disputes regarding coverage. Second,

4   the form asks employees to certify they have the claims asserted by Plaintiffs. This is an improper

5   attempt to gather evidence using a court-authorized process, and violates the *Hoffman-LaRoche*

6   requirement of scrupulous neutrality. Third, the form is not accurate. For example, it references a

7   claim for unpaid minimum wages, but there is no such claim.[36] Fourth, the form states that

8   Plaintiffs' counsel is "designated" "to represent me in this action;" however, *Campbell*, 903 F.3d at

9   1105, holds otherwise. Finally, the opt-in form includes an "Additional Information" form asking for

10  contact information, but that also makes extensive statements that repeat and diverge from what is in

11  the proposed notice. These statements are clearly biased and incomplete, and fail for all the reasons

12  the notice fails.

13  **F.    Plaintiffs' proposed reminder form should be rejected**

14          The court should not allow a reminder form because it is inconsistent with judicial neutrality

15  and every part of the notice process must be neutral, informative, and accurate. *Hoffman-LaRoche*,

16  493 U.S. at 174; *Smith*, 2012 WL 1252708, at *1; *supra* at 21. Here, Plaintiffs' form discusses

17  "funds that are owed to you," states that it is "highly recommended" that employees refer to the

18  notice, and tells employees to contact "the attorney approved by the court to serve as counsel to the

19  Plaintiff class." This is not accurate or neutral, and should be rejected.

20                          **IV.   CONCLUSION**

21          If Plaintiffs seek to modify the proposed collective, process, or forms (or to rely on evidence

22  not submitted with the Motion), T-Mobile respectfully requests that the Court allow it to file a

23  surreply to address new matters. T-Mobile also requests oral argument. Regardless, Plaintiffs have

24  failed to meet their burden and the Court should deny the Motion.

25

26  _____

[36] A minimum wage claim would fail because Experts are paid well above minimum wage and minimum wage compliance is determined on a workweek basis. *See Douglas v. Xerox Bus. Servs.*, 875 F.3d 884, 888 (9th Cir. 2017).

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 24
CASE NO. 2:19-CV-00458-RSL

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1   DATED:  June 24, 2019                    By  *s/ Patrick M. Madden*

2                                            Patrick M. Madden, WSBA #21356
                                             patrick.madden@klgates.com
3                                            Daniel P. Hurley, WSBA #32842
                                             Daniel.hurley@klgates.com
4                                            Stephanie Wright Picket, WSBA #28660
                                             Stephanie.pickett@klgates.com

5                                            K&L Gates LLP
                                             925 4th Avenue, Suite 2900
6                                            Seattle, WA  98104-1158
                                             Telephone:  (206) 623-7580
7                                            Facsimile:  (206) 623-7022

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'                    K&L GATES LLP
MOTION FOR CONDITIONAL CERTIFICATION - 25              925 FOURTH AVENUE, SUITE 2900
CASE NO. 2:19-CV-00458-RSL                                      SEATTLE, WA  98104-1158
                                                              TELEPHONE: +1 206 623 7580
                                                              FACSIMILE: +1 206 623 7022

1

## CERTIFICATE OF SERVICE

2           I hereby certify that on June 24, 2019, I electronically filed the foregoing with the

3 Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4 following:.

5           Adam J. Berger
      SCHROETER GOLDMARK & BENDER
6      810 Third Avenue, Suite 500
      Seattle, WA  98104
7      Phone:  206-622-8000
      Fax:  206-682-2305
8      berger@sgb-law.com

9      Kevin J. Stoops
      Charles R. Ash, IV
10      SOMMERS SCHWARTZ, P.C.
      One Towne Square, Suite 1700
11      Southfield, MI  48076
      Phone:  248-355-0300
12      stoops@somerspc.com
      crash@sommerspc.com

13

14      Attorneys for Plaintiffs

      Dated this 24th day of June, 2019.
15

16

17                           s/Kathy Wheat
                           Kathy Wheat, Senior Practice Assistant

18

19

20

21

22

23

24

25

26

T-MOBILE USA, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION - 26
CASE NO. 2:19-CV-00458-RSL