UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTINA CHETWOOD and SANDRA CASTELLON-GONZALEZ, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | Case No. 19-CV-458-RSL<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION |

This matter comes before the Court on plaintiffs' "Pre-Discovery Motion for Conditional Certification and Court Authorized Notice, Pursuant to 29 U.S.C. 216(b)." Dkt. #23. Plaintiffs are current and former employees of defendant T-Mobile USA, Inc., who work or previously worked in the company's customer service call centers in Wichita, Kansas, and Mission, Texas. Plaintiffs filed this action on behalf of themselves and all others similarly situated, alleging they were required to work "off the clock" without compensation and that defendant incorrectly calculated overtime wages. They seek an order granting conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"). For the reasons set forth below,[1] plaintiffs' motion is GRANTED in part and DENIED in part.

---

[1] The Court, having reviewed the memoranda, declarations, and exhibits submitted by the parties, finds that resolution of this matter without oral argument is appropriate.

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION - 1

## I. BACKGROUND

The FLSA provides a mechanism called a "collective action," through which employees can jointly sue their employer for certain FLSA violations. See 29 U.S.C. § 216(b). "The collective action permits a representative plaintiff to bring suit on behalf of a group of workers who are 'similarly situated' and serves to (a) reduce the burden on plaintiffs through the pooling of resources and (b) make efficient use of judicial resources by resolving common issues of law and fact together." See Bolding v. Banner Bank, No. C17-0601RSL, 2017 WL 6406136, at *1 (W.D. Wash. Dec. 15, 2017) (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)). The determination as to whether a collective action is appropriate is committed to the Court's discretion. See Bollinger v. Residential Capital, LLC, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011). "[I]t is now the near-universal practice [for courts] to evaluate the propriety of [a] collective [action]—in particular, plaintiffs' satisfaction of the 'similarly situated' requirement, by way of a two-step 'certification' process." Campbell v. City of Los Angeles, 903 F.3d 1090, 1100 (9th Cir. 2018) (citations omitted). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id.[2]

At the first stage, sometimes called the "notice" stage, the Court must determine whether plaintiffs have identified potential opt-in plaintiffs who are similarly situated to them such that they should be given notice of the action. See id. at 1109. "The sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." Id. at 1101 (quoting Genesis

---

[2] The Court declines to deny plaintiffs' motion for conditional certification based on their failure to cite recent Ninth Circuit precedent, Campbell v. City of Los Angeles, in their opening brief. See Dkt. #25 at 13. By its terms, Campbell's holding is expressly limited to the decertification analysis. Campbell, 903 F.3d at 1117 ("Because preliminary certification is not challenged in this case, we address only the standard the district court should apply to post-discovery decertification."). Furthermore, plaintiffs' description of the lenient conditional certification standard does not contravene Campbell, which took an even "more lenient approach to 'similarly situated'" than prior approaches. See Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 948 n.28 (9th Cir. 2019) (quoting Campbell, 903 F.3d at 1114-16).

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION - 2

1  Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013)) (internal quotation marks omitted).  The
2  notice stage occurs prior to discovery, and while the named plaintiffs bear the burden of
3  showing "substantial" similarity at this stage, the Court must rely on the pleadings and affidavits
4  submitted by the parties.  Bollinger, 761 F. Supp. 2d at 1119.  The standard for conditional
5  certification is lenient, and certification generally results "if plaintiffs present a reasonable
6  evidentiary basis for their claims of collective injury."  Bolding, 2017 WL 6406136, at *1 (citing
7  Bollinger, 761 F. Supp. 2d at 1119).  The Ninth Circuit Court of Appeals has characterized the
8  level of consideration at the preliminary certification stage as "loosely akin to a plausibility
9  standard, commensurate with the stage of the proceedings."  Campbell, 903 F.3d at 1109.

10       The second stage occurs "at or after the close of relevant discovery" when [t]he employer
11  can move for 'decertification' of the collective action for failure to satisfy the 'similarly
12  situated' requirement in light of the evidence produced to that point."  Id. (citation omitted)
13  During the "decertification" stage, the Court "take[s] a more exacting look at the plaintiffs'
14  allegations and the record."  Id. (citation omitted).  "If the motion for decertification is granted,
15  the result is a negative adjudication of the party plaintiffs' right to proceed in a collective as that
16  collective was defined in the complaint."  Id. at 1110.

