1

2

HONORABLE ROBERT S. LASNIK

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

**KRISTINA CHETWOOD** and **SANDRA CASTELLON-GONZALEZ,** individually, and on behalf of others similarly situated,

11

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.
2:19-cv-00458-RSL

12

Plaintiffs,

13

v.

**STIPULATION AND  ORDER TO FILE FIRST AMENDED COMPLAINT, PURSUANT TO FED. R. CIV. P. 15 AND LOCAL RULE 15**

14

**T-MOBILE USA, INC.**

15

Defendant.

16

17

18

19

20

21

22

23

24

25

26

STIPULATION AND  ORDER TO
FILE FIRST AMENDED
COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

1

2        Plaintiffs, Kristina Chetwood and Sandra Castellon-Gonzalez ("Plaintiffs"), and

3    Defendant, T-Mobile USA, Inc. ("Defendant"), through their undersigned counsel, hereby

4    stipulate and agree as follows:

5        1.      On January 8, 2021, the parties negotiated and reached agreement on the basic

6    terms of a class and collective settlement at a private mediation.

7        2.      During the mediation, Plaintiffs asserted and the parties agreed to resolve several

8    claims that were not pled in the initial complaint that was filed on March 28, 2019. *See* Dkt. No.

9    1. The attached First Amended Complaint adds those claims along with additional class

10   representatives. Similarly, the parties agreed to dismissal of certain claims initially included in the

11   complaint and those claims are removed from the First Amended Complaint.

12       3.      Since the parties' mediation on January 8, 2021, the parties have negotiated the

13   terms of a detailed settlement agreement, as well as the contents of various other related documents

14   and filings. Having now executed the settlement agreement, the parties will be filing a motion for

15   the Court's preliminary approval of their settlement provided that the Court permits Plaintiffs to

16   file their proposed First Amended Complaint.

17       4.      Given the parties' good faith and ongoing efforts to negotiate a resolution of this

18   matter following their mediation on January 8, 2021, and the parties' recent execution of a

19   settlement agreement, the parties hereby stipulate that there is "good cause" pursuant to Federal

20   Rule of Civil Procedure 16(b)(4), Local Rule 16(b)(6), and this Court's Minute Order Setting Trial

21   Date & Related Dates dated April 21, 2020 (Dkt. No. 44) (the "Minute Order"), to allow for the

22   filing of Plaintiffs' proposed First Amended Complaint after the March 7, 2021, deadline for filing

23   amended pleadings as specified in the Minute Order.

24       5.      The parties hereby stipulate and agree that, by stipulating to the filing of the

25   Amended Complaint, the Defendant does not waive any argument or defense against any potential

26   later claim (should the parties' settlement agreement not become effective for any reason) by

Plaintiffs that the state-law class claims asserted in the First Amended Complaint should relate

STIPULATION AND ORDER TO
FILE FIRST AMENDED
COMPLAINT - 2
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

back to the date of the filing of the initial Complaint pursuant to Federal Rule of Civil Procedure 15(c).  The parties have also agreed that, if the Court declines to allow the Plaintiffs to file of the First Amended Complaint, the parties' settlement agreement shall be null and void and without effect.

6. Pursuant to Local Rule 15, a copy of the proposed First Amended Complaint is attached hereto as *Exhibit A*, and a copy of the proposed First Amended Complaint showing as redlines the changes made to the initial complaint to create the First Amended Complaint is attached hereto as *Exhibit B*.

Accordingly, this matter having come before the Court on the Stipulation of the Parties, the Court having reviewed the Stipulation and being otherwise duly advised of the circumstances:

**IT IS HEREBY ORDERED** Plaintiffs may file the proposed First Amended Complaint, pursuant to Fed. R. Civ. P. 15(a)(2) and Local Rule 15.

**IT IS SO ORDERED.**

Dated: May 14, 2021.

_____
Robert S. Lasnik
United States District Court Judge

**Stipulated and Agreed to:**

/s/ Charles R. Ash, IV
Charles R. Ash, IV (PHV)
Kevin J. Stoops (PHV)
Sommers Schwartz, P.C.
Attorneys for Plaintiffs
One Towne Square, 17th Floor
Southfield, Michigan  48076
(248) 355-00300
crash@sommerspc.com
kstoops@sommerspc.com

/s/ Daniel P. Hurley
Daniel P. Hurley (WSBA #32842)
Patrick M. Madden (WSBA #21356)
Stephanie Wright Pickett (WSBA #28660)
K&L Gates, LLP
Attorneys for Defendant
925 4th Avenue, Suite 2900
Seattle, Washington 98104-1158
(206) 623-7580
Daniel.Hurley@klgates.com
Patrick.Madden@klgates.com
Stephanie.Picket@klgates.com

STIPULATION AND PROPOSED
ORDER TO FILE FIRST AMENDED
COMPLAINT - 3
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

HONORABLE ROBERT S. LASNIK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTINA CHETWOOD, SANDRA CASTELLON-GONZALEZ, PAUL ROSE, JAIRO MARQUEZ, SAMANTHA STEPHENS, RICHARD NEDBALEK, and BRIANA WHITE individually, and on behalf of others similarly situated, | CIVIL ACTION NO. 2:19-cv-00458-MAT **FIRST AMENDED COMPLAINT – CLASS/COLLECTIVE ACTION** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| T- MOBILE USA, INC. | |
| Defendant. | |

Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White, individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendant T-Mobile USA, Inc., and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs Kristina Chetwood and Plaintiff Sandra Castellon-Gonzalez (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant T-

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

1

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

Mobile USA, Inc. (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq.;* the Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*.; the Missouri Minimum Wage Law, R.S. Mo. 290.501, et seq.; the Oregon Wage Laws, Or. Rev. Stat. Ann §§ 652.120 *et seq.*, 653.045, 653.160, and 653.261; the New Mexico Minimum Wage Act, §§ 50-4-19, et seq.; and the Washington Minimum Wage Act and Washington Rebate Act.

2.      Defendant T-Mobile USA, Inc. refers to itself as a "mobile-solutions provider" who offers the "best-in-class business customer satisfaction and innovative products – all supported by America's fastest, most-advanced network." *See* https://www.t-mobile.com/business (last visited on 2/22/19). Among other things, they offer "very small, small/medium, and large enterprise wireless service." *Id*. Additionally, T-Mobile provides every day consumers with wireless voice, messaging, and data services. According to annual reports, Defendant operates the third largest wireless network in the United States, with over 65.5 million customers and annual revenues of over $32 billion.

3.      Defendant is headquartered in Bellevue, Washington. The present lawsuit covers only original T-Mobile call centers and not any legacy Sprint call centers. Since the date this lawsuit commenced there was a merger between T-Mobile and Sprint.

4.      In order to service their customers, Defendant employs hourly customer service representatives at brick-and-mortar call centers throughout the country, internally referred to by Defendant as: Customer Service Associate Experts; Customer Service Experts; or Senior Customer Service Experts (hereinafter referred to collectively as "CSRs").

5.      As evidenced by the position descriptions on Defendant's website, the CSRs all perform essentially the same tasks, regardless of which call center they are employed in, and the difference in title primarily reflects the tenure of the CSR.  All CSRs are paid on an hourly basis, plus commissions, incentives, or other non-discretionary bonuses related to the CSR's job performance.

6.      Defendant employed each of the Plaintiffs as CSRs during the past three (3) years at their

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

brick-and-mortar call center in Wichita, Kansas.   Additionally, Plaintiff Chetwood also works at Defendant's brick-and-mortar call center in Mission, Texas where all practices and procedures material to this lawsuit are the same.

7.      Defendant requires their CSRs to work a set, full-time schedule. However, Defendant did not begin compensating CSRs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSRs not being paid for all time worked and for all of their overtime compensation in violation of the FLSA and the relevant state laws.

8.      Defendant's CSRs use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the call centers.   These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

9.      Defendant's CSRs working onsite at the call centers perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications.

10.     In addition to the off-the-clock work discussed herein, Defendant also failed to include commissions and other incentives received in the calculation of CSRs' overtime rates, in violation of the FLSA and other state labor laws.

11.     Defendant's CSRs' jobs described herein are non-exempt positions.

12.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."   Fact Sheet #64 at p. 2.

13.     In order to perform their jobs, Plaintiffs were required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from

seven (7) to thirteen (13) minutes per day, but extending even longer on days when Plaintiff and other CSRs experienced technical issues related to Defendant's computers, software or programs.

14.     Plaintiffs were not actually "clocked in" for their shift until *after* the computer start-up/log-in process was complete and they logged into the applicable programs, software, servers, and applications, meaning that Plaintiffs and other CSRs worked at least seven (7) to thirteen (13) minutes each per shift that they were never compensated for. This off-the-clock time that Defendant's CSRs spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of their job responsibilities as CSRs.

15.     Defendant provides their CSRs with one unpaid 30-minute lunch break per shift. Defendant's Employee Handbook requires CSRs to clock-in and out of the time keeping system for all lunch breaks.

16.     Defendant, however, requires its CSRs to perform off-the-clock, unpaid work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendant's computer programs, software programs, servers, and applications. On an average shift, Plaintiffs and other CSRs perform three (3) to four (4) minutes of off-the-clock, mid-shift, unpaid, work during their lunch breaks.

17.     Between the pre-shift start-up/log-in process and the log-in/off during lunch period time, Defendant failed to pay Plaintiffs an amount equal to at least ten (10) to seventeen (17) minutes of compensable time *per shift*. Additionally, Defendant failed to compensate Plaintiffs for other off-the-clock time spent performing work duties, including during their rest and meal periods and before and after shifts, such as answering questions of supervisors and assisting other team members.

18.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:   "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

4

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

and post-shift job-related activities must be kept." *Id*.

19.     Defendant knew or could have easily determined how long it took for the CSRs working at the call centers to complete the pre-shift start-up/log-in process, and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work they performed, but did not.

20.     Plaintiffs bring this action on behalf of themselves and all other similarly situated hourly CSRs who worked for Defendant at any call center in the United States, to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

21.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

22.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

23.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendant's CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

24.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

25.     This Court has personal jurisdiction over Defendant because Defendant's headquarters are in this district and Defendant resides in this district.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the decisions and policy-making that give rise to the Plaintiffs' claims occurred in this district.

