1

2

3

4

5

6

HONORABLE ROBERT S. LASNIK

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

**KRISTINA CHETWOOD**, **SANDRA CASTELLON-GONZALEZ,  PAUL ROSE, JAIRO MARQUEZ, SAMANTHA STEPHENS, RICHARD NEDBALEK, AND BRIANA WHITE,** individually,
and on behalf of others similarly situated,

                Plaintiffs,

v.

**T-MOBILE USA, INC.**

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.
2:19-cv-00458-RSL

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT, APPROVAL OF CLASS NOTICE, AND SETTING FINAL APPROVAL HEARING**

NOTE FOR MOTION CALENDAR:
 June 11, 2021

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ........................................................................................... iii

I. INTRODUCTION ....................................................................................................1

II. PROCEDURAL HISTORY OF THE CASE..........................................................2

    A. The Proceedings, Pleadings, and Parties .........................................................2

    B. Summary of Discovery Conducted Prior to Mediation.....................................3

    C. Estimated Exposure ..........................................................................................6

    D. Total Potential Liability and Percentage of Recovery ......................................8

III. SETTLEMENT TERMS..........................................................................................8

    A. Value of the Settlement to the Class .................................................................8

    B. Size of the Class and the Class Definition........................................................9

    C. Nature of the Payments and Notice, Exclusion, and Objection Periods ....................9

    D. The Released Claims and Released Parties........................................................9

    E. Allocation of Settlement Amount ...................................................................11

    F. The Net Distribution Funds; Calculations and Payments to Classes...............11

    G. Notice Procedures ...........................................................................................12

    H. Tax Consequences, Allocations, Uncashed Checks, and Cy Pres...................12

IV. ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL ........................13

    A. Standard of Review for Class Action Settlements..........................................13

        1. Strength of Plaintiffs' Case, Mediation Supports Approval .........................14

        2. The Risk, Expense, Complexity, Likely Duration of Litigation..................14

        3. The Risk of Maintaining Class Action Status Through Trial ......................16

        4. The Amount Offered In Settlement Is Fair and Reasonable........................16

        5. The Extent of the Discovery Completed, Stage of Proceedings..................18

        6. The Experience and Views of Counsel .......................................................18

V. THE CLASS SHOULD BE CONDITIONALLY CERTIFIED ...........................19

    A. The Settlement Class Satisfies the Requirements of Rule 23 ...................................19

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

|   |   | 1. | The Numerosity Requirement is Satisfied ................................................. 19 |
|   |   | 2. | Common Questions of Law and Fact Exist ................................................. 19 |
|   |   | 3. | Claims of the Plaintiffs Are Typical ......................................................... 20 |
|   |   | 4. | Plaintiffs Are Adequate ............................................................................. 20 |
|   | B. | The Prerequisites of Rule 23(b) Are Also Satisfied.................................................. 21 |
|   |   | 1. | The Predominance Requirement .................................................................. 21 |
|   |   | 2. | The Superiority Requirement ...................................................................... 21 |
|   | C. | The Standard for Section 216(b) FLSA Settlement Approval Is Met................ 21 |

VI.   REQUESTED APPROVAL OF FEES, COSTS, AND SERVICE AWARDS .................. 22

A.   The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval..................................... 24

B.   The Class Representative Incentive Awards Are Reasonable ................................. 24

C.   The Administrator and Administration Costs Should Be Approved........................ 24

VII.   THE PROPOSED METHOD OF NOTICE IS APPROPRIATE........................................ 25

VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED ............................... 26

IX.   CONCLUSION.................................................................................................................... 27

ii

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

1

**TABLE OF AUTHORITIES**

2
**Cases**

3
*Adams v. Inter-Con Security Sys., Inc.*, No. 06 Civ. 5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ................................................................................................ 25

4
*Ali v. Menzies Aviation, Inc.*, No. 2:16-CV-00262RSL, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ................................................................................................ 13

5

6
*Arthur v. Sallie Mae, Inc.*, C10-0198JLR, 2012 WL 90101 (W.D. Wash. Jan. 10, 2012) ................................................................................................................... 13

7
*Birch v. Office Depot, Inc.*, No. 06 Civ. 1690 (S.D. Cal. Sept. 28, 2007) ................................... 23

8
*Boyd v. Bank of Am. Corp.*, No. 13 Civ. 0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................................................................................................ 22

9

10
*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ........................................ 18, 23

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .............................. 23
11

12
*Brown v. CVS Pharmacy, Inc.*, No. CV15-7631 PSG (PJWX), 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ................................................................................... 17

13
*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) .......................... 25

14
*Clark v. Ecolab, Inc.*, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................... 22

15
*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .............................. 13, 15

16
*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ...................................................... 23

17
*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454 (9th Cir. 2000) ............................................................................................................... 17

18

19
*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................ 25

*General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ......................................... 20
20

21
*Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*, No. C11-1959RAJ, 2013 WL 1661483 (W.D. Wash. Apr. 17, 2013) ....................................................................... 16

22
*Glass v. UBS Fin. Servs.*, No. C–06–4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ....................................................................................................... 17

23

24
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) ........................................ 13, 19

25
*Hill v. Xerox Corp.*, No. C12-0717-JCC, 2014 WL 3396098 (W.D. Wash. July 10, 2014) .............................................................................................................. 15

26
*Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ..................................................................................................... 18
27

28

iii

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014) ............................................. 15

*In re Activision Sec. Litig.,* 723 F. Supp. at 1375 (N.D. Ca. 1989) ................................................ 22

*In re Am. Apparel, Inc. S'holder Litig.,* No. 10 Civ. 6352, 2014 WL 10212865
    (C.D. Cal. July 28, 2014) ......................................................................................................... 23

*In re American Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996) ............................................................... 20

*In re Heritage Bond Litig.*, No. 02 Civ. 1475, 2005 WL 1594403 (C.D. Cal. June
    10, 2005) ................................................................................................................................... 23

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .................................................. 22

*In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 175515
    (N.D. Cal. Dec. 19, 2016) ........................................................................................................ 23

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ................................................ 22

*In re Quantum Health Res., Inc.,* 962 F. Supp. 1254 (C.D. Cal. 1997) ........................................ 23

*Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*, 1989 WL 73211 (C.D.
    Cal. March 9, 1989) .................................................................................................................. 23

*Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl.
    Standards Admin., Wage and Hour Div.*, 679 F.2d 1350 (11th Cir. 1982) ............................. 21

*McKinnon v. City of Merced*, No. 118CV01124NONESAB, 2020 WL 4813206
    (E.D. Cal. Aug. 19, 2020) ......................................................................................................... 17

*Moreno Galvez v. Cuccinelli*, No. C19-0321RSL, 2019 WL 3219418 (W.D. Wash.
    July 17, 2019) ........................................................................................................................... 20

*Rigo v. Kason Indus., Inc.*, No. 11–CV–64–MMA (DHB), 2013 WL 3761400 (S.D.
    Cal. July 16, 2013) .................................................................................................................... 19

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................................... 18

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) ................................................ 13

*Smith v. Kaiser Found. Hosps.*, No. 18CV780-KSC, 2020 WL 5064282, at *6 (S.D.
    Cal. Aug. 26, 2020) ................................................................................................................... 20

*Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 (M.D.N.C. Jan. 10,
    2007) .................................................................................................................................... 19, 23

*Talavera v. Sun-Maid Growers of California*, No. 115CV00842DADSAB, 2020
    WL 2195115 (E.D. Cal. May 6, 2020) ..................................................................................... 18

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................................ 21

*Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150 (9th Cir. 2016) .................................... 21

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) .................................. 23

iv

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

1

*Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468 (E.D. Cal. 2009) ................................................ 25

2

**Statutes**

29 U.S.C. § 216(b) ............................................................................................................ 2, 21, 26

29 U.S.C. § 254(a)(2) ............................................................................................................... 14

29 U.S.C. §201 ........................................................................................................................... 2

