HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **KRISTINA CHETWOOD**, **SANDRA CASTELLON-GONZALEZ,  PAUL ROSE, JAIRO MARQUEZ, SAMANTHA STEPHENS, RICHARD NEDBALEK, AND BRIANA WHITE,** individually, and on behalf of others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **T-MOBILE USA, INC.** <br><br> Defendant. | CASE NO. 2:19-cv-00458-RSL <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT** <br><br> NOTE FOR MOTION CALENDAR: Friday, October 22, 2021 |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS/ COLLECTIVE ACTION SETTLEMENT**
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   PROCEDURAL HISTORY OF THE CASE ....................................................... 2

      a.    The Proceedings, Pleadings, and Parties ..................................................... 2

      b.    Summary of Discovery Conducted Prior to Mediation ............................... 3

      c.    Estimated Exposure ...................................................................................... 6

            i.     Off-the-Clock FLSA Overtime Wage Claims ................................... 7

            ii.    State Law Wage and Hour Claims ..................................................... 7

                   1.    Rule 23 Colorado Class ........................................................... 7
                   2.    Rule 23 Missouri Class ............................................................ 7
                   3.    Rule 23 New Mexico Class ...................................................... 7
                   4.    Rule 23 Oregon Class .............................................................. 8
                   5.    Rule 23 Washington Class ....................................................... 8

      d.    Total Potential Liability and Percentage of Recovery ................................. 8

      e.    Value of the Agreement to the Class ............................................................ 9

      f.    Size of the Class and Class Definition ......................................................... 9

      g.    Nature of the Payments and Notice, Exclusion, Objection Periods ............. 9

      h.    The Released Claims and Released Parties ................................................. 10

      i.    Attorneys' Fees, Costs, Service Award, Administration ............................ 11

      j.    The Net Distribution Funds; Calculations and Payments of Classes ......... 12

      k.    Notice Procedures ...................................................................................... 13

      l.    Tax Consequences and Allocations and Uncashed Checks, Cy Pres......... 14

III.  ARGUMENT ..................................................................................................... 14

      a.    The Best Practicable Notice of Settlement Has Been Provided ................. 14

      b.    Final Approval Standards Under Rule 23 and the FLSA ........................... 15

      c.    The Agreement is Presumptively Fair Based on the Lack  of Objections,
            the Significant Discovery Conducted, Class Counsel's Experience, and
            Arms-Length Negotiations ......................................................................... 16

PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL
APPROVAL OF CLASS/
COLLECTIVE ACTION
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

          i.        Only One Objection and Twenty-Five Requests for Exclusion .................. 17

          ii.       The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues ........................................................................................ 18

          iii.      The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator........................................................................ 18

          iv.      The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator........................................................................ 19

    d.    The Agreement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation ................................................. 19

          i.        The Value of the Agreement Favors Final Approval................................... 19

          ii.       Further Litigation Would Involve Risk, Expense, Delay and Burden on Class/Collective Members ........................................................... 21

    e.    The Court Should Grant Final Certification and Collective Action Designation.................................................................................................................... 22

IV.    CONCLUSION............................................................................................................... 22

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

ii

# INDEX OF AUTHORITIES

## CASES

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ..................................................... 16, 18

*Cf. Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ......................... 21

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................. 18

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................................. 20

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................................ 15, 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................................. 14

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ...................................... 16, 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................. 15, 18, 20

*Hughes v. Microsoft Corp.*, No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001) ........................................................................................................ 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (8th Cir. 2000) ............................................... 18

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ................................................... 19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ............................................. 20

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ............................................. 15

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819 (D. Mass. 1987) ........................................................................................................................................ 16

*Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832 (9th Cir. 1976) ............................... 17

*Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014) ................... 21

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................................... 14

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................. 17

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................... 15, 20

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...................................................................... 16

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................. 14

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................................... 19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................. 2, 15

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS/ COLLECTIVE ACTION SETTLEMENT**
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

*Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. April 21, 2011) ................................ 21

*Tijero v. Aaron Bros., Inc*., 2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) ................................ 19

*Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370 (9th Cir. 1993) ................................................ 16

**OTHER AUTHORITIES**

7 Colo. Code Regs. §§1103-1(1)–(22) ........................................................................................ 11

29 U.S.C. §216(b) .......................................................................................................................... 2

Colorado Wage Claim Act, Colo. Rev. Stat. §§8-4-101–8-4-123 .............................................. 11

Colorado Minimum Wage Order No. 32 ..................................................................................... 11

Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. §§8-6-101–8-6-119 ................... 11

*Manual for Complex Litigation (Third)*(1995) ........................................................................... 19

*Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*") ..................... 15

Missouri Minimum Wage Law, § 290.500 .................................................................................. 11

Missouri Wage Payment Law, §§ 290.080 to 290.090 ............................................................... 11

New Mexico Minimum Wage Act, N.M.S.A. § 50-4-19 ............................................................ 11

Oregon Revised Statutes, Chapters 652 and 653 ........................................................................ 11

Washington Industrial Welfare Act, RCW 49.12 ........................................................................ 11

Washington Minimum Wage Act, RCW 49.46 ........................................................................... 11

Washington Wage Rebate Act, RCW 49.52 *et seq.*, ................................................................... 11

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................................passim

Fed. R. Civ. P. 23(a) .................................................................................................................... 22

Fed. R. Civ. P. 23(b)(3) ............................................................................................................... 22

Fed. R. Civ. P. 23(e) .................................................................................................................... 15

Fed. R. Civ. P. 30(b)(6) ................................................................................................................. 6

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is an FLSA/state law wage-and-hour hybrid collective/class action. Named Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White (hereinafter "Plaintiffs") and approximately 7,737 putative class members are or were hourly customer service representatives (hereinafter the "Class Members") employed by T-Mobile USA, Inc. ("Defendant"), at its call centers throughout the country.

