HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **KRISTINA CHETWOOD** and **SANDRA CASTELLON-GONZALEZ,** individually, and on behalf of others similarly situated, | ) ) ) |
| | CASE NO. 2:19-cv-00458-RSL |
| Plaintiffs, | ) ) |
| v. | **FINAL APPROVAL ORDER AND JUDGMENT** |
| | ) ) |
| **T-MOBILE USA, INC.** | ) ) |
| Defendant. | ) ) ) |

### ORDER

The Court has reviewed and considered the motion for final approval of the class and collective action settlement agreement ("Settlement" or "Agreement") (ECF No. 114) submitted by Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White ("Plaintiffs"), on behalf of themselves and similarly situated employees of Defendant T-Mobile USA, Inc. ("Defendant") (together, the "Parties"). The Court preliminarily approved the Parties' Agreement and their proposed resolution of Plaintiffs' class and collective action claims on behalf of the Class Members.  (ECF No. 100.)  A copy of the Agreement is attached to this Order as Exhibit A.

In accordance with the order granting preliminary approval, and in compliance with due process, the Settlement Administrator sent the Court-approved Notice (ECF No. 98-1 at 79) to each of the Settlement Class Members by first-class mail and by email to 270 individuals for whom an updated address could not be determined.  The Notice informed the Settlement Class Members of the terms of the Agreement, the right to participate in the Settlement, the right to object to the Agreement, the right to request exclusion and pursue their own remedies, and the right to appear in person or by separate counsel at the Final Settlement Approval Hearing regarding final approval of the Agreement.

 The motion for final approval seeks final approval of the Agreement and entry of judgment that will bind each Settlement Class Member, and will operate as a full release and discharge of the claims set forth in paragraph 4 of the settlement Agreement (the "Released Claims"). In response to the Court questioning counsel on the record regarding the scope of this release language, the parties agreed that they interpret the release in paragraph 4 to extinguish only those claims based on the identical factual predicate as that underlying the claims in the settled class action.

Having received and considered Plaintiffs' motion for preliminary approval of the Settlement, Plaintiffs' motion for final approval of the settlement Agreement, that there were no meritorious objections to the settlement Agreement, that only 26 out of 7,737 Settlement Class Members opted out of the Agreement, Plaintiffs' motion for attorneys' fees, Settlement Administration Costs, and Incentive Awards for the Named Plaintiffs, the file in this case, and the

evidence and argument received by the Court before entering the Preliminary Order and before and at the Final Settlement Approval Hearing, **THE COURT HEREBY ORDERS, ADJUDGES AND DECREES THAT:**

1. Initial-capitalized terms in this Final Approval Order and Judgment (the "Order") shall have the same meaning as assigned to them in the parties' attached Agreement.

2. The Settlement Administrator has fulfilled its initial notice and reporting duties under the Settlement.

3. The Notice to the Settlement Class Members: (i) was the best practicable notice under the facts and circumstances of this case; (ii) was reasonably calculated to apprise the Settlement Class Members of the pendency of the Action, their right to participate in the settlement Agreement, their right to exclude themselves from the Agreement, and their right to object to, and/or appear at the Final Settlement Approval Hearing; and (iii) constituted due, adequate, and sufficient notice of a class/collective settlement under Federal Rule of Civil Procedure 23, 29 U.S.C. §§ 201, *et seq*., due process, and any other applicable rules or law.  Only 26 individuals asked to exclude themselves from the Agreement, and there were no meritorious objections to the Agreement.

4. The notice of settlement served by Defendant on the U.S. and applicable state attorneys general satisfies the requirements of the Class Action Fairness Act.  The Attorneys General have expressed no objections to the Settlement.

5. The terms of the Agreement are fair, reasonable and adequate, and the standards and applicable requirements for final approval of this class and collective action settlement are satisfied, including the provisions of Rule 23 of the Federal Rules of Civil Procedure and the provisions of 29 U.S.C. §§ 201, *et seq*.

6. The Agreement has been reached as a result of intensive, serious, and non-collusive, arms-length negotiations and was achieved with the aid of an experienced mediator.  The Agreement was entered into in good faith as to each Settlement Class Member.

7. Counsel for the Settlement Class are experienced class action litigators and have expressed the view that the Settlement is fair, reasonable, and adequate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8.      The Court has considered the factors set forth in *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998), including the nature and strength of the Plaintiffs' allegations and claims; the nature and strength of Defendant's defenses to those claims and allegations; the risk, expense, complexity and likely duration of further litigation; the risk of attaining and maintaining class and collective action status throughout the litigation; the extent of discovery completed and stage of the proceedings; the experience and views of counsel; the presence and/or absence of a governmental participant; and the amount offered in settlement of the claims.  Based on these considerations, the Court finds that the amounts to be paid under the Agreement are fair and reasonable.  Moreover, the allocation of the Net Settlement Amount among the Settlement Class Members is fair, adequate, and reasonable. The fact that a settlement represents a compromise of the Parties' respective positions, rather than the result of a finding of liability at trial, also supports the Court's decision granting final approval.

9.      The Court appoints counsel for the Named Plaintiffs as representatives of, and as counsel ("Class Counsel") for, the Settlement Class Members for the purpose of entering into and implementing the Agreement.

10.      The Settlement Administrator is to execute the distribution of proceeds of the Agreement amount pursuant to the terms of the Agreement.

11.      As of the Effective Date, the Settlement Class Members who did not opt out of the Agreement are bound by the release of claims set forth in paragraph 4 of the Agreement, and the Named Plaintiffs and the Initial Opt-In Plaintiffs are bound by the releases of claims set forth in paragraphs 3 and 4 of the Agreement.

12.      The fees, expenses, and any other costs of Rust Consulting in administering the Agreement, the amount of **$37,500.00**, are fair and reasonable.  Payment of that amount shall be paid out of the gross Agreement amount in accordance with the Agreement, which shall fully, finally and completely compensate Rust Consulting, for all fees, expenses and any other costs in administering the Settlement.

13.      Based upon application by Plaintiff's Counsel and Plaintiffs, the Court approves the payment of incentive awards in the amount of **$20,000.00** to the Plaintiffs (named and initial opt-

1    ins) as follows: $5,000 to Kristina Chetwood; $5,000 to Sandra Castellon-Gonzalez; $2,500 to

2    Auriel Calvert; $2,500 to Kerry Selfridge; $1,000 to Paul Rose; $1,000 to Jairo Marquez; $1,000 to

3    Samantha Stephens; $1,000 to Richard Nedbalek; and $1,000 to Briana White (in addition to any

4    recovery they may receive as Settlement Class Members under the Settlement) in recognition of

5    their efforts and the risks they undertook in prosecuting this Action.

6            14.     Based upon application by Plaintiffs' Counsel, the Court approves the payment of

7    attorneys' fees to Plaintiffs' Counsel in the amount of **30%** of the gross Settlement Amount, i.e.

8    **$600,000.00**, and litigation costs to Plaintiffs' Counsel in an amount not to exceed **$55,000.00**, to

9    be paid in the manner set forth in the Settlement.  No other attorneys or law firms shall be entitled

10   to any award of attorneys' fees or costs from Defendant in any way connected with this litigation.

11           15.     After reviewing the sole objection to this settlement, filed by Ms. Reba Littleton, the

12   Court has determined that the objection of Reba Littleton does not address the specific claims that

13   are asserted in this case and resolved by the settlement, and thus the objection is denied.

14           16.     The Agreement and this final approval Order shall have *res judicata* and preclusive

15   effect in all pending and future lawsuits or other proceedings to the extent any such lawsuits or other

16   proceedings include any claims of the Plaintiffs or any claims of the Settlement Class Members that

17   are subject to the releases set forth in the Agreement, whether those lawsuits or proceedings are

18   maintained by or on behalf of Plaintiffs or the Settlement Class Members, or to the extent the claims

19   would otherwise be barred by principles of *res judicata*. The Agreement and this Order shall be

20   binding on the Plaintiffs, the Settlement Class Members, their heirs, estates, trustees, executors,

21   administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or

22   anyone claiming through them or acting or purporting to act for them or on their behalf.

23           17.     The Plaintiffs and the Settlement Class Members are permanently barred from filing,

24   commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any

25   other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based

26   on the claims they released in the Agreement.

27           18.     The Agreement provided for herein, and any proceedings undertaken pursuant

28   thereto, may not be offered, received, or construed as evidence of: a presumption, concession, or an

admission by any party of liability or non-liability; the certifiability or non-certifiability of the class and collective claims resolved by the Agreement; provided, however, that reference may be made to this Agreement in such proceedings as may be necessary to effectuate the provisions of this Agreement.

19.     This Order shall be entered forthwith, dismissing this lawsuit with prejudice.

20.     Without affecting the finality of this Order, the Court retains continuing jurisdiction over the Plaintiffs, Defendant, and the Settlement Class Members as to all matters concerning the administration, consummation, and enforcement of this settlement Agreement.

21.     After settlement administration and distribution of funds have been completed, the Parties shall file a report with this Court certifying compliance with the terms of the Agreement and this Order.

22.     If this Order is reversed on appeal or the settlement Agreement is terminated or is not consummated for any reason, the foregoing certification of claims on class and collective action bases, appointment of class representatives, and appointment of class counsel shall be void and of no further effect, and the parties shall be returned to the status each occupied before entry of the Preliminary Approval Order and this Order without prejudice to any legal argument that any of the parties might have asserted but for the settlement Agreement.

**IT IS SO ORDERED.**

Dated:  October 22, 2021

*MM S Lasnik*

HON. ROBERT S. LASNIK
United States District Judge

1152890/41633348v.1

ORDER GRANTING FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), which is subject to the approval of the United States District Court for the Western District of Washington (the "Court"), is hereby executed by and among Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White (the "Named Plaintiffs"), individually and as representatives of the Settlement Class, Auriel Calvert and Kerry Selfridge, individually as plaintiffs, and T-Mobile USA, Inc. ("T-Mobile"), in the putative class/collective action *Chetwood et al. v. T-Mobile USA, Inc.*, Western District of Washington Case No. 19-cv-458-RSL (the "Action").

## RECITALS

A.      The Action arises from the initial *Complaint - Class/Collective Action* (Dkt. 1) (the "Complaint") filed March 28, 2019, which alleges that the Named Plaintiffs and similarly-situated employees in T-Mobile's call centers in the United States were not properly paid for all hours worked in connection with time spent starting computers and logging into computer applications, and that their overtime rates were not properly calculated, in alleged violation of the federal Fair Labor Standards Act ("FLSA"). The Complaint also alleges a derivative Rule 23 putative class claim under the Kansas Wage Payment Act, K.S.A. § 44-313, *et. seq.*, as well as a "nationwide" Rule 23 putative class claim alleging that T-Mobile breached contracts with putative class members by failing to pay for all hours worked. The Named Plaintiffs seek to recover, *inter alia*, unpaid wages, liquidated damages, prejudgment interest, attorneys' fees, and costs.

B.      On May 31, 2019, Plaintiffs filed their *Pre-Discovery Motion for Conditional Certification and Court Authorized Notice, Pursuant to 29 U.S.C. 216(b)* (Dkt. 23). On June 24, 2019, T-Mobile filed its *Opposition to Plaintiffs' Motion for Conditional Certification* (Dkt. 25). Plaintiffs filed their reply in support of their motion on June 28, 2019 (Dkt. 28). On April 7, 2020, the Court entered the *Order Granting In Part Plaintiffs' Motion for Conditional Certification* (Dkt. 35). The Court authorized FLSA notice as to the alleged off-the-clock work, but denied notice as to the claim that overtime rates were not properly calculated.

C.      As a result of the Court's *Order Granting In Part Plaintiffs' Motion for Conditional Certification*, on June 11, 2020, FLSA notice was sent to 18,180 current and former employees who worked at a Legacy T-Mobile Call Center in the United States at any time between April 7, 2017 and April 9, 2020, in a position that contains the terms Associate Expert, Expert, or Senior Expert, or the terms of the previous titles of CSR 1, CSR 2, or CSR 3, as described and defined in the Notice Form agreed upon by the parties (Dkt. 43-1 at 2). These 18,180 individuals are referred to herein as the "Notice Group," and the position titles covered by the Notice Group are referred to herein as the "Notice Group Positions." The opt-in process allowed notice recipients to send in their opt-in forms via mail, email, or facsimile. By the end of the 60-day opt-in period, 1,242 individuals ( in addition to Kristina Chetwood and Sandra Castellon-Gonzalez, the two Named Plaintiffs who first filed the Complaint, and the two pre-notice opt-ins, Auriel Calvert and Kerry Selfridge (referred to herein as the "Initial Opt-In Plaintiffs")), elected to join the Action. *See Declaration of Nick Castro Regarding Notice Administration* (Dkt. 91) and its *Exhibit A* (Dkt. 91-1, Exhibit A), listing by name the individuals who timely opted in. These 1,242 individuals (plus

Kristina Chetwood, Sandra Castellon-Gonzalez, and the Initial Opt-In Plaintiffs) are referred to collectively herein as the "Opt-In Group".

D.     Following the closure of the opt-in period, the parties began to consider participation in mediation to explore the potential for a settlement of their disputes. During the parties' discussions in August 2020, Plaintiffs' counsel requested that, in addition to negotiation of a potential settlement of the FLSA claim covering the Opt-In Group, T-Mobile consider also negotiating settlement of state-law claims related to the alleged off-the-clock work for members of the Notice Group who worked in Colorado, Missouri, New Mexico, Oregon, and Washington. Plaintiffs' Counsel indicated that, in the absence of a settlement covering the Notice Group members who worked in those states, they would pursue those state-law claims as Rule 23 class actions. Accordingly, T-Mobile agreed to consider such a settlement as part of the parties' mediation.

E.     In connection with this request and to further the parties' efforts to resolve their disputes in mediation, T-Mobile provided Plaintiffs' Counsel with payroll and hours data for hours worked in the Notice Group Positions by both (1) the Opt-In Group, and (2) the 5,407 members of the Notice Group who (a) did not opt in to the FLSA collective action, but (b) worked hours in one or more of T-Mobile's call centers in Colorado, Missouri, Oregon, New Mexico, and Washington between April 23, 2017 and September 19, 2020 (the individuals in this five-state group are referred to collectively herein as the "Initial Rule 23 Group").

F.     The parties engaged in mediation with a third-party neutral mediator on January 8, 2021. During the mediation, the parties reached a conditional agreement and entered into a Memorandum of Understanding dated January 8, 2021 ("MOU"). The MOU set forth the basic terms of the parties' agreement to a settlement amount to cover (a) the Opt-In Group, (b) the Initial Rule 23 Group, and (c) any additional employees (referred to herein as the "Supplemental Rule 23 Group") subsequently hired into the Notice Group Positions at the call centers in Colorado, Missouri, Oregon, New Mexico, and Washington, from September 20, 2020, up to the date of the anticipated Preliminary Approval (as defined below) of the parties' settlement. The Initial Rule 23 Group and the Supplemental Rule 23 Group are referred to collectively herein as the "Rule 23 Group."  Accordingly, the purpose of this Agreement is to settle fully and finally all claims set forth in Section 4 of this Agreement, including all wage and hour claims asserted or that could have been asserted in the Action.

G.     The Named Plaintiffs and T-Mobile, and their respective counsel, are familiar with the facts relevant to the FLSA and various state law claims potentially at issue in the Action and the legal issues they present. To reach this Agreement, the parties exchanged detailed mediation statements addressing the relevant facts and legal arguments and participated in extended, good faith, and arms-length negotiations with the assistance of a neutral third-party mediator. In these negotiations, Plaintiffs' Counsel relied on pay and hours data, policies, and other information provided by T-Mobile in connection with the mediation and in the course of the Action; information from the Named Plaintiffs and others about their own experiences and observations; and a thorough analysis of the potentially applicable laws and defenses, including with respect to the FLSA and wage and hour laws of the states where T-Mobile's call centers are located. As a result of these negotiations, the parties reached a settlement of the Action they believe to be fair, adequate, and reasonable, and in the

best interests of the Named Plaintiffs, the Initial Opt-In Plaintiffs, and the Settlement Class. Subject to Court approval, this Agreement memorializes and finalizes the terms of the settlement reached by the parties at the conclusion of such negotiations.

H.      The Named Plaintiffs have claimed and continue to claim that each and all of the contentions made in the Action have merit and give rise to liability on the part of T-Mobile. Neither this Agreement nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement is, may be construed as, or may be used as an admission by or against the Plaintiffs, that any of their claims are without merit.

I.      T-Mobile has denied and continues to deny each of the claims and contentions alleged by the Named Plaintiffs in the Action, as well as any and all other claims under federal, state, or local law that could arise from the same or similar facts as those asserted by the Named Plaintiffs in support of their FLSA and state-law claims. T-Mobile has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action. Neither this Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, is, may be construed as, or may be used as an admission, concession, or indication by or against T-Mobile of any fault, wrongdoing, or liability whatsoever. While it maintains the claims in the Action are without merit, T-Mobile prefers to resolve this matter by making payments to current and former employees pursuant this Agreement rather than incurring further attorneys' fees and other costs in defending the Action.

J.      The parties acknowledge that this Agreement is beneficial for all involved. The Named Plaintiffs and Plaintiffs' Counsel acknowledge the uncertainty, risks, difficulties, and delays inherent in this Action. Based on the foregoing, and the extensive settlement negotiations between the parties, the Named Plaintiffs, the Initial Opt-In Plaintiffs, and Plaintiffs' Counsel have determined that the terms of this Agreement are fair, reasonable, adequate, and in the best interests of the Settlement Class, the Named Plaintiffs, and the Initial Opt-In Plaintiffs. Similarly, T-Mobile has concluded that further litigation of the Action would be protracted and expensive for all parties. Substantial amounts of time, energy, and resources have been and would continue to be devoted to T-Mobile's defense against Plaintiffs' claims. T-Mobile has, therefore, agreed to the terms set forth in this Agreement to finally resolve all wage claims that were, or that could have been, asserted in the Action.