17  **II.    DISCUSSION**
18      **a.  Off the Clock Work**
19  Plaintiffs allege that customer service representatives ("CSRs")[3] working for defendant
20  have "identical job duties" and are subject to the same compensation policies across defendant's
21  17 call centers in 15 states.  See Dkt. #23 at 3-5; see also Dkt. #25 at 6 (describing call centers).
22  Plaintiffs allege that they regularly worked more than eight hours per day and more than 40
23  hours per week.  See Dkt. #23-4 (Chetwood Decl.) at ¶ 6; Dkt. #23-5 (Castellon-Gonzalez

---

[3] Plaintiffs collectively refer to defendant's "Associate Experts," "Experts," and "Senior Experts" with their term, "CSRs."  They contend that these three positions have "the same primary job functions," and are "hourly non-exempt positions," and indicate that "[t]he difference in titles merely reflects the seniority and pay rate of the CSRs."  See Dkt. #23 at 3.  Although defendant indicates that it has "largely stopped using" the term "customer service representative" (see Dkt. #25 at 6 n.5), for simplification in this Order, the Court will adopt plaintiffs' proffered term, "CSR" as descriptive of "Associate Experts," "Experts," and "Senior Experts."

Decl.) at ¶ 6; Dkt. #23-6 (Calvert Decl.) at ¶ 6. They also contend that prior to the beginning of each scheduled shift they must turn on, log into their computers, and load necessary programs. Dkt. #23 at 5-6. They allege that this process results in a period of time per day for which the CSRs are not compensated.[4] Id. They also indicate that this startup process takes even longer if they encounter technical difficulties. Id. Further, they allege that they must reboot and resync their computers upon return from their lunch breaks, a process which results in an additional period of uncompensated work. Id.[5]

To support their allegations, plaintiffs submitted online CSR job postings from defendant's call centers in Colorado Springs, Colorado (Dkt. #23-3 at 2), Wichita, Kansas (id. at 11), Mission, Texas (id. at 20), and Birmingham, Alabama (id. at 29).[6] The job descriptions are virtually identical. In addition, plaintiffs provided three declarations (one from each named plaintiff and one from opt-in plaintiff Auriel Calvert). See Chetwood Decl.; Castellon-Gonzalez Decl.; Calvert Decl. The declarations generally support the allegations that defendant's CSRs use the same programs, processes, and policies across call centers, and that other CSRs experienced defendant's failure to compensate for off-the-clock work under the alleged circumstances. See, e.g., Chetwood Decl. at ¶¶ 4, 7-10, 15, 19-20; Castellon-Gonzalez Decl. at ¶¶ 4, 7-10, 14, 18-19; Calvert Decl. at ¶¶ 4, 7-10, 15, 18-20. They also support the allegation that, to the extent defendant's policies forbade off-the-clock work, the company's failure to follow those policies resulted in CSRs not being paid for the off-the-clock work they identify. Chetwood Decl. at ¶ 16; Castellon-Gonzalez Decl. at ¶ 15; Calvert Decl. at ¶ 16. Further, they support the contention that defendant utilized its policies to induce the alleged pre-shift off-the-

---

[4] Between plaintiffs' declarants, the estimation of time spent on this process varies from three to twenty-three minutes. Chetwood Decl. at ¶ 7; Castellon-Gonzalez Decl. at ¶ 7; Calvert Decl. at ¶ 7. The Court agrees with plaintiffs that the differences in plaintiffs' time estimations do not bear on the conditional certification stage. See, e.g., Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 537 (N.D. Cal. 2007).

[5] Chetwood Decl. at ¶ 10 (two to four minutes); Castellon-Gonzalez Decl. at ¶ 10 (three to ten minutes); Calvert Decl. at ¶ 10 (three to ten minutes).

[6] Plaintiffs included the relevant posting for additional call centers as Exhibit E to their complaint. See Dkt. #1-5.

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION - 4

clock work.  Chetwood Decl. at ¶ 15; Castellon-Gonzalez Decl. at ¶ 14; Calvert Decl. at ¶ 15.
Although plaintiffs rely on only three declarations, it is not unprecedented in this Circuit to
conditionally certify a FLSA collective action based on a small number of declarations.  See,
e.g., Wilson v. Maxim Healthcare Servs., Inc., No. C14-789RSL, 2014 WL 7340480, at *4
(W.D. Wash. Dec. 22, 2014) (citations omitted) (conditionally certifying nationwide class based
on four employee declarations and noting that at the conditional certification stage "[a] handful
of declarations may suffice"); Benedict v. Hewlett-Packard Co., No. 13-CV-0019-LHK, 2014
WL 587135, at *6 (N.D. Cal. Feb. 13, 2014) (conditionally certifying nationwide class based on
five employee declarations); Gilbert v. Citigroup, Inc., No. 08-0385 SC, 2009 WL 424320, at *2
(N.D. Cal. Feb. 18, 2009) (conditionally certifying nationwide class based on five employee
declarations).