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

1

**PARTIES**

2

27.     Plaintiff Christina Chetwood is a resident of Mission, Texas and was employed by

3

Defendant first as an hourly CSR at the Defendant's call center in Wichita, Kansas, then was subsequently

4

transferred to the call center in Mission, Texas.   Defendant employed her as a CSR within the time period

5

relevant to this case. Plaintiff Chetwood signed a consent form to join this lawsuit, which is attached

6

hereto as ***Exhibit A***.

7

28.     Plaintiff Sandra Castellon-Gonzalez is a resident of Wichita, Kansas. Defendant employed

8

her as an hourly CSR at Defendant's call center in Wichita, Kansas within the relevant time period.

9

Plaintiff Castellon-Gonzalez signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit***

10

***B***.

11

29.     Plaintiff Paul A. Rose is a resident of Ozark, Missouri and was employed by Defendant

12

during the class period as an hourly CSR at Defendant's call center in Springfield, Missouri.   He has filed

13

a consent to join this lawsuit.

14

30.     Plaintiff Samantha Stephens is a resident of Colorado and was employed by Defendant

15

during the class period as an hourly CSR at Defendant's call center in Colorado Springs, Colorado.   He

16

has filed a consent to join this lawsuit.

17

31.     Plaintiff Marquez, Jairo is a resident of New Mexico and was employed by Defendant

18

during the class period as an hourly CSR at Defendant's call center in Albuquerque, New Mexico.   He

19

has filed a consent to join this lawsuit.

20

32.     Plaintiff Richard Nedbalek is a resident of Washington and was employed by Defendant

21

during the class period as an hourly CSR at Defendant's call center in Bellingham, Washington.   He has

22

filed a consent to join this lawsuit

23

33.     Plaintiff Briana Lee White is a resident of Salem, Oregon and was employed by Defendant

24

during the class period as an hourly CSR at Defendant's call center in Salem, Oregon.   She has filed a

25

consent to join this lawsuit.

26

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

6

34.     Opt-In Plaintiff Auriel Calvert is a resident of Haysville, Kansas and is currently employed by Defendant as an hourly CSR at Defendant's call center in Wichita, Kansas.   Opt-in Plaintiff Calvert signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit C***.

35.     Defendant T-Mobile USA, Inc. is a foreign for-profit corporation, headquartered in Bellevue Washington and formed in the State of Delaware.   Defendant's principal mailing address is 12920 SE 38th St., C/O Julie Nelson, Sr. Paralegal, Bellevue, Washington, 98006-1350.   Defendant's registered agent's (Corporation Service Company) address is 300 Deschutes Way SW, Ste. 304, Tumwater, Washington, 98501-0000.

36.     Defendant is a wireless network operator whose majority shareholder is the German telecommunications company Deutsche Telekom.

## GENERAL ALLEGATIONS

37.     On August 15, 2018, Defendant announced that it ended "the hated phone menu & the call center runaround" when it launched the "T-Mobile Team of Experts."   "With a Team of Experts, when you call or message T-Mobile, you get a tight-knit team dedicated to you and others in your city.   There are no robots or automated phone menus.   You now have your own entourage at T-Mobile dedicated to you     and     your     happiness."     *See*,     https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited on 3/26/19).

38.     Although the "entourage at T-Mobile" referenced in the preceding paragraph are the employees referred to herein as CSRs, Defendant's call center operations long predate this announcement. As stated above, Plaintiff began her employment with Defendant as a CSR in 2014.

39.     Defendant's Customer Care division consists of dozens of call centers throughout the United States where CSRs are employed to assist Defendant's customers.   In fact, in order for one of Defendant's customers to reach a CSR, they must only "call 611 from your T-Mobile phone or message from   the   T-Mobile   App   or   iMessage   using   Apple   Business   Chat."     *See*,   https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858     (last

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

7

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

visited on 3/26/19).

40.     The locations of Defendant's call centers in which CSRs are employed include: Albuquerque, New Mexico; Augusta, Georgia; Colorado Springs, Colorado; Meridian, Idaho; Nashville, Tennessee; Oakland, Maine; Richmond, Virginia; Springfield, Missouri; Wichita, Kansas; Mission, Texas; Birmingham, Alabama; Charleston, South Carolina; Tampa, Florida; and Chattanooga, Tennessee.

41.     The job duties of CSRs are the same from call center to call center, as evidenced by the identical job postings on Defendant's website for each location.   Additionally, the required qualifications for the CSR jobs are identical at each call center location.   *Exhibit D*, Job Postings with Position Description.

42.     Defendant compensated CSRs on a bi-weekly basis and paid them a base hourly rate, plus commissions and other incentives.   Plaintiff Chetwood's most recent hourly rate was $15.23 per hour.

43.     Defendant earns revenue and profits from the services of Plaintiffs and other CSR employees.   In fact, Defendant's website boasts that "[w]ith a Team of Experts, Net Promoter Score (NPS) – or likelihood to recommend – increased an unprecedented 56%, putting T-Mobile on par with other brands famous for their customer care." *See* https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited 3/26/19).   "In Q2 of 2018 – even before Team of Experts went live nationwide today – customer service costs for postpaid were the lowest in company history due to fewer calls per account and callbacks – making Team of Experts a win, not just for customers and employees, but for shareholders, too." *Id.*

44.     Defendant's Employee Handbook claims it is "committed to providing a competitive compensation program that will attract, retain, develop, and reward employees.   Total compensation includes base salary and may include short-term incentives, such as bonus and sales commission, and long-term incentives such as restricted stock units.   Certain positions may be eligible for other types of pay to recognize different work conditions and requirements such as shift work.   Premium and call-out pay is available to hourly employees who are scheduled to be available on-call outside the normal work

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

8

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

schedule."

45.    Defendant's Employee Handbook also states "[m]anagers are responsible for reviewing and approving employee time entry data on a regular basis (for both non-exempt and/or exempt direct reports) to identify any errors and to ensure they know the time worked by direct reports." "Managers must complete their review of time entries for all direct reports before the time entry deadline. Failure of managers to complete their review may result in performance improvement action up to and including termination."

46.    Regarding overtime pay, the Employee Handbook provides that "[n]on-exempt employees receive one-and-one-half times their regular hourly rate for all hours worked over 40 hours per workweek unless otherwise required by law."

47.    Despite Defendant's promise to pay non-exempt employees, like CSRs, at one-and-one-half times their regular hourly rate, Defendant failed to calculate the CSRs' regular hourly rate correctly because they did not include commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of their regular hourly rate.

48.    Regarding overtime pay calculations, Defendant's Employee Handbook makes no reference to including commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of overtime premiums.    Instead, the Employee Handbook simply states: "[o]vertime pay for non-exempt employees is calculated based upon the total hours worked per week, not based on the number of hours worked in any one day, unless otherwise required by law."

49.    According to the Employee Handbook, Defendant "expects all employees, both exempt and non-exempt, to work extra hours when required by business needs."    However, "non-exempt employees must use good judgment in deciding whether to work overtime without prior management approval.    A manager will review any unauthorized overtime work by a non-exempt employee to determine whether it was necessary." "[T]he employee may be counseled or subject to PIP, as TMUS deems appropriate, for working overtime without prior authorization." "If business operations will not be

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

9

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

compromised, management may reduce the scheduled hours of an employee to avoid the working of overtime, if permitted by applicable law."

**Pre-Shift Off-the-Clock Work**

50.    Defendant records the hours worked by CSRs using a computerized timekeeping system called Kronos.

51.    At the start of the shift, the CSRs must enter the building using their security badge swipe. Next, they proceed to identify a work station for the shift.    The CSRs do not work at the same computer every shift.

52.    After locating a work station, the CSRs engage in seven (7) to thirteen (13) minutes of pre-shift off-the-clock work booting up their computers and logging into Defendant's time keeping system. This process can often take even longer, particularly, if the CSR experiences technical difficulties with the computer systems.

53.    First, CSRs must turn on their computer and wait for Windows to load, then enter a username and password.    Once logged into Windows, the program Skype automatically launches.    CSRs must wait for Skype to load, then enter in another username and password.    After Skype has loaded, CSRs have the first opportunity to load and log into the timekeeping system.

54.    As stated above, CSRs spend seven (7) to thirteen (13) minutes loading and logging into essential computer programs *before* they are able to log into the timekeeping system and begin getting compensated.    This process took even longer if the CSR experienced technical difficulties, which often required the CSR to perform one or more restarts on the computer.

**Mid-Shift (Lunch) Off-the-Clock Work**

55.    Defendant provided CSRs with a one hour unpaid lunch during the standard eight (8) to ten (10) hour shifts.

56.    At the start of their lunch period, CSRs must first log-out of Avaya to stop incoming calls. Next, they clock out of Kronos (the timekeeping system), then lock their computers and begin their lunch.

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

10

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

57.     After twenty (20) minutes, CSRs are automatically logged out of the program Samson, which is linked to the program Quickview.   These two programs are used in conjunction with one another to access the customer information CSRs needed to perform their job duties.

58.     When CSRs return from lunch to their workstations, they must first log back into Windows with their username and password, then reboot Quickview and Samson, so that the two programs can link together.   This process results in an additional three (3) to four (4) minutes of off-the-clock work.

59.     After Quickview and Samson are properly reloaded and synced, the CSRs clock back into Kronos and log back into Avaya to begin receiving calls, but not until after undertaking three (3) to four (4) minutes of off-the-clock work at the end of every lunch.

**The Time Spent Loading and Logging into Computer Programs is Compensable**

60.     Throughout their employment with Defendant, Plaintiffs regularly worked off-the-clock as part of their jobs as CSRs.

61.     Between the pre-shift start-up/log-in process and the lunch period log-in process, Defendant failed to pay Plaintiffs and other CSRs an amount equal to at least ten (10) to seventeen (17) minutes of compensable time per shift. Additionally, Defendant failed to compensate Plaintiffs and other CSRs for off-the-clock time spent performing other work duties, including during their rest and meal breaks and before or after shifts answering questions from supervisors, assisting other team members, or otherwise performing work.

62.     At all relevant times, Defendant was able to track the amount of time that Plaintiffs and the putative Class spent in connection with the pre-shift and lunch break work activities; however, Defendant failed to document, track, or pay Plaintiffs and other CSRs for the work they performed in connection with each shift.