3

4

5

6

7

**Other Authorities**

8

Colorado Wage Claim Act, Colo. Rev. Stat. §§8-4-101–8-4-123 ............................................. 10

Washington Minimum Wage Act, RCW 49.46 ......................................................................... 10

7 Colo. Code Regs. §§1103-1(1)–(22) ...................................................................................... 10

Colorado Minimum Wage Order No. 32 ................................................................................... 10

Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. §§8-6-101–8-6-119 .................... 10

Missouri Minimum Wage Law, § 290.500 ................................................................................ 10

Missouri Wage Payment Law, §§ 290.080 to 290.090 .............................................................. 10

New Mexico Minimum Wage Act, N.M.S.A. § 50-4-19 ........................................................... 10

*Newberg on Class Action*, 3d Ed. § 11.51 ................................................................................. 19

*Newberg, Attorney Fee Awards* § 2.19 (1987) .......................................................................... 23

Oregon Revised Statutes, Chapters 652 and 653 ...................................................................... 10

Washington Industrial Welfare Act, RCW 49.12 ...................................................................... 10

Washington Wage Rebate Act, RCW 49.52 *et seq.*, ................................................................. 10

9

10

11

12

13

14

15

16

17

18

19

20

**Rules**

21

Fed. R. Civ. P. 16(b)................................................................................................. 1, 2, 21, 26

Fed. R. Civ. P. 16(b)(4) ............................................................................................................. 1

Fed. R. Civ. P. 16(b)(6) .............................................................................................................1

Fed. R. Civ. P. 23 ..............................................................................................................passim

Fed. R. Civ. P. 23(a) ............................................................................................................... 19

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 19, 20

22

23

24

25

26

27

28

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

v

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 19

Fed. R. Civ. P. 23(b)(3) ................................................................................ 19, 21, 24

Fed. R. Civ. P. 23(c) ............................................................................................... 27

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 25

Fed. R. Civ. P. 23(c) ............................................................................................... 25

Fed. R. Civ. P. 23(e) ......................................................................................... 13, 25

Fed. R. Civ. P. 23(e)(1) ........................................................................................... 25

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 13

Fed. R. Civ. P. 30(b)(6) ............................................................................................. 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**   <u>**INTRODUCTION**</u>

This is an FLSA/state law wage-and-hour hybrid collective/class action.  Named Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White (hereinafter "Plaintiffs") and approximately 6,800 putative class members are hourly Customer Service Representatives (hereinafter the "Class Members"), employed by T-Mobile USA, Inc. ("Defendant"), at its call centers throughout the country.

In this unopposed Motion, Plaintiffs hereby request preliminary approval of a $2,000,000.00 collective/class action settlement.  Defendant does not oppose this Motion.  Moreover, given the parties' good faith and ongoing efforts to negotiate a resolution of this matter following their mediation on January 8, 2021, and the parties' recent execution of a settlement agreement, the parties have agreed that there is "good cause" pursuant to Federal Rule of Civil Procedure 16(b)(4), Local Rule 16(b)(6), and this Court's Minute Order Setting Trial Date & Related Dates dated April 21, 2020 (Dkt. No. 44) (the "Minute Order"), to allow for the filing of this Motion after the February 5, 2021, deadline for filing a motion for class certification as specified in the Minute Order.

Filed in support of this Motion is the class and collective action Settlement Agreement and release of claims (hereafter "Settlement Agreement" or "Settlement") (Exhibit A to this Memorandum) and the declaration of Plaintiffs' Lead Counsel, Kevin Stoops (Exhibit B). Capitalized terms that are used but not defined in this brief are defined in the Settlement Agreement. This is a common fund settlement, with no claims process and no reversion. Class Members who do not request exclusion from the Settlement will automatically receive settlement checks. The Settlement Agreement defines the Settlement Class as, "all individuals in the (a) Opt-in Group, or (b) the Initial Rule 23 Group, and the (c) Supplemental Rule 23 Group." (Exh. A, Settlement, ¶ 1(l)).

The distinctions between the Opt-in Group, Initial Rule 23 Group, and the Supplemental Rule 23 Group are set forth in the "Definitions" section of the Settlement Agreement, specifically, paragraphs E-F on page 1.  The "Opt-in Group" are the Class Members who previously received notice of and affirmatively opted into the FLSA Collective (some but not all of whom are also Rule 23 Class

1

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

Members); the Initial Rule 23 Group are Class Members in the five Rule 23 states who Defendant employed between April 23, 2017 and September 19, 2020, who received notice of, but did affirmatively opt into, the FLSA Collective; and the Supplemental Rule 23 Group are Class Members Defendant employed from September 20, 2020 up to the date preliminary approval is granted ("Preliminary Approval Date") who did not previously receive notice of the FLSA Collective.[1] The formula for distribution of the Net Settlement Amount among the Class Members is set forth in ¶10(b) of the Settlement Agreement. In short, every Class Member will receive a Minimum Payment of $20.00, but from there, the payments are distributed from the Net Settlement Amount based on a point system that is tied to the number of pay periods each Class Member worked between April 23, 2017 and the Preliminary Approval Date. The distribution formula is discussed in more detail below.

For settlement purposes only, Plaintiffs request entry of an order (1) preliminarily certifying the proposed Settlement Class and FLSA Collective under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and 29 U.S.C. §201 *et seq.*; (2) preliminarily approving the parties' Settlement; (3) preliminarily appointing the Named Plaintiffs as the representatives for the Class Members, and Class Counsel as counsel for the Class Members; (4) approving the parties' proposed form for Notice of the proposed Settlement to Class Members (and the accompanying Opt-Out Request form); and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, costs, and service awards.

## II.   PROCEDURAL HISTORY OF THE CASE

### A.   The Proceedings, Pleadings, and Parties

Plaintiffs filed this case on March 28, 2019, as a hybrid class and collective action pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. §216(b). Dkt. No. 1. On May 31, 2019, Plaintiffs filed a Pre-Discovery Motion for Conditional Certification and Court Authorized Notice pursuant to 29 U.S.C §216(b). Dkt. No. 23.  That motion sought nationwide certification of a collective comprised of customer service representatives (CSRs) from Defendant's 17 Legacy T-Mobile call centers. On

---

[1] The estimate of 6,800 Class Members provided above includes approximately 1,242 in the Opt-in Group, 5,407 in the Initial Rule 23 Group, and a placeholder estimate of 151 for the presently unknown number in the Supplemental Rule 23 Group.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

April 7, 2020, the Court granted Plaintiffs' Motion for Conditional Certification.  Dkt. No. 35.  After receiving notice, approximately 1,242 CSRs opted into the case (excluding the four who had already joined).

Recently, Plaintiffs filed a First Amended Complaint (FAC) asserting the following claims:

Count I: Violation of the Fair Labor Standards Act

Count II: Violation of the Colorado Minimum Wage Act and Colorado Wage Claim Act

Count III: Violation of the Missouri Minimum Wage Law

Count IV: Violation of the Oregon Wage Laws

Count V: Violation of the New Mexico Minimum Wage Act

Count VI: Violation of the Washington Minimum Wage Act and Washington Rebate Act

Dkt. No. 96.

The FAC reflects the claims resolved at a private mediation between the parties that occurred on January 8, 2021, with well-respected wage and hour mediator, Carole Katz, Esq.  *See* https://www.carolekatz.com/ (last visited 1/28/21). The mediation lasted an entire day, but the parties were able to negotiate at arms-length a substantial settlement on behalf of the Named Plaintiffs and the Class Members, as discussed below.

The parties spent the subsequent period working on the long form Settlement Agreement and Notice now before the Court. (Exh. B, Stoops Decl. at ¶ 19).