In this unopposed motion, Plaintiffs hereby submit their request for Final Approval of a $2,000,000 collective/class action settlement as set forth in the Parties' Class and Collective Action Settlement Agreement and Release of Claims (hereinafter the "Settlement" or "Agreement"). ECF No. 98-1 (and attached as Exhibit A to this Memorandum).

The Settlement resolves litigation over Plaintiffs' and Class/Collective Members' claims that Defendant violated the Fair Labor Standards Act ("FLSA") and state wage and hour laws by failing to pay Plaintiffs and the Class/Collective Members for pre-, mid- and post-shift off-the-clock work. The Settlement is the product of arms-length negotiations by experienced counsel, after significant investigation, and recognition of the strengths and weaknesses of each side's positions.

The $2,000,000 settlement readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." The Class/Collective has responded overwhelmingly favorably to the Settlement. *See* Declaration of Kevin Stoops (Exhibit B at ¶¶ 56) and Declaration of Amanda Myette (Rust Consulting) ("Myette Decl.") (Exhibit C at ¶¶ 15-17). The objection and exclusion period closed for most Class Members on August 28, 2021, with 270 Class Members for whom current addresses could not be found having until October 10, 2021, to submit an objection or request for exclusion in response to a supplemental notice sent via email on September 10, 2021. Myette Decl. ¶¶11-17. As of the date of this motion, only one Class Member has made an objection to the Settlement,

PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL
APPROVAL OF CLASS/
COLLECTIVE ACTION
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

which Counsel for the parties will address in a separate joint filing. The Settlement Administrator has thus far received only 25 valid requests for exclusions from the settlement out of the 7,737 Class Members who received notice of the Agreement. *Id.*

Furthermore, Class Counsel (who are among the most highly experienced attorneys in the country handling complex wage and hour class and collective actions) have conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action. (Exh. B, Stoops Decl. at ¶¶ 28-40). Lastly, the Settlement is in line with the strength and recoverability of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

In connection with requesting final settlement approval, Plaintiffs also request that the Court confirm as final: (1) the certification of the Class certified in its Preliminary Approval Order; (2) the designation of the case as a collective action under the FLSA as preliminarily designated in that Order; and (3) the appointment of Plaintiffs as the Class Representatives and of Plaintiffs' counsel as Class counsel as initially provided in that Order ("Class Counsel").

## II.     PROCEDURAL HISTORY OF THE CASE

### a.     The Proceedings, Pleadings, and Parties

Plaintiffs filed this case on March 28, 2019, as a hybrid class and collective action pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. §216(b). Dkt. No. 1. On May 31, 2019, Plaintiffs filed a Pre-Discovery Motion for Conditional Certification and Court Authorized Notice pursuant to 29 U.S.C §216(b). Dkt. No. 23. That motion sought nationwide certification of a collective comprised of customer service representatives (CSRs) from Defendant's 17 Legacy T-Mobile call centers. On April 7, 2020, the Court granted Plaintiffs' Motion for Conditional Certification. Dkt. No. 35. After receiving notice, approximately 1,242 CSRs opted into the case (excluding the four who had already joined).

Subsequently, Plaintiffs filed a First Amended Complaint ("FAC") asserting the

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

2

following claims:

     Count I: Violation of the Fair Labor Standards Act

     Count II: Violation of the Colorado Minimum Wage Act and Colorado Wage Claim Act

     Count III: Violation of the Missouri Minimum Wage Law

     Count IV: Violation of the Oregon Wage Laws

     Count V: Violation of the New Mexico Minimum Wage Act

     Count VI: Violation of the Washington Minimum Wage Act and Washington Rebate Act

Dkt. No. 97.

The FAC reflects the claims resolved at a private mediation between the parties that occurred on January 8, 2021, with well-respected wage and hour mediator, Carole Katz, Esq. *See* https://www.carolekatz.com/ (last visited 9/20/21). The mediation lasted an entire day, but the parties were able to negotiate at arms-length a substantial settlement on behalf of the Named Plaintiffs and the Class Members, as discussed below.

The parties spent the subsequent period working on the long form Settlement Agreement and Notice now before the Court. (Exh. B, Stoops Decl. at ¶ 19).