NOW, THEREFORE, IT IS HEREBY STIPULATED, by and among the Named Plaintiffs, the Initial Opt-In Plaintiffs, and T-Mobile, by and through their respective counsel, and subject to the approval of the Court, that the Action is hereby being compromised and settled pursuant to the terms and conditions outlined in this Agreement, and that the Action shall be dismissed on the merits and with prejudice, subject to the following terms and conditions:

1.      <u>Definitions</u>.  In addition to the terms defined elsewhere in this Agreement, the following definitions apply to this Agreement.

a.      "Effective Date" means the date by which this Agreement is finally approved as provided below and the Court's Final Judgment becomes final. For purposes of this

Paragraph, the Court's Final Judgment "becomes final" upon the later of (i) expiration of the time for filing an appeal from the Final Judgment or otherwise seeking appellate review; or (ii) if an appeal is timely filed or other appellate review sought, the date that the Final Judgment is finally affirmed and all other means of appellate review have been exhausted or have expired.

 b. "Final Judgment" means the Court's final order approving settlement and dismissing the Action with prejudice, anticipated to be substantially in the form of Exhibit A.

 c. "Individual Settlement Awards" means the specific amounts potentially payable to each individual Settlement Class Member.

 d. "Net Settlement Amount" means the Settlement Amount less the Attorneys' Fees/Cost Award approved by the Court, the Settlement Administration Costs, the employer's share of payroll related taxes associated with the wage payments to the Settlement Class Members, and the Incentive Awards approved by the Court.

 e. "Plaintiffs" refers collectively to the Settlement Class, the Named Plaintiffs, and the Initial Opt-In Plaintiffs.

 f. "Plaintiffs' Counsel" means the law firms of Sommers Schwartz, PC, and Schroeter Goldmark & Bender.

 g. "Preliminary Approval Date" shall be the date the Court enters the Preliminary Order.

 h. "Released Parties" means T-Mobile USA, Inc., and its former and present parents, subsidiaries, and affiliated corporations, and their officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives.

 i. "Settlement Administration" means the process under the Court's supervision that includes, but is not limited to, the manner in which the Notice of Settlement Form is distributed, opt-outs are processed, and the payments and distributions required under this Agreement are effectuated.

 j. "Settlement Administrator" means Rust Consulting, which will perform the Settlement Administration in connection with this Action.

 k. "Settlement Administration Costs" means the gross amount payable to the Settlement Administrator for the Settlement Administration services.

 l. "Settlement Class" refers collectively to all individuals in the (a) Opt-In Group, (b) the Initial Rule 23 Group, and the (c) Supplemental Rule 23 Group.

 m. "Settlement Class Members" refers to the individual members of the Settlement Class.

n.     "T-Mobile's Counsel" means the law firm of K&L Gates LLP.

2.    <u>Stipulated Certifications</u>.  Solely for purposes of this Agreement and a resolution covering the Settlement Class, the parties stipulate and agree to an Amended Complaint to plead and for the certification of state-law settlement classes under the laws of Colorado, Missouri, New Mexico, Oregon, and Washington pursuant to Rule 23 as necessary to include the individuals in the Rule 23 Group with the settlement. The stipulation is without any waiver by T-Mobile of any defenses to any claims asserted in the Amended Complaint. The Amended Complaint shall be materially in the form of Exhibit B.  Should the settlement not become final for any reason, the parties will be returned to the status they were in prior to this Agreement and prior to any class certifications to which the parties stipulated pursuant to this Agreement. The fact that the parties were willing to stipulate to certification of settlement classes and an Amended Complaint as part of this Agreement will have no bearing on, and will not be admissible in connection with, the issue of whether any class should be certified (or collective action de-certified) in a non-settlement context in this Action or in any other action (or for any other purpose). T-Mobile expressly reserves its right to contest any collective or class certification and the merits of this or any other lawsuit should this settlement not become final.

3.    <u>Release by Named Plaintiffs and the Initial Opt-In Plaintiffs</u>.  As of the Effective Date, the Named Plaintiffs and the Initial Opt-In Plaintiffs, on behalf of themselves and their respective marital communities (if any), heirs, executors, administrators, and assigns, expressly waive, release, discharge and acquit any and all claims against T-Mobile and the Released Parties. Except as expressly stated below, this waiver and release is comprehensive, and includes any and all claims (including claims to attorneys' fees) damages, causes of action or disputes, whether known or unknown, based upon acts or omissions occurring or that could be alleged to have occurred from the beginning of time through the Effective Date. This waiver and release includes both the full scope of the claims released by the Settlement Class as set forth below in Paragraph 4, and further includes, without limitation, all other claims for wages, compensation, employment benefits, and damages of any kind whatsoever arising out of any: defamation; discrimination; harassment; retaliation; wrongful termination; negligence; loss of consortium; or other torts; any federal, state, local or other governmental statute or ordinance; and any other claim arising out of the employment relationship. Notwithstanding the foregoing, this release does not include any claims for breach or enforcement of this Agreement, claims under the Age Discrimination in Employment Act or Older Workers Benefit Protection Act, unemployment compensation claims, worker's compensation claims, or any other claim that may not be lawfully released under this Agreement.

4.    <u>Release by Settlement Class</u>  As of the Effective Date, this Agreement constitutes a full and final settlement and release of any and all wage and hour claims, including those relating to recorded, unrecorded, off-the-clock, additional, undercompensated, or uncompensated work time; regular or overtime pay (or the calculation thereof), and including the timing and method of payment; liquidated or double damages; other penalties or premium amounts related to wage statements, rest and meal breaks, work hours, schedules, or pay; and all derivative claims (including attorneys' fees, costs, and expenses) that were or could have been asserted by any or all members of the Settlement Class against T-Mobile or any other Released Parties. This release applies to the members of the Settlement Class and their respective marital communities (if any),

heirs, executors, administrators, and assigns. This release covers any and all wage and hour claims, rights, demands, charges, complaints, causes of action, damages, obligations, disputes, or liabilities of any kind or nature that were asserted in the Action or could have been but were not asserted in the Action, whether known or unknown, arising out of work performed by the Settlement Class for T-Mobile from the beginning of time through the Effective Date. This expressly includes but is not limited to any statutory/regulatory claims that may lawfully be released (including but not limited to claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. §§8-6-101–8-6-119, Colorado Minimum Wage Order No. 32, 7 Colo. Code Regs. §§1103-1(1)–(22), Colorado Wage Claim Act, Colo. Rev. Stat. §§8-4-101–8-4-123; Missouri Minimum Wage Law, § 290.500 RSMo, *et seq.*, Missouri Wage Payment Law, §§ 290.080 to 290.090, RSMo; New Mexico Minimum Wage Act, N.M.S.A. § 50-4-19 *et seq.*; Oregon Revised Statutes, Chapters 652 and 653; Washington Minimum Wage Act, RCW 49.46 *et seq.*, Washington Wage Rebate Act, RCW 49.52 *et seq.*, Washington Industrial Welfare Act, RCW 49.12 *et seq.*, and Washington's wage payment statute, RCW Chapter 49.48; as well as any local laws in those five states), contractual claims (whether express or implied), and common law claims (including without limitation any claims of unjust enrichment, quantum meruit, estoppel, misrepresentation, any other claim in equity, and any claim of breach of a covenant of good faith and fair dealing) for compensation, wages, unpaid amounts, double damages, interest, penalties, costs, expenses, and/or attorneys' fees for or related to such matters. This expressly excludes claims that are not reasonably related to wage and hour claims, including claims for discrimination, retaliation, wrongful termination, unemployment, disability, worker's compensation, and any claims that may not be lawfully released under this Agreement.

5. <u>Settlement Amount</u>. T-Mobile agrees to pay in full settlement of the Action and resolution of the claims of the Settlement Class as set forth in this Agreement the total gross amount of Two Million Dollars ($2,000,000.00) (the "Settlement Amount"). The Settlement Amount will be inclusive of Attorneys' Fees/Cost Award; the Incentive Awards (and/or any other awards approved by the Court); all costs payable to Simpluris, Inc., in connection with its provision and tracking of notices to, and processing and filing of opt-in forms received from, the Notice Group; all Settlement Administration Costs payable to the Settlement Administrator for the Settlement Administration; and any other fees or costs associated with settlement of the Action. The Settlement Amount shall also be inclusive of T-Mobile's share of any payroll taxes associated with the wage payments to the Settlement Class. T-Mobile will not be responsible for making any other payment of any kind to the Named Plaintiffs, the Initial Opt-in Plaintiffs, the Settlement Class, or Plaintiffs' Counsel in connection with this matter. T-Mobile will provide the Settlement Amount to the Settlement Administrator by wire or check within fourteen (14) days following the Effective Date.

6. <u>Attorneys' Fees and Costs</u>. Plaintiffs will apply to the Court for an Order approving the payment of Plaintiffs' Counsel's fees, not to exceed thirty-three and a third percent (33 1/3%) of the Settlement Amount, plus litigation costs incurred by Plaintiffs' Counsel. The actual amounts of Plaintiffs' Counsel's attorney fees and litigation costs that are approved by the Court (the "Attorneys' Fees/Cost Award") will be paid from the Settlement Amount. Plaintiffs' Counsel's application for attorneys' fees and litigation costs is subject to Court approval, and a reduction by the Court in the requested amount of attorneys' fees and litigation costs is not a basis for Plaintiffs to void, rescind, or terminate this binding Agreement, and instead any such reduction will be included as part of the Net Settlement Amount for distribution to the Settlement Class pursuant to

this Agreement. Other than the Attorneys' Fees/Cost Award ultimately awarded to Plaintiffs' Counsel by the Court and payable out of the Settlement Amount, each party will be responsible for bearing its own attorneys' fees, costs, and expenses.

7.      <u>Settlement Administration Costs</u>.  Settlement Administration Costs will be paid from the Settlement Amount.

8.      <u>Withholding and Taxes</u>.  The payments contemplated under this Agreement will be subject to taxes and withholdings as required by law and as set forth in the Agreement. The Settlement Administrator will be responsible for calculating such amounts, deciding the appropriate number of exemptions to be used in calculating payroll taxes and withholdings, deciding the appropriate tax rate, paying required taxes and withholdings out of the Settlement Amount (including any and all applicable federal, state, and local employer-side payroll taxes associated with any of the payments provided pursuant to this Agreement, including without limitation FICA, FUTA, and SUTA obligations), and issuing required tax documentation to Plaintiffs' Counsel, the Named Plaintiffs, the Initial Opt-In Plaintiffs, and the Settlement Class Members. The parties will cooperate fully with the Settlement Administrator as reasonably necessary to facilitate such calculations, payment, and documentation. The employee portion of all applicable income and payroll taxes will be the sole responsibility of each individual receiving an Individual Settlement Award check or Incentive Award. T-Mobile makes no representations, and it is understood and agreed that T-Mobile has made no representations, as to the taxability of any portions of the Individual Settlement Awards or the Incentive Awards, or the payment of any costs or award of attorneys' fees. The Notices will advise Settlement Class Members to seek their own tax advice prior to acting in response to that Notice. Neither Plaintiffs' Counsel nor T-Mobile's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

9.      <u>Incentive Awards</u>. In addition to any Individual Settlement Award to which they may be provided pursuant to this Agreement, the parties agree that Plaintiffs' Counsel will request of the Court (and T-Mobile will not oppose or object to) the payment of incentive awards in the total amount of $20,000, allocated among the Named Plaintiffs and the Initial Opt-In Plaintiffs (collectively, the "Incentive Awards") as follows: $5,000 to Kristina Chetwood; $5,000 to Sandra Catellon-Gonzalez; $2,500 to Auriel Calvert; $2,500 to Kerry Selfridge; $1,000 to Paul Rose; $1,000 to Jairo Marquez; $1,000 to Samantha Stephens; $1,000 to Richard Nedbalek; and $1,000 to Briana White.  This Agreement shall not be voided or nullified if the Court decides to award different Incentive Award amounts to the Named Plaintiffs or the Initial Opt-in Plaintiffs. A reduction by the Court in the requested amount of Incentive Awards is not a basis for Plaintiffs to void, rescind, or terminate this binding Agreement, and instead any such reduction will be included as part of the Net Settlement Amount for distribution to the Settlement Class pursuant to this Agreement. Any Incentive Awards approved by the Court will be paid out of the Settlement Amount.

10.     <u>Settlement Awards</u>.

        a.      <u>Cooperation between Parties</u>.  T-Mobile will reasonably cooperate with Plaintiffs' Counsel to provide any additional data necessary to calculate Individual Settlement Awards,

and Plaintiffs' Counsel will presume that such data is accurate. Specifically, for the Initial Rule 23 Group, T-Mobile will provide the Settlement Administrator and Plaintiffs' Counsel the same pay and hours data that was provided to Plaintiffs' Counsel in connection with the parties' mediation, but with the employee names in addition to the internal employee identification numbers previously provided. For the Supplemental Rule 23 Group, T-Mobile will provide the names of the members of the group and the same pay and hours data as provided for the Opt-In Group and Initial Rule 23 Group, covering hours worked in the Notice Group Positions between September 20, 2020 and the Preliminary Approval Date. Any information provided to the Settlement Administrator and Plaintiffs' Counsel pursuant to this Agreement will be used solely to administer this Agreement and will not be used or disclosed for any other purpose. The parties agree to cooperate in all aspects of the Settlement Administration process and to make reasonable efforts to control and minimize the costs and expenses incurred in administration of this Agreement.

      b.    <u>Calculation of Individual Settlement Awards</u>.  The Settlement Class Members' Individual Settlement Awards will be determined by the following payment distribution formula proposed by Plaintiffs' Counsel, which is intended to allocate the Net Settlement Amount fairly among the Settlement Class Members based on their alleged unpaid time spent starting computers and logging into computer applications:

    **i.**    Each Settlement Class Member will receive a minimum payment of twenty dollars ($20.00) and the total amount of all such minimum payments (the "Minimum Payments") will be subtracted from the Net Settlement Amount.

    **ii.**    Each Settlement Class Member shall be assigned one (1) point for each pay period worked in a Notice Group Position between April 23, 2017, and the Preliminary Approval Date in which they worked eighty (80) or more hours according to T-Mobile's time records.

    **iii.**    Each Settlement Class Member shall be assigned one-quarter (0.25) additional point to each pay period worked in a Notice Group Position between April 23, 2017, and the Preliminary Approval Date in which they worked at a location in the States of Colorado, Missouri, New Mexico, Oregon and Washington,  according to T-Mobile's time records.

    **iv.**    To calculate each Settlement Class Member's proportionate share of the Net Settlement Amount (in addition to their individual Minimum Payment), the Settlement Administrator shall:

      **1.**    Add the points for all Settlement Class Members together to obtain the "Total Denominator";

      **2.**    Divide the number of points for each Settlement Class Member by the Total Denominator to obtain each Settlement Class Member's portion of the remainder of the Net

Settlement Amount after the subtraction of the Minimum Payments; and

**3.**     Multiply each Settlement Class Member's portion of the remainder of the Net Settlement Amount by the total amount of the remainder of the Net Settlement Amount to determine each Settlement Class Member's Individual Settlement Award.  The sum of the Individual Settlement Awards for all Settlement Class Member's (including both their Minimum Payments and their proportionate share of the remainder of the Net Settlement Amount) shall equal the Net Settlement Amount.

Each Settlement Class Member's Individual Settlement Award will be allocated as follows: (a) 50% as wages subject to applicable taxes and withholdings; and (b) 50% as liquidated damages, penalties, and interest. The Settlement Administrator will be responsible for issuing to each Settlement Class Member who receives an Individual Settlement Award an IRS Form W-2 for the amount deemed "wages" and an IRS Form 1099 for the amounts allocated to liquidated damages, penalties, and interest. T-Mobile shall have the right to review all calculations for accuracy. No more than fourteen (14) days after the Opt-Out Deadline, the Settlement Administrator will advise the Plaintiffs' Counsel and T-Mobile's Counsel of its proposed Individual Settlement Award calculations, subject to confirmation by the parties as described below.

c.     <u>Confirmation by the Parties</u>.  Although the Settlement Administrator will be responsible for calculating the amounts of the Individual Settlement Awards, such calculations will not be considered final until the parties evaluate and confirm that the sum of all Individual Settlement Awards does not exceed the Net Settlement Amount (which is the amount of the Settlement Amount that remains after subtraction of the Attorneys' Fees/Cost Award, the Settlement Administration Costs, the Incentive Awards, and the sum of the employer's share of payroll related taxes associated with the Individual Settlement Awards). If such sum exceeds the Net Settlement Amount, the Settlement Administrator will inform the parties and the parties will cooperate with the Settlement Administrator to adjust the Individual Settlement Award calculations such that the sum of Individual Settlement Awards does not exceed the Net Settlement Amount.