      Defendant rejects plaintiffs' contentions and maintains that its wage policies are fully
compliant with FLSA.  See Dkt. #25.  Although it concedes that it maintains nationwide wage
policies, it alleges that each call center is distinct because of its independent management and
operational teams.  Id. at 6.  Defendant asserts several factual bases which it contends preclude
conditional certification.  It alleges that defendant's policies require prompt and accurate
recording of time worked and prohibit off-the-clock work.  Id. at 6-7.  It proffers excerpts from
its employee handbook describing timekeeping procedures, and alleges that its Kronos
timekeeping system, which offers three ways to enter time, is legally compliant.  Id. at 7-8
(citing Dkt. #27 (Ex. A)).  Defendant also describes a "STREAD time" policy, which allows
CSRs seven to ten minutes to review emails, open programs, and prepare for calls prior to taking
incoming calls.  Id. at 8 (citing Dkt. #27 (Ex. 15)).  It contends that CSRs can clock in from five
to twenty minutes before the start of their shift.  Id.  To support its arguments, defendant relies
largely upon 61 declarations from employees (including supervisors) who are currently working
at its various call centers.[7]  See Dkt. #26–27; see also Dkt. #26 (Madden Decl.) (consolidating

---

[7] Defendant also submitted excerpts from its employee handbook regarding wage and compensation policies (Dkt. #27 at 7-13), training slides regarding pay and timekeeping (id. at 20-40), and named plaintiff Kristina Chetwood's online acknowledgement of defendant's pay policies (id. at 15-18).

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION - 5

declarations). The Court has considered defendant's declarations, but also recognizes that "current-employee declarants were potentially chosen selectively from the nationwide class, and courts in this District and this Circuit have expressed distrust with such declarations on the grounds that declarants could have felt pressure to absolve their employer[.]" Wilson, 2014 WL 7340480, at *4 (citing Morden v. T-Mobile USA, Inc., No. C05-2112RSM, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006)).

At the conditional certifications stage of the proceeding, plaintiffs have the burden of providing substantial, but not undisputed, evidence that defendant's CSRs were subject to the same policies that adversely affected the named and opt in plaintiffs. "That is all that is required under the FLSA, which authorizes representative actions to promote efficiencies for the parties and the [C]ourt." Bolding, 2017 WL 6406136, at *2. While the parties apparently agree that defendant implements nationwide compensation policies, see Dkt. #23 at 5-9; Dkt. #25 at 6-10, 14-15, they contest the uniformity of these policies as applied across call centers. See Dkt. #23 at 5-9; Dkt. #25 at 6, 10-12, 22; Dkt. #28 at 8-10. Defendant may ultimately defeat plaintiffs' off-the-clock wages claim by demonstrating that it in fact paid its employees for all hours worked, or the scope of this FLSA collective action may be reduced by showing that the off-the-clock work did not occur in all of defendant's call centers. However, at this stage of the litigation, the Court finds that both plaintiffs' and defendant's accounts of call center practices are plausible. It cannot ascertain based on the existing record which party will prevail. The Court concludes that defendant's challenges are appropriate for the second, decertification stage of the collective action analysis. At the conditional certification stage, the Court finds plaintiffs have raised plausible allegations of off-the-clock work such that other CSRs should be afforded notice of this litigation and an opportunity to opt in if they agree that they have been injured by defendant's wage practices.

### b. FLSA Overtime Calculations

Plaintiffs also allege that defendant failed to properly calculate and pay overtime to its CSRs. Plaintiffs allege that they were not always paid the correct overtime rate because defendant failed to include commissions and non-discretionary bonuses in their regular rate of

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION - 6

pay for FLSA overtime calculations.  See Dkt. #23 at 6-8; Chetwood Decl. at ¶¶ 6, 17, 19; Castellon-Gonzalez Decl. at ¶¶ 6, 16, 18; Calvert Decl. at ¶¶ 6, 17, 19.  In support of this allegation, plaintiffs cite to three paystubs attached to their complaint.  See Dkt. #23 at 6-8 (citing Dkt. #1-6, 1-7, 1-8).  They contend the paystubs show that defendant improperly paid them 1.5 times their straight hourly rate for overtime hours worked.  See Dkt. #1 (Compl.) at ¶¶ 73-75; Dkt. #1-6, 1-7, 1-8.  According to plaintiffs, this demonstrates that defendant failed to incorporate commissions and non-discretionary bonus payments into their regular rate of pay as required under FLSA.  See id.; Dkt. #1 (Compl.) at ¶¶ 73-75, Dkt. #1-6, 1-7, 1-8.