63.     Defendant knew or could have easily determined how long it took for the Plaintiffs and the other CSRs to complete the pre-shift start-up/log-in process and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work that they performed,

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

11

1

2

but did not.

3

64.     At all relevant times, Defendant was Plaintiffs' "employer" and Defendant directed and directly benefited from the work performed by Plaintiffs and other CSRs during the pre-shift start-up/log-in process and in connection with the mid-shift off-the-clock work during their meal breaks.

4

5

65.     At all relevant times, Defendant controlled Plaintiffs' and other CSRs' schedules, duties, protocols, applications, assignments, and employment conditions.

6

7

66.     At all relevant times, Plaintiffs and all other CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

8

9

67.     At all relevant times, Defendant used their attendance and adherence policies against the CSRs in order to pressure them into performing off-the-clock work.

10

11

68.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and other CSRs of wages owed for off-the-clock work that Plaintiffs and other CSRs performed. Because Plaintiffs and other CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiffs and other CSRs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

12

13

14

15

16

69.     Defendant knew or should have known that Plaintiffs and other CSRs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA and the relevant state laws.

17

18

19

**Failure to Include Incentive Pay in Regular Rate Calculations**

20

70.     Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).   It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

21

22

23

71.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.   29 C.F.R. §778.109. "The regular hourly rate of pay is determined

24

25

26

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

12

by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

72.     Defendant's compensation scheme, which included an hourly rate, plus commissions and other incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

73.     An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.

> This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

74.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendant to establish that any payment should be excluded. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

75.     Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

76.     Once the total amount of an employee's "regular" compensation is deduced, "the

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

13

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

77.     Because Defendant's compensation scheme failed to incorporate the regular rate of pay, Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

**Exemplary Pay Periods**

78.     Defendant pays CSRs on a bi-weekly basis. An example of a particular pay period where Defendant failed to pay Plaintiff Kristina Chetwood overtime for all hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), was during the pay period of November 6, 2016 to November 19, 2016:

> ➢ Plaintiff Chetwood was paid for 73 hours of regular time and 9.16 hours of overtime, meaning in one of the two weeks Defendant documented her working well over 40 hours.   *See Exhibit E*.

> ➢ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for the particular workweek she worked over 40 hours.

> ➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

79.     As an example of one particular pay period where Defendant failed to pay Opt-in Plaintiff Auriel Calvert overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), during the pay period of July 15, 2018 to July 28, 2018:

> ➢ Plaintiff Redmond was paid for 80 hours of regular time over the two-week pay period and 11.55 hours of overtime.   *See Exhibit F*.

> ➢ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

14

should have been paid an additional approximately 50 to 85 minutes of overtime compensation for both workweeks in this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

80.     As an example of one particular pay period where Defendant failed to pay Plaintiff Sandra Castellon-Gonzalez overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), during the pay period of September 10, 2017 to September 23, 2017:

➢ Plaintiff Castellon-Gonzalez was paid for 80.01 hours of regular time and 17.07 hours of overtime.   *See Exhibit G*.

➢ With pre- and mid -shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for each workweek during this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked

## **COLLECTIVE ACTION ALLEGATIONS**

81.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members").   Plaintiffs reserve the right to amend this definition as necessary.

82.     Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

83.      Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

15

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

1    practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

2

3      84.     Additionally, the claim that Defendant failed to include commissions, incentives, and other

remuneration paid in the overtime rate calculations of the putative collective members is a common policy.

4

5      85.     The key legal issues are also the same for putative collective members, to wit: whether the

off-the-clock time they spend, including in connection with performing pre-shift and lunch break

6

7 activities, is compensable under the FLSA.  Also, whether Defendant failed to properly calculate the

overtime rate for the putative collective members.

8

9      86.     Plaintiffs estimate that the putative collective members, including both current and former

employees over the relevant period, will include several hundred members. The precise number of putative

10

11 collective members should be readily available from a review of Defendant's personnel and payroll

records.

12

13 ## RULE 23 STATE LAW CLASS ACTION ALLEGATIONS

14      87.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own

behalf and on behalf of the following state law classes:

15

16 **The Colorado Class is defined as follows:**

17 > *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Colorado at any time during the last three years.*

18

19 **The Missouri Class is defined as follows:**

20 > *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Missouri at any time during the last three years.*

21

22 **The Oregon Class is defined as follows:**

23 > *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Oregon at any time during the last three years.*

24

25 **The New Mexico Class is defined as follows:**

26 > *All similarly situated current and former hourly customer service representatives*

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

16

*who worked for Defendant at any call center in New Mexico at any time during the last three years.*

**The Washington Class is defined as follows:**

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Washington at any time during the last three years*

(hereinafter referred to as the "Rule 23 State Classes").   Plaintiffs reserve the right to amend this definition as necessary.

88.     The members of the Rule 23 State Classes are so numerous that joinder of all Rule 23 State Class members in this case would be impractical.   Plaintiffs reasonably estimate there are hundreds of Rule 23 State Class members in each state.   Rule 23 State Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

89.     There is a well-defined community of interest among Rule 23 State members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 State Class. These common legal and factual questions, include, but are not limited to, the following:

> a.     Whether the pre-shift time that Rule 23 State Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;
>
> b.     Whether the time that Rule 23 State Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time;
>
> c.     Whether the time that Rule 23 State Class members spend addressing questions, being interrupted, helping others, or otherwise performing work during rest and meal breaks and before and after shifts is compensable time or interfered with their entitlement to rest and meal breaks;
>
> d.     Whether Defendant's failure to pay the Rule 23 State Class members in Colorado for this pre- and mid -shift time resulted in a violation of C.R.S. §§ 8-6-101, *et seq. and* C.R.S. §§ 8-4-101, *et seq.*;
>
> e.     Whether Defendant's failure to pay the Rule 23 State Class members in Missouri for this pre- and mid -shift time resulted in a violation of § 290.502 R.S.Mo., et seq.;

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

17

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

f.    Whether Defendant's failure to pay the Rule 23 State Class members in Oregon for this pre- and mid -shift time resulted in a violation of Or. Rev. Stat. Ann § 653.045, Or. Rev. Stat. Ann § 652.120, Or. Rev. Stat. Ann § 652.140(1), Or. Rev. Stat. Ann § 652.150, and Or. Rev. Stat. Ann § 652.200;

g.    Whether Defendant's failure to pay the Rule 23 State Class members in New Mexico for this pre- and mid -shift time resulted in a violation of N.M. Stat. Ann. § 50-4-2, N.M. Stat. Ann. §§ 50-4-19, *et seq.*, and N.M. Stat. Ann. § 50-4-22;

h.    Whether Defendant's failure to pay the Rule 23 State Class members in Washington for this pre- and mid -shift time resulted in a violation of RCW 49.46.020, RCW 49.46.130(1), Wash. Rev. Code § 49.52.050, and Wash Rev. Code § 49.52.070;

i.    Whether Defendant's failure to pay the Rule 23 State Class members for this pre- and mid -shift time resulted in a violation of the overtime requirements established by the relevant state laws; and

j.    Whether Defendant failed to calculate and pay proper wage rates, regular rates, and overtime rates in violation of the relevant state laws.

90.    Plaintiffs' claims are typical of those of the Rule 23 State Classes in that they and all other Rule 23 State Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 State Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 State Class members.

91.    Plaintiffs will fully and adequately protect the interests of the Rule 23 State Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 State Class.

92.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 State Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

18

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

throughout the nation.

93.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

94.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

95.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 State Classes and declaratory relief is appropriate in this case with respect to the Rule 23 State Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### Alleging Violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (On behalf of the FLSA Collective)

96.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

97.     At all times relevant to this action, Defendant was Plaintiffs' employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

98.     Defendant engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

99.     At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

100.    Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

19

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

101.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

102.    At all times relevant to this action, Defendant required Plaintiffs and all similarly situated current and former Class members to perform at least seven (7) to thirteen (13) minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

103.    At all times relevant to this action, Defendant failed to compensate Plaintiffs and all similarly situated current and former Class members for at least three (3) to four (4) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

104.    The off-the-clock work performed by Plaintiffs and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

105.    In workweeks where Plaintiffs and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

106.    Defendant failed to properly calculate the regular hourly rate for Plaintiffs and other Class members by not including non-discretionary bonuses and commissions in the calculation of their overtime rates.

107.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for their CSRs to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiffs and the Class for the work they performed, but did not.

108.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

20

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**Alleging Violations of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq.*, and the**
**Colorado Wage Claim Act, C.R.S. §§ 8.4.101 *et seq.***
**(On Behalf of the Rule 23 Colorado Class)**

109.    Plaintiff, Samantha Stephens, re-alleges and incorporates all previous paragraphs herein.

110.    The Colorado "Minimum Wage Act," C.R.S. §§ 8-6-101, *et seq.*, authorizes the Director of the Colorado Division of Labor to issue orders establishing minimum wages for Colorado employees. C.R.S. § 8-6-107.    Pursuant to Colorado Minimum Wage Order Number 35, employers must pay their employees minimum wages "for all hours worked." *See*, 7 CCR 1103-1(3). A Colorado employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for a lesser wage.   C.R.S. § 8-6-118.

111.    The employer must pay time and one-half of the regular rate of pay for any work in excess of: (a) forty hours per workweek; (b) twelve hours per workday; or (c) twelve consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages. 7 CCR 1103-1(3).

112.    Additionally, Minimum Wage Order Number 35 requires that employees be provided with a non-compensable meal period as one that is "uninterrupted and duty free."   Additionally, "employees must be completely relieved of all duties and permitted to pursue personal activities to qualify as a non-work, uncompensated period of time.  *Id.*   Therefore, if the employee has a duty to the employer during the period at issue, the period is compensable.

113.    The Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq.* provides "[a]ll wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer…."

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

21

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

C.R.S. § 8-4-103(1)(a).   Furthermore, an employee whose wages have not been paid as required by the Colorado Wage Claim Act may bring a civil action to recover his or her unpaid wages, plus reasonable attorneys' fees and costs.   *See*, C.R.S. § 8-4-110.

114.   In failing to compensated the Colorado Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Colorado state laws referenced above.