**B.**   **Summary of Discovery Conducted Prior to Mediation**

Plaintiffs' Complaint was based upon substantial pre-filing research, both factual and legal. Defendant then produced hundreds of pages of documents in addition to substantial electronic data responsive to Plaintiffs' informal pre-mediation discovery requests. (Exh. B, Stoops Decl. ¶¶ 21-22). The parties' counsel conducted numerous conferences and exchanged correspondence on Plaintiffs' claims, Defendant's defenses, and the scope of discovery. (*Id.*). The documents and data provided and reviewed by Class Counsel included the following:

a.   Information pertaining to the number of Class Members employed by Defendant during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; location worked; hours worked per

3

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

week; total weeks worked; total shifts worked; job title; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

b.   Data modeling and related statistics identifying pre-shift log-on activity by the Class Members;

c.   Voluminous time and pay records;

d.   Time-keeping policies;

e.   Log-in and log-out policies;

f.   Training policies and materials;

g.   Documents provided to counsel by the Named Plaintiffs; and

h.   Intake forms and interview sheets for potential Opt-in Plaintiffs.

(*Id.* at ¶ 22).

From this information, and with the assistance of their retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLP, Plaintiffs' Counsel was able to identify the following metrics for the Class Members for the period of April 23, 2017 through September 25, 2020:

- 6,649 Total Class Members

- Rule 23 Class Members: 5,407

- FLSA Opt-In Collective Members: 1,242

- Average hourly wage rate:  $16.39 per hour

- Total number of work weeks: 521,584

- Total work weeks with hours equal to or greater than 40 hours: 133,174 (equaling 25.5% of all work weeks)

- Total number of overtime shifts: 665,870

(*Id.* at ¶¶ 31-32).

Throughout this litigation, and in connection with the mediation process, Defendant asserted numerous legal and factual defenses to Plaintiffs' claims and class certification efforts including, among others, that:

a.   Contrary to Plaintiffs' declaration testimony, Defendant provided three different methods for CSRs to clock in. In fact, an examination of the Kronos timekeeping records for the three initial declarant Plaintiffs illustrated that they manually entered their clock-in start times for nearly half of their shifts.

4

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

b. Defendant maintains written employment policies pursuant to which: "[n]o employee may request or allow non-exempt employees to work off-the-clock or without accurately recording all hours and minutes worked, or to falsify or submit inaccurate time records."

c. The Employee Handbook similarly instructs CSRs to "ensure that their actual hours and minutes of work (not merely their scheduled shift times) are promptly and accurately recorded."

d. The Handbook further states: "Falsification of time worked, including under-reporting or over reporting the amount of time worked …, violates Company policy and may result in performance improvement action up to and including termination."

e. Defendant instructs and requires employees to report any suspected violation of Defendant's policy prohibiting off-the-clock work.

f. Defendant will tender dozens of CSRs to testify that they did not ever work off-the-clock and included the boot-up activities in their reported time.

g. The putative Class Members engaged in personal activities at the beginning of their shifts.

h. Plaintiffs' allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks they describe.

i. The boot-up time alleged by Plaintiffs is actually *de minimis* and, thus, not compensable.

j. The putative Class Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing the off-the-clock duties.

k. Defendant maintains a lawful meal period policy and the putative Class Members do not perform off-the-clock work tasks during their meal periods.

l. The putative Class Members will not satisfy the commonality and predominance elements to obtain Rule 23 class certification.

m. Plaintiffs will not be able to establish that Defendant's alleged violations were willful.

n. Plaintiffs and the putative Class Members will not be able to recover liquidated damages.

(*Id.* at ¶ 29).

The existence of Defendant's factual and legal arguments weighed on the parties' decision to resolve the case. While Class Counsel understandably takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiffs' wage claims simply cannot be disregarded in measuring the reasonableness of the Settlement. Specifically, settling this

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

case now saves the parties from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation. Should the parties have continued to litigate the case, they would have been faced with no less than 6 to 12 months of additional formal discovery (individual Class Member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by individual Rule 23 certification motions on Plaintiffs' multiple state law claims, FLSA decertification motions, numerous dispositive motions, and eventually one or more trials. It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. (*Id.* at ¶ 30).

## C.   Estimated Exposure

Finding that their respective interests are best served by compromise, the parties agreed to attend a private mediation, after conducting the described discovery and investigation, on January 8, 2021, with well-respected wage and hour mediator, Carole Katz. (Exh. B, Stoops Decl., ¶ 17). After a full day of contentious negotiations, the parties were able to reach a settlement in principle and entered into a tentative agreement that formed the basis for the Settlement that is now before the Court for approval. (*Id.* at ¶ 18).

The parties reached their Settlement only after evaluating Plaintiffs' theories of potential exposure for the underlying claims, and, with the assistance of the mediator, considering discounts to potential liability in light of Defendant's contentions and defenses. Class Counsel, with the assistance of expert economist Eric Lietzow, developed a time consuming and complicated damage analysis of all claims and calculated the maximum potential liability exposure that Plaintiffs contend Defendant faced on the claims as follows. (*Id.* at ¶ 31):

a.   Off-the-Clock FLSA Overtime Wage Claims:

The best possible recovery for the pre- and mid-shift log-in claims based on Plaintiffs' time estimations equates to approximately 4 to 6 minutes per shift per Class Member. Assuming the 4 to 6 minutes of unpaid time per shift, and that each Class Member was paid the full measure of overtime damages for each minute worked, plus liquidated damages, and that the payment covered a class period extending back to April 1, 2016 (approximately three years prior to conditional certification being granted), the off-the-clock overtime damages through October 2, 2020 (the Initial Rule 23 Class period) would amount to approximately

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

$2,182,165.12 to $3,273,250.12.

    b.  <u>State Law Wage and Hour Claims:</u>

i.  Rule 23 Colorado Class.

The Colorado Class is composed of 1,066 employees. Again, assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Colorado law, the maximum straight-time exposure (if no class members opt-out) would be $296,908.34 to $445,362.61. The maximum overtime wages to the Colorado class would be $196,235.50 to $294,353.12.

ii.  Rule 23 Missouri Class.

The Missouri Class is composed of 1,197 employees. Again, assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Missouri law, the maximum straight-time exposure (if no class members opt-out) would be $289,983.18 to $434,974.76. The maximum overtime wages to the Missouri class would be $142,326.50 to $284,653.01.

iii.  Rule 23 New Mexico Class.

The New Mexico Class is composed of 1,565 employees. Again, assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under New Mexico law, the maximum straight-time exposure (if no class members opt-out) would be $411,754.55 to $617,631.83. The maximum overtime wages to the New Mexico class would be $279,673.07 to $419,509.60.

iv.  Rule 23 Oregon Class.

The Oregon Class is composed of 1,220 employees. Again, assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Oregon law, the maximum straight-time exposure (if no class members opt-out) would be $289,687.18 to $434,530.78. The maximum overtime wages to the Oregon class would be $204,175.38 to $306,263.19.

v.  Rule 23 Washington Class.

The Washington Class is composed of 705 employees. Again, assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Washington law, the maximum straight-time exposure (if no class members opt-out) would be $163,794.61 to $245,691.84. The maximum overtime wages to the Washington class would be $120,026.24 to $180,039.48.

(*Id.* at ¶ 33).

    In sum, a reasonable estimation of the maximum possible damages for all of the Rule 23 classes' straight time and overtime wages is $2,394,564.55 to $3,663,010.22. Based on the evidence gathered during litigation, this is the amount they could recover if they succeeded in proving every single minute of off the clock work during the past three years. Because the FLSA and state-law Rule 23 maximum

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

1   exposure calculations involve substantial overlap, the total potential maximum exposure would range

2   from approximately $2,543,211 to $3,814,817. (*Id.* at ¶ 34).

3       **D.       Total Potential Liability and Percentage of Recovery**

4       Based on the damage analysis conducted by Class Counsel and the expert economist, and in

5   light of the factual and legal defenses identified above, the $2,000,000.00 settlement equates to

6   approximately 61% of Defendant's $3,273,250.12 *maximum* total off-the-clock overtime exposure,

7   including liquidated damages, under the FLSA. (Exh. B, Stoops Decl., ¶ 35). Further, the $2,000,000

8   settlement equates to approximately 55% of Defendant's greatest possible exposure ($3,663,010.22)

9   with inclusion of the full measure of damages for all Rule 23 straight time claims. (*Id.* at ¶ 36).