     **b.**    **<u>Summary of Discovery Conducted Prior to Mediation</u>**

Plaintiffs' Complaint was based upon substantial pre-filing research, both factual and legal. Defendant then produced hundreds of pages of documents in addition to substantial electronic data responsive to Plaintiffs' informal pre-mediation discovery requests. (Exh. B, Stoops Decl. ¶¶ 21-22). The parties' counsel conducted numerous conferences and exchanged correspondence on Plaintiffs' claims, Defendant's defenses, and the scope of discovery. (*Id.*). The documents and data provided and reviewed by Class Counsel included the following:

    a.    Information pertaining to the number of Class Members employed by Defendant during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; location worked; hours worked per week; total weeks worked; total shifts worked; job title; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours.

    b.    Data modeling and related statistics identifying pre-shift log-on activity by the Class Members;

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

3

c.  Voluminous time and pay records;

d.  Time-keeping policies;

e.  Log-in and log-out policies;

f.  Training policies and materials;

g.  Documents provided to counsel by the Named Plaintiffs; and

h.  Intake forms and interview sheets for potential Opt-in Plaintiffs.

(*Id.* at ¶ 22).

From this information, and with the assistance of their retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLP, Plaintiffs' Counsel was able to identify the following metrics for the Class Members for the period of April 1, 2016 through October 2, 2020:

- 6,649 Total Class Members

- Rule 23 Class Members: 5,407

- FLSA Opt-In Collective Members: 1,242

- Average hourly wage rate:  $16.39 per hour

- Total number of work weeks: 521,584

- Total work weeks with hours equal to or greater than 40 hours: 133,174 (equaling 25.5% of all work weeks)

- Total number of overtime shifts: 665,870

(*Id.* at ¶¶ 31-32).

Throughout this litigation, and in connection with the mediation process, Defendant asserted numerous legal and factual defenses to Plaintiffs' claims and class certification efforts including, among others, that:

a.  Contrary to Plaintiffs' declaration testimony, Defendant provided three different methods for CSRs to clock in. In fact, an examination of the Kronos timekeeping records for the three initial declarant Plaintiffs illustrated that they manually entered their clock-in start times for nearly half of their shifts.

b.  Defendant maintains written employment policies pursuant to which: "[n]o employee may request or allow non-exempt employees to work off-the-clock

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

4

or without accurately recording all hours and minutes worked, or to falsify or submit inaccurate time records."

c. The Employee Handbook similarly instructs CSRs to "ensure that their actual hours and minutes of work (not merely their scheduled shift times) are promptly and accurately recorded."

d. The Handbook further states: "Falsification of time worked, including under-reporting or over reporting the amount of time worked …, violates Company policy and may result in performance improvement action up to and including termination."

e. Defendant instructs and requires employees to report any suspected violation of Defendant's policy prohibiting off-the-clock work.

f. Defendant will tender dozens of CSRs to testify that they did not ever work off-the-clock and included the boot-up activities in their reported time.

g. The putative Class Members engaged in personal activities at the beginning of their shifts.

h. Plaintiffs' allegations regarding the amount of off-the-clock time worked grossly overstates how long it takes to perform the tasks they describe.

i. The boot-up time alleged by Plaintiffs is actually *de minimis* and, thus, not compensable.

j. The putative Class Members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing the off-the-clock duties.

k. Defendant maintains a lawful meal period policy and the putative Class Members do not perform off-the-clock work tasks during their meal periods.

l. The putative Class Members will not satisfy the commonality and predominance elements to obtain Rule 23 class certification.

m. Plaintiffs will not be able to establish that Defendant's alleged violations were willful.

n. Plaintiffs and the putative Class Members will not be able to recover liquidated damages.

(*Id.* at ¶ 29).

The existence of Defendant's factual and legal arguments weighed on the parties' decision to resolve the case. While Class Counsel understandably takes issue with the viability of some of these defenses, the risks associated with the continued litigation of Plaintiffs' wage

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

5

claims simply cannot be disregarded in measuring the reasonableness of the Settlement. Specifically, settling this case now saves the parties from years of litigation and tremendous uncertainty as to the ultimate outcome of the litigation. Should the parties have continued to litigate the case, they would have been faced with no less than 6 to 12 months of additional formal discovery (individual Class Member depositions; interrogatories and requests for production of documents; electronic data production; 30(b)(6) depositions). Discovery, once completed, would likely be followed by individual Rule 23 certification motions on Plaintiffs' multiple state law claims, FLSA decertification motions, numerous dispositive motions, and eventually one or more trials. It is very likely that this litigation would extend for another two to three years and cost the parties $500,000 to $1,000,000 (or more) each in attorneys' fees and expenses. (*Id.* at ¶ 30).

     **c.**    <u>**Estimated Exposure**</u>

     Finding that their respective interests are best served by compromise, the parties agreed to attend a private mediation, after conducting the described discovery and investigation, on January 8, 2021, with well-respected wage and hour mediator, Carole Katz. (Exh. B, Stoops Decl., ¶ 17). After a full day of contentious negotiations, the parties were able to reach a settlement in principle and entered into a tentative agreement that formed the basis for the Settlement that is now before the Court for approval. (*Id.* at ¶ 18).