11.     <u>Procedures for Approval</u>.  The Parties agree to the following procedures for obtaining preliminary Court approval of this Agreement, notifying the Settlement Class, submitting objections, obtaining final Court approval of this Agreement and dismissal of the Action, and making and administering the settlement payments:

a.     <u>Amended Complaint</u>.  Following execution of this Agreement by the parties, Plaintiffs' Counsel will prepare a stipulated motion to file an Amended Complaint in order to assert putative class state-law claims to the extent necessary to allow for the resolution of such claims in this Action pursuant to this Agreement. This stipulated motion shall provide that, by stipulating to the filing of the Amended Complaint, T-Mobile does not waive any argument or defense against any later claim (should this Agreement not become effective for any reason) by

Plaintiffs' Counsel that the state-law class claims asserted in the Amended Complaint should relate back to the date of the filing of the Complaint pursuant to Rule 15(c). If the Court declines to allow for the filing of the Amended Complaint substantially in the form of Exhibit B, this Agreement and the MOU shall be null and void and without effect.

        b.   <u>Preliminary Settlement Hearing</u>. After the Amended Complaint is filed, the parties will request a preliminary settlement hearing before the Court to seek an order (the "Preliminary Order" substantially in the form of Exhibit C) providing the stipulated class action certification(s) necessary to effectuate this Agreement; appointing any necessary class representatives for the Rule 23 Group; appointing Plaintiffs' Counsel as counsel for the Settlement Class; preliminarily approving this Agreement; authorizing the Settlement Administrator to send appropriate notices of the settlement to the Settlement Class Members; and setting a date for a final settlement approval hearing (the "Final Settlement Approval Hearing") at which the Court will determine whether to grant final approval of this Agreement. Plaintiffs' Counsel will take the lead in drafting necessary pleadings that shall be in the form of a Plaintiffs' motion. T-Mobile will cooperate in this process and will stipulate to the filing of Plaintiffs' motion after having a reasonable opportunity to review and reach agreement upon the contents of such motion, and reserving its right to deny or defend itself against what it deems to be disparaging or unfair comments in relation to the settlement.

        c.   <u>Notice to the Class</u>. The parties have agreed to the proposed forms for appropriate notice to the Settlement Class Members with regard to the proposed settlement of the FLSA claim of the Opt-In Group and the stipulated class certification(s) and proposed settlement of the state-law claims of the Rule 23 Group (collectively, the "Notice") substantially in the form of Exhibit D. If there is any subsequent need for material modification of this form of Notice in order to be consistent with the Court's Preliminary Order, the parties will cooperate in good faith in an effort to reach agreement on any such modifications. Any unresolved disputes regarding the form of Notice will be submitted in a joint motion to be decided by the Court. Within fourteen (14) days of the Preliminary Approval Date, T-Mobile will provide, to the extent available, the most current mailing addresses and personal email addresses (*i.e.*, not a "@T-Mobile.com" email address) in its records for each Settlement Class Member to the Settlement Administrator. Within fourteen (14) days of receiving this contact information from T-Mobile, the Settlement Administrator will mail the appropriate form of Notice to each Settlement Class Member at such member's address via first class regular United States mail. Such Notice will include, if and as applicable to the Settlement Class Member: the nature and status of the Action, including the positions of the parties; a brief summary of this Agreement and the method of calculating the Individual Settlement Awards; the proposed dismissal of the Action; the procedure for opting out of the Settlement Class or objecting to this Agreement; the date, time, and location of, and procedure for participating in, the Final Settlement Approval Hearing; and the method for submitting inquiries concerning this Agreement or related matters. If any Notice is returned as undeliverable, the Settlement Administrator will attempt one trace to locate a correct address and, if located, will make a second attempt at mailing the Notice or, if not located and a personal email address is available, will send a notice to the Settlement Class Member's personal email address. If the Notice is again returned as undeliverable, no further attempts at delivery will be necessary.

d.  <u>Procedure for Opting Out</u>.  Any Settlement Class Member may request exclusion from this Action and this settlement. The Notice will provide that individuals who wish to exclude themselves from the Settlement Class must send to the Settlement Administrator by facsimile transmission, email, or first class regular United States mail a request for exclusion form (substantially in the form of Exhibit E) ("Opt-Out Request") that must be transmitted or postmarked on or before sixty (60) calendar days from the date the Notice is mailed (the "Opt-Out Deadline"). In order for an individual to be validly excluded from this settlement (*i.e.*, to opt out), the Opt-Out Request must include the individual's name, address, request for exclusion, and signature. To be valid, Opt-Out Requests sent by email must attach a PDF or other scanned image of an original signed document containing this information (an email alone will be insufficient). For completed Opt-Out Requests delivered to the Settlement Administrator, the facsimile or email transmission date and the date of the postmark on the return-mailing envelope will be the exclusive means used to determine whether an Opt-Out Request has been timely submitted. Individuals who are validly excluded from this settlement as provided in this Paragraph will not receive any payment under this Agreement, will have no right to object to this Agreement, and will not be bound by any release set forth in this Agreement. Individuals who fail to submit a valid and timely Opt-Out Request on or before the Opt-Out Deadline will be deemed members of the Settlement Class and will be bound by all terms of the Agreement and any Final Judgment entered if the Agreement is approved by the Court.

e.  <u>Procedure for Objecting to Settlement</u>.  Members of the Settlement Class who do not opt out and who wish to object to any aspect of this Agreement must file with the Court and serve on counsel for all parties a written statement containing their objection no later than sixty (60) calendar days after the date the Notice is mailed (as will be specified in the Notice). Any Settlement Class Members who fail to file and serve timely written objections will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to this Agreement.

f.  <u>No Solicitation of Opt-Outs or Objections to Settlement</u>.  Neither the Named Plaintiffs, the Initial Opt-In Plaintiffs, nor T-Mobile, nor their respective counsel, will directly or indirectly solicit or otherwise encourage members of the Settlement Class to opt out or submit written objections to this Agreement.

g.  <u>Settlement Administrator's Report</u>.  The Settlement Administrator will provide periodic updates regarding Opt-Out Requests to counsel for the parties. Within ten (10) days after the Opt-Out Deadline, the Settlement Administrator will provide a written report to counsel for the parties (the "Settlement Administrator's Report") which will include information regarding the Settlement Administrator's Notice mailing process, a list of any Opt-Out Requests, and a corresponding list of all remaining Settlement Class Members who have not opted out. Within five (5) days after receipt of the Settlement Administrator's Report, the Settlement Administrator will provide to the parties the exact amount of each Settlement Class Member's respective Individual Settlement Award (the "Award Amounts List"). Within ten (10) days of receipt of the Award Amounts List, the Settlement Administrator will provide the parties with a sworn declaration, including the information regarding the Settlement Administrator's Notice mailing process, a list of any Opt-Out Requests, and a corresponding list of all Settlement Class Members who did not opt out and the amounts of each of their Individual Settlement Awards as

specified in the Award Amounts List. This declaration will be filed with the Court by Plaintiffs' Counsel in support of the motion for final approval of the settlement described below.

        h.    <u>Final Settlement Approval Hearing and Entry of Final Judgment</u>. Plaintiffs' Counsel will take the lead in drafting a motion for final approval of the settlement together with a proposed final judgment and an order approving the settlement and dismissing the Action with prejudice ("Final Judgment"). The motion shall be filed within thirty (30) days after the Opt-Out Deadline (or forty-five (45) days in the event a correction to the Award Amounts List is necessary pursuant to Paragraph 10.c above) and will be in the form of a Plaintiffs' motion. T-Mobile will cooperate in this process, but reserves its right to deny or defend itself against what it deems to be disparaging or unfair comments in relation to the settlement. A Final Settlement Approval Hearing will be conducted to determine whether the Court should grant final approval of the Agreement. At that hearing, the parties will present the Final Judgment to the Court for its approval and entry substantially in the form of Exhibit A. As part of the Final Judgment, the Court will dismiss the Action with prejudice as to the Named Plaintiffs, the Initial Opt-In Plaintiffs, and the Settlement Class. After entry of the Final Judgment, the Court will have continuing jurisdiction over the Action solely for the purposes of addressing (i) Settlement Administration matters, and (ii) such post-Final Judgment matters as may be appropriate under court rules.

        i.    <u>Individual Settlement Award Payments</u>. The Settlement Administrator will mail Individual Settlement Award checks to members of the Settlement Class within thirty (30) days after the Effective Date. Such checks will be in the amounts specified in the Award Amounts List, less all legally required taxes and withholdings. The Settlement Administrator will be responsible for providing to members of the Settlement Class IRS W-2 Forms reflecting such wage payments and IRS 1099 Forms reflecting payments of liquidated damages, penalties and interest. The Individual Settlement Award checks shall expire one hundred eighty (180) calendar days after they are sent. Any member of the Settlement Class whose Individual Settlement Award check is returned as undeliverable will receive his/her Individual Settlement Award check if he/she contacts the Settlement Administrator and provides a mailing address no later than one hundred (100) days after the Effective Date (with such checks still expiring as of the timing set forth above based on the original mailing date). No later than two hundred twenty (220) days after the Effective Date, the Settlement Administrator will provide to the parties' counsel copies of the Individual Settlement Award checks signed by Settlement Class Members and will confer with the parties' counsel regarding any undeliverable and uncashed Individual Settlement Award checks and any resulting residual amount of the Net Settlement Amount. In the event of any such residual amount, the Settlement Administrator will send a check in the amount of such residual amount to Food Lifeline Hunger Solution Center.

        j.    <u>Attorneys' Fees/Cost Award and Incentive Award Payments</u>. The Settlement Administrator will deliver the Attorneys' Fees/Cost Award, payable to Plaintiffs' Counsel, and the four (4) Incentive Awards, payable to the Named Plaintiffs and the Initial Opt-In Plaintiffs, to Sommers Schwartz, P.C. within fourteen (14) days after the Effective Date and receipt by the Settlement Administrator of any required tax documentation. The Settlement Administrator will report the Incentive Award payments on IRS 1099 Forms issued to the recipients, because these payments were sought in recognition of the efforts of the Named Plaintiffs and the Initial Opt-In Plaintiffs to pursue the claims raised in this Action on behalf of others similarly-situated,

including providing factual information and otherwise assisting Plaintiff's Counsel with the prosecution and settlement of the Action. The Attorneys' Fees/Cost Award payment will be reported on an IRS Form 1099 to Sommers Schwartz, P.C. and, to the extent necessary to comply with federal tax law requirements, the Named Plaintiffs and Initial Opt-In Plaintiffs, will provide any required tax documentation.

        k.    <u>Nullification of Settlement</u>.  This Agreement shall be null and void if (i) the Court does not enter the Preliminary Order as provided above, (ii) more than two percent (2%) of individuals who would otherwise be members of the Settlement Class choose to opt out of the Settlement Class and T-Mobile, in its sole and absolute discretion, elects to void this Agreement (in such case, T-Mobile shall be responsible for all Settlement Administration Costs incurred as of the date it voids this Agreement), (iii) the Court does not finally approve this Agreement as provided above, (iv) the Court does not enter a Final Judgment that becomes final within the meaning of Paragraph 1.a above, or (v) the settlement does not become final for any other reason. In such a case, the parties will be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement and will proceed in all respects as if this Agreement had not been executed (including, if and as applicable, that any Rule 23 settlement class conditionally certified by stipulation of the parties in connection with this Agreement shall be considered null and void, and the existing conditional certification of the FLSA collective shall be subject to a motion for decertification). Moreover, in such case, nothing in this Agreement or the MOU may be used by or against any party under Rule 408 of the Federal Rules of Evidence or otherwise. In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of this Agreement will be stayed pending final resolution of the appeal or other appellate review. Notwithstanding the above, in the event any of the circumstances identified in this Paragraph that could render this Agreement null and void occur, the parties may mutually agree to attempt to renegotiate the settlement and/or this Agreement for purpose reaching a settlement.

    12.    <u>No Effect on Employee Benefits</u>.  This Agreement, and any amounts paid to the Settlement Class Members hereunder, will have no effect on the eligibility and/or calculation of their respective employee benefits and will not represent any modification to their previously credited hours of service under any employee pension benefit plan or employee welfare plan sponsored by or subject to contributions from T-Mobile. Further, any amounts paid hereunder shall not be considered "compensation" in any year for purposes of determining eligibility for, or benefit accrual within, any employee pension benefit plan or employee welfare benefit plan sponsored by or subject to contributions from T-Mobile, or for purposes of any T-Mobile bonus or incentive plans or payments.

    13.    <u>Miscellaneous Provisions</u>.

        a.    <u>Settlement Administrator</u>.  The parties will have equal access to the Settlement Administrator and all information related to the administration of the settlement. The Settlement Administrator shall provide such information to counsel for either party upon request. The Settlement Administrator will provide regular reports to counsel for the parties (and, as requested, declarations for filing with the Court) regarding the status of the mailing of the Notices, the claims administration process, and distribution of the Individual Settlement Award checks.

      b.    <u>Interim Stay of Proceedings</u>.  Except for proceedings necessary to implement and finalize this Agreement, the parties agree to hold all further proceedings in the Action in abeyance pending the Final Settlement Approval Hearing.

      c.    <u>No Tolling</u>.  This Agreement, and the underlying lawsuit, do not provide for any equitable tolling of any statutes of limitation.

      d.    <u>Modification</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for all parties or their successors-in-interest.

      e.    <u>Entire Agreement</u>.  This Agreement constitutes the entire Agreement among these parties, and no representations, warranties or inducements have been made to any party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein. This Agreement supersedes the MOU, and the MOU is rendered null and void by the execution of this Agreement.

      f.    <u>Authorization to Enter into Settlement</u>.  Counsel for all parties warrant and represent that they are expressly authorized by the parties whom they represent to enter into this Agreement and to take all appropriate action required or permitted to be taken by such parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement and a full and final resolution of the claims asserted in the Action. The parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of this Agreement. In the event the parties are unable to reach agreement on the form or content of any document needed to implement this Agreement, or on any supplemental provisions that may become necessary to effectuate the terms of this Agreement, the parties may seek the assistance of a mutually designated third party, or the Court, to resolve such disagreement.

      g.    <u>Media Statements</u>.  Unless ordered by the Court as part the approval process, Named Plaintiffs, the Initial Opt-in Plaintiffs, and Plaintiffs' Counsel agree not to publicize the settlement (including, without limitation, in a verdicts/settlements service, through social media, or via any other means) except, if asked, they may respond to a public inquiry by stating an agreement was reached on terms that will be submitted to the Court for approval. Plaintiffs' Counsel may post a reference to the settlement on their website and bios submitted to courts to demonstrate adequacy of counsel that does not identify T-Mobile by name, but identifies the settlement amount, nature of the case, type of claims involved, and nature of T-Mobile's business.

      h.    <u>Successors and Assigns</u>.  This Agreement is binding upon, and inures to the benefit of, any successors or assigns of the parties.

      i.    <u>Washington Law Governs</u>.  All terms of this Agreement are to be governed by and interpreted according to the laws of the State of Washington. The parties agree that this Agreement has been freely negotiated and should not be construed against any party as the drafter.

DocuSign Envelope ID: D4B553E3-9B76-47E4-BAC3-1CBB68FAA54B

j.      Counterparts.  This Agreement may be executed in one or more counterparts (any one or all of which may be facsimile or PDF/electronic copies). All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the parties to this Agreement will exchange among themselves original signed counterparts. This Agreement will become effective upon the last date of its execution by all of the persons for whom signature spaces have been provided below.

k.      This Settlement Is Fair, Reasonable, and Adequate.  The Named Plaintiffs, the Initial Opt-in Plaintiffs, Plaintiffs' Counsel, and T-Mobile believe that this is a fair, reasonable, and adequate settlement with respect to their interests and the interests of the Settlement Class Members, and have arrived at this settlement in arms-length negotiations after taking into account all relevant factors, present and potential. The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after extensive negotiation, with consideration by and participation of counsel for all parties. The Agreement will be construed according to the fair intent of the language taken as a whole, and not for or against any party.

l.      Waiver.  The waiver by one party of any provision or breach of this Agreement will not be deemed a waiver of any other provision or breach of this Agreement.

m.      Use and Retention of Information.  Any documentation containing the names or addresses or personal information of Settlement Class Members may be used by Plaintiffs' Counsel and the Settlement Administrator only for purposes of implementing this Agreement. All such information may not be disclosed by Plaintiffs' Counsel or the Settlement Administrator to anyone or any organization, except as necessary to facilitate settlement administration.

n.      Continuing Jurisdiction.  The Court will retain exclusive and continuing jurisdiction over this Agreement and over all parties and Settlement Class Members to interpret, effectuate, enforce, and implement this Agreement. The Court will have exclusive jurisdiction to resolve any disputes involving this Agreement.

o.      Calculation of Time.  All time listed in this Agreement is in calendar days. Time is calculated by (a) excluding the day of the event that triggers the period; (b) counting every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) including the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

*[Signature Page follows]*

# SETTLEMENT AGREEMENT
*Signature Page*

**SOMMERS SCHWARTZ LLP**

By: _____

   Kevin J. Stoops, Esq. (PHV)
   Charles R. Ash IV, Esq. (PHV)


Dated: ___5/6/2021___

**K&L GATES LLP**

By: _____

   Patrick M. Madden, WSBA #21356
   Daniel P. Hurley, WSBA #32842


Dated: ___5/12/2021___

**SCHROETER GOLDMARK & BENDER**

By: _____

   Adam J. Berger, WSBA #20714


Dated: ___5/12/2021___

**KRISTINA CHETWOOD**

By: _____


Dated: ___04/30/2021___

**T-MOBILE USA, INC.**

By: _____

Title: ___EVP, General Counsel & Secretary___


Dated: ___5/12/2021___

**SANDRA CASETELLON-GONZALEZ**

By: _____


Dated: _____

# SETTLEMENT AGREEMENT
*Signature Page*

**SOMMERS SCHWARTZ LLP**          **K&L GATES LLP**

By:_____    By:_____
    Kevin J. Stoops, Esq. (PHV)        Patrick M. Madden, WSBA #21356
    Charles R. Ash IV, Esq. (PHV)     Daniel P. Hurley, WSBA #32842