Defendant refutes plaintiffs' characterization of its pay structure with a detailed declaration from its Director of Human Resources Operations, Elke Sanborn.  See Dkt. #26-5 (Sanborn Decl.).  Ms. Sanborn describes key elements of defendant's wage structure, including its methodology for calculating overtime for commissions and bonuses, "that are included in the regular rate but cover an earlier time period."  Id. at ¶ 8.  Ms. Sanborn explains that defendant typically calculates and pays the commissions and bonuses earned by its call center employees during the month *after* they are measured.  Id.  Accordingly, defendant uses a "true-up" payment to calculate and pay overtime for commissions and bonuses that should be included in the regular rate but cover an earlier period.  Id.  Ms. Sanborn walks through each of the three paystubs in plaintiffs' exhibits.  Id.  She explains that Ms. Chetwood and Ms. Castellon-Gonzalez did not earn or receive any overtime pay in relation to the bonuses and commissions reflected on their paystubs because they did not work any overtime hours in the preceding month, for which the bonus and commission were earned.  Id. ¶¶ 11-12.  On the other hand, she explains that Ms. Calvert received overtime on her bonuses and commissions because she worked 3.23 overtime hours in the preceding month.  Id. at ¶ 13.  Ms. Sanborn clearly demonstrates how the adjusted regular rate and hourly overtime adjusted rate were calculated for Ms. Calvert's "Ot ReCalc" true-up payment.  Id.  The Department of Labor's ("DOL")

regulations endorse payment of nondiscretionary bonuses and commissions in the manner defendant describes. See 29 C.F.R. §§ 778.209; 778.120.[8]

Plaintiffs have not made a plausible showing that defendant failed to pay sufficient overtime by excluding commissions and non-discretionary bonuses from its regular rate calculations. Indeed, the evidence submitted by defendant squarely refutes plaintiffs' overtime claim. Accordingly, the Court declines to conditionally certify plaintiffs' FLSA overtime claim.

### c. Notice

Plaintiffs submitted a proposed notice, reminder notice, and opt-in form with their motion. See Dkt. #23-1, 23-2. Defendant raised numerous objections to the form and content of the proposed notices and opt-in form. See Dkt. #25 at 22-27. Defendant has requested that the Court order the parties to meet and confer regarding the proposed notices. See Dkt. #25 at 22-23 n.29. Plaintiffs are amenable to doing so prior to finalizing the notices. See Dkt. #28 at 13. The Court accordingly orders the parties to meet and confer regarding the language and form of the proposed notices. Within 21 days of this Order, the parties shall jointly file proposed notices and an opt-in form for the Court's review.

### d. Production of Potential Opt-In Plaintiff Information

Plaintiffs request production of information regarding potential opt-in plaintiffs, including (1) full names, (2) last known addresses, (3) telephone numbers, (4) e-mails, and (5) dates and locations of employment. See Dkt. #23 at 17-18. Consistent with precedent from this District, the Court will order defendant to produce all putative opt-in plaintiffs' names, last known addresses, and email addresses. See Bolding, 2017 WL 6406136, at *3. Out of concerns for privacy, the Court declines to require production of telephone numbers at this time and will not order notice by text message. See Wilson, 2014 WL 7340480, at *9. For similar reasons, and because the Court does not view the information as relevant at this stage, the Court declines to require production of dates and locations of employment.

---

[8] Further, the Court notes that plaintiffs' claim is not that defendant improperly delayed FLSA overtime pay, but that it excluded certain incentive pay from its regular rate calculations entirely. See Dkt. #1 at ¶¶ 42-43, 65-75, 110.

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION - 8

## III. CONCLUSION

For the foregoing reasons, the Court HEREBY ORDERS that plaintiffs' motion for conditional certification (Dkt. #23) is GRANTED as to the "off the clock" claim. As to the FLSA overtime calculation claim, plaintiffs' motion is DENIED.

IT IS FURTHER ORDERED that defendant shall produce to plaintiffs the names, last known addresses, and email addresses of all "similarly situated" Associate Experts, Experts, and Senior Experts within 21 days of this Order, so that plaintiffs may notify them of the collective action.

IT IS FURTHER ORDERED that the parties shall meet and confer[9] to prepare a proposed stipulated notice, reminder notice, and opt-in form. The parties are ORDERED to submit this information in a joint filing within 21 days of this Order. If the parties fail to reach agreement, any disputes shall be noted in the filing or in separate notices filed by each party.

IT IS FURTHER ORDERED that once the agreed notices and opt-in forms are approved, putative opt-in plaintiffs shall have 60 days from the date notice is mailed to opt in. Plaintiffs shall be permitted to send a single reminder notice to each putative opt-in plaintiff 30 days after initial notice is sent. For the reasons explained above, potential opt-in plaintiffs shall not be notified by text message.

DATED this 7th day of April, 2020.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[9] The Court authorizes the parties to meet and confer via videoconference given concerns related to the developing outbreak of Coronavirus Disease 2019 (COVID-19).

ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION - 9