115.   As a result, the Rule 23 Colorado Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 Colorado Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Colorado state laws at an amount to be proven at trial.

**COUNT III**
**Alleging Violations of the Missouri Minimum Wage Law, R.S. Mo. 290.501 *et seq.*,**
**(On Behalf of the Rule 23 Missouri Class)**

116.   Plaintiff, Paul Rose, re-alleges and incorporates all other paragraphs as though fully stated herein.

117.   The Missouri Minimum Wage Law provides that employees are entitled to minimum wage, § 290.502 R.S.Mo., and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). § 290.505 R.S.Mo.   Furthermore, § 290.527 R.S.Mo., allows an employee to bring a civil action against to recover "the full amount of the wage rate and an additional equal amount as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury."

118.   Any employer who pays any employee less wages than the wages to which the employee is entitled under or by virtue of sections 290.500 to 290.530 shall be liable to the employee affected for the full amount of the wage rate and an additional amount equal to twice the unpaid wages as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury. The employee may bring any legal action necessary

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

22

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

to collect the claim. Any agreement between the employee and the employer to work for less than the wage rate shall be no defense to the action. All actions for the collection of any deficiency in wages shall be commenced within three years of the accrual of the cause of action. § 290.527 R.S.Mo.

119.    In failing to compensated the Missouri Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Missouri state laws referenced above.

120.    As a result, the Rule 23 Missouri Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 Missouri Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Missouri state laws at an amount to be proven at trial.

**COUNT IV**
**Alleging Violations of the Oregon Wage Laws, Or. Rev. State. Ann. § § 652.120 *et seq.,* 653.045, 653.160, and 653.261)**
**(On Behalf of the Rule 23 Oregon Class)**

121.    Plaintiff, Briana White, re-alleges and incorporates all other paragraphs as though fully stated herein.

122.    The Oregon Wage Laws require employers to maintain detailed records regarding the payment of wages to employees, which includes the actual hours worked each week.    Or. Rev. Stat. Ann § 653.045.   Oregon Wage Laws require overtime to be paid at 1.5 times the employee's regular hourly rate for all hours worked in excess of 40 in a workweek. Or. Rev. Stat. Ann § 653.261.

123.    Under The Oregon Wage Laws, specifically, Or. Rev. Stat. Ann § 652.120, an employer is required to establish and maintain a regular payday on which date employees are paid all wages due and owing to them. Or. Rev. Stat. Ann § 652.120(a).   The payday may not extend beyond a period of 35 days from the time that employee performed the work or from the date of the last regular payday. Or. Rev. Stat. Ann § 652.120(b).

124.    The Oregon Wage Laws also provide requirements for the payment of wages upon

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

23

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

termination of employment.   Specifically, "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." Or. Rev. Stat. Ann § 652.140(1).   Furthermore, "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases … then as a penalty for the non-payment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until action therefor is commenced.   However, in no case shall the penalty wages or compensation continue for more than 30 days from the due date."[1] Or. Rev. Stat. Ann § 652.150.

125.   "In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim." Or. Rev. Stat. Ann § 652.160.

126.   The Oregon Wage Laws also provides for the payment of the employee's attorney fees in recovering unpaid wages. Or. Rev. Stat. Ann § 652.200.

127.   Or. Rev. Stat. Ann § 652.200 states that an employer who pays an employee less than the wages to which the employee is entitled under ORS § 653.010 to § 653.261 is liable to the employee affected: (a) for the full amount of the wages … and (b) for civil penalties provided in ORS § 652.150.

128.   The penalty provided by ORS 652.150 is the wages or compensation of the employee shall continue from the due date therefor at the same hourly rate for eight hours per day until paid or until action therefore is commenced.   However, in no case shall the penalty wages or compensation exceed 30 days from the due date. ORS § 652.150(1).

129.   If the employee submits a written notice of nonpayment, the penalty may not exceed 100

---

[1]  Employers are also required to pay the monetary equivalent of any earned paid vacation time at the time employment ends using the employee's normal rate of pay.

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

24

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

percent of the employee's unpaid wages unless the employer fails to pay the full amount of the employee's unpaid wages within 12 days after receiving the notice.   If the employee fails to submit a written notice of nonpayment, the penalty may not exceed 100 percent of the employee's unpaid wages or compensation. ORS § 652.150(2).

130.     In failing to compensated the Oregon Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Oregon state laws referenced above.

131.     As a result, the Rule 23 Oregon Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 Oregon Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Oregon state laws at an amount to be proven at trial.

### COUNT V
**Alleging Violations of the New Mexico Minimum Wage Act, §§ 50-4-19, et seq.**
**(On Behalf of the Rule 23 New Mexico Class)**

132.     Plaintiff, Jairo Marquez, re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

133.     The New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19, *et seq.* provides that employees are entitled to minimum wages and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). N.M. Stat. Ann. § 50-4-22.

134.     N.M. Stat. Ann. § 50-4-26 allows an employee who has not been paid in accordance with the New Mexico Minimum Wage Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

135.     The New Mexico Minimum Wage Act entitles employees to compensation for every hour worked in a workweek. *See* N.M. Stat. Ann. §§ 50-4-19, *et seq.*; § 50-4-2.

136.     An employer in New Mexico must also designate regular pay days, not more than sixteen days apart, as days fixed for the payment of wages to all employees.   N.M. Stat. Ann. § 50-4-2 (A).

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

25

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

137.    The employer must pay for all services rendered and due during these pay periods.   *Id.* Furthermore, "an employer shall pay *wages in full*, less lawful deductions and less payroll deductions authorized by the employer and employee." N.M. Stat. Ann. § 50-4-2 (B).

138.    The New Mexico Minimum Wage Act also imposes record keeping requirements on employers.   Specifically, the Act provides that "[a]n employer shall provide an employee with a written receipt that identifies the employer and sets forth the employee's gross pay, the number of hours worked by the employee, the total wages and benefits earned by the employee and an itemized listing of all deductions withheld from the employee's gross pay." N.M. Stat. Ann. § 50-4-2 (B).

139.    The New Mexico Minimum Wage Act also entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* N.M. Stat. Ann. § 50-4-22.

140.    For any CSRs in New Mexico that Defendant discharged, any unpaid wages were due within five (5) days of discharge.   N.M. Stat. Ann. § 50-4-4 (A).   The wages of CSRs that quit were due the pay period after the employee quit.   N.M. Stat. Ann. § 50-4-4 (B); N.M. Stat. Ann. § 50-4-5. The New Mexico Minimum Wage Act permits an employee to recover any unpaid wages (including straight time) in a civil lawsuit. N.M. Stat. Ann. § 50-4-4 (C).

141.    N.M. Stat. Ann. § 50-4-26(C) states that "[i]n addition to penalties provided pursuant to this section, an employer who violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."

142.    As used in N.M. Stat. Ann. § 50-4-26(C) the term "minimum wages" includes overtime wages. *See*, N.M. Stat. Ann. § 50-4-22(E).

143.    In failing to compensated the New Mexico Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the New Mexico state laws referenced above.

144.     As a result, the Rule 23 New Mexico Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 New Mexico Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under New Mexico state laws at an amount to be proven at trial.

<u>COUNT VI</u>
**Alleging Violations of the Washington Minimum Wage Act and Washington Rebate Act**
**(On Behalf of the Rule 23 Washington Class)**

145.     Plaintiff, Richard Nedbalek, re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

146.     The Washington Minimum Wage Act ("MWA"), provides that all non-exempt employees are required to be paid at or above the applicable minimum wage rate for all hours worked. RCW 49.46.020.

147.     "Hours worked" means "all work requested, suffered, permitted, or allowed" and "includes travel time, training and meeting time, wait time, on-call time, preparatory and concluding time." Wash. Dept. of Labor & Indus. Admin. Policy ES.C.2 (Sept. 2, 2008) at 1.

148.     "Employ" means to engage, suffer or permit to work. See RCW 49.46.010 (3) and WAC 296-126-002 (3).

149.     All hours worked over 40 in a workweek must be paid at time and a half the non-exempt employee's regular rate of pay. *See* RCW 49.46.130(1).

150.     "No employee shall be required to work more than five consecutive hours without a meal period." WAC 296-126-092(2). A violation of the meal period requirement is "a wage violation." *Hill v. Garda CL Nw., Inc.*, 198 Wn. App. 326, 360-61 (2017). Similarly, an employee must be provided with ten minute paid rest break for every four hours worked, and must not work more than three consecutive hours without a rest break. WAC 296-126-092(4). A denial of compliant rest breaks is also a wage violation. *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841 (2002).

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

27

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

151.    The meal break may be unpaid if the worker receives an uninterrupted meal period of at least 30 minutes during which they are completely relieved of work duties. However, if the employer intrudes upon or infringes the mandatory thirty-minute term to any extent, workers are owed compensation for the full thirty-minute period. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 913-914 (9th Cir. 2003); L&I Admin. Policy ES.C.6.1 at 3-4.

152.    The Washington Wage Rebate Act, Wash. Rev. Code § 49.52.050, provides in relevant part that any employer who "willfully and with intent to deprive the employee of any part of his wage, shall pay any employee a lower wage than such employer is obligated to pay such employee by any statute, ordinance or contract" shall be guilty of a misdemeanor.   There is a presumption that any underpayment of an employee's wages was willful.   Wash. Rev. Code § 49.52.080.

153.    Wash Rev. Code § 49.52.070 provides that any employer who violates the provisions of Wash. Rev. Code § 49.52.050 shall be liable in a civil action for twice the amount of wages withheld, and attorneys' fees and costs.

154.    The Wage Rebate Act entitles an employee to recover "twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with the costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070.

155.    Defendant acted willfully in violating the Washington state laws discussed herein and the Washington Class is entitled to double the actual damages. RCW 49.52.070.

156.    Employees who are owed back wages are also entitled to prejudgment interest on those wages at a rate of 12 percent per year. *See Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 50 (2007); RCW 4.56.110(5); RCW 19.52.020(1).

157.    In failing to compensate the Washington Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Washington state laws referenced above.

158.    As a result, the Rule 23 Washington Class have and will continue to suffer loss of income

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]                    28

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

1
2
3

and other damages.   Accordingly, the Rule 23 Washington Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Washington state laws at an amount to be proven at trial.