10      The settlement amount is substantial, completely reasonable, and marks a fair compromise

11  of the claims. Significantly, the total settlement amount equates to 52.4% of the total wage damages

12  (overtime wages plus straight time wages) claimed by the Class when computing exposure at 6

13  minutes of off-the-clock work per shift per Class Member ($3,814,816.88: best possible wage

14  damage recovery range)[2] and 78.6% of the total wage damages claimed by the Class when

15  computing exposure at 4 minutes of off-the-clock work per shift per Class Member**.** (*Id.* at ¶ 37).

16  These figures underscore the fair, reasonable, and adequate result this Settlement represents to the Class

17  Members.

18  **III.    SETTLEMENT TERMS**

19      The Settlement provides as follows:

20      **A.       Value of the Settlement to the Class**

21      Defendant has agreed to pay a total Settlement Amount of $2,000,000.00 in connection with this

22  non-reversionary Settlement. (Exhibit A, Settlement, ¶ 5).

23

24

25

---

26  [2] As stated above, based on six minutes, the unliquidated overtime damages for the class are
    $1,636,625.06. Additionally, based on six minutes, the maximum straight time wages for all of the

27  Rule 23 states is $2,178,191.82. The sum of those two figures is $3,814,816.88, which amounts to the
    maximum actual wage loss (no liquidation).

28

                                        8

**B.**     <u>Size of the Class and the Class Definition</u>

The Class consists of all current and former employees who worked at a Legacy T-Mobile call center in the United States in a position that contains the terms Associate Expert, Expert, Senior Expert, CSR 1, CSR 2, or CSR 3, and who fall within one or both of the following two categories: (a) previously received and timely returned a signed "Consent to Join Lawsuit" form indicating their intent to join the FLSA Collective; and/or (b) worked in such a position between April 23, 2017, and the Preliminary Approval Date in Colorado, Missouri, New Mexico, Oregon, or Washington State. (Exhibit A, Settlement, ¶ 1) In sum, the Settlement covers approximately 6,800 CSRs.

**C.**     <u>Nature of the Payments and Notice, Exclusion, and Objection Periods</u>

This is a common fund settlement with no reversion, and every participating Class Member will automatically receive a check for their Individual Settlement Payment. (Exhibit A, Settlement, ¶¶ 1(c), 10). The formula for distributing payments to Class Members is explained below, in Section F.

Class Members who want to be excluded from the Settlement must mail a written Opt-Out Request to the Claims Administrator no later than 60 days after the original mailing of the Class Notice. (*Id.* at ¶ 11(d)).  Class Members will also have 60 days from the mailing of the Class Notice to object to the Settlement, and the Class Notice provides details on these objection procedures. (*Id.* at ¶ 11(e)); *see also* Notice, at Exhibit D to Settlement).

**D.**     <u>The Released Claims and Released Parties</u>

Because the Named Plaintiffs and Initial Opt-in Plaintiffs are requesting additional incentive payments, if approved by the Court, the Settlement provides the following release applicable to them:

> As of the Effective Date, the Named Plaintiffs and the Initial Opt-In Plaintiffs, on behalf of themselves and their respective marital communities (if any), heirs, executors, administrators, and assigns, expressly waive, release, discharge and acquit any and all claims against T-Mobile and the Released Parties. Except as expressly stated below, this waiver and release is comprehensive, and includes any and all claims (including claims to attorneys' fees), damages, causes of action or disputes, whether known or unknown, based upon acts or omissions occurring or that could be alleged to have occurred from the beginning of time through the Effective Date. This waiver and release includes both the full scope of the claims released by the Settlement Class as set forth below in Paragraph 4, and further includes, without limitation, all other claims for wages, compensation, employment

9

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

benefits, and damages of any kind whatsoever arising out of any: defamation; discrimination; harassment; retaliation; wrongful termination; negligence; loss of consortium; or other torts; any federal, state, local or other governmental statute or ordinance; and any other claim arising out of the employment relationship. Notwithstanding the foregoing, this release does not include any claims for breach or enforcement of this Agreement, claims under the Age Discrimination in Employment Act or Older Workers Benefit Protection Act, unemployment compensation claims, worker's compensation claims, or any other claim that may not be lawfully released under this Agreement.

A narrower release applicable to all Class Members provides:

As of the Effective Date, this Agreement constitutes a full and final settlement and release of any and all wage and hour claims, including those relating to recorded, unrecorded, off-the-clock, additional, undercompensated, or uncompensated work time; regular or overtime pay (or the calculation thereof), and including the timing and method of payment; liquidated or double damages; other penalties or premium amounts related to wage statements, rest and meal breaks, work hours, schedules, or pay; and all derivative claims (including attorneys' fees, costs, and expenses) that were or could have been asserted by any or all members of the Settlement Class against T-Mobile or any other Released Parties. This release applies to the members of the Settlement Class and their respective marital communities (if any), heirs, executors, administrators, and assigns. This release covers any and all wage and hour claims, rights, demands, charges, complaints, causes of action, damages, obligations, disputes, or liabilities of any kind or nature that were asserted in the Action or could have been but were not asserted in the Action, whether known or unknown, arising out of work performed by the Settlement Class for T-Mobile from the beginning of time through the Effective Date. This expressly includes but is not limited to any statutory/regulatory claims that may lawfully be released (including but not limited to claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. §§8-6-101–8-6-119, Colorado Minimum Wage Order No. 32, 7 Colo. Code Regs. §§1103-1(1)–(22), Colorado Wage Claim Act, Colo. Rev. Stat. §§8-4-101–8-4-123; Missouri Minimum Wage Law, § 290.500 RSMo, *et seq.*, Missouri Wage Payment Law, §§ 290.080 to 290.090, RSMo; New Mexico Minimum Wage Act, N.M.S.A. § 50-4-19 *et seq.*; Oregon Revised Statutes, Chapters 652 and 653; Washington Minimum Wage Act, RCW 49.46 *et seq.*, Washington Wage Rebate Act, RCW 49.52 *et seq.*, Washington Industrial Welfare Act, RCW 49.12 *et seq.*, and Washington's wage payment statute, RCW Chapter 49.48; as well as any local laws in those five states), contractual claims (whether express or implied), and common law claims (including without limitation any claims of unjust enrichment, quantum meruit, estoppel, misrepresentation, any other claim in equity, and any claim of breach of a covenant of good faith and fair dealing) for compensation, wages, unpaid amounts, double damages, interest, penalties, costs, expenses, and/or attorneys' fees for or related to such matters. This expressly excludes claims that are not reasonably related to wage and hour claims, including claims for discrimination, retaliation, wrongful termination, unemployment, disability, worker's

10

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

compensation, and any claims that may not be lawfully released under this Agreement.

**E.      Allocation of Settlement Amount**

The total Settlement Amount of $2,000,000 will be used to pay all of the following:

- Class Counsel's Attorneys' Fees in an amount not to exceed $600,000 and costs in an amount not to exceed $55,000 (any unapproved amounts will pour over to the Class Members). (Exh. A, Settlement, ¶¶ 5).

- Incentive awards to the Class Representatives as follows:  as follows: $5,000 to Kristina Chetwood; $5,000 to Sandra Castellon-Gonzalez; $2,500 to Auriel Calvert; $2,500 to Kerry Selfridge; $1,000 to Paul Rose; $1,000 to Jairo Marquez; $1,000 to Samantha Stephens; $1,000 to Richard Nedbalek; and $1,000 to Briana White. (*Id.* at ¶ 9).

- Settlement Administrator costs in an amount not to exceed $37,500. (*Id.* at ¶ 7).

- Defendant's share of the payroll taxes associated with the wage payments made to the Class Members pursuant to the Settlement Agreement. (*Id.* at ¶ 5).