     The parties reached their Settlement only after evaluating Plaintiffs' theories of potential exposure for the underlying claims, and, with the assistance of the mediator, considering discounts to potential liability in light of Defendant's contentions and defenses. Class Counsel, with the assistance of expert economist Eric Lietzow, developed a time consuming and complicated damage analysis of all claims and calculated the maximum potential liability exposure that Plaintiffs contend Defendant faced on the claims as follows. (*Id.* at ¶ 31):

     **i.**    **Off-the-Clock FLSA Overtime Wage Claims:**

     The best possible recovery for the pre- and mid-shift log-in claims based on Plaintiffs' time estimations equates to approximately 4 to 6 minutes per shift per Class Member. Assuming

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

6

the 4 to 6 minutes of unpaid time per shift, and that each Class Member was paid the full measure of overtime damages for each minute worked, plus liquidated damages, and that the payment covered a class period extending back to April 1, 2016 (approximately three years prior to conditional certification being granted), the off-the-clock overtime damages through June 1, 2021 (covering the Initial Rule 23 Class period and the Supplemental Rule 23 Group) would amount to approximately $2,505,448 to $3,758,176.06.

ii.     **State Law Wage and Hour Claims:**

1.     **Rule 23 Colorado Class.**

Again, assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Colorado law, the maximum straight-time exposure (if no class members opt-out) would be $340,894.76  to $511,342.25.   The maximum overtime wages to the Colorado class would be $225,307.42 to $337,960.99.

2.     **Rule 23 Missouri Class.**

Assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Missouri law, the maximum straight-time exposure (if no class members opt-out) would be $332,943.65 to $499,415.47.   The maximum overtime wages to the Missouri class would be $163,411.91 to $326,823.83.

3.     **Rule 23 New Mexico Class.**

Assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under New Mexico law, the maximum straight-time exposure (if no class members opt-out) would be $472,755.22 to $709,132.84.   The maximum overtime wages to the New Mexico class would be $321,106.12 to $481,659.17.

4.     **Rule 23 Oregon Class**

Assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Oregon law, the maximum straight-time exposure (if no class members opt-out) would be $332,603.80 to $498,905.71.   The maximum overtime wages

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

7

to the Oregon class would be $234,423.58 to $351,635.51.

### 5. Rule 23 Washington Class

Assuming 4 to 6 minutes of off-the-clock work per day, and assuming the CSRs are entitled to straight time wages under Washington law, the maximum straight-time exposure (if no class members opt-out) would be $188,060.48 to $282,090.63. The maximum overtime wages to the Washington class would be $137,807.91 to $206,712.

(*Id.* at ¶ 33).

In sum, a reasonable estimation of the maximum possible damages for all of the Rule 23 classes' straight time and overtime wages is $2,749,314.80 to $4,205,678.40. Based on the evidence gathered during litigation, this is the amount they could recover if they succeeded in proving every single minute of off the clock work dating back to April 23, 2017. Because the FLSA and state-law Rule 23 maximum exposure calculations involve substantial overlap, the total potential maximum exposure would range from approximately $2,919,983 to $4,379,975.10. (*Id.* at ¶ 34).

### d. **Total Potential Liability and Percentage of Recovery**

Based on the damage analysis conducted by Class Counsel and the expert economist, and in light of the factual and legal defenses identified above, the $2,000,000.00 settlement equates to approximately 53% of Defendant's $3,758,176.06 *maximum* total off-the-clock overtime exposure, including liquidated damages, under the FLSA. (Exh. B, Stoops Decl., ¶ 35). Further, the $2,000,000 settlement equates to approximately 45% of Defendant's greatest possible exposure ($4,379,975.10) with inclusion of the full measure of damages for all Rule 23 straight time claims. (*Id.* at ¶ 36).

The settlement amount is substantial, completely reasonable, and marks a fair compromise of the claims. Significantly, the total settlement amount equates to 45% of the total actual wage damages (overtime wages plus straight time wages) suffered by the Class when computing claims equal to 6 minutes of off-the-clock work per shift, per Class Member. (*Id.* at ¶ 37). These figures underscore the fair, reasonable, and adequate result this Settlement represents to

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

8

the Class Members.

**SETTLEMENT TERMS**

**e.    Value of the Agreement to the Class**

Defendant has agreed to pay a total Settlement Amount of $2,000,000.00 in connection with this non-reversionary Settlement. (Exhibit A, Settlement, ¶ 5).

**f.    Size of the Class and Class Definition**

The Class consists of all current and former employees who worked at a Legacy T-Mobile call center in the United States in a position that contains the terms Associate Expert, Expert, Senior Expert, CSR 1, CSR 2, or CSR 3, and who fall within one or both of the following two categories: (a) previously received and timely returned a signed "Consent to Join Lawsuit" form indicating their intent to join the FLSA Collective; and/or (b) worked in such a position between April 23, 2017, and the Preliminary Approval Date in Colorado, Missouri, New Mexico, Oregon, or Washington State. (Exhibit A, Settlement, ¶ 1) In sum, the Settlement covers 7,737 CSRs (less the 25 who have opted out thus far and any additional timely opt outs).

**g.    Nature of the Payments and Notice, Exclusion, Objection Periods**

This is a common fund settlement with no reversion, and every participating Class Member will automatically receive a check for their Individual Settlement Payment. (Exhibit A, Settlement, ¶¶ 1(c), 10). The formula for distributing payments to Class Members is explained below, in Sec. F.

Class Members who want to be excluded from the Settlement must mail a written Opt-Out Request to the Claims Administrator no later than 60 days after the original mailing of the Class Notice. (*Id.* at ¶ 11(d)).  Class Members will also have 60 days from the mailing of the Class Notice to object to the Settlement, and the Class Notice provides details on these objection procedures. (*Id.* at ¶ 11(e)); *see also* Notice, at Exhibit D to Settlement).