Dated:_____   Dated:_____

**SCHROETER GOLDMARK & BENDER**

By:_____
    Adam J. Berger, WSBA #20714

Dated:_____

**KRISTINA CHETWOOD**         **T-MOBILE USA, INC.**

By:_____    By:_____

Dated:_____   Title:_____

                          Dated:_____

**SANDRA CASETELLON-GONZALEZ**

By:_____

Dated: 04/30/2021_____

**AURIEL CALVERT**

By: _Auriel Calvert_____

Dated: _04/30/2021_____

**KERRY SELFRIDGE**

By:_____

Dated:_____

**PAUL ROSE**

By:_____

Dated:_____

**JAIRIO MARQUEZ**

By:_____

Dated:_____

**SAMANTHA STEPHENS**

By:_____

Dated:_____

**AURIEL CALVERT**

By:_____

Dated:_____

**KERRY SELFRIDGE**

By:_____

Dated: 05/03/2021_____

**PAUL ROSE**

By:_____

Dated:_____

**JAIRIO MARQUEZ**

By:_____

Dated:_____

**SAMANTHA STEPHENS**

By:_____

Dated:_____

**AURIEL CALVERT**

By:_____

Dated:_____

**KERRY SELFRIDGE**

By:_____

Dated:_____

**PAUL ROSE**

By:_____

Dated:___05/04/2021_____

**JAIRIO MARQUEZ**

By:_____

Dated:_____

**SAMANTHA STEPHENS**

By:_____

Dated:_____

**AURIEL CALVERT**

By:_____

Dated:_____

**KERRY SELFRIDGE**

By:_____

Dated:_____

**PAUL ROSE**

By:_____

Dated:_____

**JAIRIO MARQUEZ**

By:_____

Dated:_ 04/30/2021 _____

**SAMANTHA STEPHENS**

By:_____

Dated:_____

**AURIEL CALVERT**

By:_____

Dated:_____


**KERRY SELFRIDGE**

By:_____

Dated:_____


**PAUL ROSE**

By:_____

Dated:_____

**JAIRIO MARQUEZ**

By:_____

Dated:_____

**SAMANTHA STEPHENS**

By:_____

Dated: 04/30/2021_____

DocuSign Envelope ID: D4B553E3-9B76-47F4-BAC3-1CBDC8FAA54B

**RICHARD NEDBALEK**

By: _____

Dated: _04/30/2021_____

**BRIANA WHITE**

By: _____

Dated: _____

DocuSign Envelope ID: D4B553E3-9B76-47F4-BAC8-1CDBC8FAA54B

**RICHARD NEDBALEK**

By:_____

Dated:_____

**BRIANA WHITE**

By:_____

Dated:_____04/30/2021_____

DocuSign Envelope ID: D4B553E3-9B76-47F4-BAC3-1CEDC8FAA54B

# EXHIBIT A

DocuSign Envelope ID: D4B553E3-9B76-47E4-BAC8-1CDBC8FAA54B

HONORABLE ROBERT S. LASNIK

1

2

3

4

5

6

7           UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
8                    AT SEATTLE

9   **KRISTINA CHETWOOD** and **SANDRA**          )
10  **CASTELLON-GONZALEZ,** individually,         )   CASE NO.
    and on behalf of others similarly situated,   )   2:19-cv-00458-RSL
11                                                )
                                                  )   **[PROPOSED] FINAL APPROVAL**
12              Plaintiffs,                        )   **ORDER AND JUDGMENT**
    v.                                            )
13                                                )
    **T-MOBILE USA, INC.**                        )
14                                                )
                                                  )
15              Defendant.                         )

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

## ORDER

The Court has reviewed and considered the motion for final approval of the class and collective action settlement agreement ("Settlement") (Dkt. No.__) submitted by Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White ("Plaintiffs"), on behalf of themselves and similarly situated employees of Defendant T-Mobile USA, Inc. ("Defendant") (together, the "Parties"). The Court preliminarily approved the Parties' Settlement and their proposed resolution of Plaintiffs' class and collective action claims on behalf of the Class Members. Dkt. No.__. A copy of the Settlement is attached to this Order as Exhibit A.

In accordance with the order granting preliminary approval, and in compliance with due process, the Settlement Administrator sent the Court-approved Notice (Dkt. No. __) to each of the Settlement Class Members by first-class mail. The Notice informed the Settlement Class Members of the terms of the Settlement, the right to participate in the Settlement, the right to object to the Settlement, the right to request exclusion and pursue their own remedies, and the right to appear in person or by separate counsel at the Final Settlement Approval Hearing regarding final approval of the Settlement.

The motion for final approval seeks final approval of the Settlement and entry of judgment that will bind each Settlement Class Member, and will operate as a full release and discharge of the claims set forth in paragraph 4 of the Settlement Agreement (the "Released Claims");.

Having received and considered Plaintiffs' motion for preliminary approval of the Settlement, Plaintiffs' motion for final approval of the Settlement, that there were no meritorious objections to the Settlement, that only X out of XXXX Settlement Class Members opted out of the Settlement, Plaintiffs' motion for attorneys' fees, Settlement Administration Costs, and Incentive Awards for the Named Plaintiffs, the file in this case, and the evidence and argument received by the Court before entering the Preliminary Order and before and at the Final Settlement Approval Hearing, **THE COURT HEREBY ORDERS, ADJUDGES AND DECREES THAT:**

1.      Initial-capitalized terms in this Final Approval Order and Judgment (the "Order") shall have the same meaning as assigned to them in the Settlement.

2.     The Settlement Administrator has fulfilled its initial notice and reporting duties under the Settlement.

3.     The Notice to the Settlement Class Members: (i) was the best practicable notice under the facts and circumstances of this case; (ii) was reasonably calculated to apprise the Settlement Class Members of the pendency of the Action, their right to participate in the Settlement, their right to exclude themselves from the Settlement, and their right to object to, and/or appear at the Final Settlement Approval Hearing; and (iii) constituted due, adequate, and sufficient notice of a class/collective settlement under Federal Rule of Civil Procedure 23, 29 U.S.C. §§ 201, *et seq.*, due process, and any other applicable rules or law.  Only X individuals asked to exclude themselves from the Settlement, and there were no meritorious objections to the Settlement.

4.     The notice of settlement served by Defendant on the U.S. and applicable state attorneys general satisfies the requirements of the Class Action Fairness Act.  The Attorneys General have expressed no objections to the Settlement.

5.     The terms of the Settlement are fair, reasonable and adequate, and the standards and applicable requirements for final approval of this class and collective action settlement are satisfied, including the provisions of Rule 23 of the Federal Rules of Civil Procedure and the provisions of 29 U.S.C. §§ 201, *et seq.*

6.     The Settlement has been reached as a result of intensive, serious, and non-collusive, arms-length negotiations and was achieved with the aid of an experienced mediator.   The Settlement was entered into in good faith as to each Settlement Class Member.

7.     Counsel for the Settlement Class are experienced class action litigators and have expressed the view that the Settlement is fair, reasonable, and adequate.

8.     The Court has considered the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), including the nature and strength of the Plaintiffs' allegations and claims; the nature and strength of Defendant's defenses to those claims and allegations; the risk, expense, complexity and likely duration of further litigation; the risk of attaining and maintaining class and collective action status throughout the litigation; the extent of discovery completed and stage of the proceedings; the experience and views of counsel; the presence and/or absence of a

1    governmental participant; and the amount offered in settlement of the claims. Based on these

2    considerations, the Court finds that the amounts to be paid under the Settlement are fair and

3    reasonable. Moreover, the allocation of the Net Settlement Amount among the Settlement Class

4    Members is fair, adequate, and reasonable. The fact that a settlement represents a compromise of

5    the Parties' respective positions, rather than the result of a finding of liability at trial, also supports

6    the Court's decision granting final approval.

7        9.    The Court appoints counsel for the Named Plaintiffs as representatives of, and as

8    counsel ("Class Counsel") for, the Settlement Class Members for the purpose of entering into and

9    implementing the Settlement.

10        10.    The Settlement Administrator is to execute the distribution of proceeds of the

11    Settlement Amount pursuant to the terms of the Settlement.

12        11.    As of the Effective Date, the Settlement Class Members who did not opt out of the

13    Settlement are bound by the release of claims set forth in paragraph 4 of the Settlement, and the

14    Named Plaintiffs and the Initial Opt-In Plaintiffs are bound by the releases of claims set forth in

15    paragraphs 3 and 4 of the Settlement.

16        12.    The fees, expenses, and any other costs of Rust Consulting in administering the

17    Settlement, the amount of **$37,500.00**, are fair and reasonable. Payment of that amount shall be

18    paid out of the gross Settlement Amount in accordance with the Settlement, which shall fully, finally

19    and completely compensate Rust Consulting, for all fees, expenses and any other costs in

20    administering the Settlement.

21        13.    Based upon application by Class Counsel and Plaintiffs, the Court approves the

22    payment of Incentive Awards in the amount of **$20,000.00** to the Named Plaintiffs and Initial Opt-

23    In Plaintiffs as follows: $5,000 to Kristina Chetwood; $5,000 to Sandra Castellon-Gonzalez; $2,500

24    to Auriel Calvert; $2,500 to Kerry Selfridge; $1,000 to Paul Rose; $1,000 to Jairo Marquez; $1,000

25    to Samantha Stephens; $1,000 to Richard Nedbalek; and $1,000 to Briana White (in addition to any

26    recovery they may receive as Settlement Class Members under the Settlement) in recognition of

27    their efforts and the risks they undertook in prosecuting this Action.

28

- 4 -
ORDER GRANTING FINAL APPROVAL OF CLASS/COLLECTIVE ACTION SETTLEMENT

14.     Based upon application by Class Counsel, the Court approves the payment of attorneys' fees to Class Counsel in the amount of **30%** of the gross Settlement Amount, i.e. **$600,000.00**, and litigation costs to Class Counsel in an amount not to exceed **$55,000.00**, to be paid in the manner set forth in the Settlement.  No other attorneys or law firms shall be entitled to any award of attorneys' fees or costs from Defendant in any way connected with this litigation.

15.     The Settlement and this final approval Order shall have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings to the extent any such lawsuits or other proceedings include any claims of the Plaintiffs or any claims of the Settlement Class Members that are subject to the releases set forth in the Settlement, whether those lawsuits or proceedings are maintained by or on behalf of Plaintiffs or the Settlement Class Members, or to the extent the claims would otherwise be barred by principles of *res judicata*. The Settlement and this Order shall be binding on the Plaintiffs, the Settlement Class Members, their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf.

16.     The Plaintiffs and the Settlement Class Members are permanently barred from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the claims they released in the Settlement.

17.     The Settlement provided for herein, and any proceedings undertaken pursuant thereto, may not be offered, received, or construed as evidence of: a presumption, concession, or an admission by any party of liability or non-liability; the certifiability or non-certifiability of the class and collective claims resolved by the Settlement; provided, however, that reference may be made to this Settlement in such proceedings as may be necessary to effectuate the provisions of this Settlement.

18.     This Order shall be entered forthwith, dismissing this Action with prejudice.

19.     Without affecting the finality of this Order, the Court retains continuing jurisdiction over the Plaintiffs, Defendant, and the Settlement Class Members as to all matters concerning the administration, consummation, and enforcement of this Settlement.

1    20.    After settlement administration and distribution of funds have been completed, the

2    Parties shall file a report with this Court certifying compliance with the terms of the Settlement and

3    this Order.

4    21.    If this Order is reversed on appeal or the Settlement is terminated or is not

5    consummated for any reason, the foregoing certification of claims on class and collective action

6    bases, appointment of class representatives, and appointment of class counsel shall be void and of

7    no further effect, and the Parties shall be returned to the status each occupied before entry of the

8    Preliminary Approval Order and this Order without prejudice to any legal argument that any of the

9    Parties might have asserted but for the Settlement.

10

11

12    **IT IS SO ORDERED.**

13

14    Dated: _____, 2021    _____

15                                          HON. ROBERT S. LASNIK
                                            United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: D4B553E3-9B76-47E4-BAC3-1CFDC8FAA54B

# EXHIBIT B

DocuSign Envelope ID: D4B553E3-9B76-47E4-BAC8-1CDC8FAA54B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |  |
|---|---|---|
| KRISTINA CHETWOOD, SANDRA CASTELLON-GONZALEZ, PAUL ROSE, JAIRO MARQUEZ, SAMANTHA STEPHENS, RICHARD NEDBALEK, and BRIANA WHITE individually, and on behalf of others similarly situated, | : : : : : : : | CIVIL ACTION NO. 2:19-cv-00458-MAT JURY TRIAL DEMANDED |
| Plaintiffs, | : : | |
| v. | : | |
| T- MOBILE USA, INC. | | |
| Defendant. | | |

## FIRST AMENDED COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White, individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendant T-Mobile USA, Inc., and states as follows:

## INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs Kristina Chetwood and Plaintiff Sandra Castellon-Gonzalez (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant T-Mobile USA, Inc. (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq.;* the Colorado Wage Claim Act,

C.R.S. §§ 8-4-101, *et seq*.; the Missouri Minimum Wage Law, R.S. Mo. 290.501, et seq.; the Oregon Wage Laws, Or. Rev. Stat. Ann §§ 652.120 *et seq.*, 653.045, 653.160, and 653.261; the New Mexico Minimum Wage Act, §§ 50-4-19, et seq.; and the Washington Minimum Wage Act and Washington Rebate Act.

2.    Defendant T-Mobile USA, Inc. refers to itself as a "mobile-solutions provider" who offers the "best-in-class business customer satisfaction and innovative products – all supported by America's fastest, most-advanced network."   *See* https://www.t-mobile.com/business (last visited on 2/22/19).   Among other things, they offer "very small, small/medium, and large enterprise wireless service."   *Id*. Additionally, T-Mobile provides every day consumers with wireless voice, messaging, and data services.   According to annual reports, Defendant operates the third largest wireless network in the United States, with over 65.5 million customers and annual revenues of over $32 billion.

3.    Defendant is headquartered in Bellevue, Washington. The present lawsuit covers only original T-Mobile call centers and not any legacy Sprint call centers. Since the date this lawsuit commenced there was a merger between T-Mobile and Sprint.

4.    In order to service their customers, Defendant employs hourly customer service representatives at brick-and-mortar call centers throughout the country, internally referred to by Defendant as: Customer Service Associate Experts; Customer Service Experts; or Senior Customer Service Experts (hereinafter referred to collectively as "CSRs").

5.    As evidenced by the position descriptions on Defendant's website, the CSRs all perform essentially the same tasks, regardless of which call center they are employed in, and the difference in title primarily reflects the tenure of the CSR.   All CSRs are paid on an hourly basis, plus commissions, incentives, or other non-discretionary bonuses related to the CSR's job

2

DocuSign Envelope ID: D4B553E3-BB76-47F4-BAC8-1CBDC8FAA54B

performance.

6.      Defendant employed each of the Plaintiffs as CSRs during the past three (3) years at their brick-and-mortar call center in Wichita, Kansas.   Additionally, Plaintiff Chetwood also works at Defendant's brick-and-mortar call center in Mission, Texas where all practices and procedures material to this lawsuit are the same.

7.      Defendant requires their CSRs to work a set, full-time schedule. However, Defendant did not begin compensating CSRs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSRs not being paid for all time worked and for all of their overtime compensation in violation of the FLSA and the relevant state laws.

8.      Defendant's CSRs use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at the call centers.   These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

9.      Defendant's CSRs working onsite at the call centers perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications.

10.      In addition to the off-the-clock work discussed herein, Defendant also failed to include commissions and other incentives received in the calculation of CSRs' overtime rates, in violation of the FLSA and other state labor laws.

11.      Defendant's CSRs' jobs described herein are non-exempt positions.

12.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center

employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.

13.     In order to perform their jobs, Plaintiffs were required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from seven (7) to thirteen (13) minutes per day, but extending even longer on days when Plaintiff and other CSRs experienced technical issues related to Defendant's computers, software or programs.

14.     Plaintiffs were not actually "clocked in" for their shift until *after* the computer start-up/log-in process was complete and they logged into the applicable programs, software, servers, and applications, meaning that Plaintiffs and other CSRs worked at least seven (7) to thirteen (13) minutes each per shift that they were never compensated for. This off-the-clock time that Defendant's CSRs spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of their job responsibilities as CSRs.

15.     Defendant provides their CSRs with one unpaid 30-minute lunch break per shift. Defendant's Employee Handbook requires CSRs to clock-in and out of the time keeping system for all lunch breaks.

16.     Defendant, however, requires its CSRs to perform off-the-clock, unpaid work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendant's computer programs, software programs, servers, and applications. On an average shift, Plaintiffs and other CSRs perform three (3) to four (4) minutes of off-the-clock, mid-shift,

unpaid, work during their lunch breaks.

17.     Between the pre-shift start-up/log-in process and the log-in/off during lunch period time, Defendant failed to pay Plaintiffs an amount equal to at least ten (10) to seventeen (17) minutes of compensable time *per shift*. Additionally, Defendant failed to compensate Plaintiffs for other off-the-clock time spent performing work duties, including during their rest and meal periods and before and after shifts, such as answering questions of supervisors and assisting other team members.

18.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:   "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

19.     Defendant knew or could have easily determined how long it took for the CSRs working at the call centers to complete the pre-shift start-up/log-in process, and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work they performed, but did not.

20.     Plaintiffs bring this action on behalf of themselves and all other similarly situated hourly CSRs who worked for Defendant at any call center in the United States, to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

21.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to

DocuSign Envelope ID: D4B553E3-BB76-47F4-BAC8-1CFBC8FAA54B

28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

22.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

23.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendant's CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

24.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as their federal claims.

25.     This Court has personal jurisdiction over Defendant because Defendant's headquarters are in this district and Defendant resides in this district.

26.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in this district, and a substantial portion of the decisions and policy-making that give rise to the Plaintiffs' claims occurred in this district.

## **PARTIES**

27.     Plaintiff Christina Chetwood is a resident of Mission, Texas and was employed by Defendant first as an hourly CSR at the Defendant's call center in Wichita, Kansas, then was subsequently transferred to the call center in Mission, Texas.   Defendant employed her as a CSR within the time period relevant to this case. Plaintiff Chetwood signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit A***.