4

### RELIEF REQUESTED

5

WHEREFORE, Plaintiffs request the following relief:

6
7

a.      An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

8
9

b.      An Order certifying this case as a class action (for the Rule 23 State Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Count II-VI);;

10
11
12

c.      An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

13
14

d.      An Order designating Plaintiffs as the representatives of the FLSA collectiveand undersigned counsel as Class counsel for the same;

15

e.      An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

16
17
18

f.      An Order designating the Plaintiffs as the representatives for the Rule 23 State Classes as follows: Paul Rose (Missouri Class representative), Briana White (Oregon Class Representative), Richard Nedbalek (Washington Class Representative), Jairo Marquez (New Mexico Class representative), Samantha Stephens (Colorado Class representative), and undersigned counsel as Class counsel for the same;

19
20

g.      An Order declaring Defendant's violation of the FLSA was willful;

21
22

h.      A Judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 State Classes the full amount of damages and liquidated damages available by law;

23

i.      An award of reasonable attorneys' fees and costs incurred by Plaintiffs in filing and prosecuting this action under the FLSA and Fed. R. Civ. P. 23;;

24

j.      An award of pre- and post-judgment interest to Plaintiffs on these damages; and

25
26

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

29

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

1                  k.        An Order awarding such other and further relief as this Court deems appropriate.

2                                    **JURY DEMAND**

3     Plaintiffs demand a jury trial.

4 Dated:   May 13, 2021

5

6                               Adam J. Berger, WSBA #20714

                              SCHROETER, GOLDMARK & BENDER

7                               810 Third Avenue, Suite 500

                              Seattle, Washington 98104

8                               Ph: (206) 622-8000

9                               berger@sgb-law.com

10                               Kevin J. Stoops, Esq. (PHV)

                              Charles R. Ash IV, Esq. (PHV)

11                               SOMMERS SCHWARTZ, P.C.

                              One Towne Square, Suite 1700

12                               Southfield, Michigan 48076

13                               Ph: (248) 355-0300

                              kstoops@sommerspc.com

14                               crash@sommerspc.com

15                               *Counsel for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT
[CASE NO. 2:19-CV-00458-RSL]

30

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI   48076
(248) 355-0300

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| | : | |
| KRISTINA CHETWOOD, SANDRA | : | CIVIL ACTION |
| CASTELLON-GONZALEZ, PAUL ROSE, | : | |
| JAIRO MARQUEZ, SAMANTHA | : | NO. 2:19-cv-00458-MAT |
| STEPHENS, RICHARD NEDBALEK, and | : | |
| BRIANA WHITE individually, and on behalf | : | JURY TRIAL DEMANDED |
| of others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | | |
| T- MOBILE USA, INC. | | |
| | | |
| Defendant. | | |

## FIRST AMENDED COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez,

Samantha Stephens, Richard Nedbalek, and Briana White, individually and on behalf of all others

similarly situated, by and through their attorneys, hereby brings this Class/Collective Action

Complaint against Defendant T-Mobile USA, Inc., and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and

Fed. R. Civ. P. 23 by Plaintiffs Kristina Chetwood and Plaintiff Sandra Castellon-Gonzalez

(hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons

employed by Defendant T-Mobile USA, Inc. (hereinafter referred to as "Defendant"), arising from

Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*;

the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq.;* the Colorado Wage Claim Act,

C.R.S. §§ 8-4-101, *et seq*.; the Missouri Minimum Wage Law, R.S. Mo. 290.501, et seq.; the Oregon Wage Laws, Or. Rev. Stat. Ann §§ 652.120 *et seq.*, 653.045, 653.160, and 653.261; the New Mexico Minimum Wage Act, §§ 50-4-19, et seq.; and the Washington Minimum Wage Act and Washington Rebate Act.

2.     Defendant T-Mobile USA, Inc. refers to itself as a "mobile-solutions provider" who offers the "best-in-class business customer satisfaction and innovative products – all supported by America's fastest, most-advanced network."   *See* https://www.t-mobile.com/business (last visited on 2/22/19).   Among other things, they offer "very small, small/medium, and large enterprise wireless service."   *Id*. Additionally, T-Mobile provides every day consumers with wireless voice, messaging, and data services.   According to annual reports, Defendant operates the third largest wireless network in the United States, with over 65.5 million customers and annual revenues of over $32 billion.

3.     Defendant is headquartered in Bellevue, Washington. The present lawsuit covers only original T-Mobile call centers and not any legacy Sprint call centers. Since the date this lawsuit commenced there was a merger between T-Mobile and Sprint.

4.     In order to service their customers, Defendant employs hourly customer service representatives at brick-and-mortar call centers throughout the country, internally referred to by Defendant as: Customer Service Associate Experts; Customer Service Experts; or Senior Customer Service Experts (hereinafter referred to collectively as "CSRs").

5.     As evidenced by the position descriptions on Defendant's website, the CSRs all perform essentially the same tasks, regardless of which call center they are employed in, and the difference in title primarily reflects the tenure of the CSR.   All CSRs are paid on an hourly basis, plus commissions, incentives, or other non-discretionary bonuses related to the CSR's job

performance.

6.      Defendant employed each of the Plaintiffs as CSRs during the past three (3) years at their brick-and-mortar call center in Wichita, Kansas.   Additionally, Plaintiff Chetwood also works at Defendant's brick-and-mortar call center in Mission, Texas where all practices and procedures material to this lawsuit are the same.

7.      Defendant requires their CSRs to work a set, full-time schedule. However, Defendant did not begin compensating CSRs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSRs not being paid for all time worked and for all of their overtime compensation in violation of the FLSA and the relevant state laws.

8.      Defendant's CSRs use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the call centers.   These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

9.      Defendant's CSRs working onsite at the call centers perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications.

10.     In addition to the off-the-clock work discussed herein, Defendant also failed to include commissions and other incentives received in the calculation of CSRs' overtime rates, in violation of the FLSA and other state labor laws.

11.     Defendant's CSRs' jobs described herein are non-exempt positions.

12.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center

employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."   Fact Sheet #64 at p. 2.

13.     In order to perform their jobs, Plaintiffs were required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from seven (7) to thirteen (13) minutes per day, but extending even longer on days when Plaintiff and other CSRs experienced technical issues related to Defendant's computers, software or programs.

14.     Plaintiffs were not actually "clocked in" for their shift until *after* the computer start-up/log-in process was complete and they logged into the applicable programs, software, servers, and applications, meaning that Plaintiffs and other CSRs worked at least seven (7) to thirteen (13) minutes each per shift that they were never compensated for. This off-the-clock time that Defendant's CSRs spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of their job responsibilities as CSRs.

15.     Defendant provides their CSRs with one unpaid 30-minute lunch break per shift. Defendant's Employee Handbook requires CSRs to clock-in and out of the time keeping system for all lunch breaks.

16.     Defendant, however, requires its CSRs to perform off-the-clock, unpaid work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendant's computer programs, software programs, servers, and applications. On an average shift, Plaintiffs and other CSRs perform three (3) to four (4) minutes of off-the-clock, mid-shift,

unpaid, work during their lunch breaks.

17.     Between the pre-shift start-up/log-in process and the log-in/off during lunch period time, Defendant failed to pay Plaintiffs an amount equal to at least ten (10) to seventeen (17) minutes of compensable time *per shift*. Additionally, Defendant failed to compensate Plaintiffs for other off-the-clock time spent performing work duties, including during their rest and meal periods and before and after shifts, such as answering questions of supervisors and assisting other team members.

18.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:   "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

19.     Defendant knew or could have easily determined how long it took for the CSRs working at the call centers to complete the pre-shift start-up/log-in process, and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work they performed, but did not.

20.     Plaintiffs bring this action on behalf of themselves and all other similarly situated hourly CSRs who worked for Defendant at any call center in the United States, to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

21.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to

28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

22.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

23.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendant's CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

24.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

25.     This Court has personal jurisdiction over Defendant because Defendant's headquarters are in this district and Defendant resides in this district.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the decisions and policy-making that give rise to the Plaintiffs' claims occurred in this district.

## **PARTIES**

27.     Plaintiff Christina Chetwood is a resident of Mission, Texas and was employed by Defendant first as an hourly CSR at the Defendant's call center in Wichita, Kansas, then was subsequently transferred to the call center in Mission, Texas.   Defendant employed her as a CSR within the time period relevant to this case. Plaintiff Chetwood signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit A***.

28.     Plaintiff Sandra Castellon-Gonzalez is a resident of Wichita, Kansas. Defendant employed her as an hourly CSR at Defendant's call center in Wichita, Kansas within the relevant time period.   Plaintiff Castellon-Gonzalez signed a consent form to join this lawsuit, which is

attached hereto as *Exhibit B*.

29.     Plaintiff Paul A. Rose is a resident of Ozark, Missouri and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Springfield, Missouri.   He has filed a consent to join this lawsuit.

30.     Plaintiff Samantha Stephens is a resident of Colorado and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Colorado Springs, Colorado.   He has filed a consent to join this lawsuit.

31.     Plaintiff Marquez, Jairo is a resident of New Mexico and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Albuquerque, New Mexico.   He has filed a consent to join this lawsuit.

32.     Plaintiff Richard Nedbalek is a resident of Washington and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Bellingham, Washington.   He has filed a consent to join this lawsuit

33.     Plaintiff Briana Lee White is a resident of Salem, Oregon and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Salem, Oregon. She has filed a consent to join this lawsuit.

34.     Opt-In Plaintiff Auriel Calvert is a resident of Haysville, Kansas and is currently employed by Defendant as an hourly CSR at Defendant's call center in Wichita, Kansas.   Opt-in Plaintiff Calvert signed a consent form to join this lawsuit, which is attached hereto as *Exhibit C*.

35.     Defendant T-Mobile USA, Inc. is a foreign for-profit corporation, headquartered in Bellevue Washington and formed in the State of Delaware.   Defendant's principal mailing address is 12920 SE 38th St., C/O Julie Nelson, Sr. Paralegal, Bellevue, Washington, 98006-1350. Defendant's registered agent's (Corporation Service Company) address is 300 Deschutes Way

SW, Ste. 304, Tumwater, Washington, 98501-0000.

36.    Defendant is a wireless network operator whose majority shareholder is the German telecommunications company Deutsche Telekom.