**F.      The Net Distribution Funds; Calculations and Payments to Classes**

The Settlement Amount minus the above allocations as approved by the Court is the Net Settlement Amount, which is estimated to be approximately $1,287,500 (less the employer's share of the payroll taxes associated with the wage payments to the Class Members), and this amount will increase with the addition of any un-awarded portions of the allocations. The Net Settlement Amount will be paid in its entirety to the Class Members who participate in the Settlement.

With an estimated 6,800 Class Members (i.e., assuming no Class Members opt out of the Settlement), the average payment to them using a straight average is approximately $189.33 per employee.

The parties based the distribution of the Net Settlement Amount on a point system. First, each Class Member will receive a "Minimum Payment" of twenty dollars ($20.00) and the total amount of all such Minimum Payments will be subtracted from the Net Settlement Amount.  Next, each Class Member shall be assigned one (1) point for each pay period worked in a Notice Group Position between April 23, 2017, and the Preliminary Approval Date in which they worked eighty (80) or more hours according to T-Mobile's time records. Additionally, each Class Member shall be assigned one-quarter (0.25) additional point for each pay period worked in a Notice Group Position between April 23, 2017, and the Preliminary Approval Date in which they worked at a location in the states of Colorado, Missouri, New

11

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

Mexico, Oregon and Washington.

To calculate each Class Member's proportionate share of the Net Settlement Amount (in addition to their individual Minimum Payment), the Settlement administrator shall use the following formula: 1) add the points for all Class Members together to obtain the "Total Denominator"; 2) divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's portion of the remainder of the Net Settlement Amount after the subtraction of the Minimum Payments; and 3) multiply each Class Member's portion of the remainder of the Net Settlement Amount by the total amount of the remainder of the Net Settlement Amount to determine each Class Member's Individual Settlement Award.

The sum of the Individual Settlement Awards for all Class Member's (including Minimum Payments) shall equal the Net Settlement Amount.

### G.    Notice Procedures

Experienced third-party administrator Rust Consulting (the "Settlement Administrator") will provide Notice of the Settlement to the Class Members by U.S. mail. (Exh. D, Settlement, ¶ 10(c)). If the Notice is returned as undeliverable, then the Settlement Administrator will perform one trace to locate a correct address and, if located, will make a second attempt at mailing the Notice or, if not located and a personal email address is available, will send a Notice to the Class Member's last known personal email address. *Id.* The Notice, at Exhibit A to the Settlement, has been drafted to efficiently yet comprehensively describe the terms of the Settlement. The Settlement Administrator shall mail the Notice within 28 days of the Court's Preliminary Approval Order. (*Id.*). Class Members will then have 60 days from the mailing of the Notice to opt out of or object to the Settlement. (*Id.* at ¶ 11(d)).

### H.    Tax Consequences, Allocations, Uncashed Checks, and Cy Pres

The Settlement Administrator will calculate the Individual Settlement Payments based on the class information provided by Defendant. (Exh. A, Settlement, ¶ 10). Each Individual Settlement Payment will be allocated 50% to "wages" and 50% to "interest and penalties." (*Id.* at ¶ 10(b)). The Settlement Administrator will issue required tax statements. Any uncashed proceeds will be donated to Food Lifeline Hunger Solutions Center. (*Id.* at ¶ 11(i)).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

## IV.   ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL

### A.   Standard of Review for Class Action Settlements

Actions brought as class actions may only be settled with court approval. *See* Fed. R. Civ. P. 23(e). Rule 23(e)(2) of the Federal Rules of Civil Procedure states that the district court may only approve the settlement if, taken as a whole, "it is fair, reasonable, and adequate." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). Where the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a heightened standard of fairness and a more probing inquiry than may normally be required under Rule 23(e). *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). In determining whether to finally approve a settlement, the district court must balance "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.

"Some of the aforementioned factors cannot be properly examined until after the fairness hearing. As such, at this preliminary approval stage, the Court conducts a less searching inquiry of each factor and only requires that the proposed settlement be within the range of final approval." *Id.* at *4; *Ali v. Menzies Aviation, Inc.*, No. 2:16-CV-00262RSL, 2016 WL 4611542, at *3 (W.D. Wash. Sept. 6, 2016) (granting preliminary approval where it was "in the range of final approval"). "As a matter of express public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters." *Arthur v. Sallie Mae, Inc.*, C10-0198JLR, 2012 WL 90101, *6 (W.D. Wash. Jan. 10, 2012) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned")). Where both sides face significant uncertainty, the attendant risks favor settlement. *Hanlon*, 150 F.3d at 1026.

Plaintiffs address the relevant factors in turn, cognizant that the Court must revisit the issue after Class Members have an opportunity to object or opt out.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

### 1.    Strength of Plaintiffs' Case, Mediation Supports Approval

The Settlement here was reached through arm's-length bargaining between counsel, with a respected mediator, which included offers and counteroffers and eventual agreement. Class Counsel was confident in the merits of claims asserted, and likewise Defendant maintained that it would be able to defeat a class certification motion and/or class claims on the merits, including an anticipated motion for summary judgment. The parties preferred this Settlement to facing protracted litigation and incurring costs and fees before this honorable Court or the Ninth Circuit.

Prior to mediation, both parties researched their claims and defenses in order to appropriately evaluate the strengths and weaknesses of their respective cases, and did so in view of the comprehensive class-wide discovery addressed above. (Exh. B, Stoops Declaration, ¶¶ 21-33). Prior to and during the mediation, Defendant also voluntarily provided class data and information which permitted an objective assessment of Defendant's potential liability exposure. (*Id.*)  At the mediation, both parties carefully weighed the risks and benefits of resolving the case in comparison to proceeding with the motion for class certification and then potentially before the Ninth Circuit. The parties concluded that the settlement terms were acceptable and the benefits of settling outweighed the risks of further litigation. (*Id.*).

### 2.    The Risk, Expense, Complexity, Likely Duration of Litigation

The parties have disputed the strength of Plaintiffs' claims and the substantial risk of not attaining class certifications under Rule 23. (Exh. B, Stoops Declaration, ¶ 29).  Defendant produced all relevant policies, which appear facially lawful, so Plaintiffs faced the prospect of proving an unlawful practice of alleged failure to pay the Class Members for off-the-clock work.  Defendant refuted these allegations and presented evidence and arguments as to why the Class Members had been paid for all compensable work activities. (*Id.*). As there is no written record of off the clock work, Defendant also argued there was no way to determine how much time was allegedly not separately compensated. Additionally, in light of Defendant's policies prohibiting off the clock work, how different Class Members responded to the alleged "pressure" to work off the clock varied. Therefore, Defendant argued that individualized issues predominated rendering any proposed class or collective trial unmanageable. (*Id.*).

14

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

Both sides advocated strongly for their respective clients' chances for success on the primary claim in this off-the-clock call center case. Plaintiffs' off-the-clock claim required they establish both the actual time they spent opening and closing computer programs and applications, and that the activity was compensable as work. The Portal-to-Portal Act exempts employers from liability under FLSA for "activities which are preliminary to or postliminary to [the] principal activity or activities" that an employee is employed to perform. 29 U.S.C. § 254(a)(2). In *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517 (2014), the Supreme Court held that the phrase "principal activity or activities" means all activities that are an "integral and indispensable part of" the employee's principal activities. An activity is "integral and indispensable" only if it is "an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

Proof of liability and damages here would have been challenging given the difficulty in proving that Defendant suffered or permitted the Class Members to perform work activities off the clock, and absence of official time records confirming any amount of work performed. Proof in this case was further complicated by the fact that many Class Members entered their start and stop times manually and others used a mobile app to record time, with both these approaches rendering computer start-up and processing times irrelevant. Defendant thus asserted that the facts underlying each Class Member's claim varied substantially, precluding class certification, and that any off the clock work amounted to, at most, seconds. Thus, Defendant asserted the *de minimis* defense as a complete bar to Plaintiff's claims. (Exh. B, ¶ 29).