**h.    The Released Claims and Released Parties**

Because the Named Plaintiffs and Initial Opt-in Plaintiffs are requesting additional incentive payments, if approved by the Court, the Settlement provides the following release

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

9

applicable to them:

> As of the Effective Date, the Named Plaintiffs and the Initial Opt-In Plaintiffs, on behalf of themselves and their respective marital communities (if any), heirs, executors, administrators, and assigns, expressly waive, release, discharge and acquit any and all claims against T-Mobile and the Released Parties. Except as expressly stated below, this waiver and release is comprehensive, and includes any and all claims (including claims to attorneys' fees), damages, causes of action or disputes, whether known or unknown, based upon acts or omissions occurring or that could be alleged to have occurred from the beginning of time through the Effective Date. This waiver and release includes both the full scope of the claims released by the Settlement Class as set forth below in Paragraph 4, and further includes, without limitation, all other claims for wages, compensation, employment benefits, and damages of any kind whatsoever arising out of any: defamation; discrimination; harassment; retaliation; wrongful termination; negligence; loss of consortium; or other torts; any federal, state, local or other governmental statute or ordinance; and any other claim arising out of the employment relationship. Notwithstanding the foregoing, this release does not include any claims for breach or enforcement of this Agreement, claims under the Age Discrimination in Employment Act or Older Workers Benefit Protection Act, unemployment compensation claims, worker's compensation claims, or any other claim that may not be lawfully released under this Agreement.

A narrower release applicable to all Class Members provides:

> As of the Effective Date, this Agreement constitutes a full and final settlement and release of any and all wage and hour claims, including those relating to recorded, unrecorded, off-the-clock, additional, undercompensated, or uncompensated work time; regular or overtime pay (or the calculation thereof), and including the timing and method of payment; liquidated or double damages; other penalties or premium amounts related to wage statements, rest and meal breaks, work hours, schedules, or pay; and all derivative claims (including attorneys' fees, costs, and expenses) that were or could have been asserted by any or all members of the Settlement Class against T-Mobile or any other Released Parties. This release applies to the members of the Settlement Class and their respective marital communities (if any), heirs, executors, administrators, and assigns. This release covers any and all wage and hour claims, rights, demands, charges, complaints, causes of action, damages, obligations, disputes, or liabilities of any kind or nature that were asserted in the Action or could have been but were not asserted in the Action, whether known or unknown, arising out of work performed by the Settlement Class for T-Mobile from the beginning of time through the Effective Date. This expressly includes but is not limited to any statutory/regulatory claims that may lawfully be released (including but not limited to claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. §§8-6-101–8-6-119, Colorado Minimum Wage Order No. 32, 7 Colo. Code Regs. §§1103-1(1)–(22), Colorado Wage Claim Act, Colo. Rev. Stat. §§8-

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

10

4-101–8-4-123; Missouri Minimum Wage Law, § 290.500 RSMo, *et seq.*, Missouri Wage Payment Law, §§ 290.080 to 290.090, RSMo; New Mexico Minimum Wage Act, N.M.S.A. § 50-4-19 *et seq.*; Oregon Revised Statutes, Chapters 652 and 653; Washington Minimum Wage Act, RCW 49.46 *et seq.*, Washington Wage Rebate Act, RCW 49.52 *et seq.*, Washington Industrial Welfare Act, RCW 49.12 *et seq.*, and Washington's wage payment statute, RCW Chapter 49.48; as well as any local laws in those five states), contractual claims (whether express or implied), and common law claims (including without limitation any claims of unjust enrichment, quantum meruit, estoppel, misrepresentation, any other claim in equity, and any claim of breach of a covenant of good faith and fair dealing) for compensation, wages, unpaid amounts, double damages, interest, penalties, costs, expenses, and/or attorneys' fees for or related to such matters. This expressly excludes claims that are not reasonably related to wage and hour claims, including claims for discrimination, retaliation, wrongful termination, unemployment, disability, worker's compensation, and any claims that may not be lawfully released under this Agreement.

### i.    Attorneys' Fees, Costs, Service Award, Administration

The total Settlement Amount of $2,000,000 will be used to pay all of the following:

- Class Counsel's Attorneys' Fees of $600,000 and costs in an amount not to exceed $55,000 (any unapproved amounts will pour over to the Class Members). (Exh. A, Settlement, ¶¶ 5).

- Incentive awards to the Class Representatives as follows:  as follows: $5,000 to Kristina Chetwood; $5,000 to Sandra Castellon-Gonzalez; $2,500 to Auriel Calvert; $2,500 to Kerry Selfridge; $1,000 to Paul Rose; $1,000 to Jairo Marquez; $1,000 to Samantha Stephens; $1,000 to Richard Nedbalek; and $1,000 to Briana White. (*Id.* at ¶ 9).

- Settlement Administrator costs in an amount not to exceed $37,500. (*Id.* at ¶ 7).

- Defendant's share of the payroll taxes associated with the wage payments made to the Class Members pursuant to the Settlement Agreement. (*Id.* at ¶ 5).