28.     Plaintiff Sandra Castellon-Gonzalez is a resident of Wichita, Kansas. Defendant employed her as an hourly CSR at Defendant's call center in Wichita, Kansas within the relevant time period.   Plaintiff Castellon-Gonzalez signed a consent form to join this lawsuit, which is

attached hereto as **Exhibit B**.

29.    Plaintiff Paul A. Rose is a resident of Ozark, Missouri and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Springfield, Missouri.   He has filed a consent to join this lawsuit.

30.    Plaintiff Samantha Stephens is a resident of Colorado and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Colorado Springs, Colorado.   He has filed a consent to join this lawsuit.

31.    Plaintiff Marquez, Jairo is a resident of New Mexico and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Albuquerque, New Mexico.   He has filed a consent to join this lawsuit.

32.    Plaintiff Richard Nedbalek is a resident of Washington and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Bellingham, Washington.   He has filed a consent to join this lawsuit

33.    Plaintiff Briana Lee White is a resident of Salem, Oregon and was employed by Defendant during the class period as an hourly CSR at Defendant's call center in Salem, Oregon. She has filed a consent to join this lawsuit.

34.    Opt-In Plaintiff Auriel Calvert is a resident of Haysville, Kansas and is currently employed by Defendant as an hourly CSR at Defendant's call center in Wichita, Kansas.   Opt-in Plaintiff Calvert signed a consent form to join this lawsuit, which is attached hereto as **Exhibit C**.

35.    Defendant T-Mobile USA, Inc. is a foreign for-profit corporation, headquartered in Bellevue Washington and formed in the State of Delaware.   Defendant's principal mailing address is 12920 SE 38th St., C/O Julie Nelson, Sr. Paralegal, Bellevue, Washington, 98006-1350. Defendant's registered agent's (Corporation Service Company) address is 300 Deschutes Way

SW, Ste. 304, Tumwater, Washington, 98501-0000.

36.     Defendant is a wireless network operator whose majority shareholder is the German telecommunications company Deutsche Telekom.

## GENERAL ALLEGATIONS

37.     On August 15, 2018, Defendant announced that it ended "the hated phone menu & the call center runaround" when it launched the "T-Mobile Team of Experts."   "With a Team of Experts, when you call or message T-Mobile, you get a tight-knit team dedicated to you and others in your city.   There are no robots or automated phone menus.   You now have your own entourage at T-Mobile dedicated to you and your happiness." *See*, https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited on 3/26/19).

38.     Although the "entourage at T-Mobile" referenced in the preceding paragraph are the employees referred to herein as CSRs, Defendant's call center operations long predate this announcement.   As stated above, Plaintiff began her employment with Defendant as a CSR in 2014.

39.     Defendant's Customer Care division consists of dozens of call centers throughout the United States where CSRs are employed to assist Defendant's customers.   In fact, in order for one of Defendant's customers to reach a CSR, they must only "call 611 from your T-Mobile phone or message from the T-Mobile App or iMessage using Apple Business Chat." *See*, https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited on 3/26/19).

40.     The locations of Defendant's call centers in which CSRs are employed include: Albuquerque, New Mexico; Augusta, Georgia; Colorado Springs, Colorado; Meridian, Idaho;

Nashville, Tennessee; Oakland, Maine; Richmond, Virginia; Springfield, Missouri; Wichita, Kansas; Mission, Texas; Birmingham, Alabama; Charleston, South Carolina; Tampa, Florida; and Chattanooga, Tennessee.

41.     The job duties of CSRs are the same from call center to call center, as evidenced by the identical job postings on Defendant's website for each location.    Additionally, the required qualifications for the CSR jobs are identical at each call center location.    *Exhibit D*, Job Postings with Position Description.

42.     Defendant compensated CSRs on a bi-weekly basis and paid them a base hourly rate, plus commissions and other incentives.    Plaintiff Chetwood's most recent hourly rate was $15.23 per hour.

43.     Defendant earns revenue and profits from the services of Plaintiffs and other CSR employees.    In fact, Defendant's website boasts that "[w]ith a Team of Experts, Net Promoter Score (NPS) – or likelihood to recommend – increased an unprecedented 56%, putting T-Mobile on par with other brands famous for their customer care." *See* https://www.t-mobile.com/news/introducing-tex?icid=WMM_TMNG_18UCCARE_6WK7TGOCFFJ14858 (last visited 3/26/19).   "In Q2 of 2018 – even before Team of Experts went live nationwide today – customer service costs for postpaid were the lowest in company history due to fewer calls per account and callbacks – making Team of Experts a win, not just for customers and employees, but for shareholders, too." *Id*.

44.     Defendant's Employee Handbook claims it is "committed to providing a competitive compensation program that will attract, retain, develop, and reward employees.    Total compensation includes base salary and may include short-term incentives, such as bonus and sales commission, and long-term incentives such as restricted stock units.    Certain positions may be

eligible for other types of pay to recognize different work conditions and requirements such as shift work. Premium and call-out pay is available to hourly employees who are scheduled to be available on-call outside the normal work schedule."

45. Defendant's Employee Handbook also states "[m]anagers are responsible for reviewing and approving employee time entry data on a regular basis (for both non-exempt and/or exempt direct reports) to identify any errors and to ensure they know the time worked by direct reports." "Managers must complete their review of time entries for all direct reports before the time entry deadline. Failure of managers to complete their review may result in performance improvement action up to and including termination."

46. Regarding overtime pay, the Employee Handbook provides that "[n]on-exempt employees receive one-and-one-half times their regular hourly rate for all hours worked over 40 hours per workweek unless otherwise required by law."

47. Despite Defendant's promise to pay non-exempt employees, like CSRs, at one-and-one-half times their regular hourly rate, Defendant failed to calculate the CSRs' regular hourly rate correctly because they did not include commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of their regular hourly rate.

48. Regarding overtime pay calculations, Defendant's Employee Handbook makes no reference to including commissions, bonuses, incentive pay, and other non-discretionary bonuses in the calculation of overtime premiums. Instead, the Employee Handbook simply states: "[o]vertime pay for non-exempt employees is calculated based upon the total hours worked per week, not based on the number of hours worked in any one day, unless otherwise required by law."

49. According to the Employee Handbook, Defendant "expects all employees, both exempt and non-exempt, to work extra hours when required by business needs." However, "non-

exempt employees must use good judgment in deciding whether to work overtime without prior management approval. A manager will review any unauthorized overtime work by a non-exempt employee to determine whether it was necessary." "[T]he employee may be counseled or subject to PIP, as TMUS deems appropriate, for working overtime without prior authorization." "If business operations will not be compromised, management may reduce the scheduled hours of an employee to avoid the working of overtime, if permitted by applicable law."

**Pre-Shift Off-the-Clock Work**

50.     Defendant records the hours worked by CSRs using a computerized timekeeping system called Kronos.

51.     At the start of the shift, the CSRs must enter the building using their security badge swipe. Next, they proceed to identify a work station for the shift. The CSRs do not work at the same computer every shift.

52.     After locating a work station, the CSRs engage in seven (7) to thirteen (13) minutes of pre-shift off-the-clock work booting up their computers and logging into Defendant's time keeping system. This process can often take even longer, particularly, if the CSR experiences technical difficulties with the computer systems.

53.     First, CSRs must turn on their computer and wait for Windows to load, then enter a username and password. Once logged into Windows, the program Skype automatically launches. CSRs must wait for Skype to load, then enter in another username and password. After Skype has loaded, CSRs have the first opportunity to load and log into the timekeeping system.

54.     As stated above, CSRs spend seven (7) to thirteen (13) minutes loading and logging into essential computer programs *before* they are able to log into the timekeeping system and begin

getting compensated. This process took even longer if the CSR experienced technical difficulties, which often required the CSR to perform one or more restarts on the computer.

**Mid-Shift (Lunch) Off-the-Clock Work**

55. Defendant provided CSRs with a one hour unpaid lunch during the standard eight (8) to ten (10) hour shifts.

56. At the start of their lunch period, CSRs must first log-out of Avaya to stop incoming calls. Next, they clock out of Kronos (the timekeeping system), then lock their computers and begin their lunch.

57. After twenty (20) minutes, CSRs are automatically logged out of the program Samson, which is linked to the program Quickview. These two programs are used in conjunction with one another to access the customer information CSRs needed to perform their job duties.

58. When CSRs return from lunch to their workstations, they must first log back into Windows with their username and password, then reboot Quickview and Samson, so that the two programs can link together. This process results in an additional three (3) to four (4) minutes of off-the-clock work.

59. After Quickview and Samson are properly reloaded and synced, the CSRs clock back into Kronos and log back into Avaya to begin receiving calls, but not until after undertaking three (3) to four (4) minutes of off-the-clock work at the end of every lunch.

**The Time Spent Loading and Logging into Computer Programs is Compensable**

60. Throughout their employment with Defendant, Plaintiffs regularly worked off-the-clock as part of their jobs as CSRs.

61. Between the pre-shift start-up/log-in process and the lunch period log-in process, Defendant failed to pay Plaintiffs and other CSRs an amount equal to at least ten (10) to seventeen

(17) minutes of compensable time per shift. Additionally, Defendant failed to compensate Plaintiffs and other CSRs for off-the-clock time spent performing other work duties, including during their rest and meal breaks and before or after shifts answering questions from supervisors, assisting other team members, or otherwise performing work.

62.     At all relevant times, Defendant was able to track the amount of time that Plaintiffs and the putative Class spent in connection with the pre-shift and lunch break work activities; however, Defendant failed to document, track, or pay Plaintiffs and other CSRs for the work they performed in connection with each shift.

63.     Defendant knew or could have easily determined how long it took for the Plaintiffs and the other CSRs to complete the pre-shift start-up/log-in process and the lunch break work duties, and Defendant could have properly compensated Plaintiffs and other CSRs for the work that they performed, but did not.

64.     At all relevant times, Defendant was Plaintiffs' "employer" and Defendant directed and directly benefited from the work performed by Plaintiffs and other CSRs during the pre-shift start-up/log-in process and in connection with the mid-shift off-the-clock work during their meal breaks.

65.     At all relevant times, Defendant controlled Plaintiffs' and other CSRs' schedules, duties, protocols, applications, assignments, and employment conditions.

66.     At all relevant times, Plaintiffs and all other CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

67.     At all relevant times, Defendant used their attendance and adherence policies against the CSRs in order to pressure them into performing off-the-clock work.

68.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and

other CSRs of wages owed for off-the-clock work that Plaintiffs and other CSRs performed. Because Plaintiffs and other CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived Plaintiffs and other CSRs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

69.     Defendant knew or should have known that Plaintiffs and other CSRs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA and the relevant state laws.

**Failure to Include Incentive Pay in Regular Rate Calculations**

70.     Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

71.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

72.     Defendant's compensation scheme, which included an hourly rate, plus commissions and other incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

73.     An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R.

§778.117.

> This is true regardless of whether the commission is the sole source of the
> employee's compensation or is paid in addition to a guaranteed salary or
> hourly rate, or on some other basis, and regardless of the method, frequency,
> or regularity of computing, allocating and paying the commission. It does
> not matter whether the commission earnings are computed daily, weekly,
> biweekly, semimonthly, monthly, or at some other interval. The fact that the
> commission is paid on a basis other than weekly, and that payment is
> delayed for a time past the employee's normal pay day or pay period, does
> not excuse the employer from including this payment in the employee's
> regular rate. *Id*.

74.     There is a statutory presumption that remuneration in any form must be included in

the regular rate calculation. The burden is on Defendant to establish that any payment should be

excluded. Thus, determining the regular rate starts from the premise that all payments made to

Plaintiffs for work performed are included in the base calculation unless specifically excluded by

statute.

75.     Even "[w]hen the commission is paid on a weekly basis, it is added to the

employee's other earnings for that workweek (except overtime premiums and other payments

excluded as provided in section 7(e) of the Act), and the total is divided by the total number of

hours worked in the workweek to obtain the employee's regular hourly rate for the particular

workweek. The employee must then be paid extra compensation at one-half of that rate for each

hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

76.     Once the total amount of an employee's "regular" compensation is deduced, "the

determination of the regular rate becomes a matter of mathematical computation." *Walling v.*

*Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be

expressed as an hourly rate because, although any method of compensating an employee is

permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if

necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

77.     Because Defendant's compensation scheme failed to incorporate the regular rate of pay, Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

**Exemplary Pay Periods**

78.     Defendant pays CSRs on a bi-weekly basis. An example of a particular pay period where Defendant failed to pay Plaintiff Kristina Chetwood overtime for all hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), was during the pay period of November 6, 2016 to November 19, 2016:

> ➢ Plaintiff Chetwood was paid for 73 hours of regular time and 9.16 hours of overtime, meaning in one of the two weeks Defendant documented her working well over 40 hours.  *See **Exhibit E**.*

> ➢ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for the particular workweek she worked over 40 hours.

> ➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

79.     As an example of one particular pay period where Defendant failed to pay Opt-in Plaintiff Auriel Calvert overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), during the pay period of July 15, 2018 to July 28, 2018:

> ➢ Plaintiff Redmond was paid for 80 hours of regular time over the two-week pay period and 11.55 hours of overtime.  *See **Exhibit F**.*

> ➢ With pre- and mid-shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for both workweeks in this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked.

80.    As an example of one particular pay period where Defendant failed to pay Plaintiff Sandra Castellon-Gonzalez overtime for hours worked in excess of 40 hours in a single week (as mandated by the FLSA and relevant state laws), during the pay period of September 10, 2017 to September 23, 2017:

➢ Plaintiff Castellon-Gonzalez was paid for 80.01 hours of regular time and 17.07 hours of overtime.   *See **Exhibit G**.*

➢ With pre- and mid -shift time of approximately 10 to 17 minutes per shift, Plaintiff should have been paid an additional approximately 50 to 85 minutes of overtime compensation for each workweek during this pay period.

➢ Defendant also did not include commissions or other incentives earned during this pay period in the calculation of Plaintiff's regular hourly rate, and instead, simply paid her 1.5 times her straight-time hourly rate for the overtime worked

## COLLECTIVE ACTION ALLEGATIONS

81.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

*All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in the United States, at any time during the last three years.*

(hereinafter referred to as the "putative collective members").   Plaintiffs reserve the right to amend this definition as necessary.

82.    Plaintiffs' FLSA claim should proceed as a collective action because Plaintiffs and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

83.     Plaintiffs and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

84.     Additionally, the claim that Defendant failed to include commissions, incentives, and other remuneration paid in the overtime rate calculations of the putative collective members is a common policy.

85.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend, including in connection with performing pre-shift and lunch break activities, is compensable under the FLSA.  Also, whether Defendant failed to properly calculate the overtime rate for the putative collective members.

86.     Plaintiffs estimate that the putative collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative collective members should be readily available from a review of Defendant's personnel and payroll records.

## **RULE 23 STATE LAW CLASS ACTION ALLEGATIONS**

87.     Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of the following state law classes:

**The Colorado Class is defined as follows:**

> *All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Colorado at any time during the last three years.*

**The Missouri Class is defined as follows:**

> *All similarly situated current and former hourly customer service*

*representatives who worked for Defendant at any call center in Missouri at any time during the last three years.*

**The Oregon Class is defined as follows:**

*All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Oregon at any time during the last three years.*

**The New Mexico Class is defined as follows:**

*All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in New Mexico at any time during the last three years.*

**The Washington Class is defined as follows:**

*All similarly situated current and former hourly customer service representatives who worked for Defendant at any call center in Washington at any time during the last three years*

(hereinafter referred to as the "Rule 23 State Classes").   Plaintiffs reserve the right to amend this definition as necessary.

88.     The members of the Rule 23 State Classes are so numerous that joinder of all Rule 23 State Class members in this case would be impractical.   Plaintiffs reasonably estimate there are hundreds of Rule 23 State Class members in each state.   Rule 23 State Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

89.     There is a well-defined community of interest among Rule 23 State members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 State Class. These common legal and factual questions, include, but are not limited to, the following:

a.     Whether the pre-shift time that Rule 23 State Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

       b.      Whether the time that Rule 23 State Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time;

       c.      Whether the time that Rule 23 State Class members spend addressing questions, being interrupted, helping others, or otherwise performing work during rest and meal breaks and before and after shifts is compensable time or interfered with their entitlement to rest and meal breaks;

       d.      Whether Defendant's failure to pay the Rule 23 State Class members in Colorado for this pre- and mid -shift time resulted in a violation of C.R.S. §§ 8-6-101, *et seq. and* C.R.S. §§ 8-4-101, *et seq.*;

       e.      Whether Defendant's failure to pay the Rule 23 State Class members in Missouri for this pre- and mid -shift time resulted in a violation of § 290.502 R.S.Mo., et seq.;

       f.      Whether Defendant's failure to pay the Rule 23 State Class members in Oregon for this pre- and mid -shift time resulted in a violation of Or. Rev. Stat. Ann § 653.045, Or. Rev. Stat. Ann § 652.120, Or. Rev. Stat. Ann § 652.140(1), Or. Rev. Stat. Ann § 652.150, and Or. Rev. Stat. Ann § 652.200;

       g.      Whether Defendant's failure to pay the Rule 23 State Class members in New Mexico for this pre- and mid -shift time resulted in a violation of N.M. Stat. Ann. § 50-4-2, N.M. Stat. Ann. §§ 50-4-19, *et seq.*, and N.M. Stat. Ann. § 50-4-22;

       h.      Whether Defendant's failure to pay the Rule 23 State Class members in Washington for this pre- and mid -shift time resulted in a violation of RCW 49.46.020, RCW 49.46.130(1), Wash. Rev. Code § 49.52.050, and Wash Rev. Code § 49.52.070;

       i.      Whether Defendant's failure to pay the Rule 23 State Class members for this pre- and mid -shift time resulted in a violation of the overtime requirements established by the relevant state laws; and

       j.      Whether Defendant failed to calculate and pay proper wage rates, regular rates, and overtime rates in violation of the relevant state laws.