## GENERAL ALLEGATIONS

37.    On August 15, 2018, Defendant announced that it ended "the hated phone menu & the call center runaround" when it launched the "T-Mobile Team of Experts."   "With a Team of Experts, when you call or message T-Mobile, you get a tight-knit team dedicated to you and others in your city.   There are no robots or automated phone menus.   You now have your own entourage at     T-Mobile     dedicated     to     you     and     your     happiness."     *See*,     https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited on 3/26/19).

38.    Although the "entourage at T-Mobile" referenced in the preceding paragraph are the employees referred to herein as CSRs, Defendant's call center operations long predate this announcement.   As stated above, Plaintiff began her employment with Defendant as a CSR in 2014.

39.    Defendant's Customer Care division consists of dozens of call centers throughout the United States where CSRs are employed to assist Defendant's customers.   In fact, in order for one of Defendant's customers to reach a CSR, they must only "call 611 from your T-Mobile phone or message from the T-Mobile App or iMessage using Apple Business Chat."   *See*, https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited on 3/26/19).

40.    The locations of Defendant's call centers in which CSRs are employed include: Albuquerque, New Mexico; Augusta, Georgia; Colorado Springs, Colorado; Meridian, Idaho;

Nashville, Tennessee; Oakland, Maine; Richmond, Virginia; Springfield, Missouri; Wichita, Kansas; Mission, Texas; Birmingham, Alabama; Charleston, South Carolina; Tampa, Florida; and Chattanooga, Tennessee.

41.     The job duties of CSRs are the same from call center to call center, as evidenced by the identical job postings on Defendant's website for each location.   Additionally, the required qualifications for the CSR jobs are identical at each call center location.   ***Exhibit D***, Job Postings with Position Description.

42.     Defendant compensated CSRs on a bi-weekly basis and paid them a base hourly rate, plus commissions and other incentives.   Plaintiff Chetwood's most recent hourly rate was $15.23 per hour.

43.     Defendant earns revenue and profits from the services of Plaintiffs and other CSR employees.   In fact, Defendant's website boasts that "[w]ith a Team of Experts, Net Promoter Score (NPS) – or likelihood to recommend – increased an unprecedented 56%, putting T-Mobile on par with other brands famous for their customer care." *See* https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited 3/26/19).   "In Q2 of 2018 – even before Team of Experts went live nationwide today – customer service costs for postpaid were the lowest in company history due to fewer calls per account and callbacks – making Team of Experts a win, not just for customers and employees, but for shareholders, too." *Id*.

44.     Defendant's Employee Handbook claims it is "committed to providing a competitive compensation program that will attract, retain, develop, and reward employees.   Total compensation includes base salary and may include short-term incentives, such as bonus and sales commission, and long-term incentives such as restricted stock units.   Certain positions may be

eligible for other types of pay to recognize different work conditions and requirements such as shift work.   Premium and call-out pay is available to hourly employees who are scheduled to be available on-call outside the normal work schedule."

45.     Defendant's Employee Handbook also states "[m]anagers are responsible for reviewing and approving employee time entry data on a regular basis (for both non-exempt and/or exempt direct reports) to identify any errors and to ensure they know the time worked by direct reports." "Managers must complete their review of time entries for all direct reports before the time entry deadline. Failure of managers to complete their review may result in performance improvement action up to and including termination."

46.     Regarding overtime pay, the Employee Handbook provides that "[n]on-exempt employees receive one-and-one-half times their regular hourly rate for all hours worked over 40 hours per workweek unless otherwise required by law."

47.     Despite Defendant's promise to pay non-exempt employees, like CSRs, at one-and-one-half times their regular hourly rate, Defendant failed to calculate the CSRs' regular hourly rate correctly because they did not include commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of their regular hourly rate.

48.     Regarding overtime pay calculations, Defendant's Employee Handbook makes no reference to including commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of overtime premiums.   Instead, the Employee Handbook simply states: "[o]vertime pay for non-exempt employees is calculated based upon the total hours worked per week, not based on the number of hours worked in any one day, unless otherwise required by law."

49.     According to the Employee Handbook, Defendant "expects all employees, both exempt and non-exempt, to work extra hours when required by business needs."   However, "non-

exempt employees must use good judgment in deciding whether to work overtime without prior management approval.   A manager will review any unauthorized overtime work by a non-exempt employee to determine whether it was necessary." "[T]he employee may be counseled or subject to PIP, as TMUS deems appropriate, for working overtime without prior authorization." "If business operations will not be compromised, management may reduce the scheduled hours of an employee to avoid the working of overtime, if permitted by applicable law."

**Pre-Shift Off-the-Clock Work**

50.     Defendant records the hours worked by CSRs using a computerized timekeeping system called Kronos.

51.     At the start of the shift, the CSRs must enter the building using their security badge swipe.   Next, they proceed to identify a work station for the shift.   The CSRs do not work at the same computer every shift.

52.     After locating a work station, the CSRs engage in seven (7) to thirteen (13) minutes of pre-shift off-the-clock work booting up their computers and logging into Defendant's time keeping system.   This process can often take even longer, particularly, if the CSR experiences technical difficulties with the computer systems.

53.     First, CSRs must turn on their computer and wait for Windows to load, then enter a username and password.   Once logged into Windows, the program Skype automatically launches.   CSRs must wait for Skype to load, then enter in another username and password. After Skype has loaded, CSRs have the first opportunity to load and log into the timekeeping system.

54.     As stated above, CSRs spend seven (7) to thirteen (13) minutes loading and logging into essential computer programs *before* they are able to log into the timekeeping system and begin

getting compensated.   This process took even longer if the CSR experienced technical difficulties, which often required the CSR to perform one or more restarts on the computer.

**Mid-Shift (Lunch) Off-the-Clock Work**

55.     Defendant provided CSRs with a one hour unpaid lunch during the standard eight (8) to ten (10) hour shifts.

56.     At the start of their lunch period, CSRs must first log-out of Avaya to stop incoming calls.   Next, they clock out of Kronos (the timekeeping system), then lock their computers and begin their lunch.

57.     After twenty (20) minutes, CSRs are automatically logged out of the program Samson, which is linked to the program Quickview.   These two programs are used in conjunction with one another to access the customer information CSRs needed to perform their job duties.

58.     When CSRs return from lunch to their workstations, they must first log back into Windows with their username and password, then reboot Quickview and Samson, so that the two programs can link together.   This process results in an additional three (3) to four (4) minutes of off-the-clock work.

59.     After Quickview and Samson are properly reloaded and synced, the CSRs clock back into Kronos and log back into Avaya to begin receiving calls, but not until after undertaking three (3) to four (4) minutes of off-the-clock work at the end of every lunch.

**The Time Spent Loading and Logging into Computer Programs is Compensable**

60.     Throughout their employment with Defendant, Plaintiffs regularly worked off-the-clock as part of their jobs as CSRs.

61.     Between the pre-shift start-up/log-in process and the lunch period log-in process, Defendant failed to pay Plaintiffs and other CSRs an amount equal to at least ten (10) to seventeen

(17) minutes of compensable time per shift. Additionally, Defendant failed to compensate Plaintiffs and other CSRs for off-the-clock time spent performing other work duties, including during their rest and meal breaks and before or after shifts answering questions from supervisors, assisting other team members, or otherwise performing work.

62.     At all relevant times, Defendant was able to track the amount of time that Plaintiffs and the putative Class spent in connection with the pre-shift and lunch break work activities; however, Defendant failed to document, track, or pay Plaintiffs and other CSRs for the work they performed in connection with each shift.

63.     Defendant knew or could have easily determined how long it took for the Plaintiffs and the other CSRs to complete the pre-shift start-up/log-in process and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work that they performed, but did not.

64.     At all relevant times, Defendant was Plaintiffs' "employer" and Defendant directed and directly benefited from the work performed by Plaintiffs and other CSRs during the pre-shift start-up/log-in process and in connection with the mid-shift off-the-clock work during their meal breaks.

65.     At all relevant times, Defendant controlled Plaintiffs' and other CSRs' schedules, duties, protocols, applications, assignments, and employment conditions.

66.     At all relevant times, Plaintiffs and all other CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

67.     At all relevant times, Defendant used their attendance and adherence policies against the CSRs in order to pressure them into performing off-the-clock work.

68.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and

other CSRs of wages owed for off-the-clock work that Plaintiffs and other CSRs performed. Because Plaintiffs and other CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiffs and other CSRs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

69.     Defendant knew or should have known that Plaintiffs and other CSRs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA and the relevant state laws.

**Failure to Include Incentive Pay in Regular Rate Calculations**

70.     Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).   It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

71.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.   29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

72.     Defendant's compensation scheme, which included an hourly rate, plus commissions and other incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

73.     An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R.

§778.117.

> This is true regardless of whether the commission is the sole source of the
> employee's compensation or is paid in addition to a guaranteed salary or
> hourly rate, or on some other basis, and regardless of the method, frequency,
> or regularity of computing, allocating and paying the commission. It does
> not matter whether the commission earnings are computed daily, weekly,
> biweekly, semimonthly, monthly, or at some other interval. The fact that the
> commission is paid on a basis other than weekly, and that payment is
> delayed for a time past the employee's normal pay day or pay period, does
> not excuse the employer from including this payment in the employee's
> regular rate. *Id*.

74.     There is a statutory presumption that remuneration in any form must be included in

the regular rate calculation. The burden is on Defendant to establish that any payment should be

excluded. Thus, determining the regular rate starts from the premise that all payments made to

Plaintiffs for work performed are included in the base calculation unless specifically excluded by

statute.

75.     Even "[w]hen the commission is paid on a weekly basis, it is added to the

employee's other earnings for that workweek (except overtime premiums and other payments

excluded as provided in section 7(e) of the Act), and the total is divided by the total number of

hours worked in the workweek to obtain the employee's regular hourly rate for the particular

workweek. The employee must then be paid extra compensation at one-half of that rate for each

hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

76.     Once the total amount of an employee's "regular" compensation is deduced, "the

determination of the regular rate becomes a matter of mathematical computation." *Walling v.*

*Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be

expressed as an hourly rate because, although any method of compensating an employee is

permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if

necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

77.    Because Defendant's compensation scheme failed to incorporate the regular rate of pay, Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

**Exemplary Pay Periods**

78.    Defendant pays CSRs on a bi-weekly basis. An example of a particular pay period where Defendant failed to pay Plaintiff Kristina Chetwood overtime for all hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), was during the pay period of November 6, 2016 to November 19, 2016:

> ➢ Plaintiff Chetwood was paid for 73 hours of regular time and 9.16 hours of overtime, meaning in one of the two weeks Defendant documented her working well over 40 hours.  *See **Exhibit E***.