Settlement now saves the parties and the Court from years of litigation, including, intensive classwide discovery, Rule 23 class certification, dispositive motions, trial, and appeal. It is very likely that this litigation would extend for another two years (not including any appeal) and cost the parties hundreds of thousands of dollars or more in attorneys' fees and expenses. For these same reasons, the law strongly favors settlements, particularly where complex class action litigation is concerned. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In light of Defendant's advocated defenses, the difficulties in proving off-the-clock work and

15

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

1  damages, the number of class members, uncertainty of certifying claims, and manageability issues, the

2  Settlement is within the range of reasonableness for approval. (Exh. B, Stoops Decl., ¶¶ 27-37).

3  **3.    The Risk of Maintaining Class Action Status Through Trial**

4      The above discussion applies to the risks of maintaining class certification of this action through

5  trial.   (Exh. B, Stoops Decl., ¶ 29). Defendant asserted its policies were facially compliant and that

6  individualized issues predominate and would render any proposed class, collective or representative trial

7  unmanageable. Part of Plaintiffs' claim rests on *pressure* received from supervisors not to record the

8  boot-up time on their time sheets. Defendant noted Washington cases in which claims of *pressure*

9  from supervisors were too subjective to support certification. *See, e.g.*, *Ginsburg v. Comcast Cable*

10  *Commc'ns Mgmt. LLC*, No. C11-1959RAJ, 2013 WL 1661483 (W.D. Wash. Apr. 17, 2013); *Hill v.*

11  *Xerox Corp.*, No. C12-0717-JCC, 2014 WL 3396098 (W.D. Wash. July 10, 2014). Defendant's

12  arguments also include application of the *de minimis* doctrine and that Defendant's compensation system

13  accounted for all hours worked. Plaintiffs contest these arguments and maintain class treatment is viable,

14  but the uncertainty on the legal issues at the core of the parties' claims and defenses further underscores

15  the reasonableness of the proposed Settlement.

16      Indeed, the parties strongly contested the relative risks in this case, and adjusted them based on

17  several factors, including recent case law, likelihood of success at certification, likelihood of success on

18  the merits, and varying assumptions of alleged non-compliance with various state and federal laws.

19  Given the constantly shifting legal landscape of class action litigation, there is also a significant chance

20  that any class certification, collective, and/or representative order or judgment in favor of Plaintiffs could

21  be overturned on appeal. All of these were very substantial risks any of which could result in the

22  class/collective members receiving nothing if the claims are further litigated.

23  **4.    The Amount Offered In Settlement Is Fair and Reasonable**

24      The final settlement in this case reflects a compromise in the respective parties' view of the

25  inherent risks of continued litigation.

26      Plaintiffs estimate that if they were 100% successful in the overtime and straight time claims,

27  the total off-the-clock damages on a Rule 23 basis would fall in a range of $2,394,564.55 to

28

16

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

$3,663,010.22. (Exh, B, Stoops Decl., ¶ 34).   Therefore, the $2,000,000.00 settlement equates to approximately 61% of Defendant's $3,273,250.12 *maximum* total off-the-clock overtime exposure, including liquidated damages, under the FLSA. (*Id.* at ¶ 35).  Further, the $2,000,000 settlement equates to approximately 55% of Defendant's greatest possible exposure ($3,663,010.22) with inclusion of the full measure of damages for all Rule 23 straight time claims. (*Id.* at ¶ 36).  The settlement amount is substantial, completely reasonable, and marks a fair compromise of the claims. Significantly, the total settlement amount equates to 52.4% of the total actual wage damages (overtime wages plus straight time wages) suffered by the Class when computing claims equal to 6 minutes of off-the-clock work per shift per class member ($3,814,816.88: best possible wage damage recovery range). (*Id.* at ¶ 37).  With an estimated 6,800 class members (*i.e.*, assuming no class members opt out of the Settlement), the average payment to them using a straight average is approximately $189.33 per Class Member.

These estimated percentages and payments represent real and substantial recoveries, and are appropriate in view of the state of the law and Plaintiffs' claims and Defendant's defenses, as addressed above. *See, e.g.*, *McKinnon v. City of Merced*, No. 118CV01124NONESAB, 2020 WL 4813206, at *12 (E.D. Cal. Aug. 19, 2020) (approving 50% of plaintiff's best-case scenario as fair and reasonable); *Lowe v. Popcornopolis LLC*, No. CV196984PSGRAOX, 2020 WL 5991509, at *7 (C.D. Cal. July 8, 2020) (approving 40 percent of the estimated damages, "which is well-within the range of possible approval"); *Brown v. CVS Pharmacy, Inc.*, No. CV15-7631 PSG (PJWX), 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) ("The settlement amount therefore represents approximately 27 percent of the possible recovery, which is well within the range of possible approval"); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming approval of class settlement which represented roughly one-sixth of the potential recovery);  *Glass v. UBS Fin. Servs.*, No. C–06–4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement for unpaid overtime wages where the settlement amount constituted approximately 25 percent of the amount plaintiffs might have proved at trial); *Rigo v. Kason Indus., Inc.*, No. 11–CV–64–MMA (DHB), 2013 WL 3761400, at *5 (S.D. Cal. July 16,

17

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-cv-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation.").

Courts in the Ninth Circuit have observed that "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). The Settlement here is significantly more than a "fraction" and provides a recovery commensurate with the associated risk factors involved in the case.

### 5.      The Extent of the Discovery Completed, Stage of Proceedings

Before mediation, Plaintiffs' counsel gathered comprehensive discovery, and the parties had ample documents and data to arrive at meaningful settlement negotiations and calculations. (Exh. B, Stoops Decl., ¶¶ 21-33). Documents produced included relevant policies, handbooks, voluminous employee declarations, and training materials, and other documents and ESI comprising timekeeping records, which Plaintiffs' expert economist reviewed to estimate violation rates and potential liability exposure to Defendant. (*Id.*). Before mediation, the parties conferred to discuss and clarify specific factual issues. These efforts provide more than adequate factual bases upon which to arrive at a settlement that is well within the range of reasonableness.

### 6.      The Experience and Views of Counsel

Another factor considered in determining the fairness of a settlement is the experience and views of counsel. *Hanlon*, 150 F.3d at 1026. Courts do not second guess the parties, or substitute their judgment for that of the proponents of the settlement, and many courts give considerable weight to the opinion of experienced counsel supporting the settlement. *See, e.g., Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001) ("Class counsel's opinion is accorded considerable weight and supports the fairness and adequacy of the proposed settlement."); *Talavera v. Sun-Maid Growers of California*, No. 115CV00842DADSAB, 2020 WL 2195115, at *9 (E.D.

18

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-cv-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

1  Cal. May 6, 2020) (same). Where there is no evidence of fraud or collusion, courts presume negotiations

2  were conducted in good faith. *See Newberg on Class Action*, 3d Ed. § 11.51. *See also*, *Rodriguez v. W.*

3  *Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement that represented 10% of

4  plaintiffs estimated treble damages where there was no evidence of collusion.")

5        Class Counsel have practiced law for many years, have focused their practices on wage and hour

6  class actions, and have cumulatively been appointed class counsel or co-class counsel in scores of class

7  actions, obtaining substantial recoveries for hundreds of thousands of employees. (Exh. B, Stoops Decl.,

8  ¶¶ 3-10). Defendant is represented by K&L Gates LLP, a well-known employment defense firm, and

9  defense counsel are well-versed in litigating wage and hour class actions. The mediator that assisted in

10  guiding the parties to this resolution is a well-respected, nationally renowned, wage and hour mediator.

11  The parties and counsel believe the Settlement is fair and appropriate given all factors involved.

12  **V.**      **THE CLASS SHOULD BE CONDITIONALLY CERTIFIED**

13        **A.**      **The Settlement Class Satisfies the Requirements of Rule 23**

14        Plaintiffs, without opposition from Defendant solely for settlement purposes, request

15  conditional certification under Rule 23(a) and (b)(3).

16                  1.      **The Numerosity Requirement is Satisfied**

17        Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."