Class Counsel previously briefed the reasonableness of attorneys' fees, costs, service awards, and administration expenses in a previous filing. *See*, ECF No. 105.  However, and updated lodestar figure is included in the Stoops Declaration.  At this point, Class Counsel has incurred almost 465 hours and nearly $225,000 in fees. *See*, Exh. B at ¶¶ 44-45.  Furthermore, it is anticipated that by the conclusion of this litigation, the requested fee amount will result in a multiplier of 2.5 or less. (*Id.*)

### j.    The Net Distribution Funds; Calculations and Payments of Classes

The Settlement Amount minus the above allocations as approved by the Court is the Net Settlement Amount, which is estimated to be approximately $1,287,500 (less the employer's share of the payroll taxes associated with the wage payments to the Class Members), and this amount will

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

11

1  increase with the addition of any un-awarded portions of the allocations. The Net Settlement Amount
2  will be paid in its entirety to the Class Members who participate in the Settlement.

3        With an estimated 7,712 Class Members (i.e., assuming no additional Class Members opt out
4  of the Settlement), the average payment to them using a straight average is approximately $166.94
5  per employee.

6        The parties based the distribution of the Net Settlement Amount on a point system. First, each
7  Class Member will receive a "Minimum Payment" of twenty dollars ($20.00) and the total amount
8  of all such Minimum Payments will be subtracted from the Net Settlement Amount.  Next, each Class
9  Member shall be assigned one (1) point for each pay period worked in a Notice Group Position
10 between April 23, 2017, and the Preliminary Approval Date in which they worked eighty (80) or
11 more hours according to T-Mobile's time records. Additionally, each Class Member shall be assigned
12 one-quarter (0.25) additional point for each pay period worked in a Notice Group Position between
13 April 23, 2017, and the Preliminary Approval Date in which they worked at a location in the states
14 of Colorado, Missouri, New Mexico, Oregon and Washington.

15       To calculate each Class Member's proportionate share of the Net Settlement Amount (in
16 addition to their individual Minimum Payment), the Settlement administrator shall use the following
17 formula: 1) add the points for all Class Members together to obtain the "Total Denominator"; 2)
18 divide the number of points for each Class Member by the Total Denominator to obtain each Class
19 Member's portion of the remainder of the Net Settlement Amount after the subtraction of the
20 Minimum Payments; and 3) multiply each Class Member's portion of the remainder of the Net
21 Settlement Amount by the total amount of the remainder of the Net Settlement Amount to determine
22 each Class Member's Individual Settlement Award.

23       The sum of the Individual Settlement Awards for all Class Member's (including Minimum
24 Payments) shall equal the Net Settlement Amount.

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

12

1       **k.**    <u>**Notice Procedures**</u>

2       With one exception (which the Court is aware of and addressed via a subsequent order

3 (ECF. No. 112), the parties and Settlement Administrator followed the procedures for giving notice

4 to the Class/Collective Members, as set forth in the Settlement and ordered in the Preliminary

5 Approval Order [ECF No. 100]. (Exh. B, Stoops Decl. at ¶ 55). On June 29, 2021, the Settlement

6 Administrator issued notice by mail to each of the 7,737 Class/Collective Members. (Exh. C,

7 Myette Decl. at ¶ 8).  The Class Notice advised Class Members that they could submit a Request

8 for Exclusion Form or objection postmarked, or received via email or facsimile, by August 28,

9 2021. (*Id*.)

10      The Class Notice and the Request for Exclusion Form contained detailed information about

11 the lawsuit, including the total amount of the settlement, the method by which the settlement funds

12 would be allocated among the Class/Collective Member, and procedures for opting-in, requesting

13 exclusion from, and objecting to the Agreement. *See*, ECF No. 98-1 at 79. The Notice also

14 provided contact information for Class Counsel and the Settlement Administrator. (*Id.)*

15      The Settlement Administrator followed accepted best practices to ensure that the notice

16 reached as many Class Members as feasible. (Exh. C, Myette Decl. at ¶¶ 10-14).  The Settlement

17 Administrator disseminated the Court-approved notice to all Class/Collective Members by first

18 class mail, using the National Change of Address ("NCOA") database to verify the accuracy of all

19 addresses prior to sending the Notices. (*Id.*).  The Settlement Administrator also ran traces on the

20 addresses of any returned Notices to again search for an updated address. (*Id.*).

21      Pursuant to the Court's Order at ECF No. 112, on September 10, 2021, the Settlement

22 Administrator sent supplemental Notice and Opt-Out Request forms by email (where personal

23 emails were available) to any Settlement Class Members who had their initial mailed Notice

24 returned as undeliverable to the Settlement Administrator and for whom the Settlement

25 Administrator's trace did not result in the identification of a current mailing address for the

26 Settlement Class Member, as well as any Settlement Class Member for whom a second mailing of

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

13

1    the Notice after a batch trace was performed and was also returned to the Settlement Administrator

2    as undeliverable.

3    **l.    Tax Consequences and Allocations and Uncashed Checks, Cy Pres**

4    The Settlement Administrator will calculate the Individual Settlement Payments based on the

5    class information provided by Defendant. (Exh. A, Settlement, ¶ 10). Each Individual Settlement

6    Payment will be allocated 50% to "wages" and 50% to "interest and penalties." (*Id.* at ¶ 10(b)).

7    The Settlement Administrator will issue required tax statements. Any uncashed proceeds will be

8    donated to Food Lifeline Hunger Solutions Center. (*Id.* at ¶ 11(i)).