90.     Plaintiffs' claims are typical of those of the Rule 23 State Classes in that they and all other Rule 23 State Class members suffered damages as a direct and proximate result of the

Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 State Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 State Class members.

91. Plaintiffs will fully and adequately protect the interests of the Rule 23 State Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 State Class.

92. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 State Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

93. This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

94. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

95. Because Defendant acted and refused to act on grounds that apply generally to the

Rule 23 State Classes and declaratory relief is appropriate in this case with respect to the Rule 23

State Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

<u>**COUNT I**</u>
**Alleging Violations of the Fair Labor Standards Act,**
**29 U.S.C. § 201,** *et seq.*
**(On behalf of the FLSA Collective)**

96.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege

as follows.

97.     At all times relevant to this action, Defendant was Plaintiffs' employer under 29

U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

98.     Defendant engaged in interstate commerce, or in the production of goods for

commerce, as defined by the FLSA.

99.     At all times relevant to this action, Plaintiffs were "employees" of Defendant within

the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

100.     Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods

for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of

goods for commerce.

101.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and

all similarly situated current and former employees to work and thus "employed" them within the

meaning of 29 U.S.C. § 203(g) of the FLSA.

102.     At all times relevant to this action, Defendant required Plaintiffs and all similarly

situated current and former Class members to perform at least seven (7) to thirteen (13) minutes of

pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated

overtime compensation for all services performed.

103.     At all times relevant to this action, Defendant failed to compensate Plaintiffs and all

similarly situated current and former Class members for at least three (3) to four (4) minutes of off-the-clock, unpaid work activities they performed during their lunch breaks.

104.    The off-the-clock work performed by Plaintiffs and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

105.    In workweeks where Plaintiffs and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. *See* 29 U.S.C. § 207.

106.    Defendant failed to properly calculate the regular hourly rate for Plaintiffs and other Class members by not including non-discretionary bonuses and commissions in the calculation of their overtime rates.

107.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for their CSRs to perform the off-the-clock pre-shift and lunch break activities, and Defendant could have properly compensated Plaintiffs and the Class for the work they performed, but did not.

108.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

<u>**COUNT II**</u>
**Alleging Violations of the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101, *et seq.*, and the Colorado Wage Claim Act, C.R.S. §§ 8.4.101 *et seq*.**
**(On Behalf of the Rule 23 Colorado Class)**

109.    Plaintiff, Samantha Stephens, re-alleges and incorporates all previous paragraphs

herein.

110.    The Colorado "Minimum Wage Act," C.R.S. §§ 8-6-101, *et seq.*, authorizes the Director of the Colorado Division of Labor to issue orders establishing minimum wages for Colorado employees. C.R.S. § 8-6-107.   Pursuant to Colorado Minimum Wage Order Number 35, employers must pay their employees minimum wages "for all hours worked." *See*, 7 CCR 1103-1(3). A Colorado employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for a lesser wage.   C.R.S. § 8-6-118.

111.    The employer must pay time and one-half of the regular rate of pay for any work in excess of: (a) forty hours per workweek; (b) twelve hours per workday; or (c) twelve consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages. 7 CCR 1103-1(3).

112.    Additionally, Minimum Wage Order Number 35 requires that employees be provided with a non-compensable meal period as one that is "uninterrupted and duty free." Additionally, "employees must be completely relieved of all duties and permitted to pursue personal activities to qualify as a non-work, uncompensated period of time.   *Id*.   Therefore, if the employee has a duty to the employer during the period at issue, the period is compensable.

113.    The Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*. provides "[a]ll wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer…." C.R.S. § 8-4-103(1)(a).   Furthermore, an employee whose wages have not been paid

as required by the Colorado Wage Claim Act may bring a civil action to recover his or her unpaid wages, plus reasonable attorneys' fees and costs. *See*, C.R.S. § 8-4-110.

114.    In failing to compensated the Colorado Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Colorado state laws referenced above.

115.    As a result, the Rule 23 Colorado Class have and will continue to suffer loss of income and other damages.    Accordingly, the Rule 23 Colorado Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Colorado state laws at an amount to be proven at trial.

## COUNT III
**Alleging Violations of the Missouri Minimum Wage Law, R.S. Mo. 290.501 *et seq.*,**
**(On Behalf of the Rule 23 Missouri Class)**

116.    Plaintiff, Paul Rose, re-alleges and incorporates all other paragraphs as though fully stated herein.

117.    The Missouri Minimum Wage Law provides that employees are entitled to minimum wage, § 290.502 R.S.Mo., and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). § 290.505 R.S.Mo. Furthermore, § 290.527 R.S.Mo., allows an employee to bring a civil action against to recover "the full amount of the wage rate and an additional equal amount as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury."

118.    Any employer who pays any employee less wages than the wages to which the employee is entitled under or by virtue of sections 290.500 to 290.530 shall be liable to the employee affected for the full amount of the wage rate and an additional amount equal to twice

the unpaid wages as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury. The employee may bring any legal action necessary to collect the claim. Any agreement between the employee and the employer to work for less than the wage rate shall be no defense to the action. All actions for the collection of any deficiency in wages shall be commenced within three years of the accrual of the cause of action. § 290.527 R.S.Mo.

119.    In failing to compensated the Missouri Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Missouri state laws referenced above.

120.    As a result, the Rule 23 Missouri Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 Missouri Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Missouri state laws at an amount to be proven at trial.

<u>**COUNT IV**</u>
**Alleging Violations of the Oregon Wage Laws, Or. Rev. State. Ann. § § 652.120 *et seq.*,**
**653.045, 653.160, and 653.261)**
**(On Behalf of the Rule 23 Oregon Class)**

121.    Plaintiff, Briana White, re-alleges and incorporates all other paragraphs as though fully stated herein.

122.    The Oregon Wage Laws require employers to maintain detailed records regarding the payment of wages to employees, which includes the actual hours worked each week.    Or. Rev. Stat. Ann § 653.045.   Oregon Wage Laws require overtime to be paid at 1.5 times the employee's regular hourly rate for all hours worked in excess of 40 in a workweek. Or. Rev. Stat. Ann § 653.261.

123.    Under The Oregon Wage Laws, specifically, Or. Rev. Stat. Ann § 652.120, an employer is required to establish and maintain a regular payday on which date employees are paid all wages due and owing to them. Or. Rev. Stat. Ann § 652.120(a).   The payday may not extend beyond a period of 35 days from the time that employee performed the work or from the date of the last regular payday. Or. Rev. Stat. Ann § 652.120(b).

124.    The Oregon Wage Laws also provide requirements for the payment of wages upon termination of employment.   Specifically, "[w]hen an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of discharge or termination become due and payable not later than the end of the first business day after the discharge or termination."   Or. Rev. Stat. Ann § 652.140(1).   Furthermore, "if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases … then as a penalty for the non-payment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until action therefor is commenced.   However, in no case shall the penalty wages or compensation continue for more than 30 days from the due date."[1] Or. Rev. Stat. Ann § 652.150.

125.    "In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim." Or. Rev. Stat. Ann § 652.160.

126.    The Oregon Wage Laws also provides for the payment of the employee's attorney fees in recovering unpaid wages. Or. Rev. Stat. Ann § 652.200.

127.    Or. Rev. Stat. Ann § 652.200 states that an employer who pays an employee less

---

[1] Employers are also required to pay the monetary equivalent of any earned paid vacation time at the time employment ends using the employee's normal rate of pay.

than the wages to which the employee is entitled under ORS § 653.010 to § 653.261 is liable to the employee affected: (a) for the full amount of the wages … and (b) for civil penalties provided in ORS § 652.150.

128.    The penalty provided by ORS 652.150 is the wages or compensation of the employee shall continue from the due date therefor at the same hourly rate for eight hours per day until paid or until action therefore is commenced.    However, in no case shall the penalty wages or compensation exceed 30 days from the due date. ORS § 652.150(1).

129.    If the employee submits a written notice of nonpayment, the penalty may not exceed 100 percent of the employee's unpaid wages unless the employer fails to pay the full amount of the employee's unpaid wages within 12 days after receiving the notice.    If the employee fails to submit a written notice of nonpayment, the penalty may not exceed 100 percent of the employee's unpaid wages or compensation. ORS § 652.150(2).

130.    In failing to compensated the Oregon Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Oregon state laws referenced above.

131.    As a result, the Rule 23 Oregon Class have and will continue to suffer loss of income and other damages.    Accordingly, the Rule 23 Oregon Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Oregon state laws at an amount to be proven at trial.

### COUNT V
**Alleging Violations of the New Mexico Minimum Wage Act, §§ 50-4-19, et seq.**
**(On Behalf of the Rule 23 New Mexico Class)**

132.    Plaintiff, Jairo Marquez, re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

133.    The New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19, *et seq.* provides

that employees are entitled to minimum wages and overtime compensation calculated at time-and-

a-half of their regular rate of pay for each hour worked each week in excess of forty (40). N.M.

Stat. Ann. § 50-4-22.

134.    N.M. Stat. Ann. § 50-4-26 allows an employee who has not been paid in accordance

with the New Mexico Minimum Wage Act to bring a civil action to recover all unpaid amounts,

liquidated damages, interest, costs, and reasonable attorneys' fees.

135.    The New Mexico Minimum Wage Act entitles employees to compensation for every

hour worked in a workweek. *See* N.M. Stat. Ann. §§ 50-4-19, *et seq.*; § 50-4-2.

136.    An employer in New Mexico must also designate regular pay days, not more than

sixteen days apart, as days fixed for the payment of wages to all employees.   N.M. Stat. Ann. § 50-

4-2 (A).

137.    The employer must pay for all services rendered and due during these pay periods.

*Id*.   Furthermore, "an employer shall pay *wages in full*, less lawful deductions and less payroll

deductions authorized by the employer and employee." N.M. Stat. Ann. § 50-4-2 (B).

138.    The New Mexico Minimum Wage Act also imposes record keeping requirements

on employers.   Specifically, the Act provides that "[a]n employer shall provide an employee with

a written receipt that identifies the employer and sets forth the employee's gross pay, the number

of hours worked by the employee, the total wages and benefits earned by the employee and an

itemized listing of all deductions withheld from the employee's gross pay." N.M. Stat. Ann. § 50-

4-2 (B).

139.    The New Mexico Minimum Wage Act also entitles employees to overtime

compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours

worked in excess of 40 hours per week *See* N.M. Stat. Ann. § 50-4-22.

140.     For any CSRs in New Mexico that Defendant discharged, any unpaid wages were due within five (5) days of discharge.   N.M. Stat. Ann. § 50-4-4 (A).   The wages of CSRs that quit were due the pay period after the employee quit.   N.M. Stat. Ann. § 50-4-4 (B); N.M. Stat. Ann. § 50-4-5. The New Mexico Minimum Wage Act permits an employee to recover any unpaid wages (including straight time) in a civil lawsuit. N.M. Stat. Ann. § 50-4-4 (C).

141.     N.M. Stat. Ann. § 50-4-26(C) states that "[i]n addition to penalties provided pursuant to this section, an employer who violates any provision of Section 50-4-22 NMSA 1978 shall be liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages."

142.     As used in N.M. Stat. Ann. § 50-4-26(C) the term "minimum wages" includes overtime wages. *See*, N.M. Stat. Ann. § 50-4-22(E).

143.     In failing to compensated the New Mexico Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the New Mexico state laws referenced above.

144.     As a result, the Rule 23 New Mexico Class have and will continue to suffer loss of income and other damages.   Accordingly, the Rule 23 New Mexico Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under New Mexico state laws at an amount to be proven at trial.

### COUNT VI
**Alleging Violations of the Washington Minimum Wage Act and Washington Rebate Act**
**(On Behalf of the Rule 23 Washington Class)**

145.     Plaintiff, Richard Nedbalek, re-alleges and incorporates by reference all other paragraphs as though fully stated herein.

146.     The Washington Minimum Wage Act ("MWA"), provides that all non-exempt employees are required to be paid at or above the applicable minimum wage rate for all hours worked. RCW 49.46.020.

147.     "Hours worked" means "all work requested, suffered, permitted, or allowed" and "includes travel time, training and meeting time, wait time, on-call time, preparatory and concluding time." Wash. Dept. of Labor & Indus. Admin. Policy ES.C.2 (Sept. 2, 2008) at 1.

148.     "Employ" means to engage, suffer or permit to work. See RCW 49.46.010 (3) and WAC 296-126-002 (3).

149.     All hours worked over 40 in a workweek must be paid at time and a half the non-exempt employee's regular rate of pay. *See* RCW 49.46.130(1).

150.     "No employee shall be required to work more than five consecutive hours without a meal period." WAC 296-126-092(2). A violation of the meal period requirement is "a wage violation." *Hill v. Garda CL Nw., Inc*., 198 Wn. App. 326, 360-61 (2017). Similarly, an employee must be provided with ten minute paid rest break for every four hours worked, and must not work more than three consecutive hours without a rest break. WAC 296-126-092(4). A denial of compliant rest breaks is also a wage violation. *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841 (2002).

151.     The meal break may be unpaid if the worker receives an uninterrupted meal period of at least 30 minutes during which they are completely relieved of work duties. However, if the employer intrudes upon or infringes the mandatory thirty-minute term to any extent, workers are owed compensation for the full thirty-minute period. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 913-914 (9th Cir. 2003); L&I Admin. Policy ES.C.6.1 at 3-4.

152.     The Washington Wage Rebate Act, Wash. Rev. Code § 49.52.050, provides in

relevant part that any employer who "willfully and with intent to deprive the employee of any part of his wage, shall pay any employee a lower wage than such employer is obligated to pay such employee by any statute, ordinance or contract" shall be guilty of a misdemeanor. There is a presumption that any underpayment of an employee's wages was willful. Wash. Rev. Code § 49.52.080.

153.    Wash Rev. Code § 49.52.070 provides that any employer who violates the provisions of Wash. Rev. Code § 49.52.050 shall be liable in a civil action for twice the amount of wages withheld, and attorneys' fees and costs.

154.    The Wage Rebate Act entitles an employee to recover "twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with the costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070.

155.    Defendant acted willfully in violating the Washington state laws discussed herein and the Washington Class is entitled to double the actual damages. RCW 49.52.070.

156.    Employees who are owed back wages are also entitled to prejudgment interest on those wages at a rate of 12 percent per year. *See Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 50 (2007); RCW 4.56.110(5); RCW 19.52.020(1).

157.    In failing to compensate the Washington Class for the pre-, mid-, and post-shift work activities and interruption of breaks discussed herein, Defendant violated the Washington state laws referenced above.

158.    As a result, the Rule 23 Washington Class have and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Washington Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under Washington state laws at an amount to be proven at trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this case as a class action (for the Rule 23 State Classes) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Count II-VI);;

c.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.    An Order designating Plaintiffs as the representatives of the FLSA collectiveand undersigned counsel as Class counsel for the same;

e.    An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.    An Order designating the Plaintiffs as the representatives for the Rule 23 State Classes as follows: Paul Rose (Missouri Class representative), Briana White (Oregon Class Representative), Richard Nedbalek (Washington Class Representative), Jairo Marquez (New Mexico Class representative), Samantha Stephens (Colorado Class representative), and undersigned counsel as Class counsel for the same;

g.    An Order declaring Defendant's violation of the FLSA was willful;

h.    A Judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 State Classes the full amount of damages and liquidated damages available by law;

i.    An award of reasonable attorneys' fees and costs incurred by Plaintiffs in filing and prosecuting this action under the FLSA and Fed. R. Civ. P. 23;;

j.    An award of pre- and post-judgment interest to Plaintiffs on these damages; and

    k.    An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial.

Dated:  May \_\_, 2021

<div style="margin-left:40%">

_____

Adam J. Berger, WSBA #20714
SCHROETER, GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, Washington 98104
Ph: (206) 622-8000
berger@sgb-law.com

Kevin J. Stoops, Esq. (PHV)
Charles R. Ash IV, Esq. (PHV)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Ph: (248) 355-0300
kstoops@sommerspc.com
crash@sommerspc.com

*Counsel for Plaintiffs*

</div>

DocuSign Envelope ID: D4B553E3-9B76-47F4-BA93-1CBBC8FAA54B

# EXHIBIT C

HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KRISTINA CHETWOOD and SANDRA
CASTELLON-GONZALEZ, individually,
and on behalf of others similarly situated,

                        Plaintiffs,

v.

T-MOBILE USA, INC.

                        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.
2:19-cv-00458-RSL

[PROPOSED] ORDER GRANTING
PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
CLASS/COLLECTIVE ACTION
SETTLEMENT, APPROVAL OF
CLASS NOTICE, AND SETTING
FINAL APPROVAL HEARING

DocuSign Envelope ID: D4B553E3-9B76-47E4-BA93-1CDBC8FA454B

# ORDER

This matter has come before the Court on the unopposed motion by Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White ("Plaintiffs"), on behalf of themselves and similarly situated employees of Defendant T-Mobile USA, Inc. ("Defendant") (together, the "Parties"), for preliminary Approval of the parties' class and collective action Settlement Agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and 29 U.S.C section 201, *et seq.*

Plaintiffs, without opposition by Defendant, seek an Order (1) preliminarily certifying the class and collective claims for settlement purposes only under the Federal Rules of Civil Procedure, Rule 23 ("Rule 23"), and 29 U.S.C, §§ 201, *et seq.*; (2) preliminarily approving the parties' Settlement; (3) preliminarily appointing Plaintiffs as the representatives of, and as counsel ("Class Counsel") for, the Settlement Class Members; (4) approving the parties' proposed form for providing Notice of the Settlement to the Settlement Class Members and the form of the Opt-Out Request for those Settlement Class Members wishing to be excluded from the Settlement; and (5) scheduling a hearing on the final approval of the Settlement and approval of the application of Class Counsel and Plaintiffs for their requested attorneys' fees, costs, and service awards.