> ➢ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for the particular workweek she worked over 40 hours.

> ➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

79.    As an example of one particular pay period where Defendant failed to pay Opt-in Plaintiff Auriel Calvert overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), during the pay period of July 15, 2018 to July 28, 2018:

> ➢ Plaintiff Redmond was paid for 80 hours of regular time over the two-week pay period and 11.55 hours of overtime.  *See **Exhibit F***.

> ➢ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for both workweeks in this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

80.     As an example of one particular pay period where Defendant failed to pay Plaintiff Sandra Castellon-Gonzalez overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), during the pay period of September 10, 2017 to September 23, 2017:

➢ Plaintiff Castellon-Gonzalez was paid for 80.01 hours of regular time and 17.07 hours of overtime.   *See **Exhibit G***.

➢ With pre- and mid -shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for each workweek during this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked

## COLLECTIVE ACTION ALLEGATIONS

81.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members").   Plaintiffs reserve the right to amend this definition as necessary.

82.     Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

83.     Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

84.     Additionally, the claim that Defendant failed to include commissions, incentives, and other remuneration paid in the overtime rate calculations of the putative collective members is a common policy.

85.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend, including in connection with performing pre-shift and lunch break activities, is compensable under the FLSA.   Also, whether Defendant failed to properly calculate the overtime rate for the putative collective members.

86.     Plaintiffs estimate that the putative collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative collective members should be readily available from a review of Defendant's personnel and payroll records.

### RULE 23 STATE LAW CLASS ACTION ALLEGATIONS

87.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of the following state law classes:

**The Colorado Class is defined as follows:**

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Colorado at any time during the last three years.*

**The Missouri Class is defined as follows:**

> *All similarly situated current and former hourly customer service*

> *representatives who worked for Defendant at any call center in Missouri at any time during the last three years.*

**The Oregon Class is defined as follows:**

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Oregon at any time during the last three years.*

**The New Mexico Class is defined as follows:**

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in New Mexico at any time during the last three years.*

**The Washington Class is defined as follows:**

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Washington at any time during the last three years*

(hereinafter referred to as the "Rule 23 State Classes").   Plaintiffs reserve the right to amend this definition as necessary.

88.     The members of the Rule 23 State Classes are so numerous that joinder of all Rule 23 State Class members in this case would be impractical.   Plaintiffs reasonably estimate there are hundreds of Rule 23 State Class members in each state.   Rule 23 State Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

89.     There is a well-defined community of interest among Rule 23 State members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 State Class. These common legal and factual questions, include, but are not limited to, the following:

> a.     Whether the pre-shift time that Rule 23 State Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.      Whether the time that Rule 23 State Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time;

c.      Whether the time that Rule 23 State Class members spend addressing questions, being interrupted, helping others, or otherwise performing work during rest and meal breaks and before and after shifts is compensable time or interfered with their entitlement to rest and meal breaks;

d.      Whether Defendant's failure to pay the Rule 23 State Class members in Colorado for this pre- and mid -shift time resulted in a violation of C.R.S. §§ 8-6-101, *et seq. and* C.R.S. §§ 8-4-101, *et seq*.;

e.      Whether Defendant's failure to pay the Rule 23 State Class members in Missouri for this pre- and mid -shift time resulted in a violation of § 290.502 R.S.Mo., et seq.;

f.      Whether Defendant's failure to pay the Rule 23 State Class members in Oregon for this pre- and mid -shift time resulted in a violation of Or. Rev. Stat. Ann § 653.045, Or. Rev. Stat. Ann § 652.120, Or. Rev. Stat. Ann § 652.140(1), Or. Rev. Stat. Ann § 652.150, and Or. Rev. Stat. Ann § 652.200;

g.      Whether Defendant's failure to pay the Rule 23 State Class members in New Mexico for this pre- and mid -shift time resulted in a violation of N.M. Stat. Ann. § 50-4-2, N.M. Stat. Ann. §§ 50-4-19, *et seq.*, and N.M. Stat. Ann. § 50-4-22;

h.      Whether Defendant's failure to pay the Rule 23 State Class members in Washington for this pre- and mid -shift time resulted in a violation of RCW 49.46.020, RCW 49.46.130(1), Wash. Rev. Code § 49.52.050, and Wash Rev. Code § 49.52.070;

i.      Whether Defendant's failure to pay the Rule 23 State Class members for this pre- and mid -shift time resulted in a violation of the overtime requirements established by the relevant state laws; and

j.      Whether Defendant failed to calculate and pay proper wage rates, regular rates, and overtime rates in violation of the relevant state laws.

90.    Plaintiffs' claims are typical of those of the Rule 23 State Classes in that they and all other Rule 23 State Class members suffered damages as a direct and proximate result of the

Defendant's common and systemic payroll policies and practices.   Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 State Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 State Class members.

91.     Plaintiffs will fully and adequately protect the interests of the Rule 23 State Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 State Class.

92.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 State Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

93.     This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

94.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

95.     Because Defendant acted and refused to act on grounds that apply generally to the

Rule 23 State Classes and declaratory relief is appropriate in this case with respect to the Rule 23

State Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**Alleging Violations of the Fair Labor Standards Act,**
**29 U.S.C. § 201, *et seq.***
**(On behalf of the FLSA Collective)**

96.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege

as follows.

97.     At all times relevant to this action, Defendant was Plaintiffs' employer under 29

U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

98.     Defendant engaged in interstate commerce, or in the production of goods for

commerce, as defined by the FLSA.

99.     At all times relevant to this action, Plaintiffs were "employees" of Defendant within

the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

100.     Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods

for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of

goods for commerce.

101.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and

all similarly situated current and former employees to work and thus "employed" them within the

meaning of 29 U.S.C. § 203(g) of the FLSA.

102.     At all times relevant to this action, Defendant required Plaintiffs and all similarly

situated current and former Class members to perform at least seven (7) to thirteen (13) minutes of

pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated

overtime compensation for all services performed.

103.     At all times relevant to this action, Defendant failed to compensate Plaintiffs and all

similarly situated current and former Class members for at least three (3) to four (4) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

104.     The off-the-clock work performed by Plaintiffs and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

105.     In workweeks where Plaintiffs and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

106.     Defendant failed to properly calculate the regular hourly rate for Plaintiffs and other Class members by not including non-discretionary bonuses and commissions in the calculation of their overtime rates.

107.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for their CSRs to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiffs and the Class for the work they performed, but did not.

108.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**Alleging Violations of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq.*, and the**
**Colorado Wage Claim Act, C.R.S. §§ 8.4.101 *et seq.***
**(On Behalf of the Rule 23 Colorado Class)**

109.     Plaintiff, Samantha Stephens, re-alleges and incorporates all previous paragraphs

herein.

110.    The Colorado "Minimum Wage Act," C.R.S. §§ 8-6-101, *et seq.*, authorizes the Director of the Colorado Division of Labor to issue orders establishing minimum wages for Colorado employees. C.R.S. § 8-6-107.   Pursuant to Colorado Minimum Wage Order Number 35, employers must pay their employees minimum wages "for all hours worked." *See*, 7 CCR 1103-1(3). A Colorado employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for a lesser wage.   C.R.S. § 8-6-118.

111.    The employer must pay time and one-half of the regular rate of pay for any work in excess of: (a) forty hours per workweek; (b) twelve hours per workday; or (c) twelve consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages. 7 CCR 1103-1(3).

112.    Additionally, Minimum Wage Order Number 35 requires that employees be provided with a non-compensable meal period as one that is "uninterrupted and duty free." Additionally, "employees must be completely relieved of all duties and permitted to pursue personal activities to qualify as a non-work, uncompensated period of time.   *Id*.   Therefore, if the employee has a duty to the employer during the period at issue, the period is compensable.

113.    The Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*. provides "[a]ll wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer…." C.R.S. § 8-4-103(1)(a).   Furthermore, an employee whose wages have not been paid

as required by the Colorado Wage Claim Act may bring a civil action to recover his or her unpaid wages, plus reasonable attorneys' fees and costs.   *See*, C.R.S. § 8-4-110.

114.    In failing to compensated the Colorado Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Colorado state laws referenced above.

115.    As a result, the Rule 23 Colorado Class have and will continue to suffer loss of income and other damages.    Accordingly, the Rule 23 Colorado Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Colorado state laws at an amount to be proven at trial.

## COUNT III
**Alleging Violations of the Missouri Minimum Wage Law, R.S. Mo. 290.501 *et seq.*,
(On Behalf of the Rule 23 Missouri Class)**

116.    Plaintiff, Paul Rose, re-alleges and incorporates all other paragraphs as though fully stated herein.

117.    The Missouri Minimum Wage Law provides that employees are entitled to minimum wage, § 290.502 R.S.Mo., and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). § 290.505 R.S.Mo. Furthermore, § 290.527 R.S.Mo., allows an employee to bring a civil action against to recover "the full amount of the wage rate and an additional equal amount as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury."

118.    Any employer who pays any employee less wages than the wages to which the employee is entitled under or by virtue of sections 290.500 to 290.530 shall be liable to the employee affected for the full amount of the wage rate and an additional amount equal to twice

the unpaid wages as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury. The employee may bring any legal action necessary to collect the claim. Any agreement between the employee and the employer to work for less than the wage rate shall be no defense to the action. All actions for the collection of any deficiency in wages shall be commenced within three years of the accrual of the cause of action. § 290.527 R.S.Mo.

119.    In failing to compensated the Missouri Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Missouri state laws referenced above.

120.    As a result, the Rule 23 Missouri Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 Missouri Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Missouri state laws at an amount to be proven at trial.