18  Fed. R. Civ. P. 23(a)(1). The proposed Class totals approximately 6,800 employees and numerosity is

19  easily satisfied.

20                  2.      **Common Questions of Law and Fact Exist**

21        Commonality is met because "there are questions of law or fact common to the class." Fed.

22  R. Civ. P. 23(a)(2).  In the Ninth Circuit, this requirement "has been construed permissively."

23  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  Even though proposed class

24  members "may possess different avenues of redress," so long as "their claims stem from the same

25  source," there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a)(2)." *Id.*

26  at 1019-20.  Here, common questions include (a) Defendant's policies and practices with respect

27  to log-in and clock-in practices, (b) the nature and significance of Defendant's shift tolerance policy

28

19

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

1   (*e.g.*, whether they are expected to be "call ready" at the moment they clock in), (c) whether

2   Defendant's conduct was willful, and (d) the legal contours of the *de minimis* doctrine, and other

3   issues.

### 3.   Claims of the Plaintiffs Are Typical

5   Typicality tends to merge with commonality, such that "a finding of commonality will

6   ordinarily support a finding of typicality." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147,

7   157 n.13 (1982). A class plaintiff's claim is typical of those of other class members if the claims

8   arise from the same practice or course of conduct and are based on the same legal theory." *In re*

9   *American Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). *See also Moreno Galvez v. Cuccinelli*,

10  No. C19-0321RSL, 2019 WL 3219418, at *2 (W.D. Wash. July 17, 2019) ("the named plaintiffs

11  are typical of the class because plaintiffs' claims arise from the same alleged policy and course of

12  conduct and are based on the same legal theories regarding defendants' allegedly wrongful

13  conduct.")

14  Here, Plaintiffs' and Class Members' claims arise from the same practices and are based on

15  the same legal theory, and are typical for the reasons set forth above. *See Smith v. Kaiser Found.*

16  *Hosps.*, No. 18CV780-KSC, 2020 WL 5064282, at *6 (S.D. Cal. Aug. 26, 2020) (granting

17  preliminary approval of settlement and holding Tele-nurses working in a call center met typicality

18  with their off-the-clock computer boot-up and shut-down claims).

### 4.   Plaintiffs Are Adequate

20  Plaintiffs and Class Counsel provide adequate representation of the interests of the Class

21  Members. Class Counsel has represented employees in numerous wage and hour class actions, and has

22  ample resources, experience, and expertise to draw upon in representing the Class in this action. (Exh.

23  B, Stoops Decl., ¶¶ 3-10.) Plaintiffs understand and accept their obligations as representatives of the

24  Class, and have adequately represented the Class Members' interests by devoting time to

25  prosecution of the claims including numerous detailed interviews with Class Counsel, providing

26  Class Counsel with substantial documents and information, and assisting Class Counsel in

27  reviewing and analyzing the factual defenses raised by Defendant. (*Id.* at ¶ 47.)

28

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

B.   **The Prerequisites of Rule 23(b) Are Also Satisfied**

1.   **The Predominance Requirement**

Rule 23(b)(3) provides that a class may be maintained if "the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members." Here, Plaintiffs contend that adjudication of the common issues surrounding Defendant's alleged employment practices establish Defendant's liability on a class-wide basis. Common legal issues predominate because all class/collective members were subject to the same policies, shared similar job duties and need to engage in boot-up activities, and were subject to the same alleged failure to pay for off-the-clock time. Although an individual class/collective member may have incurred more off-the-clock hours than another, individual damages calculations will not defeat predominance. *See, e.g., Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016).

2.   **The Superiority Requirement**

The Court must also determine "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Where class wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Proceeding as a class action would be superior to the alternative, which is individual suits by approximately 6,800 Class Members against Defendant or, more likely, the absence of any action or recovery for most Class Members at all. Given the current case posture and the Settlement Agreement, class-wide settlement in this instance will serve to reduce future litigation costs and promote greater efficiency in resolving the claims at issue.

C.   **The Standard for Section 216(b) FLSA Settlement Approval Is Met**

The FLSA provides that "any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept.*

21

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

*of Lab., Empl. Standards Admin., Wage and Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982).  If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55.  For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should be approved.

## VI.   REQUESTED APPROVAL OF FEES, COSTS, AND SERVICE AWARDS[3]

### A.   The Requested Fees and Costs are Appropriate, and Class Counsel Will Submit Detailed Support for Them Prior to Final Approval

The Settlement allocates, subject to the Court's final approval at the fairness hearing, $666,666 (or 33.3% of the Total Settlement Amount), to Class Counsel for attorneys' fees and up to $55,000 in lawsuit costs.

Prior to the hearing on the motion for final approval of the Settlement, Class Counsel will request approval of their fees (in the amount of $600,000 (equaling 30% of the Total Settlement Amount) and costs, as addressed in the schedule in the [Proposed] Order, and will provide detailed billing records and cost invoices to document hours worked and costs incurred in this litigation. The specifics of the requested fees and costs are further addressed by Class Counsel in the Declaration of Kevin Stoops. (Exh. B, Stoops Decl., ¶¶ 41-46, 49-51). To date, Class Counsel has incurred almost 400 hours and nearly $190,000 in fees. It is anticipated that by the conclusion of this case (including additional work to be performed at the final approval stage, and extensive work related to settlement administration and Class Member payment processing), that Class Counsel will have accumulated a lodestar in an amount that, based on the requested fee amount, will result in a multiplier of 3.0 or less. (*Id.* at ¶ 45).

In common fund settlements of less than $50 million, such as this one, a higher percentage is often awarded by the district court and affirmed by the Ninth Circuit. *See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund); *In re Activision Sec. Litig.,* 723 F. Supp. at 1375 (N.D. cal. 1989) (awarding 32.8% of $3.5 million common fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000)

---

[3] Class Counsel recognizes that all requested allocations for attorneys' fees, costs, and incentive awards are preliminary in nature and subject to final approval of the Court after the notice and objection period.

22

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

(affirming award of 33.3% of $1.725 million). In fact, attorneys representing a class "routinely recover attorneys' fees in the range of 20 to 40 percent of the common fund." *In re Quantum Health Res., Inc.,* 962 F. Supp. 1254, 1258 (C.D. Cal. 1997). In fact, "[i]n most common fund cases, the award exceeds the benchmark" of 25 percent. *In re Am. Apparel, Inc. S'holder Litig.,* No. 10 Civ. 6352, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014); *see also Boyd v. Bank of America*, 2014 WL 6473804, at *9 (approving fee award of 36% of common fund in FLSA case).[4]

To date, Class Counsel has also incurred approximately $54,000 in necessary and reasonable litigation costs. (*Id.* at ¶ 51). "Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action." *In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 175515, at *62-63 (N.D. Cal. Dec. 19, 2016); *Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*, 1989 WL 73211, at *6 (C.D. Cal. March 9, 1989) (quoting *Newberg, Attorney Fee Awards* § 2.19 (1987)); Vincent, 557 F.2d at 769 ("[T]he doctrine is designed to spread litigation costs proportionately

---

[4] Many courts in this Circuit and across the country have awarded class counsel fees at or above 30% of the common benefit fund in other FLSA class action cases. *See, e.g., Boyd v. Bank of Am. Corp*., No. 13 Civ. 0561, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (approving fee award of 36% of common fund settlement in wage and hour case); *Birch v. Office Depot, Inc*., No. 06 Civ. 1690 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million settlement); *In re Heritage Bond Litig*., No. 02 Civ. 1475, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (approving fees of 33.33% of approximately $28 million common fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198 at *8 (S.D.N.Y. May 11, 2010) (approving attorneys' fees of $2 million from the $6 million common fund in a FLSA collective action and noting that attorneys' fee percentages of one-third are "reasonable and consistent with the norms of class litigation in [the Second] circuit."); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (approving attorneys' fees of 33 1/3% of total settlement fund of $6.7 million, plus $150,000 in costs, in FLSA collective action on behalf of class approximately 11,400 convenience store employees); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 at * 2 (M.D.N.C. Jan. 10, 2007) (noting, "in this jurisdiction, contingent fees of one-third (33.3%) are common."); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 at *21 (D.N.J. Apr. 8, 2011) (analyzing cases from district courts throughout the country in common fund cases where attorneys' fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund," and noting that most of the cases awarded attorneys' fees at the level of 33.3% of the common fund.).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

1  among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and

2  the 'stranger' beneficiaries do not receive their benefits at no cost to themselves.").