9    **III.    ARGUMENT**

10    **a.    The Best Practicable Notice of Settlement Has Been Provided**

11    The mailing of the Notice and corresponding forms to Class/Collective Members, and the

12    general administration of the notice process as described above, meets the requirements for the

13    "best practicable" notice in this case as necessary to protect the due process rights of Class

14    Members. *See e.g., Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best

15    practicable" notice with description of the litigation and explanation of opt-out rights satisfies due

16    process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be

17    sent to class members who can be identified through reasonable means); *Mullane v. Central

18    Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is

19    "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency

20    of the action and afford them an opportunity to present their objections"). Therefore, the Court

21    may proceed to determine the fairness and adequacy of the Agreement, and order its approval,

22    secure in the knowledge that all absent Class/Collective Members have been given the opportunity

23    to participate fully in the opt-in, opt-out, comment, and approval process.

24    **b.    Final Approval Standards Under Rule 23 and the FLSA**

25    "[V]oluntary conciliation and settlement are the preferred means of dispute resolution,"

26    especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

14

(9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [. . .] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the state of the proceedings; the experience and views of counsel [. . .] and the reaction of the class to the proposed settlement." *Class Plaintiffs*, 955 F.2d at 1291; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979);

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

### c.    The Agreement is Presumptively Fair Based on the Lack of Objections, the Significant Discovery Conducted, Class Counsel's Experience, and Arms-Length Negotiations

The Court should begin its analysis with a presumption that the Agreement is fair and should be approved, due to (1) the existence of only one objection to the Agreement by the Class/Collective Members and the small number of requests for exclusion, (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind of litigation, and (4) the arms-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arms-length negotiations conducted by competent counsel after appropriate discovery are *prima-facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

*First*, only one objection was made to the Agreement. (Exh. B, Stoops Decl. at ¶ 56). Counsel for the parties will address this objection in a separate filing. Additionally, Class Counsel will respond and be prepared to address any additional objections received prior to the Final Approval Hearing as a result of the email Notice sent pursuant to ECF No. 112.

*Second*, to date, only 25 Class/Collective Members excluded themselves from the Agreement. These Class/Collective Members amount to only 0.3% of the 7,737 Class/Collective Members who were provided Notice. (*Id.*).

*Third*, as discussed above, the Parties engaged in substantial discovery and a significant exchange of relevant information and data in advance of the Parties' mediation. As a result of these efforts, Class Counsel had sufficient information to evaluate the strengths and weaknesses of the

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

16

Class/Collective claims and defenses, whether to pursue litigation or settle, and the appropriate settlement value for the claims at issue.

*Fourth*, Class Counsel are highly experienced in wage and hour class action litigation.

*Finally*, the Settlement was reached only after not one, but two, arms-length, good-faith negotiations under the supervision of an experienced mediator, Carole Katz. The case has been zealously litigated by both sides. There are no indicia of collusion.

For all these reasons, a presumption is appropriate that the class relief in the Agreement is fair.

### i.    Only One Objection and Twenty-Five Requests for Exclusion

To date, only one Class Member has made an objection to the settlement. As previously stated, the parties will address the substance of the objection in detail in a separate, joint filing.[1] Even in cases where objections are made it is recognized that a small number of objections indicates a favorable class reaction. *See Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).

Moreover, to date, only 25 Class/Collective Members – only 0.3% of the Class/Collective – opted out of the Agreement. This overwhelmingly positive reaction of the Class/Collective strongly supports final approval of the Agreement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (granting final approval where 16 of 329 class members opted out, explaining that where exclusions and opt-outs are low, there is a presumption of a favorable class reaction).

### ii.    The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues

---

[1] It is worth noting in summary, however, that the objection was untimely and appears to focus on many personal grievances of the objector unrelated to the wage issues addressed in this case and that have already been raised before the EEOC and other agencies as well as in the courts.

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

17

Class Counsel have engaged in extensive investigation of the claims in this case and the Parties engaged in significant discovery. (Exh. B, Stoops Decl. at ¶¶ 22-24, 31-37). Class Counsel reviewed hundreds of pages of documents produced by Defendants; interviewed Class/Collective Members and potential opt-in plaintiffs regarding their job duties, hours worked, and other relevant information; and, along with Desmond, Marcello & Amster, LLP, analyzed detailed, individualized class/collective member payroll and time record data to prepare a comprehensive damage analysis. (*Id.*).

Finally, the parties spent countless hours (on both legal research and damage analysis) preparing for and taking part in mediation.

In summary, the Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (8th Cir. 2000) (emphasizing that the touch stone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery).

### iii.    The Recommendations of Experienced Counsel Favor Approval of the Agreement

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Agreement as fair, adequate, and reasonable. Plaintiffs' Counsel and Defendants' counsel each have extensive experience in prosecuting and litigating class action wage and hour suits like this one. The fact that qualified and well-informed counsel endorse the Agreement as being fair, reasonable, and adequate heavily favors this Court's

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

18

approval of the Agreement.

> iv.  **The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator**

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* § 30.42 (1995)).

The parties engaged in two lengthy day-long mediations followed by several weeks of direct negotiations. Before the mediation, the Parties submitted extensive mediation briefing, including detailed data analyses and assessments, and substantial evidence.