The Court's scrutiny of the proposed settlement is as rigorous at the preliminary approval stage as at the final approval stage. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016). Having considered the papers filed in support of the motion, the arguments of counsel, and the law, the Court now enters this Order and FINDS, CONCLUDES, and ORDERS as follows:

1.      All initial-capped terms contained herein, unless otherwise defined, shall have the same definitions as set forth in the Settlement Agreement, which is attached as Exhibit A to Plaintiff's unopposed motion for preliminary approval.

2.      The Court hereby conditionally certifies the Settlement Class, and conditionally finds that, solely for the purposes of approving this Settlement and for no other purpose and with no other effect on this litigation, the Settlement Class meets the requirements for certification under

Rule 23(a), (b), and (e). Accordingly, for purposes of approving this Settlement under Rule 23(a) and (b)(3), and 29 U.S.C. § 216(b), the Court finds: (a) the Settlement Class Members are ascertainable and so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class Members; (c) certain claims of the Named Plaintiffs are typical of the claims of the Settlement Class Members; (d) the Named Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Settlement Class Members; (e) questions of law and fact common to the Settlement Class Members predominate over individual questions; and (f) a class action is superior to the other available methods for an efficient resolution of this controversy in the context of settlement.

3.      The Court therefore conditionally certifies, for settlement purposes only and pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. §§ 201, *et seq*., the following Settlement Class:

> All current and former employees who worked at a Legacy T-Mobile call center in the United States in a position that contains the terms Associate Expert, Expert, Senior Expert, CSR 1, CSR 2, or CSR 3, and who fall within one or both of the following two categories: (a) previously received and timely returned a signed "Consent to Join Lawsuit" form indicating their intent to join the FLSA Collective; and/or (b) worked in such a position between April 23, 2017, and *[date preliminary approval motion is granted]* in Colorado, Missouri, New Mexico, Oregon, or Washington State.

4.      The Court has considered the factors set forth in *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998), including the strength of the allegations set forth in Plaintiffs' First Amended Complaint; the strength of Defendant's defenses to those claims; the risk, expense, complexity, and likely duration of further litigation; the risk of obtaining and/or maintaining class and collective action status throughout the litigation; the extent of discovery completed and stage of the proceedings; the experience and views of counsel; the presence and/or absence of a governmental participant; and the amount offered in settlement of the claims. Based on these considerations, the Court finds that, for purposes of preliminary approval, the proposed Settlement Agreement is fair on its face. The Court therefore finds, on a preliminary basis, that the proposed

DocuSign Envelope ID: D4B553E3-9B76-47F4-BAC3-1CFBC8FA454B

terms of the Settlement Agreement set forth in Exhibit A to Plaintiff's unopposed motion for preliminary approval are reasonable, and grants preliminary approval of the proposed Settlement.

5. The Court also finds, on a preliminary basis, that the Settlement is fair and reasonable to the Settlement Class Members when balanced against the probable outcome of further litigation relating to class and collective action certification, liability, and damages issues, and potential appeals of rulings. The Court further finds that significant investigation, research, litigation, and formal and informal discovery have been conducted such that counsel for the parties are able to reasonably evaluate their respective positions. The Court further finds that settlement at this time will avoid substantial costs, delay, and risks that would be presented by the further prosecution of the litigation.

6. Based on a review of the papers submitted by the parties, the Court finds that the Settlement Agreement is the result of arms-length negotiations conducted after Class Counsel had adequately investigated the claims and become familiar with the strengths and weaknesses of the claims. The assistance of an experienced mediator in the settlement process supports the Court's conclusion that the proposed settlement is non-collusive. The Court finds on a preliminary basis that the Settlement is within the range of reasonableness of a settlement that could ultimately be given final approval by this Court, and hereby grants preliminary approval of the Settlement.

7. The Court conditionally appoints Plaintiffs Kristina Chetwood, Sandra Castellon-Gonzalez, Paul Rose, Jairo Marquez, Samantha Stephens, Richard Nedbalek, and Briana White to represent the Settlement Class Members for settlement purposes only.

8. The Court conditionally appoints Kevin J. Stoops and Charles R. Ash, IV of Sommers Schwartz, P.C., and Adam J. Berger of Schroeter, Goldmark & Bender, as Class Counsel for the Settlement Class Members for settlement purposes only.

9. The Court appoints Rust Consulting as the Settlement Administrator and preliminarily approves the allocated Settlement Administration Costs. The Settlement Administrator will prepare final versions of the Notice and Opt-Out Request forms, incorporating the relevant dates

and deadlines set forth in this Order and the Settlement Agreement, and will carry out the notice procedures set forth in the Settlement Agreement.

10.     The Court concludes that the form of Notice at Exhibit D to the Settlement Agreement, as well as the procedure set forth in the Settlement Agreement for providing notice to the Settlement Class Members, will provide the best notice practicable under the facts and circumstances of this case. There is no alternative method of notice that would be more practical or more likely to notify Settlement Class Members of the terms of the Settlement. The Notice to the Settlement Class fairly, plainly, accurately, and reasonably informs Settlement Class Members of: (a) the nature of the Action, the definition of the Settlement Class Members, the identity of Class Counsel, and the essential terms of the Settlement Agreement, including the plan of allocation of the Net Settlement Amount into Individual Settlement Awards; (b) the Named Plaintiffs' and Class Counsel's applications for the Named Plaintiffs' and the two Initial Opt-In Plaintiffs' Incentive Awards, and Class Counsel's request for attorneys' fees and litigation costs; (c) how to participate in and receive proceeds under the Settlement; (d) how to object to or request exclusion from the Settlement; and (e) how to obtain additional information regarding the Action and the Settlement.  The Court thus finds that the notice requirements for class and collective actions are satisfied.

11.     In the event that the Effective Date of the Settlement Agreement occurs: all Settlement Class Members will be deemed to have forever released and discharged the claims set forth in paragraph 4 of the Settlement Agreement (the "Released Claims"); and all Settlement Class Members who cash an Individual Settlement Award will be deemed to have forever released and discharged the FLSA claims as set forth in the Settlement Agreement.

12.      Any Settlement Class Member who intends to object to final approval of the Settlement or Class Counsel's motion for fees and costs must submit an objection to the Settlement Administrator within 60 calendar days following the mailing of the Class Notice and in the manner set forth in the Settlement Agreement and Notice. If a Class Member opts out of the Settlement

after timely filing and serving an objection, then his/her objection will be moot. However, Class Members who timely file and serve an objection may be heard at the Final Approval Hearing, either personally or through their counsel.

13.     The parties and Settlement Administrator are ordered to provide notice of the Settlement to the Settlement Class Members according to the terms of paragraph 11(c) of the Settlement Agreement and in conformity with this Order, including:

a)     No more than fourteen (14) calendar days after entry of the Preliminary Approval Order, Defendant shall provide the names, the most current mailing addresses and personal email addresses (*i.e.*, not a "@T-Mobile.com" email address) in its records for each Settlement Class Member to the Settlement Administrator.

b)     No more than fourteen (14) calendar days after receiving the contact information for the Settlement Class Members, the Settlement Administrator shall send the Notice and Opt-Out Request forms to the Settlement Class Members via U.S. Mail.

c)     The Notice will inform the Settlement Class Members that unless they file a request to be excluded from the Settlement within 60 days after the mailing of the Notice: they will become Settlement Class Members; they will receive Individual Settlement Awards under the Agreement; they will be bound by the release of claims set forth in the Notice and the Settlement Agreement; and if they cash their Individual Settlement Award check, they will thereby opt into the FLSA Settlement Collective and release the FLSA claims.

d)     The Class Notice will inform Class Members of their right to request exclusion from the Settlement and the procedure for doing so.

e)     The Class Notice will inform Class Members of their right to object to the Settlement and the procedure for doing so.

f)     The Class Notice shall include a general explanation for how the Individual Settlement Awards will be calculated, including the consideration given to the

DocuSign Envelope ID: D4B553E3-BB76-47E4-BA93-1CFBC8FAA545

number of pay periods in which each Settlement Class Member worked more than eighty (80) hours in a covered position and/or worked in a covered position in Colorado, Missouri, Oregon, New Mexico, and Washington.

g) If any Notice mailed to any Settlement Class Member is returned as undeliverable, the Settlement Administrator will attempt one trace to locate a correct address and, if located, will make a second attempt at mailing the Class Notice or, if not located and a personal email address is available, will send a Class Notice to the Settlement Class Member's personal email address. If the Notice is again returned as undeliverable, no further attempts at delivery will be necessary. All Class Members' names and postal mail addresses obtained through these sources shall be protected as confidential and not used for purposes other than the notice and administration of this Settlement. The address determined by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Class Member.

h) The Settlement Administrator shall maintain a log detailing the instances Class Notices are returned as undeliverable, re-mailed, emailed, and, when applicable, returned again. The re-mailing or emailing of the Class Notice will not extend the deadline for objecting to or requesting exclusion from the Settlement.

14. The notice of settlement served by the Settlement Administrator on the U.S. and applicable state Attorneys General satisfies the requirements of the Class Action Fairness Act.

15. All proceedings and all litigation of the Action, other than those pertaining to the administration of the Settlement, are stayed pending the Final Approval Hearing.

16. The Named Plaintiffs and the Settlement Class Members are prohibited and enjoined from prosecuting any Released Claims against Defendant pending the Final Approval Hearing.

17. The requested preliminary approval of the Settlement and the certification of the Settlement Class are undertaken on the condition that they shall be vacated if the Settlement

Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review in which event the Settlement Agreement, and the fact that it was entered into, shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any party of liability or non-liability or of the certifiability of a litigation class or the appropriateness of maintaining a representative action.

18.     The Court will conduct a Final Approval Hearing on November 9, 2021, at 9:00 a.m., where it will make a determination on: (i) whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved by the Court; (ii) the amount of attorneys' fees and costs that should be awarded to Class Counsel; and (iii) the amount of the Incentive Awards that the Named Plaintiffs and the Initial Opt-In Plaintiffs should receive. The Court reserves the right to adjust the date of the Final Approval Hearing and related deadlines without further notice to the Settlement Class Members.

19.     Plaintiffs' Motion for Final Approval of the Settlement, and Class Counsel's motion for an award of attorneys' fees and costs, will be filed prior to the Class Notice being distributed, and the Parties and the Settlement Administrator will comply with the following schedule for the Settlement Administration and final approval process, based on a preliminary approval date of June 1, 2021 (with the dates to be adjusted accordingly based on the date of this Order and the date of the Final Approval Hearing, and if any date falls on a Saturday, Sunday, or legal holiday, the actual date shall be the next day that is not a Saturday, Sunday, or legal holiday):

| Due Date | Activity |
|---|---|
| June 1, 2021 | Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval |
| June 15, 2021 | Defendant provides the Class Information for the Class Members to Settlement Administrator (14 days from Preliminary Approval) (proposed dates based on Order Granting Preliminary Approval being entered on June 1, 2021) |
| June 29, 2021 | Settlement Administrator to mail Class Notice to the Class Members. (No later than 28 days from preliminary approval) |

| August 14, 2021 | Deadline for Class Counsel to File Motion for Approval of Attorneys' Fees and Costs and Class Representative Service Award ("Fees Motion") and Declaration from Administrator, and Class Counsel in support<br><br>To be noted for hearing on Date of Final Approval Hearing |
| --- | --- |
| August 28, 2021 | Last day for Class Members to Object to the Settlement (60 days from Initial Mailing of Class Notice) |
| August 28, 2021 | Last day for Class Members to submit an Opt-Out Request (60 Days from Initial Mailing of Class Notice). |
| September 20, 2021 | Deadline for Class Counsel to File Motion for Final Approval of the Settlement, Declaration from Administrator, and Supplemental Documents for Fees Motion (within 30 days after the deadline for Settlement Class Members to submit Objections and Opt-Out Requests, unless otherwise extended to within 45 days pursuant to Paragraph 10(c) of the Settlement Agreement and with approval of the Court to adjust date of Final Approval Hearing; and at least 21 days before Final Approval Hearing)<br><br>To be noted for hearing on October 12, 2021 |
| October 12, 2021 | Date for Final Approval Hearing (9:00 a.m.) |

20.     In the event the Settlement is not finally approved, or otherwise does not become effective in accordance with the terms of the Settlement Agreement, this Order shall be rendered null and void and shall be vacated, and the parties shall revert to their respective positions as of before entering into the Settlement Agreement. The Court's findings are for purposes of certifying a settlement class and to settle the matter and will not have any claim or issue preclusion or estoppel effect in any other action against Defendant, or in this action, if the Settlement is not finally approved.

**IT IS SO ORDERED.**

Dated: _____, 2021

_____
HON. ROBERT S. LASNIK
United States District Judge

# EXHIBIT D

DocuSign Envelope ID: D4B553E3-9B76-475A-B4C3-1CBB68FAA54B

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

*Chetwood v. T-Mobile USA, Inc.*, No. 2:19-cv-00458-RSL

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- You're receiving this notice because you may be entitled to receive a payment as part of a lawsuit settlement.

- This lawsuit claims that T-Mobile didn't pay the Plaintiffs and other Legacy T-Mobile Care Experts and CSRs for all hours worked, including for time spent logging into computers and opening computer applications.

- T-Mobile doesn't agree with the Plaintiffs. T-Mobile believes it pays its employees generously and in compliance with all legal rules.

- However, T-Mobile has decided it would rather provide additional money to employees, rather than spend more money on attorneys' fees defending this case.

- So, the Plaintiffs and T-Mobile have agreed to settle the lawsuit.

- To be part of this settlement, you must have worked at a Legacy T-Mobile U.S. call center in a position that contains the terms Associate Expert, Expert, Senior Expert, CSR 1, CSR 2, or CSR 3 (collectively "Experts"), **and** you must also fall into one of the following buckets:

  o You worked in Colorado, Missouri, New Mexico, Oregon, or Washington State between April 23, 2017, and *[date preliminary approval motion is granted]*; **or**

  o You received and returned a signed "Consent to Join Lawsuit" form last year indicating you wanted to join this lawsuit.

- **Your legal rights will be affected whether you act or not.**   Here's a summary:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| Do Nothing | You don't have to do anything to stay in the case and get a payment. If you stay in the case and get a payment, you can't bring a separate lawsuit and will be bound by any orders the Court enters in the case. |
| Exclude Yourself | If you want to exclude yourself from this case, you must submit a request to be excluded called an "opt-out". If you opt-out, you won't get any payment from the settlement, but you'll retain any alleged claims and you won't be bound by any Court judgment. |
| Object | If you do not opt-out, you can tell the Court why you do not like the settlement. |

- These options—and related deadlines—are explained in this Notice.   Read on for details.

- The Court still has to decide whether to approve the settlement.   Payments will be made only if the settlement is approved and after any appeals are resolved.   Please be patient.

**Questions?** Contact the Settlement Administrator at *[------------------]*.   Please **DO NOT** contact T-Mobile management, Employee Care, or Human Resources; the Judge; or the Court.   They cannot respond to your questions.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**                                      **PAGE 3**
    1. Why did I get this notice package?
    2. What is this lawsuit about?
    3. Why is this a class action?
    4. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT**                               **PAGE 4**
    5. Am I part of the Class and eligible for the Settlement?
    6. What if I am not sure if I am included?

**THE SETTLEMENT BENEFITS—WHAT YOU GET**                   **PAGE 4**
    7. What does the Settlement provide?
    8. What can I get from the Settlement?

**HOW YOU GET A PAYMENT—IF YOU DO NOTHING**                **PAGE 5**
    9. How can I get an individual Settlement payment?
    10. When will I get my payment?
    11. What am I giving up to stay in the Class and get a payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**                 **PAGE 6**
    12. How do I exclude myself from this Settlement?
    13. If I do not opt out, can I sue T-Mobile for the same thing later?
    14. If I opt out, can I still get money from this Settlement?
    15. Can anyone retaliate against me for joining or excluding myself from the lawsuit and Settlement?

**THE LAWYERS REPRESENTING YOU**                           **PAGE 6**
    16. Do I have a lawyer in this case?
    17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**                            **PAGE 7**
    18. How do I tell the Court that I do not like the Settlement?
    19. What is the difference between objecting and opting out?

**THE COURT'S FAIRNESS HEARING**                           **PAGE 7**
    20. When and where will the Court decide whether to approve the settlement?
    21. Do I have to come to the hearing?
    22. May I speak at the hearing?

**GETTING MORE INFORMATION**                               **PAGE 8**
    23. Are there more details about the Settlement?
    24. How do I get more information?

# BASIC INFORMATION

1. **WHY DID I RECEIVE THIS NOTICE PACKAGE?**

You received this Notice because records indicate that you worked for T-Mobile at a Legacy T-Mobile call center in the United States in a position that contains the terms Associate Expert, Expert, Senior Expert, CSR 1, CSR 2, or CSR 3, and either or both of the following also apply to you: (a) you previously received and timely returned a signed "Consent to Join Lawsuit" form indicating your decision to join this lawsuit; and/or (b) you worked for T-Mobile in Colorado, Missouri, New Mexico, Oregon, or Washington state between April 23, 2017, and *[date preliminary approval motion is granted]*.

The Court sent you this Notice because you have a right to know about a proposed settlement of a class action lawsuit, *Chetwood, et al. v. T-Mobile USA, Inc.*, Case No. 2:19-cv-00458-RSL (the "Lawsuit"), that is pending in the United States District Court for the Western District of Washington in Seattle, Washington. While it has taken no position regarding the merits of this Lawsuit, the Court has preliminarily approved a settlement (the "Settlement") of the Lawsuit agreed to by the parties. The Court will conduct a hearing (a "Final Settlement Approval Hearing") to determine if the Settlement should be approved and, if approved, an administrator appointed by the Court will make the payments that the Settlement allows.