**<u>COUNT IV</u>**
**Alleging Violations of the Oregon Wage Laws, Or. Rev. State. Ann. § § 652.120 *et seq.,***
**653.045, 653.160, and 653.261)**
**(On Behalf of the Rule 23 Oregon Class)**

121.    Plaintiff, Briana White, re-alleges and incorporates all other paragraphs as though fully stated herein.

122.    The Oregon Wage Laws require employers to maintain detailed records regarding the payment of wages to employees, which includes the actual hours worked each week.    Or. Rev. Stat. Ann § 653.045.   Oregon Wage Laws require overtime to be paid at 1.5 times the employee's regular hourly rate for all hours worked in excess of 40 in a workweek. Or. Rev. Stat. Ann § 653.261.

123.     Under The Oregon Wage Laws, specifically, Or. Rev. Stat. Ann § 652.120, an employer is required to establish and maintain a regular payday on which date employees are paid all wages due and owing to them. Or. Rev. Stat. Ann § 652.120(a).   The payday may not extend beyond a period of 35 days from the time that employee performed the work or from the date of the last regular payday. Or. Rev. Stat. Ann § 652.120(b).

124.     The Oregon Wage Laws also provide requirements for the payment of wages upon termination of employment.   Specifically, "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of discharge or termination become due and payable not later than the end of the first business day after the discharge or termination."   Or. Rev. Stat. Ann § 652.140(1).   Furthermore, "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases … then as a penalty for the non-payment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until action therefor is commenced.   However, in no case shall the penalty wages or compensation continue for more than 30 days from the due date."[1] Or. Rev. Stat. Ann § 652.150.

125.     "In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim." Or. Rev. Stat. Ann § 652.160.

126.     The Oregon Wage Laws also provides for the payment of the employee's attorney fees in recovering unpaid wages. Or. Rev. Stat. Ann § 652.200.

127.     Or. Rev. Stat. Ann § 652.200 states that an employer who pays an employee less

---

[1] Employers are also required to pay the monetary equivalent of any earned paid vacation time at the time employment ends using the employee's normal rate of pay.

than the wages to which the employee is entitled under ORS § 653.010 to § 653.261 is liable to the employee affected: (a) for the full amount of the wages … and (b) for civil penalties provided in ORS § 652.150.

128.    The penalty provided by ORS 652.150 is the wages or compensation of the employee shall continue from the due date therefor at the same hourly rate for eight hours per day until paid or until action therefore is commenced.   However, in no case shall the penalty wages or compensation exceed 30 days from the due date. ORS § 652.150(1).

129.    If the employee submits a written notice of nonpayment, the penalty may not exceed 100 percent of the employee's unpaid wages unless the employer fails to pay the full amount of the employee's unpaid wages within 12 days after receiving the notice.   If the employee fails to submit a written notice of nonpayment, the penalty may not exceed 100 percent of the employee's unpaid wages or compensation. ORS § 652.150(2).

130.    In failing to compensated the Oregon Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Oregon state laws referenced above.

131.    As a result, the Rule 23 Oregon Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 Oregon Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Oregon state laws at an amount to be proven at trial.

## COUNT V
**Alleging Violations of the New Mexico Minimum Wage Act, §§ 50-4-19, et seq.**
**(On Behalf of the Rule 23 New Mexico Class)**

132.    Plaintiff, Jairo Marquez, re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

133.    The New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19, *et seq.* provides

that employees are entitled to minimum wages and overtime compensation calculated at time-and-

a-half of their regular rate of pay for each hour worked each week in excess of forty (40). N.M.

Stat. Ann. § 50-4-22.

134.    N.M. Stat. Ann. § 50-4-26 allows an employee who has not been paid in accordance

with the New Mexico Minimum Wage Act to bring a civil action to recover all unpaid amounts,

liquidated damages, interest, costs, and reasonable attorneys' fees.

135.    The New Mexico Minimum Wage Act entitles employees to compensation for every

hour worked in a workweek. *See* N.M. Stat. Ann. §§ 50-4-19, *et seq.*; § 50-4-2.

136.    An employer in New Mexico must also designate regular pay days, not more than

sixteen days apart, as days fixed for the payment of wages to all employees.   N.M. Stat. Ann. § 50-

4-2 (A).

137.    The employer must pay for all services rendered and due during these pay periods.

*Id*.   Furthermore, "an employer shall pay *wages in full*, less lawful deductions and less payroll

deductions authorized by the employer and employee." N.M. Stat. Ann. § 50-4-2 (B).

138.    The New Mexico Minimum Wage Act also imposes record keeping requirements

on employers.   Specifically, the Act provides that "[a]n employer shall provide an employee with

a written receipt that identifies the employer and sets forth the employee's gross pay, the number

of hours worked by the employee, the total wages and benefits earned by the employee and an

itemized listing of all deductions withheld from the employee's gross pay." N.M. Stat. Ann. § 50-

4-2 (B).

139.    The New Mexico Minimum Wage Act also entitles employees to overtime

compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours

worked in excess of 40 hours per week *See* N.M. Stat. Ann. § 50-4-22.

140.     For any CSRs in New Mexico that Defendant discharged, any unpaid wages were due within five (5) days of discharge.   N.M. Stat. Ann. § 50-4-4 (A).   The wages of CSRs that quit were due the pay period after the employee quit.   N.M. Stat. Ann. § 50-4-4 (B); N.M. Stat. Ann. § 50-4-5. The New Mexico Minimum Wage Act permits an employee to recover any unpaid wages (including straight time) in a civil lawsuit. N.M. Stat. Ann. § 50-4-4 (C).

141.     N.M. Stat. Ann. § 50-4-26(C) states that "[i]n addition to penalties provided pursuant to this section, an employer who violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."

142.     As used in N.M. Stat. Ann. § 50-4-26(C) the term "minimum wages" includes overtime wages. *See*, N.M. Stat. Ann. § 50-4-22(E).

143.     In failing to compensated the New Mexico Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the New Mexico state laws referenced above.

144.     As a result, the Rule 23 New Mexico Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 New Mexico Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under New Mexico state laws at an amount to be proven at trial.

## COUNT VI
### Alleging Violations of the Washington Minimum Wage Act and Washington Rebate Act
### (On Behalf of the Rule 23 Washington Class)

145.     Plaintiff, Richard Nedbalek, re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

146.     The Washington Minimum Wage Act ("MWA"), provides that all non-exempt employees are required to be paid at or above the applicable minimum wage rate for all hours worked. RCW 49.46.020.

147.     "Hours worked" means "all work requested, suffered, permitted, or allowed" and "includes travel time, training and meeting time, wait time, on-call time, preparatory and concluding time." Wash. Dept. of Labor & Indus. Admin. Policy ES.C.2 (Sept. 2, 2008) at 1.

148.     "Employ" means to engage, suffer or permit to work. See RCW 49.46.010 (3) and WAC 296-126-002 (3).

149.     All hours worked over 40 in a workweek must be paid at time and a half the non-exempt employee's regular rate of pay. *See* RCW 49.46.130(1).

150.     "No employee shall be required to work more than five consecutive hours without a meal period." WAC 296-126-092(2). A violation of the meal period requirement is "a wage violation." *Hill v. Garda CL Nw., Inc*., 198 Wn. App. 326, 360-61 (2017). Similarly, an employee must be provided with ten minute paid rest break for every four hours worked, and must not work more than three consecutive hours without a rest break. WAC 296-126-092(4). A denial of compliant rest breaks is also a wage violation. *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841 (2002).

151.     The meal break may be unpaid if the worker receives an uninterrupted meal period of at least 30 minutes during which they are completely relieved of work duties. However, if the employer intrudes upon or infringes the mandatory thirty-minute term to any extent, workers are owed compensation for the full thirty-minute period. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 913-914 (9th Cir. 2003); L&I Admin. Policy ES.C.6.1 at 3-4.

152.     The Washington Wage Rebate Act, Wash. Rev. Code § 49.52.050, provides in

relevant part that any employer who "willfully and with intent to deprive the employee of any part of his wage, shall pay any employee a lower wage than such employer is obligated to pay such employee by any statute, ordinance or contract" shall be guilty of a misdemeanor.   There is a presumption that any underpayment of an employee's wages was willful.   Wash. Rev. Code § 49.52.080.

153.    Wash Rev. Code § 49.52.070 provides that any employer who violates the provisions of Wash. Rev. Code § 49.52.050 shall be liable in a civil action for twice the amount of wages withheld, and attorneys' fees and costs.

154.    The Wage Rebate Act entitles an employee to recover "twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with the costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070.

155.    Defendant acted willfully in violating the Washington state laws discussed herein and the Washington Class is entitled to double the actual damages. RCW 49.52.070.

156.    Employees who are owed back wages are also entitled to prejudgment interest on those wages at a rate of 12 percent per year. *See Stevens v. Brink's Home Sec., Inc*., 162 Wn.2d 42, 50 (2007); RCW 4.56.110(5); RCW 19.52.020(1).

157.    In failing to compensate the Washington Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Washington state laws referenced above.

158.    As a result, the Rule 23 Washington Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 Washington Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Washington state laws at an amount to be proven at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief:

a.   An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   An Order certifying this case as a class action (for the Rule 23 State Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Count II-VI);;

c.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.   An Order designating Plaintiffs as the representatives of the FLSA collectiveand undersigned counsel as Class counsel for the same;

e.   An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.   An Order designating the Plaintiffs as the representatives for the Rule 23 State Classes as follows: Paul Rose (Missouri Class representative), Briana White (Oregon Class Representative), Richard Nedbalek (Washington Class Representative), Jairo Marquez (New Mexico Class representative), Samantha Stephens (Colorado Class representative), and undersigned counsel as Class counsel for the same;

g.   An Order declaring Defendant's violation of the FLSA was willful;

h.   A Judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 State Classes the full amount of damages and liquidated damages available by law;

i.   An award of reasonable attorneys' fees and costs incurred by Plaintiffs in filing and prosecuting this action under the FLSA and Fed. R. Civ. P. 23;;

j.   An award of pre- and post-judgment interest to Plaintiffs on these damages; and

k.   An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand a jury trial.

Dated:   May 13, 2021

_____
Adam J. Berger, WSBA #20714
SCHROETER, GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, Washington 98104
Ph: (206) 622-8000
berger@sgb-law.com

Kevin J. Stoops, Esq. (PHV)
Charles R. Ash IV, Esq. (PHV)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Ph: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Counsel for Plaintiffs*