3  **B.**  **The Class Representative Incentive Awards Are Reasonable**

4  The Settlement calls for Incentive Awards in the following amounts: $5,000 each to Kristina

5  Chetwood and Sandra Castellon-Gonzalez; $2,500 each to Auriel Calvert and Kerry Selfridge; and

6  $1,000 each to Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White.

7  (Exh. A at ¶ 9).  It is customary for "named plaintiffs . . . [to be] eligible for reasonable incentive

8  payments" as part of a class action settlement. *Staton*, 327 F.3d at 977. Service or incentive payments

9  constitute "an essential ingredient of any class action," because they provide an incentive to bring

10  important cases that have a broad impact benefiting a class of individuals, not just the plaintiff. *Cook*

11  *v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These payments recognize the plaintiff's time, effort,

12  and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a

13  particularly public and powerful manner.

14  The Named Plaintiffs and opt-in Plaintiffs Calvert and Selfridge assisted Class Counsel with

15  investigation and evaluation of the class claims, including producing documents and attending multiple

16  telephonic conferences with counsel. Although only opt-ins, Calvert and Selfridge provided substantial

17  assistance to Class Counsel in prosecuting this case from its inception. The Named Plaintiffs recently

18  added in the First Amended Complaint provided less assistance than the initial Named Plaintiffs and

19  Opt-ins Calvert and Selfridge, thus the lower incentive awards, but nonetheless still tied their name to

20  this litigation and agreed to serve as class representatives for their respective states.  The Named Plaintiffs

21  satisfied their obligations as class representatives and they, along with opt-in Plaintiffs Calvert and

22  Selfridge, incurred many hours in service to this case and the Class Members, and were invaluable in

23  developing the claims, conducting discovery into them, and in reaching the Settlement that is before the

24  Court for approval. (Exh. B, Stoops Decl., ¶ 47).

25  **C.**  **The Administrator and Administration Costs Should Be Approved**

26  The Settlement Agreement is silent as to the cost of settlement administration, but the bid recently

27  accepted provides for costs up to $37,500 to Rust Consulting, for its services as Settlement

28

24

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

1   Administrator. Rust Consulting is well-respected and has been utilized successfully by Class Counsel in

2   numerous settlements of similar nature to the instant litigation. (Exh. B, Stoops Decl., ¶ 49). A bid of

3   $37,500 or less is reasonable given the number of individuals involved in the Settlement. (*Id.* at ¶ 50).

4   Therefore, Plaintiffs request approval of Rust Consulting as the administrator and the allocation of up to

5   $37,500 from the Settlement Fund to administration expenses.

6   **VII.    THE PROPOSED METHOD OF NOTICE IS APPROPRIATE**

7          The notice here satisfies the requirements that the class notice must be the "best notice that

8   is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and that the Court "direct notice

9   in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

10  23(e)(1).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient

11  detail to alert those with adverse viewpoints to investigate and to come forward and be heard."

12  *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation

13  and quotation marks omitted).  Notice mailed to each class member "who can be identified through

14  reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176

15  (1974).  For any class certified under Rule 23(b)(3), the notice must inform class members "that the

16  court will exclude from the class any member who requests exclusion," stating "when and how

17  members may elect to be excluded." Fed. R. Civ. P. 23(c)(2)(B).

18         The form of the Notice here is consistent with modern best practices set forth by the Federal

19  Judicial Center and was negotiated and agreed upon by counsel for the parties. The Notice

20  encourages Class Members to contact the Settlement Administrator with any questions, and it

21  provides telephone, mail, e-mail, and facsimile contact information for the Settlement Administrator.

22  *Id*

23         This notice plan is consistent with class certification notices approved by numerous state and

24  federal courts, and is, under the circumstances of this case, the best notice practicable.  *See, e.g*.,

25  *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 477-76 (E.D. Cal. 2009) (holding notice involving

26  similar mail procedures as here meets both Rule 23(e) and Rule 23(c) requirements; *Adams v. Inter-*

27  *Con Security Sys., Inc*., No. 06 Civ. 5428, 2007 WL 3225466, at *4 (N.D. Cal. Oct. 30, 2007)

28

25

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300

1   (finding that notice using similar mail procedure as here "satisfies the notice requirements of Rule

2   23(e), and ... all other legal and due process requirements").

3   **VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.**

4          If the Court grants preliminary approval, a date for the final fairness hearing needs to be set

5   and included in the class notice.  The parties request that the Court adopt the following schedule for

6   purposes of effectuating the various steps in the settlement approval process described above, based

7   on a preliminary approval date of June 1, 2021 (with the dates to be adjusted accordingly based on

8   the date of this Order and the date of the Final Approval Order, and if any date falls on a Saturday,

9   Sunday, or legal holiday, the actual date shall be the next day that is not a Saturday, Sunday, or legal

10  holiday).

| Due Date | Activity |
| --- | --- |
| Preliminary Approval Hearing Date | TBD |
| June 1, 2021 | Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval |
| June 15, 2021 | Defendant provides the Class Information for the Class Members to Settlement Administrator (14 days from Preliminary Approval) (proposed dates based on Order Granting Preliminary Approval being entered on June 1, 2021) |
| June 29, 2021 | Settlement Administrator to mail Class Notice to the Class Members. (No later than 28 days from preliminary approval) |
| August 14, 2021 | Deadline for Class Counsel to File Motion for Approval of Attorneys' Fees and Costs and Class Representative Service Award ("Fees Motion") and Declaration from Administrator, and Class Counsel in support<br><br>To be noted for hearing on Date of Final Approval Hearing |
| August 28, 2021 | Last day for Class Members to Object to the Settlement (60 days from Initial Mailing of Class Notice) |
| August 28, 2021 | Last day for Class Members to submit an Opt-Out Request (60 Days from Initial Mailing of Class Notice.) |
| September 20, 2021 | Deadline for Class Counsel to File Motion for Final Approval of the Settlement, Declaration from Administrator, and Supplemental Documents for Fees Motion (within 30 days after the deadline for Settlement Class Members to submit Objections and Opt-Out Requests, unless otherwise extended to within 45 days pursuant to Paragraph 10(c) of the Settlement Agreement and with approval of the Court to adjust date of Final Approval Hearing; and at least 21 days before Final Approval Hearing) |

26

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

|  | To be noted for hearing on October 12, 2021 |
|---|---|
| October 12, 2021 | Date for Final Approval Hearing (9:00 a.m.) |

## IX.   CONCLUSION

For the foregoing reasons Plaintiffs, without opposition from Defendant, respectfully request that the Court: (1) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23(c) and § 216(b) of the FLSA; (2) preliminarily certify the proposed settlement class; (3) approve the proposed class notice and forms; (4) set the deadlines for filing elections not to participate and objections to the Settlement; and (5) schedule a final approval hearing.

DATED: May 18, 2021                    SOMMERS SCHWARTZ, P.C.

By:   /s/ Kevin J. Stoops
            Kevin J. Stoops

SOMMERS SCHWARTZ, P.C.
Kevin J. Stoops (*pro hac vice*)
Charles R. Ash, IV (*pro hac vice*)

*Counsel for Plaintiff and Proposed Class and Collective Members*

## CERTIFICATE OF SERVICE

I certify that on May 18, 2021, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

s/*Kevin J. Stoops*
Kevin J. Stoops
Sommers Schwartz, P.C.

27

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS/
COLLECTIVE ACTION SETTLEMENT,
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI  48076
(248) 355-0300