> d.  **The Agreement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation**

> i.  **The Value of the Agreement Favors Final Approval**

The value of the Agreement – $2,000,000 – is an excellent result, and the Agreement compares favorably to other similar class-action settlements. This is especially true in light of the defenses raised by Defendant including defenses relating to: compensability of the alleged off-the-clock time; amount of off-the-clock time worked; the *de minimis* doctrine; and the propriety of class and collective certification. (Exh. B, Stoops Decl. at ¶ 29). Plaintiffs faced the very real possibility that if they proceeded to trial, they might obtain little if any recovery for the Class.

The Agreement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [. . .] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for*

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

19

*Justice*, 688 F.2d at 624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Based on the damage analysis conducted by Class Counsel and the expert economist, and in light of the factual and legal defenses identified above, the $2,000,000.00 settlement equates to approximately 53% of Defendant's $3,758,176.06 *maximum* total off-the-clock overtime exposure, including liquidated damages, under the FLSA. (Exh. B, Stoops Decl., ¶ 35). Further, the $2,000,000 settlement equates to approximately 45% of Defendant's greatest possible exposure ($4,379,975.10) with inclusion of the full measure of damages for all Rule 23 straight time claims. (*Id.* at ¶ 36).

The settlement amount is substantial, completely reasonable, and marks a fair compromise of the claims. Significantly, the total settlement amount equates to 45% of the total wage damages (overtime wages plus straight time wages) claimed by the Class when computing exposure at 6 minutes of off-the-clock work per shift per Class Member. (*Id.* at ¶ 37). These figures underscore the fair, reasonable, and adequate result this Settlement represents to the Class Members.

### ii.    Further Litigation Would Involve Risk, Expense, Delay and Burden on Class/Collective Members

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-*

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

*Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *4 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, litigation entails expense.").

Similarly here, Defendant continues to contest liability and the propriety of collective and class certification. Defendant's absolute denial of liability, paired with its diligent efforts to prevent collective and class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Agreement.

Moreover, this Rule 23 Class and FLSA Collective involves intricate legal and factual questions under federal and state law. Litigating these complex claims would require substantial additional discovery and further pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. (Exh. A, Stoops Decl. at ¶ 30). Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. (*Id.*). Once liability had been established on a class-wide basis, Class/Collective Members might be required to testify at individual damages mini-trials. (*Id.*). As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class/Collective Members, if any, would likely occur only after several years of delay. (*Id.*). In contrast, the Agreement will yield a prompt, certain, and substantial recovery for the Class/Collective Members. Such a result benefits the Parties and the court system.

**e.**    **The Court Should Grant Final Certification and Collective Action Designation**

The Court previously certified the Class and Collective for settlement purposes only pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and as a FLSA collective action. [ECF Nos. 100, 109]. The Court ruled that, for purposes of the settlement, the Class meets the Rule 23 requirements as well as the FLSA collective action requirements. (*Id.*). The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel.

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

21

(*Id.*). For these reasons, and the reasons set forth in the Motion for Preliminary Approval, Plaintiffs respectfully submit that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representatives and class counsel.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs, by and through their counsel, respectfully request that the court (1) grant final approval of the Agreement, and (2) grant final class certification and collective action designation of the Agreement.

Respectfully Submitted by Counsel for Plaintiffs,

Dated:  September 20, 2021

*s/ Charles R. Ash, IV*
Kevin J. Stoops, Esq. (PHV)
Charles R. Ash IV, Esq. (PHV)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Ph: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com

Adam J. Berger, WSBA #20714
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, Washington 98104
Ph: (206) 622-8000
berger@sgb-law.com

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL
OF CLASS/COLLECTIVE
SETTLEMENT
[CASE NO. 2:19-CV-00458-RSL]

SOMMERS SCHWARTZ PC
ONE TOWNE SQUARE, SUITE 1700
SOUTHFIELD, MI 48076
(248) 355-0300

1
2

## CERTIFICATE OF SERVICE

3

I hereby certify that on September 20, 2021, I electronically filed the foregoing with the Clerk of

4

the Court using the CM/ECF system which will send notification of such filing to the all attorneys

5

of record, to-wit:

6          Patrick M. Madden, Esq.
           Stephanie Wright Pickett, Esq.
7          Daniel P. Hurley, Esq.
           K&L GATES LLP
8          925 – 4th Avenue, Suite 290
           Seattle, WA  98104
9          Patrick.madden@klgates.com
           Stephanie.pickett@klgates.com
10         Daniel.hurley@klgates.com

11         and

12         Adam J. Berger, Esq.
           SCHROETER GOLDMARK & BENDER
13         810 Third Avenue, Suite 500
           Seattle, Washington 98104
14         berger@sgb-law.com

15

16                   _s/ Charles R. Ash, IV_
                     Charles R. Ash IV, Esq. (PHV)
17                   SOMMERS SCHWARTZ, P.C.

18
19
20
21
22
23
24
25
26

PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL                     SOMMERS SCHWARTZ PC
OF CLASS/COLLECTIVE                           ONE TOWNE SQUARE, SUITE 1700
SETTLEMENT                                    SOUTHFIELD, MI 48076
[CASE NO. 2:19-CV-00458-RSL]                  (248) 355-0300