This Notice describes the Lawsuit, the Settlement, your legal rights, how you can obtain a Settlement payment, and how you can exclude yourself from, or object to, the Settlement.

2. **WHAT IS THIS LAWSUIT ABOUT?**

On March 28, 2019, Kristina Chetwood and others ("Plaintiffs") filed this Lawsuit against T-Mobile. The Lawsuit claims that T-Mobile violated the federal Fair Labor Standards Act (the "FLSA") and state wage laws in Colorado, Missouri, New Mexico, Oregon, and Washington State by failing to pay Plaintiffs and similarly situated call center employees for all hours worked, including time spent starting computers and logging into computer applications. Plaintiffs allege that, under these laws, they and similarly-situated employees are entitled to pursue derivative claims and to recover unpaid regular and overtime wages, liquidated damages, penalties, attorneys' fees, costs, interest, and other relief.

T-Mobile denies that it did anything wrong. T-Mobile believes that it pays its employees generously and that it always followed the law. T-Mobile also doesn't agree that Plaintiffs are representative of other T-Mobile employees.

3. **WHY IS THIS A CLASS ACTION?**

In a collective or class action, one or more people called Class Representatives (in this case the Plaintiffs and others) sue on behalf of people who have similar claims. These people are called the Class or Class Members. In a class action, the Court resolves issues for all Class Members who do not exclude themselves from the Class.

In April 2019, the Court conditionally certified this Lawsuit to proceed as a collective action under the FLSA on behalf of T-Mobile Experts who worked at a U.S. call center at any time between April 7, 2017 and April 9, 2020 (collectively referred to as the "Notice Group"). As a result of this certification, an initial notice of this lawsuit was mailed to the Notice Group and the members of the Notice Group were given a period of sixty (60) days to sign and return a "Consent to Join" form in order to join, or "opt in" to, the FLSA collective action.

In addition to this FLSA certification, the parties have agreed as part of the Settlement to certify a class of all Experts who worked at Legacy T-Mobile call centers in Colorado, Missouri, New Mexico, Oregon, or Washington State at any time from April 23, 2017, to *[date preliminary approval motion is granted]*.

4. **WHY IS THERE A SETTLEMENT?**

The Court did not decide in favor of Plaintiffs or T-Mobile. Instead, the parties engaged in extended

DocuSign Envelope ID: D4B553E3-9B76-47E4-BA93-1CFB68FA454B

mediation before a neutral mediator and reached agreement on a settlement. By settling, both parties avoid the substantial costs and risks of a trial.

Plaintiffs' attorneys, who represent the Class and are referred to in this Notice as "Class Counsel," believe that the Settlement benefits Class Members. The Settlement provides for a payment to every Class Member and enables Class Members to avoid the risk that T-Mobile will win the lawsuit, in which case Class Members recover nothing. The Settlement also enables Class Members to recover money without the delay of protracted litigation.

While T-Mobile doesn't agree with anything the Plaintiffs said, it prefers to resolve this matter by making payments to employees under this Settlement rather than incurring further attorneys' fees and costs in defending the Lawsuit.

# WHO IS IN THE SETTLEMENT

To see if you will get money from this Settlement, you first have to determine whether you are a Class Member.

**5. AM I PART OF THE CLASS AND ELIGIBLE FOR THIS SETTLEMENT?**

The parties agreed in the Settlement and the Court has decided that the following individuals are Class Members and can participate in the Settlement:

All current or former employees who worked at a Legacy T-Mobile call center in the United States in a position that contains the terms Associate Expert, Expert, Senior Expert, CSR 1, CSR 2, or CSR 3, and who fall within one or both of the following two categories: (a) previously received and timely returned a signed "Consent to Join Lawsuit" form indicating their intent to join this lawsuit; and/or (b) worked in such a position in Colorado, Missouri, New Mexico, Oregon, or Washington State between April 23, 2017, and *[date preliminary approval motion is granted]*.

**6. WHAT IF I AM NOT SURE IF I AM INCLUDED?**

If you are still not sure whether you are included, you can ask for help. You can contract the Notice Administrator at *[----------------]* or Class Counsel at *[-------------]*. Please do not contact the Judge, the Court, or T-Mobile's managers or Human Resources.

# THE SETTLEMENT BENEFITS—WHAT YOU GET

**7. WHAT DOES THE SETTLEMENT PROVIDE?**

T-Mobile has agreed to pay the total "Settlement Amount" of Two Million Dollars ($2,000,000.00) to resolve all wage and hour and derivative claims related to this Lawsuit.

**8. WHAT CAN I GET FROM THE SETTLEMENT?**

Your "Individual Settlement Payment" will be calculated based on a formula set forth in the settlement agreement on file with the Court (the "Settlement Agreement") and discussed below.

The total Settlement Amount will be reduced for attorneys' costs and fees as approved by the Court, individual incentive awards for the nine Class Representatives as approved by the Court, amounts paid to notice and claims administrators, and other administrative costs of the settlement (including the employer's share of payroll taxes). The resulting amount, called the Net Settlement Amount, will be distributed among all Class Members who do not opt-out of the Settlement.

Each Class Member will receive a minimum payment of twenty dollars ($20.00), which will be subtracted from the Net Settlement Amount. In addition, each Class Member will be eligible to receive an additional proportionate payment from the Net Settlement Amount (the "Proportionate Share Payment") as calculated by the Settlement Administrator. To calculate each Proportionate

Share Payment, the Settlement Administrator will use the following formula.

(a) Each Class Member will be assigned one (1) point for each pay period worked in a Settlement Class position at any time from April 23, 2017, to *[the date preliminary approval motion is granted]* in which they worked eighty (80) or more hours according to T-Mobile's time records.

(b) Each Class Member will be assigned one-quarter (0.25) additional point for each pay period worked in a Settlement Class position between April 23, 2017, and *[date preliminary approval motion is granted]* in which the class member worked at a call center located in Colorado, Missouri, New Mexico, Oregon, or Washington, according to T-Mobile's time records.

(c) The Settlement Administrator will then (i) add the points for all Class Members together to obtain the "Total Denominator"; (ii) divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's portion of the Net Settlement Amount; and (iii) multiply each Class Member's portion of the Net Settlement Amount by the total Net Settlement Amount (less all Minimum Payments).

The sum of the Individual Settlement Payments for all Class Members (*i.e.*, the sum of all minimum payments and Proportionate Share Payments) will equal the Net Settlement Amount.

As explained in more detail in the Settlement Agreement, half of a Class Member's Individual Settlement Amount will be paid as wages (less ordinary payroll taxes and withholding) and the other half with be paid as non-wages (for liquidated damages and interest).

# HOW YOU GET A PAYMENT – IF YOU DO NOTHING

## 9. **HOW CAN I GET AN INDIVIDUAL SETTLEMENT PAYMENT?**

If you receive this Notice, the parties have identified you as a Class Member. You do not need to take any further action to receive your Individual Settlement Payment.

If you move prior to receiving a check, you should contact the Settlement Administrator at *[(xxx) xxx-xxxx]* to notify the Settlement Administrator of your new address. You may also provide change of address information by facsimile to *[(xxx) xxx-xxxx]* or by e-mail to *[xxx@xxx.com]*.

If you return an exclusion form and opt-out, you will not get a payment.

## 10. **WHEN WILL I GET MY PAYMENT?**

The Court will hold a hearing on *[month ##, 2021]*, to decide whether to approve the Settlement. If the Court approves the Settlement, there may be appeals. If appeals occur, it is uncertain how long it could take to resolve them. Once the Settlement is approved and appeals are resolved, payments should be issued within thirty (30) to sixty (60) days. Absent any appeals, the parties anticipate that payments will be made in *[----------]*.

## 11. **WHAT AM I GIVING UP TO STAY IN THE CLASS AND GET A PAYMENT?**

Unless you exclude yourself, you will stay in the Class. That means that you cannot sue, continue to sue, or be part of any other lawsuit against T-Mobile arising from the factual allegations or involving the legal claims asserted in the Lawsuit. It also means that all the Court's orders will apply to you and bind you. If the Court grants final approval of the Settlement, the Lawsuit will be dismissed with prejudice, and the following release of claims will become effective:

As of the Effective Date, this Agreement constitutes a full and final settlement and release of any and all wage and hour claims, including those relating to recorded, unrecorded, off-the-clock, additional, undercompensated, or uncompensated work time; regular or overtime pay (or the calculation thereof), and including the timing and method of payment; liquidated or double damages; other penalties or premium amounts related to wage

statements, rest and meal breaks, work hours, schedules, or pay; and all derivative claims (including attorneys' fees, costs, and expenses) that were or could have been asserted by any or all members of the Settlement Class against T-Mobile or any other Released Parties. This release applies to the members of the Settlement Class and their respective marital communities (if any), heirs, executors, administrators, and assigns. This release covers any and all wage and hour claims, rights, demands, charges, complaints, causes of action, damages, obligations, disputes, or liabilities of any kind or nature that were asserted in the Action or could have been but were not asserted in the Action, whether known or unknown, arising out of work performed by the Settlement Class for T-Mobile from the beginning of time through the Effective Date. This expressly includes but is not limited to any statutory/regulatory claims that may lawfully be released (including but not limited to claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. §§8-6-101–8-6-119, Colorado Minimum Wage Order No. 32, 7 Colo. Code Regs. §§1103-1(1)–(22), Colorado Wage Claim Act, Colo. Rev. Stat. §§8-4-101–8-4-123; Missouri Minimum Wage Law, § 290.500 RSMo, *et seq.*, Missouri Wage Payment Law, §§ 290.080 to 290.090, RSMo; New Mexico Minimum Wage Act, N.M.S.A. § 50-4-19 *et seq.*; Oregon Revised Statutes, Chapters 652 and 653; Washington Minimum Wage Act, RCW 49.46 *et seq.*, Washington Wage Rebate Act, RCW 49.52 *et seq.*, Washington Industrial Welfare Act, RCW 49.12 *et seq.*, and Washington's wage payment statute, RCW Chapter 49.48; as well as any local laws in those five states), contractual claims (whether express or implied), and common law claims (including without limitation any claims of unjust enrichment, quantum meruit, estoppel, misrepresentation, any other claim in equity, and any claim of breach of a covenant of good faith and fair dealing) for compensation, wages, unpaid amounts, double damages, interest, penalties, costs, expenses, and/or attorneys' fees for or related to such matters. This expressly excludes claims that are not reasonably related to wage and hour claims, including claims for discrimination, retaliation, wrongful termination, unemployment, disability, worker's compensation, and any claims that may not be lawfully released under this Agreement.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement and, instead, want to keep any alleged claims, then you must take steps to exclude yourself (or opt-out) of the Class.

## 12. HOW DO I EXCLUDE MYSELF FROM THIS SETTLEMENT?

To exclude yourself from the Settlement and this Lawsuit, you must complete a "Request for Exclusion" in the form of a letter sent by mail to *[insert address]*, by facsimile to *[(xxx) xxx-xxxx]*, or by e-mail to *[xxx@xxx.com]*, stating that you want to be excluded from the lawsuit of *Chetwood v. T-Mobile USA, Inc.* You must include your name, address, and phone number, and you must sign the letter. Alternatively, you must fully complete, sign, and return the enclosed Request for Exclusion form. In either case, to be timely and valid, your Request for Exclusion must be postmarked on or before *[60 days from Notice mailing date]* if sent by mail, or submitted on or before *[60 days from Notice mailing date]* if sent by facsimile or email.

## 13. IF I DO NOT OPT OUT, CAN I SUE T-MOBILE FOR THE SAME THING LATER?

No. Unless you exclude yourself, you give up the right to sue T-Mobile based on the allegations and claims asserted in this lawsuit. The exclusion deadline is *[60 days from Notice mailing date]*.

## 14. IF I OPT OUT, CAN I STILL GET MONEY FROM THIS SETTLEMENT?

No. If you exclude yourself, you cannot receive a payment under this Settlement.

## 15. CAN ANYONE RETALIATE AGAINST ME FOR JOINING OR EXCLUDING MYSELF FROM THE LAWSUIT AND SETTLEMENT?

No. Federal and state laws do not allow retaliation or discrimination against anyone who chooses to stay in or be excluded from a collective or class action.

# THE LAWYERS REPRESENTING YOU

### 16. <u>DO I HAVE A LAWYER IN THIS CASE?</u>

The Court has appointed the following attorneys to represent you and other Class Members:

Kevin J. Stoops                       Adam J. Berger
Charles R. Ash, IV               Schroeter, Goldmark & Bender
Sommers Schwartz, PC        810 Third Avenue, Suite 500
One Towne Square, Suite 1700   Seattle, Washington 98104
Southfield, Michigan 48076

Together, these attorneys are called Class Counsel. You will not be charged any money for Class Counsel's representation of you. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. <u>HOW WILL THE LAWYERS BE PAID?</u>

Class Counsel will be paid from the total Settlement Amount. Class Counsel will ask the Court to approve an award of attorneys' fees up to one-third of the Settlement Amount ($666,666.67) as compensation for their two (2) to three (3) years of work on this case. Class Counsel will also ask the Court to approve an award of the actual costs they have incurred in litigating this matter as well as individual incentive awards for the nine Class Representatives up to a total of $20,000.00. These amounts will be paid from the Settlement Amount.

# OBJECTING TO THE SETTLEMENT

If you want, you can tell the Court that you do not agree with the Settlement or some part of it.

### 18. <u>HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?</u>

If you are a Class Member, you can object to the Settlement if you do not like any part of it. You can give reasons why the Court should not approve it. The Court will consider your views.

To object, you must send a written statement saying you object to the Settlement in *Chetwood v. T-Mobile*, Case. No. 2:19-cv-00458-RSL, and that includes your name, address, and telephone number; an explanation of the reasons for each objection; and your signature. The statement must be mailed to the following three addresses postmarked by *[60 days from Notice mailing date]*:

        Clerk of the Court
        U.S. District Court of the Western District of Washington
        Address
        Seattle, WA ------

        Adam Berger
        Schroeter, Goldmark & Bender
        810 Third Avenue, Suite 500
        Seattle, WA 98104

        Daniel Hurley
        K&L Gates LLP
        925 Fourth Avenue, Suite 2900
        Seattle, WA 98104

### 19. <u>WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND OPTING OUT?</u>

Objecting is simply telling the Court that you do not like something about the Settlement. In order to object, you must stay in the Class and may not opt-out. Opting out or excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to.

**20. <u>WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?</u>**

The Court will conduct the Final Settlement Approval Hearing at *[time]* on *[date]* in Courtroom *[number]* of the United States Courthouse, 700 Stewart Street, Suite 2310, Seattle, Washington 98101. At the hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the Settlement.

**21. <u>DO I HAVE TO COME TO THE HEARING?</u>**

You are not required or expected to attend the Final Settlement Approval Hearing. However, you are welcome to attend at your own expense. If you plan on attending, please contact Class Counsel so you can be apprised of any restrictions related to COVID-19 that may limit or preclude in-person attendance at the hearing and/or any options that may be in place that might allow you to listen to and/or attend the hearing remotely.

**22. <u>MAY I SPEAK AT THE HEARING?</u>**

If you object to the Settlement, you may also ask the Court for permission to speak at the Final Settlement Approval Hearing. To do so, you must send a separate written statement with your objection saying that it is your "Notice of Intention to Appear at the Final Hearing in *Chetwood v. T-Mobile*." The statement must include your name, address, telephone number, and signature, and must be postmarked no later than *[60 days from Notice mailing date]*. You cannot speak at the hearing if you do not submit a written objection or if you exclude yourself from the Class.

# GETTING MORE INFORMATION

**23. <u>ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?</u>**

Yes. This Notice summarizes the most important aspects of the Settlement. You can get a copy of the written Settlement Agreement and obtain further information regarding the Lawsuit and the Settlement by contacting Class Counsel.

**24. <u>HOW DO I GET MORE INFORMATION?</u>**

For further information about this Lawsuit, you may contact Class Counsel by mail at the addresses indicated above in Section [18], by telephone at *[xxx-xxx-xxxx]*, or by email at *[xxxx@sommerspc.com]*. Additionally, you may contact the Settlement Administrator by telephone at *[xxx-xxx-xxxx]* or by email at *[xxxx@xxxxxxx]*. Please do not contact the Judge, the Court, or T-Mobile's managers or Human Resources.

**The Court has taken no position regarding the merits of this Lawsuit, and this Notice is not an expression by the Court of any opinion regarding Plaintiffs' claims or T-Mobile's defenses. Please do not call the Court or the Clerk of the Court. They cannot answer questions regarding this Lawsuit or this Notice.**

DocuSign Envelope ID: D4B553E3-9B76-47E4-BAC8-1CBDC8FAA54B

# EXHIBIT E

# REQUEST FOR EXCLUSION

*Chetwood v. T-Mobile USA, Inc.*, Case No. 2:19-CV-00458-RSL

U.S. District Court for the Western District of Washington

*Note: You do not need to do anything to remain a Settlement Class Member and to participate in the proposed Settlement.*

If you want to opt out, provide the following information (*please print legibly*):

Name:_____

Address:_____

Phone Number:_____

By my signature below, I **REQUEST TO BE EXCLUDED** from the Class lawsuit and Settlement in the case of *Chetwood v. T-Mobile USA, Inc.* I understand that my submission of a timely Request for Exclusion means that I will be excluded from the Class lawsuit and Settlement and **that I will not receive any payment or benefits** under the Settlement in this case.

Signature:_____

Dated: _____

*In order to **exclude** yourself from the Settlement Class, you must complete and sign this form and mail, fax, or email the completed form as directed below, and the form must be postmarked (if sent by mail) or received (if sent by facsimile or email) no later than [60 days from Notice mailing date]:*

    *By mail:*

    *[insert address]*

    *By facsimile:*

    *[insert number]*

    *By email:*

    *[insert address]*